1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, | CASE NO. 2:25-CV-00451 |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

9

10

11

12

13

                    Plaintiffs,

14

       v.

15

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; U.S.

16

DEPARTMENT OF HOMELAND SECURITY;
ADAM STAHL, in his official capacity as the

17

Senior Official Performing the Duties of the
Administrator of the Transportation Security

18

Administration; and TRANSPORTATION
SECURITY ADMINISTRATION,

19

20

                    Defendants.

21

22

23

24

COMPLAINT – 1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    This action seeks declaratory and injunctive relief with respect to the Department of Homeland Security's illegal and unjustified attempt to rescind a binding contract it entered into just a year earlier—the lawfully executed collective bargaining agreement between the American Federation of Government Employees (AFGE) and the Transportation Security Administration (TSA), which became effective on May 24, 2024 (the 2024 CBA).

2.    The purported termination of the 2024 CBA, which covers the approximately 47,000 federal employees who keep their country safe by serving as Transportation Security Officers (TSOs), flies in the face of one of the most hallowed principles of the American political system—the sanctity of contracts. Rescinding the 2024 CBA also risks profoundly adverse consequences for airport and passenger safety.

3.    Furthermore, the rescission of the 2024 CBA was an act of retaliation by the Trump administration against Plaintiff AFGE because of its exercise of its First Amendment right to litigate to protect federal workers. This attempt to punish protected speech is unlawful under the First Amendment.

4.    AFGE, on its own and through its affiliates, has represented TSOs at TSA for over twenty years, and TSOs' membership in AFGE has been and continues to be voluntary.

5.    For more than a decade, AFGE has bargained collectively with TSA over the terms and conditions of TSO employment. This bargaining has led to the execution of binding collective bargaining agreements granting TSOs protected rights with respect to their working conditions.

6.    The 2024 CBA has a term of seven years and allows limited midterm bargaining. This collective bargaining agreement, like any other, is a binding contract.

7.    Since January 21, 2025, AFGE has been a vocal and public advocate for federal

COMPLAINT – 2

employees harmed by Trump administration actions directed at federal agencies and employees. AFGE and its affiliates have also been plaintiffs in multiple civil actions seeking redress for the administration's illegal actions and policies targeting federal workers. *See, e.g.*, *AFGE v. Trump*, No. 1:25-cv-00264 (D.D.C.); *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass.); *AFGE v. OPM*, No. 3:25-cv-01780 (N.D. Cal.).

8.     On February 27, 2025, Secretary of Homeland Security Kristi Noem signed, but did not publicize, a memorandum that targeted AFGE by name, asserting without any evidence that AFGE was harming transportation security officers. The memorandum announced that the May 2024 collective bargaining agreement between TSA and AFGE was non-binding and rescinded.

9.     Noem's memorandum also purported to rescind the 2024 CBA and to render it inapplicable and non-binding. It also purported, *inter alia*, to revoke AFGE's status as TSOs' exclusive representative, eliminate all collective bargaining rights and obligations, and strip AFGE of any and all rights it may have had as TSOs' union.

10.     Just over a week later, TSA informed AFGE that that contract was rescinded, that AFGE was no longer the exclusive representative of transportation security officers, and that all pending grievances would be terminated. TSA announced the decision to the public that same day, including false claims about the number of AFGE officials using official time and that AFGE "did not represent or protect" its members' interests.

11.     The decision by Secretary Noem to rescind the 2024 CBA, end collective bargaining mid-contract, and terminate existing grievances violates the First and Fifth Amendments to the U.S. Constitution, is arbitrary and capricious, and is contrary to law. As such, it should be enjoined.

COMPLAINT – 3

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

**Jurisdiction and Venue**

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

13.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

14.    Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. Plaintiff AFGE TSA Local 1121 is a resident of this judicial district. A substantial part of the events or omissions giving rise to this Complaint occurred and continue to occur within the Seattle Division of the Western District, where AFGE and AFGE TSA Local 1121 members at Seattle-Tacoma International Airport have lost the protections of their collective bargaining agreement due to Defendants' unlawful actions.

**Parties**

15.    Plaintiff American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization and unincorporated association headquartered in, Washington, D.C. AFGE, the largest federal union, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States.

16.    AFGE members include security officers protecting our airports and airplanes, nurses caring for our nation's veterans, border patrol agents securing our borders, correctional officers maintaining safety in federal facilities, scientists conducting critical research, health care workers serving on military bases, civilian employees in the Department of Defense supporting our military personnel and their families, and employees of the Social Security Administration making sure retirees receive the benefits they have earned.

