1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, | CASE NO. 2:25-cv-451-MJP<br><br>**MOTION OF PLAINTIFFS AFGE AND AFGE TSA LOCAL 1121 FOR PRELIMINARY INJUNCTION**<br><br>NOTE ON MOTION CALENDAR: May 9, 2025 |
| Plaintiffs, | **\*Oral Argument Requested\*** |
| v. | |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; ADAM STAHL, in his official capacity as the Senior Official Performing the Duties of the Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION, | |
| Defendants. | |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

MOTION FOR PRELIMINARY INJUNCTION – i

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 1

   A.   TSA Is Created and Recognizes Transportation Security Officers' Collective Bargaining Rights ............................................................................................. 1

   B.   TSOs Choose AFGE as Their Exclusive Representative and Form Collective Bargaining Agreements with TSA ...................................................................... 3

   C.   Noem Rescinds the 2024 CBA after AFGE Stands Up for Federal Workers ................. 4

   D.   The Unlawful Rescission of the 2024 CBA Harms Plaintiffs and Their Members ......... 7

LEGAL STANDARD ................................................................................................. 8

ARGUMENT .............................................................................................................. 8

   I.   Plaintiffs Will Likely Succeed on the Merits .................................................... 9

     A.  Plaintiffs Have Standing .................................................................................... 9

     B.  Plaintiff AFGE Will Likely Succeed on its First Amendment Claim ........................... 10

     C.  Plaintiffs Are Likely to Succeed on Their APA Claims ................................... 13

     D.  Plaintiffs Have Established a Likelihood of Success on Their Fifth Amendment Claim. ........................................................................................................ 21

   II.   Absent Relief, Plaintiffs and Their Members Will Suffer Irreparable Injury ............... 25

   III.   The Balance of the Equities and Public Policy Favors Preliminary Injunctive Relief .. 27

CONCLUSION ........................................................................................................... 27

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelhamid v. Ilchert*,
    774 F.2d 1447 (9th Cir. 1985) ...............................................................................21

*AFGE Loc. 1 v. Stone*,
    502 F.3d 1027 (9th Cir. 2007) ...........................................................................2, 19

*AFGE v. Ezell*,
    No. 1:25-cv-10276 (D. Mass.) ...........................................................................6, 11

*AFGE v. OPM*,
    No. 3:25-cv-01780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025)........................6, 11

*AFGE v. Trump*,
    No. 1:25-cv-00264 (D.D.C.) ...............................................................................6, 11

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*,
    686 F.3d 965 (9th Cir. 2012) ...............................................................................24

*Alabama Ass'n of Realtors v. HHS*,
    594 U.S. 758 (2021) (per curiam)........................................................................26

*Ariz. Students Ass'n v. Ariz. Bd. of Regents*,
    824 F.3d 858 (9th Cir. 2016) ...........................................................................10, 11

*ASSE Int'l, Inc. v. Kerry*,
    803 F.3d 1059 (9th Cir. 2015) ...........................................................................20, 21

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972)............................................................................................22

*Bennett v. Spear*,
    520 U.S. 154 (1997)............................................................................................18

*California v. ATF*,
    718 F. Supp. 3d 1060 (N.D. Cal. 2024) ...............................................................17

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) .............................................................................24

*Coszalter v. City of Salem*,
    320 F.3d 968 (9th Cir. 2003) ...............................................................................12

MOTION FOR PRELIMINARY INJUNCTION – iii

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ................................................................................................... *passim*

*DOD. v. AFGE, AFL-CIO, Dist. 10*,
No. 6:25-cv-119 (W.D. Tex.) ........................................................................................7

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) .........................................................................9, 25, 26, 27

*Entler v. Gregoire*,
872 F.3d 1031 (9th Cir. 2017) ...................................................................................10

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ....................................................................................................9

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) (en banc) .......................................................................10

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ....................................................................................................9

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017) .....................................................................................27

*Hoffman v. Parksite Grp.*,
596 F. Supp. 2d 416 (D. Conn. 2009) .........................................................................26

*Kimberly Assocs. v. United States*,
261 F.3d 864 (9th Cir. 2001) ......................................................................................18

*King County v. Azar*,
320 F. Supp. 3d 1167 (W.D. Wash. 2018) .............................................................17, 20

*Litton Fin. Printing Div. v. NLRB*,
501 U.S. 190 (1991) ..................................................................................................23

*Lynch v. United States*,
292 U.S. 571 (1934) .............................................................................................17, 22

*Madera Irrigation Dist. v. Hancock*,
985 F.2d 1397 (9th Cir. 1993) ...........................................................................21, 22, 24

*Melandres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .....................................................................................27

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ....................................................................................................14

MOTION FOR PRELIMINARY INJUNCTION – iv

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

*Nat. Res. Def. Council v. Haaland*,
  102 F.4th 1045 (9th Cir. 2024) ...................................................................17, 20

*O'Brien v. Welty*,
  818 F.3d 920 (9th Cir. 2016) ...............................................................................10

*Organized Vill. of Kake v. USDA*,
  795 F.3d 956 (9th Cir. 2015) (en banc) ....................................................13, 14, 15

*Pacito v. Trump*,
  __ F. Supp. 3d __, No. 25-cv-255, 2025 WL 655075 (W.D. Wash. Feb. 28,
  2025) ...........................................................................................................16, 25

*Patel v. City of Los Angeles*,
  72 F.4th 1103 (9th Cir. 2023) ...............................................................................24

*Phillips v. Marion Cnty. Sheriff's Office*,
  494 F. App'x 797 (9th Cir. 2012) ....................................................................22, 23

*Planned Parenthood of Greater Wash. & N. Idaho v. HHS*,
  328 F. Supp. 3d 1133 (E.D. Wash. 2018) ............................................................17

*Public Citizen, Inc. v. Trump*,
  No. 25-cv-00164, (D.D.C.) ..................................................................................11

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) ...............................................................................27

*San Bernardino Physicians Servs. Med. Grp., Inc. v. Cnty. of San Bernardino*,
  825 F.2d 1404 (9th Cir. 1987) ...............................................................................22

*Sanchez v. City of Santa Ana*,
  915 F.2d 424 (9th Cir. 1990) .................................................................................22

*Small v. Avanti Health Sys., LLC*,
  661 F.3d 1180 (9th Cir. 2011) ........................................................................25, 26

*T.T. v. Bellevue Sch. Dist.*,
  376 F. App'x 769 (9th Cir. 2010) ..........................................................................22

*Velazquez-Hernandez v. ICE*,
  500 F. Supp. 3d 1132 (S.D. Cal. 2020)..................................................................19

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)...............................................................................................13

*Washington v. DeVos*,
  481 F. Supp. 3d 1184 (W.D. Wash. 2020)..............................................................27

MOTION FOR PRELIMINARY INJUNCTION – v

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

*Webster v. Doe*,
  486 U.S. 592 (1988)..................................................................................19

*Westlands Water Dist. v. U.S. Dep't of Interior*,
  850 F. Supp. 1388 (E.D. Cal. 1994)......................................................23, 24

*Wolford v. Lopez*,
  116 F.4th 959 (9th Cir. 2024) .....................................................................8

*Wright v. Riveland*,
  219 F.3d 905 (9th Cir. 2000) ....................................................................21

**Statutes**

5 U.S.C. § 701(a)(2)......................................................................................18

5 U.S.C. § 704...............................................................................................18

5 U.S.C. § 706(2)...........................................................................................16

5 U.S.C. § 7106...............................................................................................3

49 U.S.C. § 114(e) ..........................................................................................1

49 U.S.C. § 114(n) ..........................................................................................2

49 U.S.C. § 44901(a) .......................................................................................1

Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597
  (2001).......................................................................................................1, 2

