1
2
3
4
5
6
7    **UNITED STATES DISTRICT COURT**
     **WESTERN DISTRICT OF WASHINGTON**
     **AT SEATTLE**
8

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; ADAM STAHL, in his official capacity as the Senior Official Performing the Duties of the Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION, <br><br> Defendants. | CASE NO. 2:25-cv-451-MJP <br><br> DECLARATION OF SCOTT LEWIS |

DECLARATION OF SCOTT LEWIS – 1
CASE NO: 2:25-cv-451-MJP

## DECLARATION OF SCOTT LEWIS

I, Scott Lewis, declare as follows:

1.      I am a Transportation Security Officer ("TSO") at Spokane International Airport. I have served in this role since September 2002.

2.      Additionally, I am the President of Local 1121 of the American Federation of Government Employees, AFL-CIO ("Local 1121"), which represents employees of the Transportation Security Administration ("TSA") in Washington and Alaska. I have been a member of AFGE since the beginning of limited collective bargaining at TSA in 2011.

3.      Local 1121's current address is located in Kent, WA. The Local was chartered in Seattle, WA.

4.      As of the latest information available to me, dated August 2024, Local 1121 represents 1445 TSOs at airports in Washington and Alaska. This includes 848 TSOs at Seattle-Tacoma International Airport.

5.      The core mission of Local 1121, and my primary responsibility as its President, is to represent and advocate on behalf of the TSOs working at Washington and Alaska airports. In particular, Local 1121 represents TSOs in grievances to address violations of the May 2024 Collective Bargaining Agreement between AFGE and TSA (the "2024 CBA") and of TSA policy.

6.      Local 1121's activities are sustained by membership dues that are voluntarily contributed by TSOs and official time as outlined in the 2024 CBA. Local 1121 has 494 dues-paying members, 442 of whom contribute their dues via a payroll deduction system.

7.      Under my direction, Local 1121 has filed multiple successful grievances.

DECLARATION OF SCOTT LEWIS – 2
CASE NO: 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

8. On March 7, 2025, Local 1121 represented TSOs in 13 unresolved grievance procedures. These grievances arose from TSA management's violations of the CBA or TSA policy, which included violations of the following workplace regulations: shift duration limits; the grievance process; shift bid regulations; formal discussion guidelines; facilities standards; special assignment selections; the allocation of official time; the timely issuance of pay information, letters of leave, and requests for information; and the disciplinary suspension process.

9. In another recent facilities violation, the breakroom assigned to TSOs at Seattle-Tacoma International Airport has no safe running water at time of writing. Local 1121 has obtained photographic evidence of the unsafe conditions. Local 1121 is prepared to file a grievance on this matter but is unable to do so because TSA has purported to rescind the 2024 CBA and refuses to process any grievances under the CBA.

10. The lack of an available grievance procedure is making it more difficult for TSOs to raise workplace issues. I am aware of an incident on March 14, 2025, in which a TSO in Pasco, Washington was instructed by their manager not to report any complaints to anyone outside of their duty station, including their chain of command as instructed by TSA policy.

11. In my experience, TSOs are discouraged from reporting managers' abusive behavior and other workplace issues out of fear of retaliation. The availability of union representation and the grievance procedure helps ensure that TSOs feel that they are able to raise concerns about workplace problems.

12. The CBA—particularly its grievance procedure—is essential to performing Local 1121's core function of advocating for TSOs when faced with violations of the CBA and TSA policy. While the TSA has a mechanism for reporting abusive behavior or TSA policy violations

DECLARATION OF SCOTT LEWIS – 3
CASE NO: 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

by managers via a TSO's chain of command, in my experience, this mechanism is unable to effectively provide relief to affected TSOs or deter repeat violations. This leaves the CBA's grievance procedure as the only meaningful way to hold TSA managers accountable for misconduct and abusive behavior towards TSOs.

13. Local 1121's structure reflects this reliance on the CBA. Of the Local's five officers, four of us are dedicated almost entirely to navigating the grievance process on behalf of TSOs. This amount of administrative labor is necessary to properly advocate for TSOs in Washington and Alaska given the overwhelming volume and scope of TSA management's violations in this region. The prevalence of many of the above-mentioned violations by TSA management, including shift bid violations and formal discussion violations, further inhibit TSOs' ability to advocate for their own workplace rights without the assistance of Local 1121 and its officers.

14. I am aware that on March 7, 2025, TSO's received a notice from the TSA Office of the Administrator informing us of a memorandum by the Secretary of Homeland Security, Kristi Noem ("Noem Determination"). The Noem Determination claimed to rescind the 2024 CBA and terminate all pending grievances filed according to the CBA's grievance procedure.

15. If enforced, the Noem Determination would make the core mission of Local 1121—representing and advocating for TSOs workplace rights—impossible. By eliminating the CBA's grievance procedure, the Noem Determination would remove the only effective method to obtain relief for affected TSOs and deter repeat violations by TSA managers. Without the ability to pursue grievances via the CBA, Local 1121 cannot effectively advocate for its members or hold their managers accountable to the TSA's own protocols.

16. I am also aware that the Noem Determination claimed to suspend the collection of union dues via the payroll deduction system.

17. Following the publication of the Noem Determination on March 7, TSA management in Washington and Alaska have ceased collecting the voluntary dues of Local 1121 members through payroll deduction. As approximately 90 percent of Local 1121's membership contributes their dues via the payroll deduction system, this resulted in an equivalent loss of funding for Local 1121. While Local 1121 does offer an alternative dues-payment method, many TSOs are afraid of maintaining their membership because they fear retaliation by TSA management if they maintain any association with the Local.

18. I am also aware that the Noem Determination claimed to revoke the rights granted to union officers specified in the CBA.

19. Following the publication of the Noem Determination on March 7, TSA management in Washington and Alaska have revoked the rights granted to union officers specified in the CBA. Several of these conditions—official time, dedicated work space and bulletin space, a laptop computer, remote meeting privilege, and one parking space at each airport where Local 1121 represents TSOs—were essential to officers' effective participation in TSOs' grievance processes. For example, official time and work space for representational activities ensures that union officials are able to meet with TSOs in an effective manner. The loss of these conditions severely impairs Local 1121's ability to represent TSOs and fulfill its core mission.

20. I am also aware that the Noem Determination claimed to revoke the workplace rights granted to all TSOs specified in the CBA. These workplace rights include the rights to bargain over certain local working conditions, have a union representative present at disciplinary

DECLARATION OF SCOTT LEWIS – 5
CASE NO: 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

meetings, use sick leave as outlined in the CBA, receive advance notice of and union representation in formal discussions, and participate in a fair shift bid process. The loss of these workplace rights harms not only our members, but all TSOs that Local 1121 represents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 27, 2025 in Spokane, WA.

_____
Scott Lewis

DECLARATION OF SCOTT LEWIS – 6
CASE NO: 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
**BARNARD IGLITZIN & LAVITT LLP**