Judge Pechman

1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO;
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO
TSA LOCAL 1121; COMMUNICATIONS
WORKERS OF AMERICA, AFL-CIO; and
ASSOCIATION OF FLIGHT ATTENDANTS-
CWA, AFL-CIO,

Plaintiffs,

v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security; HA NGUYEN
McNEILL, in her official capacity as Acting
Administrator of the Transportation Security
Administration[1]; and TRANSPORTATION
SECURITY ADMINISTRATION,

Defendants.

CASE NO.  C25-0451MJP

**DEFENDANTS' MEMORANDUM
IN OPPOSITION TO AFGE'S
MOTION FOR A PRELIMINARY
INJUNCTION**

(ORAL ARGUMENT REQUESTED)

Defendants Kristi Noem and Ha Nguyen McNeill, in their official capacities, and the

Transportation Security Administration ("TSA"), hereby submit this memorandum of law in

---

[1]  Ha Nguyen McNeill assumed office as the Deputy Administrator of the Transportation Security Administration on
April 21, 2025, and is the Acting Administrator of the Transportation Security Administration.  She is hereby substituted
as a party-defendant for Adam Stahl, Senior Official Performing the Duties of the Administrator of the Transportation
Security Administration, pursuant to Rule 25(d), Fed. R. Civ. P.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 1
(Case No. C25-0451MJP)

opposition to the motion for a preliminary injunction filed by the American Federation of

Government Employees, AFL-CIO, and the American Federation of Government Employees, AFL-

CIO TSA Local 1121 (hereafter collectively referred to as "AFGE").

## INTRODUCTION

Although styled as an action to set aside allegedly "arbitrary and capricious" agency action,

Plaintiffs are seeking in substance to compel specific performance of a collective bargaining

agreement ("CBA") between TSA and AFGE that was rescinded by the Secretary of Homeland

Security on February 27, 2025.  Because Plaintiffs' action is, at its core, a labor relations dispute

between the Executive Branch and a union representing federal employees that must be channeled

through the exclusive remedial regime established by the Federal Service Labor–Management

Relations Statute ("FSLMRS"), and because, in any event, Plaintiffs' claims are not cognizable

under the APA, this Court lacks subject-matter jurisdiction to grant them the requested relief.

Jurisdictional barriers aside, AFGE's motion for a preliminary injunction should be denied

because it fails to demonstrate a sufficient likelihood of success on the merits of irreparable harm.

Further, the balance of equities and the public interest weigh against a preliminary injunction.

## STATUTORY FRAMEWORK

1.      TSA was created by the Aviation and Transportation Security Act of 2001 ("ATSA"),

Pub. L. No. 107-71, 115 Stat. 597.  Congress intended to provide the agency head with very broad

flexibility to manage the workforce of security screening personnel and "render[] inapplicable

general federal statutes that otherwise would apply" to employment of screeners.  *See, e.g., Conyers*

*v. MSPB*, 388 F.3d 1380, 1382-83 (Fed. Cir. 2004); H.R. Conf. Rep. No. 107-296, at 64 (2001)

("[I]n order to ensure that Federal screeners are able to provide the best security possible, the

Secretary must be given wide latitude to determine the terms of employment of screeners.").

Accordingly, ATSA § 111(d) provides "notwithstanding any other provision of law, the [TSA

Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and

conditions of employment of Federal service" for the screening workforce.  115 Stat. at 620

(49 U.S.C. § 44935 note).  As the Ninth Circuit has recognized, this provision affords the TSA

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 2
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Administrator "significant discretion over the employment of security screeners." *AFGE Local 1 v. Stone*, 502 F.3d 1027, 1030 (9th Cir. 2007). That discretion encompasses both individualized decisions about particular screeners and policy decisions for the screening workforce as a whole. *See, e.g., AFGE TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 85 (D.D.C. 2006) ("[T]he plain text of Section 111(d) clearly signals Congress's intention to grant the [TSA Administrator] authority to design a personnel management system for airport security screeners[.]"); *Springs v. Stone*, 362 F. Supp. 2d 686, 699 (E.D. Va. 2005) (rejecting argument that ATSA § 111(d) does not empower the TSA Administrator "to design and implement a [reduction in force]" policy for screening personnel); *Connors v. United States*, 863 F.3d 158, 161-162 (2d Cir. 2017).

When TSA was incorporated into the Department of Homeland Security, *see* 6 U.S.C. § 203(2), all of the statutory authority bestowed on the TSA Administrator, including the discretion granted by ATSA § 111(d), was "vested in" the Secretary under 6 U.S.C. § 112(a)(3). Accordingly, the Secretary is authorized to make determinations under ATSA § 111(d).

2.    In the FSLMRS, Congress established a dedicated mechanism for resolving federal labor-management disputes. The FSLMRS "provides several alternative mechanisms to challenge management actions." *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 637 (D.C. Cir. 2013). For example, "any person" may file a charge of an "unfair labor practice" with the Federal Labor Relations Authority (FLRA). *See* 5 U.S.C. § 7118(a)(1). A final decision of the FLRA is reviewable only in the appropriate court of appeals. 5 U.S.C. § 7123(a).

## STATEMENT OF FACTS

As an exercise of discretion under ATSA § 111(d), the former TSA Administrator issued a Determination in December 2022 allowing TSA screeners to engage in collective bargaining and recognized AFGE as the exclusive representative for the workforce. Pursuant to that determination, AFGE and TSA entered into a CBA in May 2024. Dkt. # 1, ¶¶ 2, 50.

Following the transition of presidential administrations, on February 27, 2025, the newly appointed Secretary, exercising her authority under, *inter alia*, ATSA § 111(d), issued a new Determination (the "Noem Determination") superseding and replacing the 2022 Determination.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 3
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Dkt. # 19-1, pp. 224-227.  The Noem Determination stated that TSA screeners "shall not, as a term or condition of their employment, be entitled to engage in collective bargaining or be represented for the purpose of engaging in such bargaining by any representative or organization." *Id.* at p. 224.  It further stated that screeners "shall not … be exclusively represented for purposes other than collective bargaining by any representative or organization."  Accordingly, the Noem Determination rescinded the CBA.  *Id.* at ¶¶ 70-71.