17.    AFGE was founded in 1932 by federal employees seeking to create a right to fair employment and pay during the Great Depression. As the union grew, it advocated for and secured numerous victories for career civil servants, including the passage of the Civil Service Reform Act

COMPLAINT – 4

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1    in 1978.

2        18.    AFGE is dedicated to fighting for dignity, safety, and fairness on the job for its

3    members, and promoting efficiency and the improvement of government service so that

4    government can more effectively serve the American people.

5        19.    AFGE brings this action on behalf of itself as an organization and on behalf of its

6    members.

7        20.    AFGE TSA Local 1121 is a labor organization and unincorporated association

8    residing in Kent, Washington that represents transportation security officers. It represents

9    transportation security officers at airports including the Seattle-Tacoma International Airport.

10        21.    AFGE TSA Local 1121 brings this action on behalf of itself as an organization and

11    on behalf of its members.

12        22.    Communications Workers of America ("CWA") is a labor union and

13    unincorporated association headquartered in Washington, D.C. representing approximately 30,000

14    workers in airline passenger services at airports across the nation who handle ticketing, luggage,

15    and other customer service matters for airline passengers, as well as workers in the

16    communications and information industries, the news media, broadcast and cable television, public

17    service, higher education, health care, manufacturing, video games, and high tech. CWA takes an

18    active role advocating for its members on workplace issues, which includes participating in

19    litigation as a party.

20        23.    CWA brings this action on behalf of its members.

21        24.    Plaintiff Association of Flight Attendants-CWA, AFL-CIO ("AFA") is a labor

22    union and unincorporated association headquartered in Washington, D.C. organized under the

23    Railway Labor Act, 45 U.S.C. § 151, et seq. and serves as the leading voice for a safe, healthy and

24

COMPLAINT – 5

secure aircraft cabin for passengers and crew alike. AFA represents over 55,000 flight attendants at twenty airlines.

25.    Every day, AFA-represented flight attendants across the country pass through TSA-administered security checkpoints. Flight attendants, like all aviation workers, collaborate with and rely upon numerous services provided by the federal government, including safe and secure airport security screening.

26.    AFA brings this action on behalf of its members.

27.    Defendant Kristi Noem is the Secretary of Homeland Security. She is sued solely in her official capacity. In that capacity, she issued the February 27, 2025 memorandum ("Noem Determination") that purported to rescind the 2024 CBA, terminate existing grievances, and eliminate AFGE as an exclusive representative of transportation security officers.

28.    Defendant Department of Homeland Security ("DHS") is a federal agency within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), headquartered in Washington, D.C.

29.    Defendant Adam Stahl is the Senior Official Performing the Duties of the TSA Administrator. He is sued solely in his official capacity.

30.    Defendant Transportation Security Administration is a federal agency within the meaning of the APA, headquartered in Springfield, Virginia.

**Factual Background**

I.    **Congress Creates the Transportation Security Administration, and TSA Recognizes Transportation Security Officers' Collective Bargaining Rights**

31.    Shortly after the September 11, 2001 terrorist attacks, Congress enacted the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597 (2001), which created the Transportation Security Administration ("TSA").

COMPLAINT – 6

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

32.     Pursuant to the ATSA, the TSA is led by an Administrator appointed by the President with the advice and consent of the Senate. 49 U.S.C. § 114(a), (b).

33.     "[T]he term of office of an individual appointed as the Administrator shall be 5 years." 49 U.S.C. § 114(b)(1)(C).

34.     The Administrator is tasked by Congress with being "responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation." 49 U.S.C. § 114(e).

35.     The Administrator is also tasked with requiring screening "before entry into a secured area of an airport in the United States" and "establish[ing] procedures to ensure the safety and integrity of . . . all persons providing services with respect to aircraft providing passenger air transportation or intrastate air transportation and facilities of such persons at an airport in the United States." 49 U.S.C. § 44903(h)(4).

36.     TSA employees are not governed by the personnel system that covers most federal employees set out in Title 5 of the U.S. Code. Instead, Congress provided that TSA employees shall be governed by a personnel management system established by the Administrator of the Federal Aviation Administration, subject to modifications made by the TSA Administrator. 49 U.S.C. § 114(n).

37.     For airport screener personnel—transportation security officers—Congress further provided that:

> Notwithstanding any other provision of law, the [Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator] determines to be necessary to carry out the screening functions of the [Administrator] under section 44901 of title 49, United States Code. The [Administrator] shall establish levels of compensation and other benefits for individuals so employed.