**Other Authorities**

*Addressing Risks from Paul Weiss*, E.O. 14237, 90 Fed. Reg. 13039 (Mar. 14,
  2025) .........................................................................................................13

*Addressing Risks from Perkins Coie LLP*, E.O. 14230, 90 Fed. Reg. 11781 (Mar.
  6, 2025) .....................................................................................................13

Drew Friedman, *TSA, AFGE See Milestone Contract as 'Pivot Point' for
  Frontline Workforce*, Federal News Network (May 16, 2024),
  https://federalnewsnetwork.com/unions/2024/05/tsa-afge-see-milestone-
  contract-as-pivot-point-for-frontline-workforce/ ..................................4, 15

*Fact Sheet: President Donald J. Trump Exempts Agencies with National Security
  Missions from Federal Collective Bargaining Requirements* (Mar. 27, 2025),
  https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-
  j-trump-exempts-agencies-with-national-security-missions-from-federal-
  collective-bargaining-requirements/ ....................................................6, 12

MOTION FOR PRELIMINARY INJUNCTION – vi

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

*Fact Sheet: President Donald J. Trump Ensures the Enforcement of Federal Rule of Civil Procedure 65(c)*, (Mar. 6, 2025) https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-ensures-the-enforcement-of-federal-rule-of-civil-procedure-65c/.........................................................................6

MOTION FOR PRELIMINARY INJUNCTION – vii

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

# INTRODUCTION

Transportation Security Officers employed by the Transportation Security Administration are dedicated to protecting our airports and airplanes, ensuring that air travelers and the workers who serve them are kept safe. Their chosen exclusive representative for more than a decade, the American Federation of Government Employees (AFGE), entered into a new collective bargaining agreement with the TSA last May. In a memorandum directly attacking AFGE, Secretary of Homeland Security Kristi Noem has unilaterally rescinded that CBA, and Defendants have terminated associated grievances filed pursuant to the agreement. AFGE, AFGE TSA Local 1121, and their members face irreparable injuries from these actions, which violate the First Amendment, Administrative Procedure Act, and Fifth Amendment. As such, a preliminary injunction is warranted.

# FACTUAL BACKGROUND

## A. TSA Is Created and Recognizes Transportation Security Officers' Collective Bargaining Rights

In response to the September 11, 2001, terrorist attacks, Congress enacted the Aviation and Transportation Security Act ("ATSA"), creating the Transportation Security Administration ("TSA"). Pub. L. No. 107-71, 115 Stat. 597 (2001). Under the ATSA, the TSA Administrator is "responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation." 49 U.S.C. § 114(e). The Administrator is required to "provide for the screening of all passengers and property . . . that will be carried abroad a passenger aircraft." *Id.* § 44901(a). Subject to certain limitations, this screening "shall be carried out by a Federal Government employee." *Id.*

Unlike most federal employees, TSA employees are not governed by the Title 5 personnel system. Instead, Congress provided that TSA employees are covered by the Federal Aviation

MOTION FOR PRELIMINARY INJUNCTION – 1

18 WEST MERCER ST., STE. 400    BARNARD

SEATTLE, WASHINGTON 98119    IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

Administration personnel system, subject to modifications by TSA. 49 U.S.C. § 114(n); *see AFGE Loc. 1 v. Stone*, 502 F.3d 1027, 1031 (9th Cir. 2007). As for transportation security officers, Congress stated that, "[n]otwithstanding any other provision of law," the Administrator "may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment." ATSA § 111(d), 49 U.S.C. § 44935 note. Even more explicitly, Congress provided that the Administrator "shall establish levels of compensation and other benefits for individuals so employed." *Id.*

More than a decade ago, TSA Administrator John S. Pistole used this authority to establish a collective bargaining structure for TSOs. Decision Memorandum from John S. Pistole (Feb. 4, 2011) ("2011 Determination"), Glymph Decl. ¶ 9 & Ex. 1. At the time, surveys had "repeatedly shown TSA ranking poorly in terms of employee morale and engagement." *Id.* at 2. Pistole explained that "[e]mployee engagement and security are interrelated, and therefore directly affect our capacity to effectively carry out our mission." *Id.* After giving "careful thought to the question of union representation for TSOs," examining workforce data, and listening "to many views in the context of considering TSA's mission requirements, . . . and the security and confidence of the traveling public," including from TSOs in town halls, Pistole determined that union representation and collective bargaining would best serve TSOs and TSA. *Id.* at 2-5. He therefore set forth a "comprehensive structure . . . that will provide for genuine, binding collective bargaining on specified subjects at the national level[.]" *Id.* at 5.

The 2011 Determination permitted bargaining on limited topics. *Id.* at 9. But once a CBA was agreed to and approved by referendum, it was "binding on TSA, the union, and all covered employees." *Id.* at 8. The Determination explained that TSA could only continue to "[m]ake changes to the terms and conditions of employment for covered employees unless and until a term

MOTION FOR PRELIMINARY INJUNCTION – 2

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

or condition is superseded by a binding collective bargaining agreement provision." *Id.* at 15.

**B. TSOs Choose AFGE as Their Exclusive Representative and Form Collective Bargaining Agreements with TSA**

In June 2011, TSOs elected AFGE to be their exclusive representative, and AFGE began bargaining collectively with TSA. Glymph Decl. ¶¶ 6-7, 9. In November 2012, the parties signed their first binding CBA. *Id.* ¶ 9. TSA and AFGE agreed to new CBAs in 2016 and 2020. *Id.* ¶ 10.

In December 2022, TSA Administrator David Pekoske—who was appointed as administrator by President Trump—issued a new determination on collective bargaining. Determination from Pekoske on Transp. Sec. Officers and Collective Bargaining (Dec. 30, 2022) ("2022 Determination"); Glymph Decl. ¶ 12 & Ex. 2. The 2022 Determination "reflect[ed] TSA's strategic priority to 'Commit to our People' recognizing that TSA's dedicated employees are critical to the success of our mission." *Id.* at 1. It generally expanded collective bargaining rights to TSOs akin to rights granted to other federal employees in Chapter 71 of Title 5, while "retain[ing] sole and exclusive discretion over pay and policies affecting pay." *Id.* §§ 5, 6.

By referring to Chapter 71—the labor standards that govern most federal employees—the 2022 Determination reserved enumerated rights to TSA management. 5 U.S.C. § 7106. Notably, this protected TSA's authority to determine its "mission, budget, organization, number of employees, and internal security practices" and to take actions "necessary to carry out the agency mission during emergencies." *Id.* § 7106(a). The reference to Chapter 71, however, did not grant TSOs the ability to raise disputes at the Federal Labor Relations Authority, because FLRA jurisdiction "cannot be conferred administratively." 2022 Determination §§ 8-9.