**STANDARDS OF REVIEW**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

A preliminary injunction can take two forms.  The first, a prohibitory injunction, prohibits a party from acting and "preserve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988).  To obtain a prohibitory injunction the movant must establish (1) he or she is likely to succeed on the merits of his or her claim, (2) he or she is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his or her favor, and (4) a preliminary injunction is in the public interest. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).  When the nonmovant is the government, the last two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Mandatory injunctions, the type sought by AFGE here, "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (internal quotations omitted).  Because AFGE seeks mandatory relief, *i.e.*, an order compelling specific performance of the CBA, AFGE's proposed injunction seeks to alter the status quo and is therefore subject to this higher standard.[2]

---

2  While the Ninth Circuit has held that its alternative "sliding scale" test for preliminary injunctions remains viable after *Winter*, that alternative test does not apply in the case of a request for a mandatory preliminary injunction because of the heightened showing required.  *Doe v. Snyder*, 28 F.4th 103, 111 *n*.4 (9th Cir. 2022).

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 4
(Case No. C25-0451MJP)

**ARGUMENT**

I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS
      ACTION

      *i. Exclusive original Jurisdiction rests with the Federal Labor Relations*
        *Authority*

The Court lacks subject-matter jurisdiction over this lawsuit because Congress has implicitly precluded district courts from reviewing the agency action at issue – a determination concerning collective bargaining and representation rights for TSA's screening workforce – "by specifying a different method to resolve" a dispute concerning that type of action. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023).  As explained below, Congress has channeled the dispute Plaintiffs raise in this case to the Federal Labor Relations Authority ("FLRA").

The FSLMRS, Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (1978), *codified at* 5 U.S.C. §§ 7101-7135, "establishes a scheme of administrative and judicial review" for labor relations disputes between the Executive Branch and unions representing federal employees.  *AFGE v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019).  That scheme is the exclusive avenue for raising and adjudicating legal challenges within its scope.  *Id*. at 755; *Columbia Power Trades Council v. U.S. Dep't of Energy*, 671 F.2d 325, 327 (9th Cir. 1982) ("[T]he [FLRA] possesses exclusive jurisdiction over federal labor relations matters.");  *Karahalios v. Def. Language Inst./Foreign Language Ctr. Presidio of Monterey*, 821 F.2d 1389, 1393 (9th Cir. 1987) ("grievances of federal employees" must be "channel[ed]" to the FLRA, and the district court lacks jurisdiction to consider them), *aff'd*, 489 U.S. 527 (1989).  Thus, if a dispute is of the type Congress intended to fall within the ambit of FSLMRS's special scheme, an aggrieved union is confined to that scheme and cannot proceed instead, or in parallel, with an action in district court.  *Trump*, 929 F.3d at 754; *see generally Axon*, 598 U.S. at 185.  A district court presented with such a dispute lacks subject-matter jurisdiction and must dismiss the case.  *Trump*, 929 F.3d at 754; *Axon*, 598 U.S. at 185; *Anouro v. McDonald*, 2016 WL 7115999 (D. Nev. Dec. 5, 2016).

Under the FSLMRS, the FLRA is the exclusive entity charged with reviewing covered disputes in the first instance.  *See, e.g., Trump*, 929 F.3d at 752; *NTEU v. Trump*, 2025 WL 561080,

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 5
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

at *4 (D.D.C. Feb. 20, 2025). Judicial review of the FLRA's decisions is thereafter available in the courts of appeals. *Id.*; 5 U.S.C. § 7123(a). When hearing a petition for review of an FLRA decision, the courts of appeals may review broad statutory and constitutional claims even if the FLRA lacked the authority to consider such claims in its proceedings. *Trump*, 929 F.3d at 759.

Here, Plaintiffs challenge the Noem Determination that TSA's screening workforce is not entitled to engage in collective bargaining or be exclusively represented by any organization for any purpose. That challenge is plainly the type of dispute Congress channeled to the FLRA. Indeed, the history of AFGE's past efforts to challenge a nearly identical TSA Determination issued in 2003 confirms the FLRA, and not a district court, is the proper forum in which to dispute TSA decisions regarding the availability of collective bargaining and representation rights for the agency's screening workforce.

Using the exact same language as the Noem Determination, the 2003 Determination stated that TSA screeners were not "entitled to engage in collective bargaining or be represented for the purpose of engaging in such bargaining by any representative or organization." AFGE sought to challenge that determination in both FLRA proceedings and a district court lawsuit. In *TSA & AFGE*, 59 F.L.R.A. 423 (2003), the union asserted, among other claims, that TSA lacked statutory authority to make a discretionary determination prohibiting collective bargaining rights for the screening workforce. The FLRA granted review of the union's claims and ruled on the merits of the statutory claim, holding the 2003 Determination was a lawful exercise of TSA's authority, as Congress empowered the agency with "unfettered discretion" to determine the terms and conditions of employment for screener personnel, including with regard to collective bargaining rights. *Id.* at 430.

By contrast, AFGE's parallel effort to challenge the 2003 Determination in a district court lawsuit was barred on jurisdictional grounds. The union filed a complaint seeking an injunction and declaratory judgment on the grounds that TSA "did not have statutory authority" to foreclose bargaining and doing so was "arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706." *AFGE v. Loy*, 281 F. Supp. 2d 59, 61-62 (D.D.C.

2003).  That court held "the Union's arguments concerning the statutory issues have been, and should be, made in the first instance to the FLRA and then, if needed to the Courts of Appeals [in a petition for review of the FLRA's decision]."  *Id.* at 62.  When AFGE appealed the district court's conclusion that it lacked jurisdiction, the D.C. Circuit affirmed, holding the FLRA "had exclusive authority to render judgment" as an initial matter on the union's statutory challenges to the Determination, with judicial review "only in a court of appeals pursuant to [5 U.S.C.] § 7123." *AFGE v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004); *see also id.* at 935.