COMPLAINT – 7

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD IGLITZIN & LAVITT LLP

1    ATSA § 111(d), 115 Stat. 597, 620 (2001); 49 U.S.C. § 44935 note.

2    38.    Pursuant to this authority, TSA Administrators have exercised their discretion to

3    set terms and conditions of employment by establishing mechanisms that permit transportation

4    security officers to bargain collectively and for their exclusive representatives to execute collective

5    bargaining agreements with the TSA.

6    39.    In February 2011, after giving "careful thought to the question of union

7    representation for TSOs," examining workforce data, "listen[ing] to many views in the context of

8    considering TSA's mission requirements," including the views of TSOs, federal security directors,

9    management, and union presidents, then-Administrator John Pistole issued a determination that

10    set forth a "comprehensive structure . . . that will provide for genuine, binding collective bargaining

11    on specified subjects at the national level with the union, if any, that prevails in an election

12    process." Feb. 4, 2011 Decision Mem., John S. Pistole ("2011 Determination"), at 2-5.

13    40.    The bargaining structure set out by the 2011 Determination permitted bargaining

14    over topics including the performance management process, awards and recognition process,

15    attendance management process, and shift bids.

16    **II.    Transportation Security Officers Elect AFGE as Their Exclusive Representative,
       Who Enters into Collective Bargaining Agreements with TSA**

17    41.    In June 2011, AFGE won an election to represent transportation security officers

18    working for TSA.

19    42.    In November 2012, AFGE and TSA signed their first binding collective bargaining

20    agreement. The agreement set out new awards for employees, improved the bidding process for

21    leave and shifts, and established new policies governing uniforms.

22    43.    Collective bargaining continued in subsequent years under both the Obama and

23    Trump administrations, with AFGE and TSA entering new collective bargaining agreements in

24

COMPLAINT – 8

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

2016 and 2020.

44.    In December 2022, Administrator David P. Pekoske issued a new determination "recognizing that TSA's dedicated employees are critical to the success of our mission" and extended bargaining rights to transportation security officers at the national level "to the same extent as permitted under Chapter 71 of Title 5 of the United States Code and as set forth in this Determination." December 30, 2022 Determination on Transportation Security Officers and Collective Bargaining, David Pekoske, at p. 1 & Sec. 5.a ("2022 Determination").

45.    The 2022 Determination expanded bargaining rights to the full extent available to other federal workers, including the creation of a binding grievance and arbitration system.

46.    The 2022 Determination also permitted local level bargaining over certain issues, including parking facilities and break spaces. *Id.* Sec. 5.b.

47.    By referring to Chapter 71 of Title 5, the 2022 Determination expressly reserved enumerated rights to TSA management and excluded certain topics from the collective bargaining process, 5 U.S.C. § 7106. *See NTEU v. Chertoff*, 452 F.3d 839, 861 (D.C. Cir. 2006) (noting that these limits "give[] federal agencies great 'flexibility' in collective bargaining). For example, these management rights protect agency officials' authority "to determine the mission, budget, organization, number of employees, and internal security practices of the agency." 5 U.S.C. § 7106(a)(1).

48.    The 2022 Determination did not permit bargaining over compensation, stating that "the TSA Administrator will retain sole and exclusive discretion over pay and policies affecting pay." 2022 Determination Sec. 6.

49.    The 2022 Determination also stated that because jurisdiction "cannot be conferred administratively," Chapter 71's provisions regarding the Federal Labor Relations Authority

COMPLAINT – 9

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

(which includes its unfair labor practice provisions), and Federal court jurisdiction were not included in the Determination's adoption of Chapter 71. *Id.* Sec. 8-9.

50.     AFGE and TSA began negotiating a CBA under the 2022 Determination in June 2023. Nearly a year later, in May 2024, TSA and AFGE signed a binding collective bargaining agreement ("2024 CBA") that set the terms and conditions of employment for transportation security officers.

51.     The 2024 CBA expressly provides that the agreement "may only be changed upon mutual written consent of the Parties." 2024 CBA Art. 13.A.3.

52.     At the signing ceremony, TSA Administrator Pekoske stated that "[i]f we didn't have this CBA, if we didn't have this pay package, I would submit to you, we probably wouldn't have a TSA in five or 10 years. That's how important it is." Drew Friedman, *TSA, AFGE See Milestone Contract as Pivot Point for Frontline Workers*, Federal News Network (May 16, 2024), https://federalnewsnetwork.com/unions/2024/05/tsa-afge-see-milestone-contract-as-pivot-point-for-frontline-workforce/.