AFGE and TSA signed their current CBA ("2024 CBA") in May 2024. Glymph Decl. ¶¶ 16-17 & Ex. 3. It set certain terms and conditions of employment for TSOs and provided that it "may only be changed upon mutual written consent of the parties" and "will remain in full force

MOTION FOR PRELIMINARY INJUNCTION – 3

and effect" for seven years. 2024 CBA Arts. 13.A.3, 37.B. TSA touted the CBA as a massive success for the agency: Administrator Pekoske stated at the signing ceremony, "[if] we didn't have this CBA, if we didn't have this pay package, I would submit to you, we probably wouldn't have a TSA in five or 10 years. . . . That's how important it is." Drew Friedman, *TSA, AFGE See Milestone Contract as 'Pivot Point' for Frontline Workforce*, Federal News Network (May 16, 2024), https://federalnewsnetwork.com/unions/2024/05/tsa-afge-see-milestone-contract-as-pivot-point-for-frontline-workforce/. Pekoske explained that recent surveys had showed the highest employee engagement and satisfaction in TSA history, and that he hoped the CBA would set the stage for further improvements. *Id.*

The 2024 CBA granted TSOs and Plaintiffs enforceable rights. It recognized AFGE as TSOs' exclusive representative. 2024 CBA Art. 5.A. It gave TSOs a right to have a union representative present in disciplinary interviews, and it granted AFGE the right to be present at formal discussions about grievances or conditions of employment. *Id.* Arts. 5.C, 26. The 2024 CBA also provided that discipline or adverse actions "may be taken for just cause and only for reasons that will promote the efficiency of the service." *Id.* Art. 27.C. And while no TSO is required to join the union or pay dues, if a TSO voluntarily chooses to pay dues through their paycheck, the 2024 CBA guaranteed that TSA would deduct those dues and "timely remit the dues deduction to AFGE." *Id.* Art. 7. The 2024 CBA also established a binding grievance and arbitration process allowing parties to challenge CBA violations or other violations affecting conditions of employment. *Id.* Arts. 28-29.

**C. Noem Rescinds the 2024 CBA after AFGE Stands Up for Federal Workers**

On February 27, 2025, Secretary Noem issued a memorandum to Adam Stahl, the senior official performing the duties of the Administrator of TSA, entitled "Supporting the TSA Workforce by Removing a Union That Harms Transportation Security Officers." ("Noem

MOTION FOR PRELIMINARY INJUNCTION – 4

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD IGLITZIN & LAVITT LLP

Determination"); Glymph Decl. ¶¶ 28-29 & Ex. 5. The Noem Determination purports to rescind, "[e]ffective immediately," the 2022 Determination governing collective bargaining. *Id.* at 3. The memo asserted that the 2024 CBA is "no longer applicable or binding and is hereby rescinded," and that "AFGE is no longer the exclusive representative of" TSOs. *Id.* at 3. It discontinued the system that allows TSOs to pay voluntary union dues from their paycheck (not from government funds). *Id.* at 4. And it instructed TSA, within 90 days, to terminate "any functions, processes, or obligations arising out of the 2024 CBA," including grievances filed under the CBA and ongoing compliance obligations from grievance awards. *Id.* at 4.

Noem's memorandum attacked AFGE by name, contending that determinations establishing TSO bargaining rights were "misplaced directives" that "have solely benefited the American Federation of Government Employees (AFGE) at TSOs' expense." *Id.* at 2. AFGE received no notice that the Noem Determination was being considered and had no opportunity to be heard on the issue. Glymph Decl. ¶ 30.

A week later, on March 7, TSA informed AFGE and the public about the previous week's Noem Determination, stating that the 2024 CBA had been rescinded, that all pending grievances by AFGE would be terminated, and that TSOs no longer had a union representative or any bargaining rights. Glymph Decl. ¶¶ 29-31, Ex. 6; *see also* Memorandum from Jason Nelson, (Mar. 11, 2025) ("There is no CBA between TSA and AFGE"), Glymph Decl. ¶ 34, Ex. 8. TSA's March 7 press release again attacked AFGE, asserting that TSOs "are losing their hard-earned dollars to a union that did not represent or protect their interests." TSA, Press Release (March 7, 2025), Glymph Decl. ¶ 32, Ex. 7. The press release also quoted a DHS spokesperson who claimed—ignoring that no TSO is required to pay union dues—that Noem's action meant TSOs "will no longer lose their hard-earned dollars to a union that does not represent them." *Id.* This statement

MOTION FOR PRELIMINARY INJUNCTION – 5

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

was false: since all TSOs who pay dues to AFGE do so voluntarily, no TSO "lose[s]" dues to AFGE.

This targeted attack on AFGE came on the heels of AFGE's public efforts to push back against the Trump Administration's attacks on federal workers. *See, e.g.*, *AFGE v. Trump,* No. 1:25-cv-00264 (D.D.C.); *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass.); *AFGE v. OPM*, No. 3:25-cv-01780 (N.D. Cal.). Most notably, on February 27, 2025, in a case brought by AFGE and others on February 19, a district court issued a temporary restraining order against the Office of Personnel Management. *AFGE v. OPM*, 2025 WL 660053, at *14 (N.D. Cal. Feb. 28, 2025) (referencing Feb. 27 oral order). The Noem Determination was issued the same day.

It is apparent, moreover, that the administration is both tracking and fixated on those who seek to enforce their rights in court. On March 6, 2025, the day before the 2024 CBA rescission was made public, President Trump issued a memorandum for agency heads targeting litigants like AFGE, stating "[i]n recent weeks, activist organizations . . . have obtained sweeping injunctions . . . undermining the democratic process." *See Fact Sheet*, (Mar. 6, 2025) https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-ensures-the-enforcement-of-federal-rule-of-civil-procedure-65c/; *Memorandum on Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)*, https://www.presidency .ucsb.edu/documents/memorandum-ensuring-the-enforcement-federal-rule-civil-procedure-65c.

Attacks on AFGE's First Amendment activity continue: on March 27, the President issued an executive order that would eliminate bargaining rights for most federal employees and published a Fact Sheet expressly asserting that the action was justified because "[c]ertain Federal unions have declared war on President Trump's agenda" and that "[t]he largest Federal union"— AFGE—"describes itself as "fighting back" against Trump." Fact Sheet, (Mar. 27, 2025)

MOTION FOR PRELIMINARY INJUNCTION – 6

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/.

Agencies including DHS sued AFGE local unions the same day seeking to terminate other CBAs, referring in their complaint to an article in which AFGE outlined the ways it is "fighting back" against the administration in the courts and otherwise. Complaint, *DOD. v. AFGE, AFL-CIO, Dist. 10*, No. 6:25-cv-119, ECF 1 at ¶ 172 (W.D. Tex. Mar. 27, 2025).

### D. The Unlawful Rescission of the 2024 CBA Harms Plaintiffs and Their Members

AFGE and its local unions, including AFGE TSA Local 1121, represent approximately 47,000 bargaining unit employees that work as TSOs for TSA. Glymph Decl. ¶ 4. Local 1121 represents approximately 850 TSOs that work at Seattle-Tacoma International Airport. Lewis Decl. ¶ 4. As part of their representation, Plaintiffs engaged in collective bargaining, represented employees in the grievance and arbitration process, and conducted issue advocacy. Glymph Decl. ¶ 5.

Membership in AFGE and Local 1121 is voluntary, and Plaintiffs' activities are funded by these members through dues. *Id.* ¶¶ 8, 41; Lewis Decl. ¶ 6. The vast majority of membership dues from TSOs were deducted from members' pay pursuant to Article 7 of the 2024 CBA. Glymph Decl. ¶¶ 8, 26; Lewis Decl. ¶ 6. Dues paid by members are split between subordinate bodies and AFGE. Glymph Decl. ¶ 26.

Because of the Noem Determination, TSA now refuses to honor binding commitments made to Plaintiffs and their members in the 2024 CBA. *Id.* ¶¶ 28, 31, 33-36. This eliminates core services that Plaintiffs provide, including negotiating over members' working conditions and enforcing those obligations through agreed-upon grievance and arbitration procedures. *Id.* ¶ 35, 40. For example, at the time the Noem Determination became public, Local 1121 had thirteen outstanding grievances covering topics including shift duration limits and shift bid regulations.