These mutually reinforcing decisions by the FLRA and the D.C. Circuit firmly establish that the FLRA - and not a district court - was the proper forum for AFGE to initiate a challenge to the 2003 Determination.  The same holds true in this lawsuit: Plaintiffs must bring their challenge to the Noem Determination at issue in this case to the FLRA in the first instance, as Congress has channeled review of this type of dispute to the FLRA and thereby deprived district courts of subject-matter jurisdiction.

Here, Plaintiffs claim, among other things, that the Noem Determination "is arbitrary and capricious" and "contrary to law" in violation of the APA.  Dkt. # 1, ¶ 11; *see also id.* ¶¶ 102–111; 112–117.  Those are the exact same claims AFGE brought against the 2003 Determination.  *See Loy*, 281 F. Supp. 2d at 62.  As was the result then, this Court should find it lacks subject-matter jurisdiction over those claims, as Congress has channeled review to the FLRA.  *Loy*, 367 F.3d at 936; *see also AFGE v. Ezell*, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (explaining that APA claims attacking agency action "are the type of challenges Congress intended for review within the [FSLMRS] scheme.").

Plaintiffs may argue their other claims - a First Amendment retaliation claim and a Fifth Amendment due process claim - are not of the type Congress intended to channel to the FLRA.  But the FSLMRS review scheme is not implemented piecemeal on a claim-by-claim basis.  *See Trump*, 929 F.3d at 758 (explaining "[w]e need not map the precise contours of the FLRA's authority" with regard to every claim asserted to determine that a case must be channeled to the FLRA); *see also Sec'y of Air Force*, 716 F.3d at 637 (rejecting the union's argument that the district court has

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 7
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

jurisdiction because "it can more efficiently adjudicate" the union's claims that the federal policy at issue is "contrary to statute on a nationwide, rather than local-by-local, basis"). Instead, if the subject matter of an agency decision - like the Noem Determination at issue here - is within the FLRA's purview, all legal claims challenging that decision must be brought before the FLRA in the first instance. *Cf., NTEU*, 2025 WL 561080, at *5 (explaining claims "brought by a union representing federal employees against their federal employers" are "federal labor-management relations claims" and thus "of the type generally covered by the FSLMRS scheme" such that they must be brought to the FLRA). Accordingly, the exact nature of Plaintiff's additional legal theories does not matter; their overall challenge to the Determination must be brought together in the FLRA. See *Loy*, 367 F.3d at 936-37 ("What matters is whether" the gravamen of the complaint is "'arguably' within the FLRA's authority to decide."); *see also id*. at 936 ("Parties may not bifurcate their case, pursuing only statutory claims before the FLRA while litigating closely related constitutional claims in the district court."); *AFGE v. OPM*, 2025 WL 900057, at *4 (N.D. Cal. Mar. 24, 2025) (explaining "collective-bargaining related" claims "could carry [other claims] with them" to the FLRA and beyond to a court of appeals).

Importantly, it also does not matter if the FLRA actually has the ability to act on Plaintiffs' claims. See *Trump*, 929 F.3d at 756 (*discussing AFGE v. Sec'y of the Air Force*, 761 F.3d 633 (D.C. Cir. 2013), and explaining unions were required to raise their challenges to a dress code regulation "through the [FSLMRS] scheme even if that made it impossible to obtain particular forms of review or relief"); *NTEU*, 2025 WL 561080, at *7 ("NTEU's assertion that it cannot recover all the relief it seeks from the FLRA does not change the Court's analysis."). If the FLRA determines it cannot act on a particular claim presented to it, that claim is preserved for review by a court of appeals after final action by the FLRA. *Trump*, 929 F.3d at 759 ("[W]e may review the unions' broad statutory and constitutional claims on appeal from an FLRA proceeding even if the FLRA cannot."). Accordingly, "meaningful judicial review" is ultimately available through the process prescribed by the FSLMRS on any legal claim Plaintiffs have asserted, or could potentially assert, to challenge the Noem Determination. *Id*.; *see also id*. at 758 ("[I]t is of no dispositive significance

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 8
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

whether the [FLRA] has the authority to rule on constitutional claims so long as the claims can eventually reach an Article III court fully competent to adjudicate them.") (quotations omitted)).  But such review is only available in the courts of appeals - not this Court or any other district court - and only after Plaintiffs have brought their challenge to the FLRA.  *See, e.g.*, *Anouro*, 2016 WL 7115999, at *4.

Certain challenges to agency action may be outside the coverage of a special statutory review scheme like that established in the FSLMRS.  *See Axon*, 598 U.S. at 185.  But a challenge to agency action can only "be found to fall outside of the scope of a special statutory scheme in limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claims are wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency."  *Trump*, 929 F.3d at 755 (quotation omitted).  "These considerations do not form three distinct inputs into a strict mathematical formula," but are "general guideposts" for determining whether a challenge falls outside "an overarching congressional design."  *Trump*, 929 F.3d at 755 (quotations omitted).  Here, all three considerations point to the conclusion that Plaintiffs cannot proceed in this Court and must bring their claims to the FLRA.

First, as explained above, "all meaningful judicial review is not foreclosed by requiring [Plaintiffs] to proceed through the [FSLMRS] scheme," as they can ultimately have their claims considered by a court of appeals after FLRA proceedings conclude.  *Id*.  Second, Plaintiffs' challenge here is not "wholly collateral" to the FSLMRS scheme, as disputes about TSA's authority with regard to collective bargaining and exclusive representation rights for its screening workforce are the exact types of claims routinely adjudicated by the FLRA, *see e.g.,*59 F.L.R.A. 423, *supra*; *see also AFGE & TSA*, 65 F.L.R.A. 242 (2010), and the relief sought in the complaint is available through the FSLMRS scheme, either by order of the FLRA or from a reviewing court of appeals, *see Trump*, 929 F.3d at 760.  Finally, Plaintiffs' challenge is plainly not "beyond the expertise" of the FLRA.  As noted, the FLRA has regularly adjudicated similar issues arising from determinations about TSA's screening workforce made pursuant to ATSA § 111(d), and it has "specialized

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 9
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

experience in the field of federal labor relations" that is more than just "helpful background knowledge." *Id.* (quotations omitted).