53.     Administrator Pekoske also noted at the event that the Federal Employee Viewpoint Survey showed the highest engagement and satisfaction in TSA history, adding that he sought to use the new contract "as a pivot point to even greater relationships amongst all of us together." *Id.*

54.     The 2024 CBA recognizes AFGE as the exclusive representative of transportation security officers in the bargaining unit. 2024 CBA Art. 5.

55.     The 2024 CBA, like other collective bargaining agreements, extended enforceable rights to AFGE members. For example, pursuant to the agreement, TSA employee discipline or adverse actions "may be taken for just cause and only for reasons that will promote the efficiency of the service." 2024 CBA Art. 27.C.

COMPLAINT – 10

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

56.    The 2024 CBA also establishes a binding grievance and arbitration process to challenge breaches of the CBA or other violations of laws, rules, and regulations affecting conditions of employment. 2024 CBA Art. 29-30.

57.    The parties agreed to a dues deduction procedure akin to the procedure that federal employees covered by Chapter 71 of Title 5 are entitled to under 5 U.S.C. § 7115, through which bargaining unit employees can voluntarily opt to pay membership dues to AFGE by submitting a form to TSA, after which TSA would deduct the dues from the employee's paycheck and "timely remit the dues deduction to AFGE." 2024 CBA Art. 7.

58.    As is the case with other federal employees, members of the TSA bargaining unit who choose not to become AFGE members are not required to pay any union dues or fees.

59.    TSA recognized the binding nature of the 2024 CBA on TSA's ability to modify its directives governing the workplace. On multiple occasions, the parties referred to particular TSA management directives as sources of policy and procedures governing an issue, but explained that "[i]n the event of a conflict, the provisions of this Agreement shall govern." *See, e.g.*, 2024 CBA Art. 5.B.

60.    When TSA intended to retain the right to change policies governed by the CBA during the contract's term, it included this expressly in the CBA. *See* 2024 CBA Art. 24.B (covering employee performance awards) ("Management retains the right to add, rescind, or amend awards, award categories, and award criteria during the period of this Agreement.").

61.    The agreement provides that it would "remain in full force and effect until seven (7) years from its effective date." 2024 CBA Art. 37.B.1. During the midpoint of the agreement, each party is permitted to reopen up to three articles of the CBA for renegotiation. *Id.* Art. 37.C.

COMPLAINT – 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**III.    After AFGE Stands Up for Federal Workers in Court, Secretary Noem Purports to Rescind the AFGE-TSA Collective Bargaining Agreement**

62.    On January 20, 2025, President Trump fired TSA Administrator Pekoske. Pekoske was first appointed Administrator by President Trump in 2017 and was midway through his second five-year term when he was fired.

63.    From the very first day of his administration, President Trump has sought to slash the federal workforce. *See, e.g.*, E.O. 14171 (Jan. 20, 2025), 90 Fed. Reg. 8625 (purporting to eliminate civil service protections for "policy-influencing" positions); E.O. 14158 (Jan. 20, 2025), 90 Fed. Reg. 8441 (establishing "Department of Government Efficiency").

64.    Guided by Elon Musk and the so-called Department of Government Efficiency (DOGE), the Trump administration has fired thousands of civil servants who were serving their probationary period and put into action plans to fire tens or hundreds of thousands more through mass reductions-in-force. *See* E.O. 14222 (Feb. 26, 2025), 90 Fed. Reg. 11095.

65.    AFGE has been on the front lines in court and elsewhere fighting against the Trump administration and DOGE's efforts to strip federal workers of their rights and to fire them en masse with no individualized consideration for their performance. *See, e.g.*, *AFGE v. Trump*, No. 1:25-cv-00264 (D.D.C.); *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass.); *AFGE v. OPM*, No. 3:25-cv-01780 (N.D. Cal.).

66.    The Trump administration is clearly monitoring which entities are filing suits against the administration. For example, Musk reposted a story on X (formerly Twitter) about a lawsuit successfully blocking cuts to National Institutes of Health funding stating "Which law firms are pushing these anti-democratic cases to impede the will of the people?" https://x.com/elonmusk/status/1889380095015465272.

67.    On February 27, 2025, in a case brought by AFGE and others the week prior, a

COMPLAINT – 12

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1    district court issued a temporary restraining order against the Office of Personnel Management,

2    holding that its direction to terminate probationary workers was "unlawful, invalid, and must be

3    stopped and rescinded." *AFGE v. OPM*, No. 3:25-cv-01780, 2025 WL 660053, at *14 (N.D. Cal.

4    Feb. 28, 2025).

5       68.    That same day, Secretary Noem issued a memorandum to Adam Stahl, the senior

6    official performing the duties of the Administrator of TSA, entitled "Supporting the TSA

7    Workforce by Removing a Union That Harms Transportation Security Officers." February 27,

8    2025 Memorandum from Kristi Noem to Adam P. Stahl ("Noem Determination.")