MOTION FOR PRELIMINARY INJUNCTION – 7

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Lewis Decl. ¶ 8. These grievances have now been "terminated" by TSA, and Local 1121 is currently unable to file a grievance regarding a facilities issue at Seattle-Tacoma International Airport due to Defendants' actions. *Id.* ¶ 9. As such, Local 1121 has been rendered incapable of defending its members' rights at work through its typical pathway. *Id.* ¶ 15. The Noem Determination has also impaired Plaintiffs' core services by eliminating official time and payroll deductions for voluntary membership dues. Glymph Decl. ¶¶ 22-27, 40-41, 45; Lewis Decl. ¶¶ 17-19. It has also eliminated workplace rights for members of AFGE and Local 1121, including the right to union representation during investigations, which risks harm to members and impedes Plaintiffs' ability to protect their members' rights. Glymph Decl. ¶¶ 39-40 Lewis Decl. ¶ 20.

## LEGAL STANDARD

Obtaining a preliminary injunction requires showing "[1] a likelihood of success on the merits, [2] irreparable harm in the absence of preliminary relief, [3] a favorable balance of the equities, and [4] favorable public interest in an injunction." *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The "last two factors merge" when the government is a party. *Id.* (internal quotation omitted).

## ARGUMENT

AFGE and Local 1121 are entitled to a preliminary injunction enjoining the Noem Determination's rescission of the 2024 CBA and related termination of outstanding grievances and arbitrations.[1] As described below, Plaintiffs are highly likely to succeed on the merits because Defendants retaliated against AFGE for protected First Amendment activity, violated the Administrative Procedure Act, and violated the Fifth Amendment. Plaintiffs face irreparable harm because they have been prevented from delivering their core services to members at TSA, have

---

[1] Plaintiffs AFGE and AFGE TSA Local 1121 bring this motion for preliminary injunction. Plaintiffs CWA and AFA are not parties to this motion.

MOTION FOR PRELIMINARY INJUNCTION – 8

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    lost membership dues and bargaining power, and face ongoing constitutional violations. Likewise,

2    their members face irreparable harm due to their loss of CBA protections granting union rights and

3    governing working conditions. Finally, the balance of equities and public interest support

4    injunctive relief. The public interest lies in respect for our Constitution and agency compliance

5    with the law and its commitments to its employees, rather than in unlawful agency actions.

6    **I.    Plaintiffs Will Likely Succeed on the Merits**

7            As described below, Plaintiffs have standing to bring their claims, and each of their

8    challenges to the Noem Determination will likely succeed on the merits.

9        **A.  Plaintiffs Have Standing**

10           AFGE and Local 1121 have standing as organizations and in their representational

11   capacity. Organizations have standing to sue when government actions "perceptibly impaired their

12   ability to perform the services they were formed to provide." *E. Bay Sanctuary Covenant v. Biden*,

13   993 F.3d 640, 663, 677 (9th Cir. 2021); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367,

14   395 (2024) (acknowledging that under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982),

15   injury that "directly affected and interfered with [an organization's] core business activities"

16   provided standing). The Noem Determination goes well beyond "perceptibly impairing" Plaintiffs'

17   programs: TSA's refusal to comply with the 2024 CBA renders it impossible for Plaintiffs to

18   provide core services to their members, which has harmed and will continue to harm Plaintiffs.

19   Glymph Decl. ¶ 40; Lewis Decl. ¶ 15. These core services include negotiating over changes to

20   terms and conditions of employment, representing members during investigatory interviews, and

21   bringing grievances and arbitrations on members' behalf. *Id.* And not only have Plaintiffs lost the

22   representation rights guaranteed in the CBA, they also face direct pecuniary harm from

23   Defendants' associated elimination of payroll deductions from members. Glymph Decl. ¶¶ 8, 41;

24   Lewis Decl. ¶ 17. Plaintiffs also have standing as representatives of their members, who have lost

MOTION FOR PRELIMINARY INJUNCTION – 9

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

protections including just cause protections and union representation in investigatory interviews and had grievances terminated. Lewis Decl. ¶¶ 19-20; *see Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 681 (9th Cir. 2023) (en banc) (describing representational standing requirements).

These harms are directly traceable to the Noem Determination, and will be redressed by enjoining the Defendants' rescission of the 2024 CBA and their termination of outstanding grievances.

### B.  Plaintiff AFGE Will Likely Succeed on its First Amendment Claim

As Defendants' own statements make plain, Defendants' rescission of the 2024 CBA and termination of associated grievances constituted unlawful retaliation against AFGE for exercising its First Amendment rights. Establishing a First Amendment retaliation claim requires showing "that (1) [the plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (internal quotations omitted). A plaintiff need only show an intention to interfere with First Amendment rights and "some injury as a result"— not actual suppression of speech. *Ariz. Students Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Here, Plaintiffs are likely to succeed on all three elements.

In recent weeks, AFGE has very publicly engaged in constitutionally protected activity: filing lawsuits against the Trump administration on issues affecting federal workers and the public. *See supra* p. 5. There can be no dispute that suing the government is protected by the First Amendment. *Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017) (threatening to sue the government is protected First Amendment activity, as is "*actually* suing").

MOTION FOR PRELIMINARY INJUNCTION – 10

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1    As to the second element, it is equally clear that Defendants' response to these lawsuits

2    would chill a person of ordinary firmness from engaging in First Amendment activity: TSA's

3    rescission of the 2024 CBA and accompanying refusal to deduct and transmit TSOs' voluntary

4    union dues to AFGE would chill the exercise of the right and is therefore sufficient to support a

5    retaliation claim. *Ariz. Students Ass'n*, 824 F.3d at 868-70 (eliminating fee collection and

6    remittance in response to First Amendment activity chills speech).

7    Furthermore, AFGE's protected activity was a "substantial or motivating factor" in

8    Defendants' conduct. In general, Plaintiffs may show motive "using direct or circumstantial

9    evidence." *Id.* at 870. "[T]emporal proximity between the protected activity and alleged retaliatory

10   conduct" serves as circumstantial evidence. *Id.* Here, AFGE's protected activity occurred in the

11   weeks leading up the challenged actions: it first sued the new administration in January. *Public*

12   *Citizen, Inc. v. Trump*, No. 25-cv-00164, ECF 1 (D.D.C. Jan. 20, 2025); *AFGE v. Trump*, No. 25-

13   cv-00264, ECF 1 (D.D.C. Jan. 29, 2025). In February, it sought preliminary relief against the

14   administration regarding the "Fork" deferred resignation program, obtaining a stay of the program

15   deadline, which affected employees at agencies including DHS. *AFGE v. Ezell*, No. 25-cv-10276,

16   ECF 42, 60 (D. Mass. Feb. 6, 2025 & Feb. 10, 2025). Most notably, on February 19, AFGE and

17   allied organizations sued the administration over its mass termination of probationary employees.

18   On February 27, the court ruled that OPM lacked authority to direct the firings of probationary

19   workers. *See AFGE v. OPM*, 2025 WL 660053, at *14. That same day, Secretary Noem issued but

20   did not publicize the Noem Determination, which attacked AFGE by name and purported to

21   rescind the 2024 CBA. Noem Determination at 2. A week later, President Trump called agency

22   heads' attention to "activist organizations . . . obtain[ing] sweeping injunctions" and "undermining

23   the democratic process.". *See supra* p. 5. The next day, on March 7, TSA publicly announced the

24

MOTION FOR PRELIMINARY INJUNCTION – 11

Noem Determination and informed AFGE that it was rescinding the 2024 CBA and terminating all outstanding grievances. Glymph Decl. ¶¶ 28-31.