Because none of the three factors above support excluding this case from the FSLMRS special review scheme, this Court lacks subject-matter jurisdiction over Plaintiffs' claims. Plaintiffs may only pursue their claims by presenting them to the FLRA in the first instance. *See Trump*, 929 F.3d at 761 (finding lack of subject-matter jurisdiction after three-factor analysis); *see also NTEU*, 2025 WL 561080, at *8 (same); *Ezell*, 2025 WL 470459, at *2 (same); *Nat'l Ass'n of Agric. Emps. v. Trump*, 462 F. Supp. 3d 572, 586 (D. Md. 2020) (same).

#### ii. The Noem Determination was an exercise of unreviewable agency discretion

With regard to Plaintiffs' APA claims, this Court lacks subject-matter jurisdiction for the additional reason that the APA simply does not provide for review of the Noem Determination. "Most - but not all - final agency actions are reviewable" under the APA. *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021). Applicable here, 5 U.S.C. § 701(a)(2) excepts from judicial review agency action "committed to agency discretion by law." That exception has been restricted to two "rare circumstances:" (1) "where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion,'" and/or (2) where the challenged agency action required "'a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (*quoting Heckler v. Chaney*, 470 U.S. 821, 830-31 (1985)); *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000). When a challenged agency action falls within the exception, a district court lacks subject-matter jurisdiction over APA claims, and they must be dismissed. *See, e.g., Spencer Enters., Inc. v. United States*, 345 F.3d 638, 691 (9th Cir. 2003); *Doe 1 v. Mayorkas*, 530 F. Supp. 3d 893, 906 (N.D. Cal. 2021).

In this case, the agency action Plaintiffs seek to challenge under the APA - a determination regarding collective bargaining and representation rights for TSA's screening workforce made pursuant to ATSA §111(d) - is precisely the type of action excepted from APA review. Both of the circumstances triggering the exception are present here: first, Section 111(d) was purposefully drawn

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 10
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

to confer broad discretion to manage TSA's screening workforce, and it does not provide any

judicially manageable standards for reviewing the exercise of that discretion; second, the Noem

Determination plainly required complicated balancing of a number of factors peculiarly within TSA

and DHS expertise, "including the prioritization of agency resources, likelihood of success in

fulfilling the agency's statutory mandate, and compatibility with the agency's overall policies."

*Newman*, 223 F.3d at 943 (quotation omitted).

a. There is no meaningful standard of review to be applied.

With regard to a lack of judicially manageable standards, ATSA § 111(d) does not provide

any framework "for judging how and when an agency should exercise its discretion." *Trout

Unlimited*, 1 F.4th at 751 (quotation omitted). Accordingly, the statute "can be taken to have

'committed' the decisionmaking to the agency's judgment absolutely." *Heckler*, 470 U.S. at 830.

The Second Circuit reached that conclusion in *Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009),

involving a challenge to the TSA Administrator's "decision not to utilize the FAA's personnel

management system" for TSA's screening workforce. The Second Circuit held the challenged

decision was "committed to agency discretion by ATSA Section 111(d) and, thus, is not reviewable

under the APA." *Id.* at 148. The court was careful to note its holding was limited only to the

specific challenged decision, and it did not reach the question of "whether APA review is

unavailable with respect to all of the Administrator's decisions regarding screener employment." *Id*.

However, the court strongly indicated the type of decision challenged here is also unreviewable

under the APA. The Second Circuit explained when the ATSA was enacted "it was understood that

matters . . . such as whether screeners can join a union . . . were left to the Administrator's

discretion." *Id.* at 147 (quotation omitted); *see also Connors*, 863 F.3d at 161 ("ATSA's grant of

TSA discretion over screening personnel employment matters is sweeping in its breadth.").

As *Conyers* clearly suggests, a determination about whether to permit TSA's screening

workforce to engage in collective bargaining or be represented by a union is exactly the kind of

decision that ATSA § 111(d) intended to commit to agency discretion. The FLRA, too, has

recognized the point, holding "TSA screeners have collective bargaining rights only at the discretion

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 11
(Case No. C25-0451MJP)

United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

of the [TSA Administrator]." *AFGE*, 59 F.L.R.A. at 429.  And because Section 111(d) "is not

ambiguous in granting . . . unfettered discretion," *id*. at 429 *n*.6, the statute does not provide any

judicially manageable standards for judging exercises of that discretion.  Accordingly, the

challenged determination here is simply not reviewable under the APA.  *Cf. Springs*, 362 F.Supp. 2d

at 703 (finding TSA's reduction-in-force policy for the screening workforce was unreviewable under

the APA because "ATSA offers no guidance on how TSA should implement a RIF," and "[t]here is

simply nothing to which this Court could turn to evaluate whether the RIF standards developed by

TSA were arbitrary or capricious").

Although AFGE ignores *Conyers* and the FLRA's decision in their Complaint and motion, it

appears to concede the ATSA itself does not provide any meaningful standards that could be applied

to consider its APA claims.  It argues instead that agency policy is the source of such standards.

Dkt. # 18 at p. 27.  According to AFGE, when an agency establishes "policies that govern *how*" the

agency may exercise its statutorily granted discretion, those policies supply the standards for APA

review.  *Id.* at p. 25 (emphasis added).  In other words, if an agency chooses to adopt its own rules

and procedures for exercising statutory discretion, then the APA requires that agency must follow

those rules and procedures.  *See id*. at pp. 23-24.

The fundamental flaw with Plaintiffs' argument is it fails to identify any policy DHS or TSA

adopted to govern *how* the discretion granted by ATSA § 111(d) should be exercised.  The agencies

have not promulgated any regulation specifying procedures or limitations on the exercise of Section

111(d) authority.  Nor have they otherwise adopted any overarching procedural policy for how

Section 111(d) determinations should be made.