9       69.    Lest anyone be confused about which union Noem was referring to, her memo

10   attacked AFGE directly, claiming that the more than a decade of TSA Determinations that

11   permitted collective bargaining were "misplaced directives" that "have solely benefited the

12   American Federation of Government Employees (AFGE) at TSOs' expense." *Id.* at 2.

13      70.    The Noem Determination rescinds, "[e]ffective immediately," the 2022

14   Determination on collective bargaining, and states that all other "historical and superseded

15   Determinations, and any amendments thereto . . . are superseded and inoperative." *Id.* at 3 & n.8.

16      71.    The memo goes further: It asserts that the 2024 CBA is "no longer applicable or

17   binding and is hereby rescinded," and that "AFGE is no longer the exclusive representative of any

18   personnel carrying out screening functions under 49 U.S.C. § 44901." *Id.* at 3.

19      72.    Noem does not, and cannot, address the reality of the situation: that AFGE is the

20   chosen representative of transportation security officers and counts a majority of these officers as

21   members. Instead, she seeks to replace members' judgment with her own, asserting they will be

22   better off without their chosen representative.

23      73.    The memo also discontinues the voluntary payroll deduction system by which

24

COMPLAINT – 13

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    transportation security officers can pay their dues directly from their paycheck. *Id.* at 4.

2        74.    The memo states that within 90 days, TSA should terminate "any functions,

3    processes, or obligations arising out of the 2024 CBA," including "to the extent permitted by law,

4    the termination of any pending grievances previously filed by a union on behalf of an employee .

5    . . under the negotiated grievance procedure" and "any ongoing compliance obligations arising out

6    of a grievance award issued pursuant to the grievance and arbitration provisions of the 2024 CBA."

7    *Id.* at 4.

8        75.    Not content to simply rescind the binding collective bargaining agreement that the

9    TSA lawfully formed with AFGE, Secretary Noem goes further and seeks to unilaterally bar

10   collective bargaining in perpetuity. The memo instructs TSA officials to propose a plan "to ensure

11   that no future Administration may permit TSOs to elect an exclusive representative or engage in

12   collective bargaining absent an intervening statutory change." *Id.* at 4.

13       76.    Plaintiffs did not receive notice of Noem's intent to sign the determination. Nor did

14   Defendants follow the bargaining procedures set forth in the 2024 CBA prior to effecting its

15   purported rescission.

16       77.    On March 6, 2025, President Trump issued a memorandum for agency heads stating

17   that "[i]n recent weeks, activist organizations . . . have obtained sweeping injunctions . . .

18   functionally inserting themselves into the executive policy making process and therefore

19   undermining the democratic process" and demanding that agencies request that courts require

20   securities to be posted by parties seeking preliminary relief.

21       78.    The next day, TSA informed AFGE and the public that, pursuant to the Noem

22   Determination, the AFGE-TSA contract had been rescinded, all pending grievances filed by AFGE

23   would be terminated, and TSOs no longer had any union representative or bargaining rights.

24

COMPLAINT – 14

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

79.    In its March 7, 2025 press release, TSA attacked AFGE, stating that TSOs "are losing their hard-earned dollars to a union that did not represent or protect their interests," a counterfactual statement made with no supporting evidence.

80.    The TSA press release's attack on AFGE included the statement of a DHS spokesperson that "Thanks to Secretary Noem's action, Transportation Security Officers will no longer lose their hard-earned dollars to a union that does not represent them." Again, this bald assertion was supported by no evidence and ignored the fact that no TSA employee was required to pay union dues except upon the employee's voluntary choice. The unsupported assertion about "a union that does not represent them" amounts to nothing but a demonstration of animus against AFGE. It was also false, inasmuch as AFGE has successfully advocated for better working conditions and increased pay for transportation security officers, and has represented hundreds of individual transportation officers in grievances and other matters.

81.    In fact, DHS and TSA retaliated against AFGE precisely because of AFGE's efforts to represent and protect its members' interests by suing over unlawful Trump administration initiatives.

82.    TSA's additional guidance regarding the Noem Determination sent March 11, 2025 made TSA's new position crystal clear: "There is no CBA between TSA and AFGE."

## IV.    The Unlawful Rescission of the 2024 CBA Has Harmed Plaintiffs and Their Members

83.    AFGE members who are federal employees work in a wide variety of positions, in every U.S. state and the District of Columbia, and in agencies including the Transportation Security Administration.