As discussed *infra* at Part I.C, Defendants' proffered reasons for rescinding the CBA are false and pretextual, suggesting that retaliation was the real motive. *See Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003). The Noem Determination attacked AFGE from the outset, with the memorandum's title referring to "Removing a Union That Harms Transportation Security Officers." Noem Determination at 1. It focused on the amount of dues that TSOs voluntarily opted to pay AFGE—an irrelevant factor for cancelling the CBA—and claimed falsely that collective bargaining at the agency "solely benefited the American Federation of Government Employees (AFGE) at TSOs' expense." *Id.* at 2. Far from detailed reasons to justify or even explain rescission of the CBA, the proffered justification doubles down on anti-AFGE animus. *See also* Glymph Decl. Ex. 7 (TSA press release claiming TSOs were "losing their hard-earned dollars to a union that did not represent or protect their interests").

Recent events show that the Noem Determination was one of a series of coordinated actions targeting AFGE for its public opposition to the Trump administration. The March 27 Fact Sheet, which accompanying a new executive order, stated that it was removing bargaining rights from most federal workers because "Certain Federal unions have declared war on President Trump's agenda" and expressly referred to AFGE describing itself as "'fighting back' against Trump." Defendant DHS joined other agencies in suing AFGE locals that same night seeking approval to rescind their CBAs while noting AFGE's First Amendment activity. *See supra* pp. 5-6.

Indeed, the Trump Administration's pattern of targeting entities that oppose the Administration's actions in court provides broader context from which to find retaliatory animus. Given the Administration's well-publicized and express actions targeting lawyers and related

MOTION FOR PRELIMINARY INJUNCTION – 12

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

entities, there can be no doubt that the administration is seeking to punish individuals and organizations for their legal advocacy. *See, e.g., Addressing Risks from Perkins Coie LLP*, E.O. 14230, 90 Fed. Reg. 11781 (Mar. 6, 2025) (ordering agencies to terminate contracts with law firm that Trump claimed "worked . . . to judicially overturn . . . election laws"); *Addressing Risks from Paul Weiss*, E.O. 14237, 90 Fed. Reg. 13039 (Mar. 14, 2025) (same re: law firm that "brought a pro bono suit against individuals" involved in the January 6 Capitol riot). This is important because the Supreme Court has recognized that the "historical background" of a decision that "reveals a series of official actions taken for invidious purposes" can provide evidence of the motivations behind a decision. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (Equal Protection claim). Here, given that AFGE is being lumped in with other organizations that the Administration sees as enemies, AFGE is likely to succeed on its retaliation claim.

### C. Plaintiffs Are Likely to Succeed on Their APA Claims

#### 1. *The Noem Determination Is Arbitrary and Capricious*

The recission of the 2024 CBA and termination of outstanding grievances is arbitrary and capricious and should be set aside under the APA. Agency actions are arbitrary and capricious when the explanation "runs counter to the evidence before the agency." *Organized Vill. of Kake v. USDA*, 795 F.3d 956, 966 (9th Cir. 2015) (en banc) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "'Unexplained inconsistency' between agency actions is 'a reason for holding an interpretation to be an arbitrary and capricious change.'" *Id.* (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)). And "when an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (cleaned up).

The Noem Determination acknowledged that it was ending collective bargaining after more

MOTION FOR PRELIMINARY INJUNCTION – 13

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **I G L I T Z I N &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

than a decade of practice. But mere acknowledgement isn't enough: agencies must also "provide a reasoned explanation for disregarding the facts and circumstances that underlay its previous decision." *Village of Kake*, 795 F.3d at 968 (cleaned up); *see also State Farm*, 463 U.S. at 42 (agency reversal requires reasoned analysis "beyond that which may be required when an agency does not act in the first instance"). Defendants fall well short of this standard.

To support her dramatic reversal of agency policy, Noem put forward the fact that "nearly $15M is annually deducted from TSOs' paychecks." Noem Determination at 2. Noem asserted without evidence that "[t]hese misplaced directives have solely benefited the American Federation of Government Employees (AFGE) at TSOs' expense, impeded Congressional intent of a flexible workforce, and failed to serve TSA's critical mission to protect the transportation system and keep Americans safe." *Id.* And the Noem Determination also cites a handful of executive orders and memoranda to attempt to bolster its reasoning. *Id.* at 2-3. This half-hearted justification is insufficient to constitute reasoned decision-making.

The apparent disapproval that TSOs voluntarily choose to pay dues is beside the point: payroll deduction is not new, and Noem failed to mention that no TSO is required to join the union or to pay dues or fees. And it cannot be seriously contended that how TSOs opt to spend their paychecks is relevant to whether the 2024 CBA "failed to serve TSA's critical mission to protect the transportation system."

Indeed, the assertion that collective bargaining impedes TSA's mission is a stark, unexplained departure from TSA's position that the 2024 CBA "maintains the flexibility necessary to carry out TSA's security mission." TSA, Press Release (May 16, 2024), Glymph Decl. Ex. 3. At no point does the Determination even attempt to explain why TSA was wrong in recognizing that "unions can play a constructive role," "can help develop solutions for some systemic issues,"

MOTION FOR PRELIMINARY INJUNCTION – 14

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

and "can help support our workforce and ensure consistency and accountability within our far flung operation." 2011 Determination at 4. And it fails to explain why TSA's recent recognition that "a cooperative working relationship between labor and management plays a vital role in the success of the bargaining unit employees" is no longer accurate. 2024 CBA Art. 1. These unexplained inconsistencies render the new determination arbitrary and capricious.

Likewise, the claim that permitting bargaining has "solely benefited [AFGE] at TSOs' expense," Noem Determination at 2, "runs counter to the evidence before the agency," *Village of Kake*, 795 F.3d at 966. Just last year, TSA itself highlighted the benefits of the 2024 CBA for TSOs, noting "enhanced shift trade options," "increased allowance for uniforms," and new forms of leave. May 16, 2024 Press Release. The agency previously acknowledged that collective bargaining improves TSA too, with Pekoske explaining that "[if] we didn't have this CBA, if we didn't have this pay package, I would submit to you, we probably wouldn't have a TSA in five or 10 years." Friedman, *TSA, AFGE See Milestone Contract as Pivot Point for Frontline Workers.*

Furthermore, at no point in the Determination did Noem discuss, as required by the APA, "alternatives that are within the ambit of the existing policy," *Regents*, 591 U.S. at 30 (cleaned up), to meet her purported goals. There was no discussion of whether DHS could meet its needs by exercising reserved management rights instead of rescinding the binding CBA. 2024 CBA Art. 4. And there was no recognition of the 2024 CBA's recognition of TSA's "critical work as an agile security agency," such that TSA can immediately implement any security-related or emergency-related policy, with any impact-and-implementation bargaining occurring afterwards. *Id.* Art. 13.D.

Noem's few citations to executive orders only demonstrate the arbitrariness of the reversal. For example, she points to a presidential memorandum instructing agency heads to disapprove

18 WEST MERCER ST., STE. 400     **BARNARD**
SEATTLE, WASHINGTON 98119     **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132     **LAVITT LLP**

1    certain CBAs agreed to within 30 days of the inauguration. Noem Determination at 2 (citing

2    January 31, 2025 Memorandum, 90 Fed. Reg. 9581). This is irrelevant to whether this CBA,

3    effective May 2024, can or should be rescinded. Likewise, Noem quotes an executive order to

4    claim the reversal will "maximize governmental efficiency and productivity," even though the

5    cited order was actually about "modernizing Federal technology and software." *Id.* at 3 (quoting

6    E.O. 14158, 90 Fed. Reg. 841 (Jan. 20, 2025)). When an agency "substantively expand[s]"

7    presidential instructions without explaining why, it acts arbitrarily and capriciously. *See Pacito v.*

8    *Trump*, __ F. Supp. 3d __, No. 25-cv-255, 2025 WL 655075, at *20-21 (W.D. Wash. Feb. 28,

9    2025).