Plaintiffs assert TSA's prior 2022 Determination, and the 2024 CBA pursuant to that

determination, are the policies that cabin otherwise unfettered discretion granted by Section 111(d).

Dkt. # 18 at p. 27.  But neither the 2022 Determination nor the CBA are federal agency regulations

having the force and effect of law, much less do they set a general procedural policy or any

standards governing how statutory discretion must be exercised.  Instead, the 2022 Determination

and the CBA are themselves exercises of statutory discretion.  In other words, they are exercises of

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 12
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

informal policy; they do not establish overarching procedural policies or standards about how future substantive policy choices under ATSA § 111(d) should be made.  Plaintiffs are simply wrong that when an agency makes a policy choice as an exercise of unfettered statutory discretion, that choice opens the door to APA review of all future policy choices going forward.  *See Trout Unlimited*, 1 F.4th at 765 (Bress, J., dissenting) (explaining when an agency makes a decision under a statutory scheme affording unfettered discretion, a later decision to change course may be "lousy, prudent, or somewhere in between," but cannot be reviewed under the APA given the absence of any "legal standard in the statute ... by which to form that judgment").

The case law Plaintiffs cite in their motion does not support their assertion "TSA's self-imposed limits in the [2022 Determination and 2024 CBA] provide a meaningful standard for review" of the challenged Noem Determination.  Dkt. # 18 at p. 25.  First, Plaintiffs' reliance on two cases from the immigration enforcement context - *DHS v. Regents of the University of Cal.*, 591 U.S. 1 (2020), and *Velazquez-Hernandez v. ICE*, 500 F. Supp. 3d 1132 (S.D. Cal. 2020) - is inapposite.  Both cases involved exercises of "enforcement discretion" that the Supreme Court recognized in *Heckler v. Chaney*, which is fundamentally different from the discretion at issue in this case.  *See* 470 U.S. at 831.  Enforcement discretion is not the product of a statute; rather, it is grounded on "tradition" and "the general unsuitability for judicial review of agency decisions to refuse enforcement."  *Id*.  By contrast, the challenged determination in this case was made under a particular statute clearly and specifically conferring unfettered discretion to manage TSA's screening workforce.  And the determination has nothing to do with criminal or civil enforcement actions.  Accordingly, this case bears no resemblance to immigration enforcement cases, and they are simply not instructive.  As neither *Regents* nor *Velazquez-Hernandez* involved any statutory provision akin to ATSA § 111(d), and their holdings pertain only to delineating the boundaries of an agency's general enforcement discretion (which is not at issue here), they have nothing to say about finding judicially manageable standards of review for the exercise of discretion challenged in this case.

Next, Plaintiffs' reliance on three cases in which an agency affirmatively limited its statutory discretion by promulgating regulations is also misplaced.  Plaintiffs cite *ASSE Int'l, Inc. v. Kerry*,

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 13
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

803 F.3d 1059 (9th Cir. 2015); *King Cnty. v. Azar*, 320 F. Supp. 3d 1167 (W.D. Wash. 2018); and

*Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, 328 F. Supp. 3d 1133, 1148-49

(E.D. Wash. 2018), as support for the proposition that TSA self-limited the statutory discretion

bestowed on it by issuing the 2022 Determination and entering into the 2024 CBA.  But all three

cases are plainly distinguishable, as they involve issuance of regulations having the force and effect

of law to implement a statute granting discretion.  And none of the cases holds that, in the absence of

such regulations, an agency limits its future discretion simply by making a substantive policy

decision.  Here, there are no DHS or TSA regulations promulgated under ATSA § 111(d) to

prescribe how decisions regarding TSA's screening workforce should be made.  Nor are there any

regulations establishing collective bargaining or representation rights for TSA's workforce.

Accordingly, unlike the situation in the cases cited by Plaintiffs, this Court cannot judge the

challenged determination against a "regulatory standard," *Planned Parenthood*, 328 F. Supp. 3d at

1147, or "regulatory requirements," *King Cnty.*, 320 F. Supp. 3d at 1177.

Finally, Plaintiffs' citations to *NRDC v. Haaland*, 102 F.4th 1045 (9th Cir. 2024), and

*Abdelhamid v. Ilchert*, 774 F.2d 1447 (9th Cir. 1985), are unavailing.  The defendants in *NRDC* did

not argue that the challenged decision was committed to agency discretion by law and thus excepted

from APA review; accordingly, the case simply has no pertinence here.  And the *Abdelhamid*

holding supports Defendants' position, not Plaintiffs.'  The court concluded the challenged decision

was committed to agency discretion by law "and thus does not fall within the judicial review power

of the district court."  774 F.2d at 1450.

Ultimately, Plaintiffs have not provided any support for their position that there are judicially

manageable standards of review that can be applied to the challenged determination in this case.

Plaintiffs have thus failed to carry their burden of establishing subject-matter jurisdiction over their

APA claims.  *See Springs*, 362 F. Supp. 2d at 703 ("Since the burden for proving subject-matter

jurisdiction rests continuously with the party seeking to invoke it, [plaintiff] must point to some

meaningful standard by which this Court may determine whether TSA's actions [pursuant to ATSA

§ 111(d)] were arbitrary and capricious[.]").

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 14
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

b.  The challenged determination necessarily involved a complicated
<u>balancing of factors within the particular expertise of DHS and TSA.</u>

As demonstrated above, the Noem Determination is excepted from APA review under

5 U.S.C. § 701(a)(2) because Plaintiffs have not identified - and cannot identify - any meaningful

standard against which to judge the agency's exercise of discretion under ATSA § 111(d).  But the

Noem Determination is also unreviewable for the separate and independent reason that it was the

result of decision-making involving "complicated balancing of a number of factors which are

peculiarly within [the agency's] expertise." *Lincoln*, 508 U.S. at 191 (quotation omitted).  Plaintiffs

completely ignore this additional bar to APA review in their Complaint and motion.