84.    AFGE, on its own and in conjunction with AFGE TSA Council 100 and its affiliated locals, including TSA Local 1121, represents the approximately 47,000 transportation

COMPLAINT – 15

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    security officers working for TSA.

2       85.    Membership in AFGE is voluntary, and a majority of transportation security

3    officers have chosen to become AFGE members.

4       86.    The leadership of AFGE and TSA Local 1121 are democratically elected by and

5    from their members.

6       87.    AFGE's representation of federal civilian employees includes engaging in

7    collective bargaining with federal agencies, providing representation in binding arbitrations and

8    other matters, including formal discussions and investigative examinations, political advocacy, the

9    submission of public comments to agency rulemakings, and litigation in court.

10      88.    The activities of AFGE and TSA Local 1121 are funded by their members through

11   voluntary membership dues.

12      89.    By eliminating collective bargaining rights for transportation security officers at

13   the Transportation Security Administration and rescinding the 2024 CBA, Defendants have

14   eliminated the ability of AFGE and affiliated locals, including TSA Local 1121, to perform core

15   services for their members: representing them in negotiations with agencies to secure binding

16   collective bargaining agreements covering federal employees' working conditions, and enforcing

17   those obligations through contractual grievance procedures.

18      90.    As a result of the Noem Determination, TSA is refusing to honor contractual

19   obligations made to their employees and their exclusive representative, AFGE.

20      91.    The illegal rescission of the 2024 CBA means that AFGE members have lost

21   contractual rights and protections governing their working conditions, including protections

22   against discipline and adverse actions without just cause, that they had obtained through collective

23   bargaining.

24

COMPLAINT – 16

18 WEST MERCER ST., STE. 400    BARNARD

SEATTLE, WASHINGTON 98119    IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

92.     The illegal termination of all pending grievances that have been brought by AFGE has deprived AFGE members of their vested interests in being protected against unjustified discipline by TSA and other contractual violations.

93.     The vast majority of AFGE members who are transportation security officers—nearly nine in ten—pay their voluntary membership dues through payroll deduction.

94.     The 2024 CBA requires TSA to continue voluntary payroll deduction for union members' dues, so long as employees do not choose to cancel their dues deductions, for the life of the contract. 2024 CBA Art. 7. However, pursuant to the Noem Determination, TSA has ceased providing payroll deduction of voluntary membership dues.

95.     AFGE, and AFGE locals including TSA Local 1121 are directly harmed by eliminating payroll deduction of dues for their members who have voluntarily joined the union and opted to pay dues through this process.

96.     Furthermore, the Noem Determination's elimination of collective bargaining and exclusive representation rights for AFGE reduces AFGE's bargaining power and will reduce the likelihood that transportation security officers will join AFGE and its affiliates, since the union is now barred from providing its core services, including but not limiting to negotiating over terms and conditions of employment and defending TSOs from arbitrary disciplinary actions by their employer.

97.     Efforts to counteract the harm from the Noem Determination are diverting AFGE employees and resources from being otherwise used to further their mission by organizing and representing employees, negotiating with employers, and advocating for improved employment conditions.

98.     CWA and AFA members in the aviation industry, including passenger service

COMPLAINT – 17

agents at airports and flight attendants, rely on TSA's transportation security officers to ensure that they are kept safe on the job.

99.     By eliminating contractual protections that protect the working conditions of TSA transportation security officers and rescinding AFGE's status as exclusive representative of these workers, TSA is denigrating their work force and making it more difficult for the agency to attract and retain qualified personnel to keep CWA and AFA members safe on the job.

100.     The loss of contractual grievance rights will make it more difficult for TSA members to raise issues that could implicate safety without fear of retaliation, thus increasing risks to CWA and AFA members.

101.     The Noem Determination signals an intent to move TSA to a "flexible, at-will workforce." Rescinding the 2024 CBA eliminates one pathway by which TSA employees can challenge their terminations. The resulting increased terminations of TSA employees will make adequate staffing more difficult and threaten workplace safety for those who work in areas protected by transportation security officers, including CWA and AFA members.

## Count I
*Violation of the Administrative Procedure Act – Arbitrary and Capricious*

102.     Plaintiffs reallege Paragraphs 1 through 101.

103.     The Noem Determination's unilateral rescission of the 2024 TSA-AFGE collective bargaining agreement and termination of pending grievances and arbitral proceedings constitutes final agency action within the meaning of 5 U.S.C. § 704.

104.     The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is found to be arbitrary and capricious. 5 U.S.C. § 706(2)(A).

105.     Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    problem, [or] offered an explanation for its decision that runs counter to the evidence before the

2    agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29,

3    43 (1983).