10          And finally, "[w]hen an agency changes course, as DHS did here, it must be cognizant that

11   longstanding policies may have engendered serious reliance interests that must be taken into

12   account." *Regents*, 591 U.S. at 30 (internal quotations omitted). At no point did DHS acknowledge

13   that Plaintiffs have acted in reliance on the stability of a multiyear binding CBA or TSOs' reliance

14   on contractual protections. Plaintiffs have structured their operations to improve the lives and

15   working conditions of federal workers based on the availability of collective bargaining with

16   enforceable CBAs. Glymph Decl. ¶ 45. Its failure to address these reliance interests is yet another

17   reason why Defendants' actions must be set aside.

18          2.   *The Noem Determination Is Contrary to Law and in Excess of Authority*

19          The Noem Determination also violates the APA because the rescission of the 2024 CBA

20   and termination of outstanding grievances is contrary to law and in excess of authority. 5 U.S.C.

21   § 706(2)(A), (C). Having agreed to a binding CBA setting terms and conditions of employment

22   for a specified term, TSA was obligated to honor that commitment.

23          The APA requires more than compliance with the words of a statute. Agencies must also

24

MOTION FOR PRELIMINARY INJUNCTION – 16

1    comply with self-imposed limitations. *California v. ATF*, 718 F. Supp. 3d 1060, 1085 (N.D. Cal.

2    2024).[2]

3        Here, Defendants have refused to comply with limits on TSA's discretion to which the

4    agency bound itself in the 2024 CBA. "[T]he United States are as much bound by their contracts

5    as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong

6    and reproach that term implies, as it would be if the repudiator had been a State or a municipality

7    or a citizen." *Lynch v. United States*, 292 U.S. 571, 580 (1934) (internal quotations omitted). TSA

8    and AFGE agreed that the 2024 CBA would "remain in full force and effect" for seven years. 2024

9    CBA Art. 37.B.1. The 2024 CBA also sets out how it can be changed: "upon mutual written

10   consent of the parties," and at a fixed time when each party can reopen up to three articles. *Id.* Art.

11   13.A.3, 37.C.

12       TSA's statutory discretion is thus cabined by its decision to limit how terms and conditions

13   of employment could be changed during the CBA's duration. *Cf. Nat. Res. Def. Council v.

14   Haaland*, 102 F.4th 1045, 1074 (9th Cir. 2024) ("[O]nce the agency has entered into a legally

15   binding agreement, it has such discretion only to the extent permitted by the agreement's terms.").

16   Terminating an agreement contrary to an agency's self-imposed limitations is contrary to law and

17   barred by the APA. *King County v. Azar*, 320 F. Supp. 3d 1167, 1176-77 (W.D. Wash. 2018) (HHS

18   termination of award violated APA by not complying with regulatory bases for termination); *see

19   also Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, 328 F. Supp. 3d 1133, 1148-49

20   (E.D. Wash. 2018) (withholding of award arbitrary and capricious, rejecting agency justification

21

22

23   [2] Courts differ on whether "an agency's failure to comply with its own regulations is 'not in
     accordance with law'" or whether "when an agency fails to comply with its own regulations, it has
     acted arbitrarily and capriciously." *Id.* (internal quotations omitted). But regardless of where this
24   requirement fits in the APA framework, "the analysis is largely the same." *Id.*

MOTION FOR PRELIMINARY INJUNCTION – 17

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    that was contrary to regulation).

2        Defendants' failure to comply with the law is especially notable because TSA did not

3    request to renegotiate the CBA. Instead of seeking to make changes through the proper process,

4    TSA unilaterally rescinded the CBA despite having no authority to do so. As the Ninth Circuit has

5    recognized, "the government in its private contracting capacity cannot exercise sovereign power

6    for the purpose of altering, modifying, obstructing or violating the particular contracts into which

7    it had entered with private parties." *Kimberly Assocs. v. United States*, 261 F.3d 864, 870 (9th Cir.

8    2001) (internal quotations omitted). The Noem Determination's purported rescission of the CBA

9    and existing grievances is therefore contrary to law, exceeds Defendants' authority, and should be

10   set aside.

11       3.  *This Court Has Jurisdiction over Plaintiffs' APA Claims*

12       Plaintiffs challenge final agency action as required by 5 U.S.C. § 704: the Noem

13   Determination marked the "consummation of the agency's decision-making process" to rescind

14   the CBA and terminate AFGE's outstanding grievances, and "legal consequences" certainly flow

15   from the purported elimination of the CBA and all "rights and obligations" contained therein.

16   *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

17       While actions "committed to agency discretion by law" are excluded from APA review, 5

18   U.S.C. § 701(a)(2), that exception is read "quite narrowly" to honor the APA's "presumption of

19   judicial review." *Regents*, 591 U.S. at 16-17 (internal quotations omitted). Because courts have

20   jurisdiction over APA challenges to categorical policies that govern how agencies exercise their

21   discretion, and TSA's self-imposed limits in the CBA provide a meaningful standard for review,

22   Defendants' decision to cast aside their binding CBA falls outside this narrow exception.

23       In *Regents*, the Court rejected the government's claim that rescinding the Deferred Action

24

MOTION FOR PRELIMINARY INJUNCTION – 18

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  for Childhood Arrivals program was akin to an individual non-enforcement decision unreviewable

2  under the APA. *Id.* at 17-19. Instead, it emphasized that DACA required the creation of a "clear

3  and efficient process" to decide how this discretion would be used: instead of making individual

4  discretionary decisions, the agency "created a program for conferring affirmative immigration

5  relief." *Id.* That action, and in particular, its recission, was subject to APA review, even though the

6  individualized non-enforcement decisions were not. *Id.*

7      So too here. Courts have read Section 111(d) of the ATSA to give the TSA Administrator

8  great discretion over TSO employment and terminations, such that employee statutory claims

9  against individual terminations, in the absence of a CBA, are precluded. *See AFGE v. Stone*, 502

10  F.3d at 1035-36; *see also Webster v. Doe*, 486 U.S. 592, 601 (1988) (CIA "individual employee

11  discharges" nonreviewable). But rescinding a CBA that guarantees rights and cabins agency

12  discretion for a fixed duration is far afield from an individual termination. Courts have jurisdiction

13  to hear APA challenges to agency policies governing how they use their discretion, even if

14  challenges to underlying individual discretionary decisions would be barred. For example, in

15  *Velazquez-Hernandez v. ICE*, 500 F. Supp. 3d 1132, 1140-41 (S.D. Cal. 2020), plaintiffs

16  challenged a policy to conduct immigration arrests in and around federal courthouses. DHS

17  contended that arrest decisions are "committed to agency discretion by law" such that the court

18  lacked jurisdiction to hear plaintiffs' APA claims. *Id.* at 1140. But the court concluded it had

19  jurisdiction because plaintiffs challenged "a categorical policy to conduct immigration arrests in

20  particular places," not "discretionary decisions of when and how each Plaintiff will be arrested."

21  *Id.* at 1140-41 (internal quotations omitted).

22      Here, plaintiffs are challenging Defendants' rescission of a binding CBA in which TSA

23  fixed terms and conditions of employment for a set term. Agencies can limit their discretion to act

24

MOTION FOR PRELIMINARY INJUNCTION – 19

via contract. *See NRDC*, 102 F.4th at 1074 (contract limits agency discretion "to the extent permitted by the agreement's terms"). Once TSA establishes a bargaining process to set employment conditions and uses that process to form a binding CBA, unilaterally rescinding the CBA is distinguishable from individual discretionary employment decisions made absent any agreement. *Regents* and *Velazquez-Hernandez* make clear that challenges to broader agency policies governing individual discretionary actions are still subject to APA review.