As the Ninth Circuit has explained, decision-making factors especially within an agency's

expertise include "prioritization of agency resources, likelihood of success in fulfilling the agency's

statutory mandate, and compatibility with the agency's overall policies." *Newman*, 223 F.3d at 943

(quotation omitted).  On its face, the Noem Determination was plainly based on consideration of

such factors.  The Determination states past decisions allowing collective bargaining for TSA

screeners "impeded Congressional intent of a flexible workforce" and "failed to serve TSA's critical

mission to protect the transportation system and keep Americans safe."  The Determination also

states it was made, in part, to be "consistent with" broader policies for the federal government

overall set forth in Executive Orders and policy memoranda issued by the President and Office of

Personnel Management.  In addition, the Determination states it was made "to ensure that [TSA

screeners'] critical national security responsibilities are carried out to maximize governmental

efficiency and productivity."

Because the Noem Determination is clearly the type of discretionary decision that requires

balancing many different considerations involving agency expertise, it cannot be reviewed under the

APA.  *Cf. Iqbal v. Blinken*, 2023 WL 7418353 (E.D. Cal. Nov. 9, 2023).

*iii.  Plaintiffs' contract claims cannot be adjudicated under the APA*

Claims I, II, and IV of the complaint are based on an alleged violation of rights Plaintiffs

claim to possess due to contractual commitments made by TSA to AFGE, as embodied in the CBA.

Dkt. # 18, p. 23 ("Having agreed to a binding CBA setting terms and conditions of employment for a

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 15
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

specified term, TSA was obligated to honor that commitment."). As a remedy, Plaintiffs seek what is, in effect, specific performance of the CBA. Dkt. # 1, p. 23.

However, the APA does not "confer[] authority to grant relief if any other statute granting consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act, 28 U.S.C. § 1491(a)(1), which vests exclusive subject matter jurisdiction over certain federal contract claims in the Court of Federal Claims, is such a statute and it forecloses judicial review of contract-based claims in district courts under the APA. *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646-648 (9th Cir. 1998). Accordingly, contract claims of any kind, including those seeking specific performance, or other equitable relief, are not cognizable under the APA. *Id. at* 648. Counts I, II and IV of Plaintiffs' complaint are thus subject to dismissal for lack of subject-matter jurisdiction.[3]

## II.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### i. Even if the APA permits review, Plaintiffs are unlikely to prevail on their claim that Defendants' "reversal of policy" was arbitrary and capricious

Plaintiffs claim Defendants failed to satisfy the requirements laid out in *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), for an agency change in policy. Dkt. # 1, ¶ 106; Dkt. # 18, pp. 20-23. But the *Fox* requirements concern circumstances in which the change involves a rule or a formal agency position of general applicability. In *Fox*, the dispute involved the FCC's changing position on what conduct violated 18 U.S.C. § 1464's prohibition against the broadcasting of "any . . . indecent . . . language," which the FCC is charged with enforcing. By contrast, neither the Noem determination nor the prior TSA statements cited by AFGE involve either an agency position of general applicability or an interpretation of statutory text to make enforcement decisions. Indeed, Plaintiffs point to no case applying *Fox* to anything comparable to the challenged agency action here involving the exercise of unfettered statutory discretion to make what is purely a policy choice.

---

3  Notwithstanding its constitutional nature, Plaintiffs' Due Process claim (Count IV) is also jurisdictionally foreclosed because the property right it seeks to vindicate arises from the contract itself. *Tucson Airport Auth.*, 136 F.3d at 647 (declining to follow *Transohio v. Dir., Office of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992)).

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 16
(Case No. C25-0451MJP)

Moreover, even if *Fox* applies, it requires only that agencies must explain the basis for changing positions, and TSA has adequately done so here.  It is no coincidence that the Noem Determination occurred very soon after a change in presidential administrations.  "[A] policy change may be permissible simply because there has been a 'change in administrations.'"  *California v. Wheeler*, 467 F. Supp. 3d 864, 875 (N.D. Cal. 2020); *cf. Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (recognizing "a change in administrations" as a possible reason for a policy change).  Here, the Noem Determination sets forth a basis for disagreement with prior policy decisions that were presumably consonant with the views of the presidential administrations in which they were made and explains that changing course brings TSA into alignment with the policies of the current Administration.  Dkt. # 19-1 at pp. 225-226.

AFGE also criticizes Defendants for failing to consider alternatives.  However, an agency is not required to "consider all policy alternatives in reaching decision."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983).  Rather, the requirement is to consider only alternatives "within the ambit" of the existing policy.  *Id.*  AFGE's proposed alternative, *i.e.,* "exercising reserved management rights" under the CBA, is not a realistic alternative that was overlooked by Defendants in the context of a change intended to eliminate the framework whereby an exclusive representative stands between TSA management and its employees.

AFGE asserts TSA did not take into account its "serious reliance interests," but it has identified no such interests.  AFGE asserts that it "structured [its] operations" upon the expectation that the CBA would be binding over multiple years.  Dkt. # 18, pp. 23, *ll.* 10-17.  However, AFGE has provided no information about the extent of restructuring that is now necessary given it can retain its TSA employee members, continue to collect dues from them, and serve their interests in ways consistent with the Noem Determination.  *See AFGE Local 1*, 502 F.3d at 1033 ("[T]he fact that the TSA has banned collective bargaining does not mean that a union has no useful

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 17
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

function[.]").  As to the TSOs, consideration was given to their interests and the need to establish alternative procedures to address grievances.  *See* dkt. # 19-1, p. 227.[4]

### ii.  Plaintiffs cannot prevail on their contrary to law claim

AFGE asserts in substance TSA acted "contrary to law" within the meaning of the APA by breaching the CBA.  However, its argument misapprehends the meaning of that term.  "Contrary to law" in this context means an agency has acted in violation of a statute or a regulation outside the APA having the force and effect of law.  *Or. Nat. Re. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996).  For example, an agency does not act "contrary to law" when it deviates from an internal memorandum or policy that, because it has not been promulgated as a regulation through notice and comment rulemaking, does not have the force and effect of law.  *W. Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 901-902 (9th Cir. 1996).  And an agency does not act "contrary to law" for purposes of the APA when its actions are said to be in violation of the terms of a contract.  *See, Tucson Airport Auth.,* 136 F.3d at 647 (APA waiver of sovereign immunity does not encompass contract-based claims).