4         106.    "An agency may not . . . depart from a prior policy *sub silentio* or simply disregard

5    rules that are still on the books." *FCC v. Fox Television Station, Inc.*, 556 U.S. 502, 515 (2009).

6    Instead, it must give a "reasoned explanation" for such departure. *Id.*

7         107.    The Noem Determination fails to provide any reasoned explanation for its reversal

8    of existing policy, instead asserting in conclusory fashion, with no evidentiary support, that AFGE

9    harms the transportation security officers that it represents.

10        108.    The Noem Determination justifies its unilateral rescission of the 2024 CBA and

11   termination of pending grievances based on an irrelevant factor: the fact that transportation security

12   officers voluntarily choose to pay membership dues to AFGE.

13        109.    At no point does the Noem Determination address the reliance interests that AFGE

14   and its members have in the 2024 CBA and pending grievances.

15        110.    The Noem Determination, in asserting that past directives permitting collective

16   bargaining "failed to serve TSA's critical mission to protect the transportation system and keep

17   Americans safe," fails to explain its departure from the TSA policy contained in the 2024 CBA, in

18   which TSA "recognize[d] that bargaining unit employees are essential to achieving the Agency'

19   critical security mission and that a cooperative working relationship between labor and

20   management plays a vital role in the success of the bargaining unit employees." 2024 CBA Art. I.

21        111.    Accordingly, the Noem Determination's instruction to rescind the 2024 CBA and

22   terminate existing grievances should be held unlawful and set aside.

23

24

COMPLAINT – 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## Count II
*Violation of the Administrative Procedure Act – Contrary to Law/Excess of Authority*

112.    Plaintiffs reallege Paragraphs 1 through 111.

113.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is found to be "not in accordance with law" and in excess of authority. 5 U.S.C. § 706(2)(A), (C).

114.    "The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen." *Lynch v. United States*, 292 U.S. 571, 580 (1934) (quoting *The Sinking Fund Cases*, 99 U.S. 700, 719 (1878)).

115.    The collective bargaining agreement that TSA entered into with AFGE in 2024 is a binding contract. Defendants lack authority to unilaterally rescind this contract, and the Noem Determination's attempt to do so is contrary to law.

116.    Defendants lack authority to terminate existing grievances which were submitted pursuant to the 2024 CBA's binding grievance and arbitration process, and the Noem Determination's attempt to do so is contrary to law.

117.    Accordingly, the Noem Determination's instruction to rescind the 2024 CBA and terminate existing grievances should be held unlawful and set aside.

## Count III
*Retaliation in Violation of the First Amendment*

118.    Plaintiffs reallege Paragraphs 1 through 117.

119.    AFGE has exercised its First Amendment right to petition the government by filing numerous lawsuits against the Trump administration challenging a variety of anti-worker actions.

COMPLAINT – 20

18 WEST MERCER ST., STE. 400   BARNARD

SEATTLE, WASHINGTON 98119   IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

120.    In close temporal proximity to this First Amendment-protected activity, Defendants have retaliated against AFGE and its members by rescinding the 2024 CBA, terminating all pending grievances and arbitrations, and eliminating AFGE's status as exclusive representative of transportation security officers.

121.    Public statements from DHS and TSA make clear that AFGE was targeted by the Noem Determination and subsequent implementation by TSA: the memorandum calls out AFGE by name and claims contrary to evidence that the union "[h]arms Transportation Security Officers." Likewise, TSA's press release announcing the recission of the 2024 CBA falsely claimed that transportation security officers "are losing their hard-earned dollars to a union that did not represent or protect their interests."

122.    By publicly touting the annual loss in membership dues that AFGE will face if DHS and TSA's actions are allowed to stand, Defendants send a clear message to others who dare to challenge Trump administration policies: you will pay for speaking out.

123.    TSA also claimed in its press release, contrary to evidence, that "TSA has *more* people doing full-time union work than we have performing screening functions at 86% of our airports."

124.    This retaliatory action is in accord with a broader Trump administration policy of terminating contracts in retaliation for protected speech. As a recent example of this vindictive retaliation, a March 6, 2025 Executive Order entitled "Addressing Risks from Perkins Coie LLP" asserted that this law firm had "worked . . . to judicially overturn . . . election laws" and ordered agencies "to terminate any contract . . . for which [that firm] has been hired to perform any service"). As President Trump stated during a March 9, 2025 interview: "We have a lot of law firms that we're going to be going after, because they were very dishonest people." Joe DePaolo,

COMPLAINT – 21

1   ""We Have a Lot of Law Firms We're Going After': Trump Declares Plan to Target Law Firms

2   He Considers 'Very, Very Dishonest," Mediaite (Mar. 9, 2025),

3   https://www.mediaite.com/news/we-have-a-lot-of-law-firms-were-going-after-trump-declares-

4   plan-to-target-law-firms-he-considers-very-very-dishonest/.