Additionally, by agreeing to the 2024 CBA, TSA has placed sufficient restrictions on its discretion to permit APA review. The "committed to agency discretion" exception applies when courts are given "no meaningful standard against which to judge the agency's exercise of discretion." *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015). This meaningful standard can be found not only in the authorizing statute, but in agency practice. *Id.* at 1070-72; *see also King County*, 320 F. Supp. 3d at 1175-76 (HHS regulations gave standard for APA review of termination of funding grants).

*ASSE Int'l* is instructive. There, Congress empowered the State Department to create educational exchange programs, and the agency used that discretionary authority to create the Exchange Visitor Program. 803 F.3d at 1064-65. When a sponsor of an EVP program brought APA claims against the State Department after being sanctioned, the district court concluded that agency decisions related to the EVP were "committed to agency discretion by law" and unreviewable under the APA. *Id.* at 1067-68. The Ninth Circuit reversed. It explained that "[i]f all we were asked to review was the decision to create the EVP, there would be 'no law to apply.'" *Id.* at 1069. But once the program was created, the APA permitted review to see whether the agency acted within the bounds that the agency itself established: "Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations or

MOTION FOR PRELIMINARY INJUNCTION – 20

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

agency practice provide a 'meaningful standard by which this court may review its exercise of discretion.'" *Id.* at 1069 (quoting *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003)); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (jurisdiction for APA review when agency violates "regulatory or other legal mandates or restrictions") (internal quotation omitted).

Here, Plaintiffs are not seeking review of the "decision to create," *ASSE Int'l*, 803 F.3d at 1069, the collective bargaining scheme. Instead, they are seeking review of whether, once Defendants cabined their discretion to set terms and conditions of employment by agreeing to the 2024 CBA, they may violate the rules to which they bound themselves. Like the regulations issued in *ASSE Int'l*, the 2024 CBA has "the force of law, and there are real consequences for failing to abide by [it]." *Id.* at 1070-71; *see* 2024 CBA Arts. 29-30. There is therefore law for this court to apply, and review under the APA is therefore available.

### D. Plaintiffs Have Established a Likelihood of Success on Their Fifth Amendment Claim

Defendants' rescission of the 2024 CBA and termination of outstanding grievances also violate Plaintiffs' Fifth Amendment rights and should be enjoined. The Due Process Clause protects against government deprivation of constitutionally-protected property interests. It restricts the "exercise of sovereign power which would impair obligations under government contracts." *Madera Irrigation Dist. v. Hancock*, 985 F.2d 1397, 1401 (9th Cir. 1993). And it is also violated when plaintiffs are deprived of protected property interests with a "lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (internal quotations omitted). As described below, Defendants have violated the Fifth Amendment twice over, depriving Plaintiffs of property rights by unlawfully abrogating Plaintiffs' CBA with TSA and by failing to provide *any* process when doing so.

MOTION FOR PRELIMINARY INJUNCTION – 21

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

*1.* As required for both of Plaintiffs' Fifth Amendment claims to succeed, the 2024 CBA created constitutionally-protected property interests for Plaintiffs. As a general rule, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Contracts can create constitutionally protected property interests. *San Bernardino Physicians Servs. Med. Grp., Inc. v. Cnty. of San Bernardino*, 825 F.2d 1404, 1408-09 (9th Cir. 1987). And the Supreme Court has recognized that "rights against the United States arising out of a contract with it are protected by the Fifth Amendment." *Lynch*, 292 U.S. at 579; *see also Madera Irrigation Dist.*, 985 F.2d at 1401 ("Rights against the United States arising out of a contract are property rights protected from deprivation or impairment by the Fifth Amendment.").

Plaintiffs have a property interest in the rights created by the 2024 CBA because they have "a legitimate claim of entitlement to" them, "not merely a unilateral expectation." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 428 (9th Cir. 1990). By placing binding limits on TSA, the 2024 CBA creates a "significant substantive restriction on [TSA's] . . . decision making," *T.T. v. Bellevue Sch. Dist.*, 376 F. App'x 769, 771 (9th Cir. 2010) (quoting *Stiesberg v. State of Cal.*, 80 F.3d 353, 356 (9th Cir. 1996)), that gives Plaintiffs and their members a valid claim of entitlement to their contractual rights, *Phillips v. Marion Cnty. Sheriff's Office*, 494 F. App'x 797, 799 (9th Cir. 2012) (CBA creates property interest in arbitration award) For example, the CBA provides that "Disciplinary and/or Adverse Actions may be taken for just cause and only for reasons that will promote the efficiency of the service." 2024 CBA Art. 27.C.3. This grants TSOs a property right in their continued employment at TSA. The 2024 CBA also grants rights to AFGE and its affiliates so that they have the capacity to represent TSOs and restricts TSA's discretion. For example, the 2024 CBA grants TSOs the right to pay dues through payroll deduction and obligates TSA to

MOTION FOR PRELIMINARY INJUNCTION – 22

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

deduct and "timely remit" those dues to AFGE. 2024 CBA Art. 7.B.4. Likewise, the CBA guarantees the union a "pre-authorized allocation of official time" that union officials can use to represent their members. 2024 CBA Art. 6.D. These contractual entitlements permit Plaintiffs to perform their core services for members. Glymph Decl. ¶¶ 22-27-, 41, 45.

Terminating outstanding grievances also deprives Plaintiffs of protected property rights. TSOs and their union are entitled to file grievances challenging discipline, adverse action, or other CBA or legal violations, and AFGE is entitled to invoke binding arbitration, 2024 CBA Arts. 28-29. Even after CBAs expire, an arbitration provision can survive expiration of a contract "in order to enforce duties arising under the contract." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) (private-sector CBA). So even if TSA could unilaterally rescind the CBA—which it cannot—Plaintiffs and their members retain property rights in the processing of outstanding grievances through arbitration and enforcement. *See Phillips* 494 F. App'x at 799 (CBA provided property interest in arbitrator's reinstatement award).

*2.* By rescinding the 2024 CBA and extinguishing these property rights, Defendants have violated the Fifth Amendment. Proving a Due Process violation for abrogation of a government contract requires "1) cognizable property rights arising out of a contract with the government; and 2) that the government has abrogated those contractual rights." *Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1402 (E.D. Cal. 1994). As discussed above, Plaintiffs have protected property interests from their CBA. And it cannot be contested that Defendants, by purporting to rescind the CBA in its entirety, have abrogated the 2024 CBA and substantially impaired Plaintiffs' rights. *See id.* at 1405 (contractual obligations abrogated by law that "extinguishes them").

MOTION FOR PRELIMINARY INJUNCTION – 23

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

The 2024 CBA clearly forecloses TSA's ability to act contrary to its terms. It provides that its provisions "remain in full force and effect" during its term and outlines how it can be renegotiated. Art. 37. The parties knew how to draft language that retained TSA's discretion during its duration, *see* Art. 24.B ("Management retains the right . . . ."), and such language is nowhere to be found in granting the property rights described above. And even when considering *Congress*'s ability to abrogate contracts, the typical posture for this type of claim, the Ninth Circuit has cautioned that "too liberal an interpretation of the residual sovereign power of the government to override its contractual commitments would eviscerate the government's power to bind itself to contracts." *Madera Irrigation Dist.*, 985 F.2d at 1401. As such, "sovereign authority cannot be exercised to invalidate, release or extinguish" government contracts. *Westlands Water Dist.*, 850 F. Supp. at 1402. Once the enforceable CBA was formed, its terms became binding for its duration.