### iii.  Plaintiff has not demonstrated a sufficient likelihood of prevailing on the merits with respect to its First Amendment retaliation claim.

AFGE asserts the Noem Determination was made in retaliation for its exercise of protected First Amendment activity, *i.e.,* the filing of lawsuits regarding other federal agencies.  Dkt. # 18, p. 17, *ll.* 19-23.  It has not shown a sufficient likelihood of succeeding on the merits to warrant preliminary relief.  To prevail on such a claim, "a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up).  "Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Id.*  And, more generally, to overcome the presumption of regularity attaching to actions of the Executive Branch requires a

---

4  See the Declaration of Anthony Vincenzo, filed herewith, describing the alternative procedures used by TSA to address grievances that were pending when the CBA was rescinded.  *Id.* at ¶¶ 4-10.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 18
(Case No. C25-0451MJP)

"strong showing of bad faith or improper behavior." *FDA v. Wages & White Lion Invs., LLC.*, 145 S. Ct. 898, 923 (2025).

AFGE offers no direct evidence of *any* connection, let alone a causal connection, between AFGE's engagement in protected activity and issuance of the Noem Determination. Instead, AFGE merely speculates, based on temporal propinquity alone, that hostility to its filing of lawsuits was the "but for" cause of the Determination.[5] However, mere proximity in time is not sufficient alone to establish a causal connection, particularly where, on the face of the Determination, no connection is suggested. *See Fouladi v. City of Tucson*, 94 F. App'x 485, 486 (9th Cir. 2004).

Moreover, in asking the Court to infer causation from temporal proximity, AFGE overlooks the proximity of the Noem Determination to an event of much greater significance than the union's litigation activity: the change in presidential administrations that occurred just a month prior. It is self-evident that the Noem Determination was precipitated by the new administration's differing perspectives and policy judgments pertaining to TSA's workforce, as reflected in the Determination, rather than retaliatory purpose or "anti-AFGE animus." Dkt. # 18, p. 19. In any event, AFGE's "scantest speculation" that the Determination was motivated by an improper purpose does not meet its burden of demonstrating a likelihood of success on the merits. *See Parler LLC v. Amazon Web Servs., Inc.*, 514 F. Supp. 3d 1261, 1268 (W.D. Wash. 2021).

> *iv. Plaintiffs have not demonstrated a sufficient likelihood of prevailing on the merits with respect to their Due Process Claim*

AFGE's argument that its Due Process rights have been violated rests on the unfounded assumption that every breach of a contract by the government not preceded by some form of a hearing necessarily results in a violation. That is not the law. First, not all contracts with a government entity create a constitutionally protected property interest. *See DeBoer v. Pennington*, 206 F.3d 857, 869 (9th Cir. 2000), *vacated on other grounds sub nom. City of Bellingham v. DeBoer*,

---

[5] AFGE highlights that the Noem Determination was issued on the same day as a preliminary ruling against the government in another lawsuit. Dkt. # 18 at p. 18, *ll.* 16-21. But inferring causality here requires one to believe that the Determination was dashed off in a fit of pique in just a matter of hours after learning of the adverse ruling. Even a cursory review of the carefully written Determination, which includes numerous references to legal authority, shows beyond question that it was not so precipitously drafted.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION FOR A PRELIMINARY INJUNCTION - 19
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

532 U.S. 992 (2001). And even where a protected interest exists, the Constitution does not

necessarily guarantee *pre*-deprivation process, as post-deprivation procedures such as "an ordinary

breach-of-contract suit" may be adequate. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196

(2001).

Here, the existence of the CBA did not create a property interest protected by the Fifth

Amendment. The CBA was entirely dependent upon the 2022 Determination by TSA's former

Administrator, which was itself an exercise of unfettered statutory discretion and thus subject to

recission or change at any time at the sole judgment of the government. Accordingly, the CBA was

never anything more than conditional; it did not create any entitlements for AFGE. *See Town of

Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement

if government officials may grant or deny it in their discretion."); *DeBoer*, 206 F.3d at 869

(describing two types of contracts giving rise to property interests).

AFGE also asserts the CBA granted its TSA screener members "a property right in their

continued employment" by providing that adverse actions could only be taken for "just cause" and

"reasons that will promote the efficiency of the service." Dkt. # 18, p. 29, *ll*. 20-22. But "Ninth

Circuit precedent makes clear that where the only substantive restrictions on government

decisionmaking are 'reasonableness' or 'good faith,'" a CBA "does not give rise to a constitutionally

protected property interest." *Ortloff v. Trimmer*, 2018 WL 2411755, at *3 (W.D. Wash. May 29,

2018) (and cases cited) (finding CBA requirement of termination only for "bona fide reasons relating

to the business operation" did not create "a property interest sufficient to support a due process

claim").[6]

Even assuming AFGE (or its TSA screener members) somehow acquired a protected

property interest arising from the CBA, Due Process does not require a hearing or other pre-

---

[6] AFGE also argues its members "retain property rights in the processing of outstanding grievances" filed under CBA procedures, Dkt. # 18, p. 30, *ll*. 11-12, and asserts those procedures are "the only meaningful way to hold TSA managers accountable for misconduct," Dkt. # 20, ¶ 12. But the cases AFGE cites do not hold federal employees have a constitutionally cognizable property interest in having their grievances adjudicated according to procedures set forth in a CBA, let alone when the CBA rests entirely on an inherently changeable or reversible exercise of unfettered discretion to allow collective bargaining in the first place. Moreover, TSA has an administrative grievance process available to process grievances initiated under the CBA. *See* footnote 4, *supra*.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 20
(Case No. C25-0451MJP)

deprivation process before recission of the contract, as the post-deprivation process available through a challenge to the recission in the FLRA (and the courts of appeals on a petition for review of an FLRA decision) is adequate. *See, e.g., Hill v. City of Scottsdale*, 2012 WL 2952377, at *6 (D. Ariz. Jul. 19, 2012).