5       125.   AFGE and its members have been tangibly harmed by this retaliatory conduct due

6   to the accompanying loss of workplace rights and protections, including but not limited to the

7   ceasing of payroll dues deduction, elimination of contractual protections covering topics including

8   discipline and adverse actions, and termination of preexisting grievances and arbitrations.

9       126.   Because the Noem Determination and its implementation constitutes

10  unconstitutional retaliation against AFGE for the exercise of its First Amendment rights, it should

11  be enjoined.

12                                  **Count IV**
                  *Violation of the Fifth Amendment's Due Process Clause*

13      127.   Plaintiffs reallege Paragraphs 1 through 126.

14      128.   The Due Process Clause of the Fifth Amendment to the United States Constitution

15  provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of

16  law." U.S. Const. amend. V.

17      129.   "Valid contracts are property, whether the obligor be a private individual, a

18  municipality, a State, or the United States. Rights against the United States arising out of a contract

19  with it are protected by the Fifth Amendment." *Lynch*, 292 U.S. at 579.

20      130.   By unilaterally rescinding the 2024 CBA and terminating all pending grievances

21  and arbitrations initiated pursuant to that CBA, the Noem Determination eliminates protected

22  property interests of AFGE, its affiliates, and its members without due process.

23      131.   Because the Noem Determination's purported rescission of the 2024 CBA has

24

COMPLAINT – 22

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

1    deprived AFGE, its affiliates, and its members of their property interests in violation of the Fifth

2    Amendment's Due Process Clause, it should be enjoined.

3                                      **Relief Requested**

4        **WHEREFORE**, Plaintiffs pray that this Honorable Court enter an ORDER:

5        A.  Declaring that the Noem Determination's purported recission of the 2024 collective

6            bargaining agreement between TSA and AFGE and termination of outstanding

7            grievances brought pursuant to that CBA violates the Administrative Procedure

8            Act, and violates the First and Fifth Amendment, and therefore is null and void.

9        B.  Preliminarily and permanently enjoining the Defendants from implementing or

10           otherwise giving effect to the Noem Determination's purported recission of the

11           2024 collective bargaining agreement between TSA and AFGE and termination of

12           outstanding grievances;

13       C.  Awarding Plaintiffs their attorney's fees and costs; and

14       D.  Granting such other relief as this Court may deem just and proper.

15                                Respectfully submitted,

16   Date: March 13, 2025

17                          */s/Robert H. Lavitt*
                           Robert H. Lavitt, WSBA No. 27758
                           Barnard Iglitzin & Lavitt LLP
18                         18 W Mercer St, Suite 400
                           Seattle, WA 98119
19                         (206) 257-6004
                           lavitt@workerlaw.com
20
                           */s/ Abigail V. Carter*
21                          Abigail V. Carter*
                           */s/ J. Alexander Rowell*
22                         J. Alexander Rowell*
                           Bredhoff & Kaiser, P.L.L.C.
23                         805 Fifteenth Street, N.W. Suite 1000
                           Washington, D.C. 20005

24

COMPLAINT – 23

1    (202) 842-2600
     (202) 842-1888 (fax)
2    acarter@bredhoff.com
     arowell@bredhoff.com
3
     *Pro hac vice application forthcoming
4
     /s/ Norman L. Eisen
5    Norman L. Eisen*
     /s/ Pooja Chaudhuri
6    Pooja Chaudhuri*
     State Democracy Defenders Fund
7    600 Pennsylvania Avenue SE, Suite 15180
     Washington, DC 20003
8    (202) 594-9958
     Norman@statedemocracydefenders.org
9    pooja@ statedemocracydefenders.org

10 `   *Pro hac vice application forthcoming

11    Counsel for Plaintiffs

12    /s/ Rushab B. Sanghvi
      Rushab B. Sanghvi*
13    /s/ Andres M. Grajales
      Andres M. Grajales*
14    American Federation Of
      Government Employees, AFL-CIO
15    80 F Street, NW
      Washington, DC 20001
16    (202) 639-6426
      SanghR@afge.org
17    Grajaa@afge.org

18     *Pro hac vice application forthcoming

19    Counsel for Plaintiff American Federation
      of Government Employees (AFGE)

20

21

22

23

24

COMPLAINT – 24