*3.* Independently, by failing to give Plaintiffs notice and an opportunity to be heard regarding their actions, Defendants have deprived Plaintiffs and their members of property without due process. Due process requires giving reasonable notice "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of the Treasury*, 686 F.3d 965, 985 (9th Cir. 2012). And courts have "long interpreted" the Due Process Clause "to require that notice generally be given *before* the government may seize property." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008).

What process is due is determined by the *Mathews v. Eldridge* factors, which "include the competing interests at stake, the risk of erroneous deprivation under existing procedures, and the value of substitute procedures," *Patel v. City of Los Angeles*, 72 F.4th 1103, 1105 (9th Cir. 2023). Applying these factors here shows that Defendants have fallen short of constitutional minimums.

MOTION FOR PRELIMINARY INJUNCTION – 24

Plaintiffs' interests in their members' employment protections and in their contractual rights that permit effective representation are substantial. The government interests pale in comparison, considering the discretion that Defendants are already granted under the CBA to further TSA's mission, *see, e.g.*, 2024 CBA Art. 4 (Management Rights), and that the government has "no legitimate interest" in enforcing an unlawful order, *Pacito*, 2025 WL 655075, at *22. The current procedure—or lack thereof, wherein AFGE was given no notice or opportunity to be heard prior to the CBA's recission—has a high risk of erroneous deprivation, *see* Part I.B. And even if substitute procedures were permitted, Defendants have provided none and have eliminated the very procedures used to enforce CBA provisions.

## II.    Absent Relief, Plaintiffs and Their Members Will Suffer Irreparable Injury

AFGE, Local 1121, and their members will be irreparably harmed in several ways if Defendants are not enjoined. Rescinding the CBA has taken away key rights and protections for Plaintiffs' members, prevented Plaintiffs from providing core services to their members, jeopardized their funding, damaged their bargaining power, and impaired their constitutional rights.

First, AFGE's and Local 1121's members have been and are being irreparably harmed by the rescission of the collective bargaining agreement and termination of outstanding grievances, which strip them of the benefits of union representation. *See* Glymph Decl. ¶¶ 35-40; Lewis Decl. ¶¶ 15, 20. This harm is irreparable because "[t]he value of the right to enjoy the benefits of union representation is immeasurable in dollar terms once it is delayed or lost." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011).

Second, organizations are irreparably harmed when "they will suffer a significant change in their programs" from agency action. *E. Bay Sanctuary Covenant*, 993 F.3d at 677. Here, AFGE

MOTION FOR PRELIMINARY INJUNCTION – 25

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

exists to improve the employment conditions of its members. Glymph Decl. ¶ 5. A critical way that AFGE works to improve conditions of employment for its members and bargaining unit employees is by negotiating on their behalf with agencies. *Id.* Defendants purport to end the primary means by which Plaintiffs improve federal employees' working conditions at TSA: collective bargaining and enforcing CBA protections through grievance and arbitration. This has and will cause a significant change in their programs. *See* Glymph Decl. ¶¶ 35-40; Lewis Decl. ¶ 15. Even if CBA rights are eventually restored, AFGE and Local 1121 will still have faced months or years of being blocked from providing their core services.

Nor are the injuries Plaintiffs are suffering the type that can be remedied at litigation's end. For example, "[t]he funding on which [Plaintiffs] critically depend is also jeopardized by the" 2024 CBA rescission, due to the elimination of payroll deduction for dues and increased difficulty in recruiting members after the CBA has been rescinded. *E. Bay Sanctuary Covenant*, 993 F.3d at 663-64, 677-78. Since these lost funds are not recoverable in this action, this injury is irreparable. *Id.* at 677 (economic harm irreparable in APA case). Furthermore, government impediments to payments with "no guarantee of eventual recovery" risk irreparable harm. *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 765 (2021) (per curiam).

Similarly, AFGE and Local 1121 have lost bargaining power, which cannot be restored after the fact. "Whether or not the employer bargains with a union chosen by his employees is normally decisive of its ability to secure and retain its members." *Small*, 661 F.3d at 1193 (internal quotation omitted); *see also* Glymph Decl. ¶¶ 39, 43. Preventing a union from representing its members serves to "discredit the [union] in the eyes of the employees," and diminished support causes irreparable harm because lost bargaining power cannot be restored by any final relief. *Id.*; *see also Hoffman v. Parksite Grp.*, 596 F. Supp. 2d 416, 423 (D. Conn. 2009) ("ongoing failure to

MOTION FOR PRELIMINARY INJUNCTION – 26

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1  recognize the union . . . could significantly damage employee confidence in the union and chill

2  any effort to exercise their collective bargaining rights in the future").

3        Finally, absent relief, Plaintiffs and their members also face irreparable harm because "the

4  deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v.*

5  *Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (internal quotation omitted).

6  **III.    The Balance of the Equities and Public Policy Favors Preliminary Injunctive Relief**

7        When the government opposes injunctive relief, "the last two factors (equities and public

8  interest) merge." *E. Bay Sanctuary Covenant*, 993 F.3d at 668.

9        The government "cannot suffer harm from an injunction that merely ends an unlawful

10  practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). And "there is generally no

11  public interest in the perpetuation of unlawful agency action." *Washington v. DeVos*, 481 F. Supp.

12  3d 1184, 1197 (W.D. Wash. 2020) (internal quotations omitted). The public interest instead lies in

13  compliance with commitments to employees and "prevent[ing] the violation of a party's

14  constitutional rights." *Melandres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  Accordingly, in

15  light of the unlawful nature of Defendants' actions, restoring the status quo for the pendency of

16  this litigation serves the public interest.

17                              **CONCLUSION**

18        For the reasons stated above, Plaintiffs ask this Court to enter a preliminary injunction

19  enjoining the Noem Determination's rescission of the 2024 CBA and its termination of pending

20  grievances.

21                              Respectfully submitted,

22  Date: April 4, 2025

23                              */s/Robert H. Lavitt*
                               Robert H. Lavitt, WSBA No. 27758
                               Barnard Iglitzin & Lavitt LLP
24                              18 W Mercer St, Suite 400

MOTION FOR PRELIMINARY INJUNCTION – 27

1    Seattle, WA 98119
     (206) 257-6004
2    lavitt@workerlaw.com

3    *I certify that this memorandum contains 8400 words,
     in compliance with the Local Civil Rules.*

4
     /s/ Abigail V. Carter
5     Abigail V. Carter*
     /s/ J. Alexander Rowell
6    J. Alexander Rowell*
     Bredhoff & Kaiser, P.L.L.C.
7    805 Fifteenth Street, N.W. Suite 1000
     Washington, D.C. 20005
8    (202) 842-2600
     (202) 842-1888 (fax)
9    acarter@bredhoff.com
     arowell@bredhoff.com
10

11   /s/ Norman L. Eisen
     Norman L. Eisen*
12   /s/ Pooja Chaudhuri
     Pooja Chaudhuri*
13   State Democracy Defenders Fund
     600 Pennsylvania Avenue SE, Suite 15180
14   Washington, DC 20003
     (202) 594-9958
15   Norman@statedemocracydefenders.org
     pooja@ statedemocracydefenders.org
16
     *Admitted pro hac vice
17
     Counsel for Plaintiffs
18
     /s/ Rushab B. Sanghvi
19   Rushab B. Sanghvi*
     /s/ Andres M. Grajales
20   Andres M. Grajales*
     American Federation Of
21   Government Employees, AFL-CIO
     80 F Street, NW
22   Washington, DC 20001
     (202) 639-6426
23   SanghR@afge.org
     Grajaa@afge.org
24

MOTION FOR PRELIMINARY INJUNCTION – 28

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

*Admitted pro hac vice*

*Counsel for Plaintiff American Federation of Government Employees (AFGE)*

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**