### III.    AFGE CANNOT SHOW IRREPARABLE HARM

To obtain an injunction, the moving party must establish it is likely that they will suffer irreparable harm without an injunction. *Winter*, 555 U.S. at 22.  "Speculative injury does not constitute irreparable injury . . ." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021).

AFGE claims it will lose substantial revenue from Defendants' refusal to withhold union dues from employees' paychecks.  As an initial matter, monetary harm typically does not constitute irreparable harm, as economic losses can generally be recovered.  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir.1980).[7]  Moreover, AFGE's supposed economic loss is speculative.  Because the cause of the supposed loss is the cessation of due withholding by Defendants, both the precise reason for the loss (because TSOs are not obligated to be members of the union and may choose to continue or discontinue that relationship for any reason) and the amount of loss are unknown.  The termination of automatic withholding is not the cause of Plaintiffs loss.  It merely terminates TSA's role in the process.  Union members remain free to pay their dues directly to the union, rather than through payroll deductions.  Plaintiff has not demonstrated that its members - whose union membership is entirely voluntary – will cease paying dues in the absence of withholding.[8]

AFGE also asserts, in substance, that any First Amendment infringement, regardless of circumstances, constitutes irreparable injury sufficient to justify injunctive relief.  Dkt. # 18, p. 34, *ll.* 3-5.  That is not the law.  "[T]he mere assertion of First Amendment rights does not automatically

---

[7]  Indeed, in disputes before the FLRA, unions have been able to recover monetary losses, including lost dues. *See, e.g., U.S. Dep't of Def., Ohio Nat'l Guard*, 71 F.L.R.A. 829, 873, 875 (2020).

[8]  Notably, AFGE's website promotes "E-Dues," a "dues collection system totally independent" of federal agencies as a preferred alternative to payroll deductions.  *See* https://www.afge.org/common-pages/e-dues/.

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 21
(Case No. C25-0451MJP)

require a finding of irreparable injury." *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 851 (9th Cir. 2019).  In the First Amendment context, "[a] preliminary injunction is not appropriate . . . unless the party seeking it can demonstrate that First Amendment interests [are] either threatened or in fact being impaired at the time relief [is] sought." *NTEU v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (citation omitted).  Thus, it is necessary for the alleged First Amendment infringement either to be threatened or occurring at the time relief is sought before the injury could be considered irreparable.  *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988); *Am. Postal Workers Union v. United States Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985), *cert. denied*, 475 U.S. 1046, (1986).

Here, under Plaintiffs' theory of the case, the alleged violation of AFGE's First Amendment rights is embodied in an already completed act, *i.e.,* TSA's recission of the 2022 Determination and the CBA on which it depended, as retaliation for AFGE's engagement in the protected activity of filing lawsuits.  There is no threatened future First Amendment violation, as AFGE has not alleged that Defendants are imminently seeking or planning to take any other purportedly retaliatory action against the union.  And there is no ongoing First Amendment violation because there is no First Amendment right to collective bargaining.  *See  Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979); *Fraternal Order of Police v. Bd. of Governors of the Fed. Reserve Sys.*, 391 F. Supp. 2d 1, 8-9 (D.D.C. 2005); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 313 (1979); *Loy*, 281 F. Supp. 2d at 65.  Accordingly, AFGE has not demonstrated irreparable injury to its First Amendment rights for which the extraordinary remedy of a preliminary injunction is either necessary or appropriate.

## IV.    THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR DEFENDANTS

A preliminary injunction also is not appropriate because the balance of the equities and the public interest weigh in Defendants' favor.  *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 22
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

interest factors even in cases, like this, involving constitutional claims."), *appeal dismissed*, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025).

The clear congressional purpose of ATSA § 111(d) is to guarantee the effective operation of TSA without binding the agency to any particular workforce design constraints such as a collective bargaining and union representation framework.  That statutory flexibility allows TSA, an agency with a critical security mission, to be responsive and accountable to the American people through politically appointed leadership that can implement change following elections.  The public has a strong interest in ensuring that Defendants are able to exercise statutory discretion without delay to operate TSA effectively and efficiently.  A preliminary injunction affirmatively forcing TSA to be a party to a CBA with AFGE would displace and frustrate the Secretary of Homeland Security's judgment about how to best address workforce issues directly impacting public safety and national security matters on which the judiciary typically defers to the Executive Branch.

V.    ANY INJUNCTIVE RELIEF SHOULD BE ACCOMPANIED BY A BOND.

Defendants respectfully request that any injunctive relief be accompanied by a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  A bond is appropriate here given that any preliminary relief would potentially mandate that the Executive spend money that may not be recouped once distributed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that the Court deny AFGE's motion for a preliminary injunction.

//

//

//

//

//

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION
FOR A PRELIMINARY INJUNCTION - 23
(Case No. C25-0451MJP)

1

**CERTIFICATION**

2

I certify that this memorandum contains 8,348 words, in compliance with Local Civil Rule

3

LCR 7(e)(3).

4

5

DATED this 25th day of April 2025.

6

Respectfully submitted,

7

TEAL LUTHY MILLER

8

Acting United States Attorney

9

10

*/s/ Brian C. Kipnis*

BRIAN C. KIPNIS

11

Assistant United States Attorney

Office of the United States Attorney

12

5220 United States Courthouse

700 Stewart Street

13

Seattle, Washington 98101-1271

Phone: 206 553 7970

14

E-mail: brian.kipnis@usdoj.gov

15

Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM IN OPPOSITION TO AFGE'S MOTION

FOR A PRELIMINARY INJUNCTION - 24

(Case No. C25-0451MJP)