1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,<br><br>          Plaintiffs,<br><br>     v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; HA NGUYEN McNEILL, in her official capacity as Acting Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION,* <br><br>          Defendants. | CASE NO. 2:25-cv-451-MJP<br><br>**REPLY BRIEF OF PLAINTIFFS AFGE AND AFGE TSA LOCAL 1121 IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**<br><br>NOTE ON MOTION CALENDAR: May 9, 2025 |

---

* Pursuant to Federal Rule of Civil Procedure 25(d), Ha Nguyen McNeill, in her official capacity as Acting Administrator of the Transportation Security Administration, is automatically substituted for Adam Stahl, in his official capacity as Senior Official Performing the Duties of the Administrator of the Transportation Security Administration.

REPLY ISO MOT. FOR PRELIMINARY INJUNCTION – i

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

I.    This Court Has Jurisdiction ........................................................ 1

   A.   Plaintiffs' Claims Are Not Channeled to the FLRA ...................... 1

   B.   This Court's Jurisdiction on Counts I, II, and IV is Not Barred by the Tucker Act ........ 3

II.   Plaintiffs Are Likely to Succeed on the Merits............................... 4

   A.   AFGE Is Likely to Succeed on the First Amendment Claim .............. 4

   B.   Plaintiffs Are Likely to Succeed on their APA Claims.................. 7

   C.   Plaintiffs Are Likely to Succeed on Their Fifth Amendment Claims........... 10

III.  Defendants Do Not Meaningfully Contest Irreparable Harm ......................... 11

IV.   The Equities Favor Relief ......................................................... 13

V.    No Bond is Warranted .............................................................. 13

CONCLUSION.................................................................................. 14

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**Cases**

3

*Adetuyi v. City of San Fransisco*,
    63 F.Supp.3d 1073 (N.D. Cal. 2014) ..........................................................................6

4

*Adlerstein v. U.S. Customs & Border Prot.*,
    2020 WL 5846600 (D. Ariz. Sept. 30, 2020).........................................................6

5

*AFGE v. Loy*,
    367 F.3d 932 (D.C. Cir. 2004) .................................................................................3

6

7

*AFGE v. Nicholson*,
    475 F.3d 341 (D.C. Cir. 2007) .................................................................................3

8

*AFGE v. OPM*,
    2025 WL 1150698 (N.D. Cal. Apr. 18, 2025) ......................................................13

9

10

*Alcaraz v. INS*,
    384 F.3d 1150 (9th Cir. 2004) ..................................................................................8

11

*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ................................................................................13

12

13

*ASSE Int'l, Inc. v. Kerry*,
    803 F.3d 1059 (9th Cir. 2015) ..................................................................................9

14

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023)..................................................................................................3

15

16

*Boquist v. Courtney*,
    32 F.4th 764 (9th Cir. 2022) ....................................................................................7

17

*Brodowy v. United States*,
    2006 WL 5631717 (Fed. Cl. July 11, 2006) ...........................................................4

18

19

*California v. ATF*,
    718 F.Supp.3d 1060 (N.D. Cal. 2024) .....................................................................9

20

*CTIA – The Wireless Ass'n v. City of Berkeley*,
    928 F.3d 832 (9th Cir. 2019) ..................................................................................12

21

22

*DOD v. AFGE, AFL-CIO, Dist. 10*,
    No. 6:25-cv-119 (W.D. Tex. Mar. 27, 2025) ...........................................................6

23

*Doe v. Bd. of Trs. of Whitman Coll.*,
    670 F.Supp.3d 1155 (E.D. Wash. 2023) ..................................................................1

24

REPLY ISO MOT. FOR PRELIMINARY INJUNCTION – iii

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)........................................................................................10

*Int'l Union, United Gov't Sec. Officers of Am. v. Clark*,
   706 F.Supp.2d 59 (D.D.C. 2010), *aff'd sub nom. Barkley v. U.S. Marshals*
   *Serv. ex rel. Hylton*, 766 F.3d 25 (D.C. Cir. 2014) ...............................................11

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .............................................................................13

*Keyser v. Sacramento City Unified Sch. Dist.*,
   265 F.3d 741 (9th Cir. 2001) ...............................................................................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)...............................................................................................10

*Museum of Handcar Tech. LLC v. Transp. Agency for Monterey Cnty.*,
   __ F.Supp.3d __, 2025 WL 1114458 (N.D. Cal. April 14, 2025) ...........................13

*NTEU v. Chertoff*,
   452 F.3d 839 (D.C. Cir. 2006) ......................................................................10, 11

*NTEU v. FLRA*,
   45 F.4th 121 (D.C. Cir. 2022) ...............................................................................9

*NTEU v. Trump*,
   __ F.Supp.3d __, 2025 WL 1218044 (D.D.C. Apr. 28, 2025)...........2, 3, 6, 12, 13

*Ortloff v. Trimmer*,
   2018 WL 2411755 (W.D. Wash. May 29, 2018)...................................................11

*Pacito v. Trump*,
   __ F.Supp.3d __, 2025 WL 893530 (W.D. Wash. Mar. 24, 2025)....................4, 10

*Phillips v. Marion Cnty. Sheriff's Off.*,
   494 F. App'x 797 (9th Cir. 2012)..........................................................................11

*Rick's Mushroom Serv. Inc. v. United States*,
   521 F.3d 1338 (Fed. Cir. 2008)..............................................................................4

*Small v. Avanti Health Sys., LLC*,
   661 F.3d 1180 (9th Cir. 2011) ..............................................................................12

*St. Bernard Parish Gov't v. United States*,
   134 Fed. Cl. 730 (2017) ........................................................................................4

*Trout Unlimited v. Pirzadeh*,
   1 F.4th 738 (9th Cir. 2021) ...................................................................................8

REPLY ISO MOT. FOR PRELIMINARY INJUNCTION – iv

18 WEST MERCER ST., STE. 400 **BARNARD**

SEATTLE, WASHINGTON 98119 **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132 **LAVITT LLP**

*TSA & AFGE*,
  59 F.L.R.A. 423 (2003) ................................................................................. 3

*TSA & AFGE*,
  65 F.L.R.A. 242 (2010) ................................................................................. 3

*Unger v. Nat'l Residents Matching Program*,
  928 F.2d 1392 (3d. Cir. 1991) ..................................................................... 11

*United Aeronautical Corp. v. U.S. Air Force*,
  80 F.4th 1017 (9th Cir. 2023) ....................................................................... 4

*W. Radio Servs. Co. v. Espy*,
  79 F.3d 896 (9th Cir. 1996) ........................................................................... 9

**Statutes, Rules & Regulations**

5 U.S.C. § 553(a)(2) ............................................................................................ 9

5 U.S.C. § 7105 ................................................................................................... 2

5 U.S.C. § 7123 ................................................................................................... 2

49 U.S.C. § 111(d) .......................................................................................... 2, 9

DHS. Exec Order 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025) ......................... 5

Order, 90 Fed. Reg. 16427 (Apr. 17, 2025) ...................................................... 7

Fed. R. Civ. P. 65(c) ......................................................................................... 13

**Other Authorities**

Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of
  union rights*, Government Executive (Apr. 18, 2025),
  https://www.govexec.com/workforce/2025/04/va-selectively-enforcing-
  trumps-order-stripping-workers-union-rights/404694/ ............................... 7

REPLY ISO MOT. FOR PRELIMINARY INJUNCTION – v

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    Injunctive relief is necessary to halt Defendants' efforts to punish AFGE for exercising its

2    First Amendment rights. Indeed, Defendants' Opposition fails to address substantial evidence

3    showing that Defendants' recission of their binding collective bargaining agreement (CBA) was

4    motivated by hostility toward Plaintiff AFGE for its protected activity directed at the Trump

5    Administration. Nor do Defendants seriously contest that Plaintiffs suffered irreparable injury.

6    Instead, Defendants focus largely on the argument that this case should be channeled to the Federal

7    Labor Relations Authority (FLRA). But Defendants' own determinations show that the FLRA

8    lacks jurisdiction to hear Plaintiffs' claims.

9    As Plaintiffs' Motion and this reply show, Plaintiffs have met the requirements for

10   injunctive relief. Accordingly, Plaintiffs are entitled to a prohibitory preliminary injunction that

11   preserves their "last, uncontested status which preceded the pending controversy," which would

12   be prior to the Noem Determination's unlawful rescission of their contract and outstanding

13   grievances. *Doe v. Bd. of Trs. of Whitman Coll.*, 670 F.Supp.3d 1155, 1162 (E.D. Wash. 2023)

14   (injunction restoring expelled student to pre-suit enrolled status is prohibitory, not mandatory).[1]

15   **I.    This Court Has Jurisdiction**

16       **A.  Plaintiffs' Claims Are Not Channeled to the FLRA**

17   Defendants contend that Plaintiffs are foreclosed from seeking relief in this Court and must

18   use the administrative process in Chapter 71 of Title 5 and seek relief from the FLRA, *see* 5 U.S.C.

19   § 7105, 7123. Dkt. #26 ("Opp'n") at 5-10. Defendants are wrong. The framework governing

20   Transportation Security Officer (TSO) employment does not permit Plaintiffs to bring these claims

21   to the FLRA. From the outset, TSOs' collective bargaining framework has been set by TSA

22   Administrator "determinations," not the statutory labor law provisions in Chapter 71. And these

23   

24   _____

[1] Because this relief does not go "well beyond simply maintaining the status quo *pendente lite*," the heightened mandatory injunction standard raised by Defendants does not apply. *Id.* at 1162.

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 1

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    determinations have all precluded relief from the FLRA on the issue here. Jurisdiction over

2    Plaintiffs' claims therefore rests in this Court.

3           The 2011 Determination that established TSOs' first collective bargaining structure stated

4    that the structure was separate "from that provided in 5 U.S.C. Chapter 71." Dkt. #19-1 at 6. The

5    Determination permitted the FLRA to conduct a union election, but otherwise specifically

6    provided that "ATSA § 111(d) supersedes the Federal Services Labor-Management Relations

7    statute (5 U.S.C. Chapter 71) in all other respects and therefore Chapter 71 shall not apply, or

8    afford any rights, to management, unions, or covered employees that are not expressly provided in

9    this Determination." *Id.* at 7. Even in 2022, when TSA expanded TSOs' collective bargaining

10   rights in limited ways, the 2022 Determination expressly refused to adopt "any provision of

11   Chapter 71 or its implementing regulations regarding the Federal judiciary" or "regarding FLRA."

12   *Id.* at 26, §§ 8-9.

13          Further nailing shut any FLRA avenue for relief, the recent Noem Determination rescinded

14   all prior determinations, revoked AFGE's rights as exclusive representative, and made clear that

15   the Determination "does not incorporate by reference any provisions of Chapter 71 of Title 5[.]"

16   Dkt. #19-1 at 226. Indeed, pursuant to the Noem Determination, TSA has unilaterally canceled

17   pending grievances and refused to participate in grievance arbitration, Dkt. #19 at 6, ¶¶ 31, 33,

18   further blocking any route to the FLRA.[2] Because Plaintiffs cannot access the FLRA, this Court

19   retains jurisdiction. *See NTEU v. Trump*, __ F.Supp.3d __, 2025 WL 1218044, at *6 (D.D.C. Apr.

20   28, 2025) (finding jurisdiction over elimination of union rights "[b]ecause there is no 'special

21   statutory review scheme'" available to the union.)

22

23   ───────────────

24   [2] Even prior, this channel was closed as evidenced by the 2021 dismissal of a ULP brought against
     AFGE because the FLRA lacked jurisdiction. Harris Decl. ¶ 13 & Ex. 1.

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 2

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

The cases cited by Defendants involving election petitions, Opp'n at 6-7, do not compel a different result. Following the creation of TSA in 2001, there was litigation both in federal court and before the FLRA regarding whether individual TSOs could elect a bargaining representative and require TSA to bargain. *See TSA & AFGE,* 59 F.L.R.A. 423 (2003); *AFGE v. Loy*, 367 F.3d 932 (D.C. Cir. 2004); *TSA & AFGE*, 65 F.L.R.A. 242 (2010). Unlike this prior litigation, here there is no path to the FLRA as the question is not one of TSO's rights to conduct an election or whether TSOs have statutorily-conferred bargaining rights.

As described above, Plaintiffs have no way to bring the claims asserted in the Complaint—which arise from rescinding a CBA formed outside of Chapter 71—before the FLRA. And when an agency's determination precludes FLRA review, district courts retain jurisdiction. *Cf. AFGE v. Nicholson*, 475 F.3d 341, 347-48 (D.C. Cir. 2007) (district court had jurisdiction where challenged action was "expressly outside the FLRA's purview" and union is "presumptively entitled to judicial review of its claim"); *NTEU*, 2025 WL 1218044, at \*5 (channel not available when agencies "have been excluded from the FSLMRS's coverage").[3]

### B. This Court's Jurisdiction on Counts I, II, and IV is Not Barred by the Tucker Act

Defendants argue that Plaintiffs' APA and Fifth Amendment claims are foreclosed by the Tucker Act, which "vests exclusive subject matter jurisdiction over *certain* federal contract claims in the Court of Federal Claims." Opp'n at 16 (emphasis added). It is undisputed that "[w]here a statute vests exclusive jurisdiction over a category of claims in a specialized court …, it 'impliedly forbids' an APA action brought in federal district court." *United Aeronautical Corp. v. U.S.A.F.,*

---

[3] Because Plaintiffs' access to the FLRA is expressly closed, this Court need not turn to *Thunder Basin* to decide whether the administrative review scheme "reaches the claim in question." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023). Regardless, meaningful review is unavailable, claims for a CBA formed outside Chapter 71 are collateral, and this Court has the superior Constitutional and APA expertise.

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 3

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

80 F.4th 1017, 1022 (9th Cir. 2023). But because the 2024 CBA is not the type of contract that gives rise to jurisdiction in the Court of Federal Claims, this Court retains jurisdiction.

"[F]or a government contract to give rise to Tucker Act jurisdiction, it must be 'money-mandating'—meaning it must give the contracting parties a substantive right to recover damages in the event of breach." *Pacito v. Trump*, __ F.Supp.3d __, 2025 WL 893530, at *4 (W.D. Wash. Mar. 24, 2025). The Tucker Act's consent to suit "does not extend to every contract;" plaintiffs must show a money-mandating source of law for the Court of Federal Claims to have jurisdiction under the Tucker Act. *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Because nothing in the 2024 CBA provides for monetary damages for breach, "the agreement is not money-mandating" and the Court of Federal Claims lacks jurisdiction. *St. Bernard Parish Gov't v. United States*, 134 Fed. Cl. 730, 735 (2017). Indeed, the Court of Federal Claims has previously held that a federal sector CBA is "not a contract within the meaning of the Tucker Act," such that the court lacked jurisdiction over a claim to enforce the CBA without identifying some other money-mandating provision. *Brodowy v. United States*, 2006 WL 5631717, at *3-4 (Fed. Cl. July 11, 2006). Accordingly, this Court retains jurisdiction over Plaintiffs' APA and Fifth Amendment claims.

## II.    Plaintiffs Are Likely to Succeed on the Merits

### A.  AFGE Is Likely to Succeed on the First Amendment Claim

Defendants do not contest the first two prongs of Plaintiffs' First Amendment retaliation claim: that AFGE engaged in First Amendment protected activity, and that Defendants' actions would chill an ordinary person. Dkt. #18 ("Mot.") at 17-18. Instead, Defendants challenge the causation element, framing Plaintiffs' argument as dependent solely upon temporal proximity. Opp'n at 18-19. In doing so, Defendants fail to acknowledge Plaintiffs' central evidence of animus

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 4

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD
IGLITZIN &
LAVITT LLP

and retaliatory motive, most notably the Noem Determination's language and the Administration's direct attacks on AFGE for protected speech.

*1.*     Defendants' express opposition to AFGE is clear from the very subject line of the Noem Determination, which frames the new policy as "Removing a Union That Harms Transportation Security Officers." Dkt. #19-1 at 224. The express attack on AFGE continued elsewhere in the Determination, which claims that past collective bargaining frameworks "have solely benefited the American Federation of Government Employees (AFGE) at TSOs' expense." *Id.* at 225. And the companion TSA press release kept up the drumbeat of AFGE attacks, asserting that "TSOs are losing their hard-earned dollars to a union that did not represent or protect their interests," *id.* at 231-32, and tying the Noem Determination to AFGE animus: "Thanks to Secretary Noem's action, Transportation Security Officers will no longer lose their hard-earned dollars to a union that does not represent them," *id.* at 232.

The Administration, however, has made clear that their hostility toward AFGE is more than just anti-union animus: it is hostility toward AFGE for its protected conduct opposing the Administration's domestic agenda. In late March, President Trump issued an executive order that stripped labor rights from most federal employees, including other employees at DHS. Exec Order 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025). In so doing, it expressly called out the "largest Federal union," AFGE, for its First Amendment activity.[4] Specifically, the White House justified its action in an official Fact Sheet that attacked "hostile Federal unions," as opposed to "unions who work with him," claimed that "[c]ertain Federal unions have declared war on President Trump's agenda," and specifically called out AFGE as "describ[ing] itself as 'fighting back' against

---

[4] https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/.

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 5

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Trump."[5] That same day, DHS and other agencies sued AFGE affiliates, justifying the necessity of the lawsuit by citation to an AFGE publication outlining how AFGE is "fighting back," including through filing lawsuits, lobbying, and making public statements. Complaint, *DOD v. AFGE, AFL-CIO, Dist. 10*, No. 6:25-cv-119, Dkt. #1 at ¶ 172 (W.D. Tex. Mar. 27, 2025).

This "pattern of antagonism" against AFGE for its First Amendment activity demonstrates Defendants' retaliatory intent. As courts recognize, a "pattern of ongoing retaliation following protected conduct supports a finding of causation." *Adetuyi v. City of San Fransisco,* 63 F.Supp.3d 1073, 1090 (N.D. Cal. 2014) (Title VII); *see also Adlerstein v. U.S. Customs & Border Prot.*, 2020 WL 5846600 (D. Ariz. Sept. 30, 2020) ("pattern of antagonism and ongoing retaliatory conduct" supports First Amendment retaliation claim). Here, AFGE engaged in a series of First Amendment protected activity against the Administration, after which the Administration stripped AFGE members of their collective bargaining rights and issued official communications targeting AFGE. Mot. at 18-19; *see also* Mot. at 19-20 (noting other attacks on those speaking out against administration policies). Especially when combined with evidence that the "justifications" offered in the Noem Determination are false, Mot. at 22-23; *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001) (false and pretextual explanations are evidence of retaliatory causation), Plaintiffs have amply established a likelihood of success on their First Amendment claim.[6]

*2.*     Ignoring this evidence, Defendants misread Plaintiffs' Motion as relying only on temporal proximity generally and on the timing of a litigation victory specifically. Opp'n at 19 &

---

[5] *Id.*

[6] And although Defendants contend that a "presumption of regularity" applies, Opp'n at 18-19, any such presumption is rebutted by Defendants' statements showing "retaliatory motive." *See NTEU*, 2025 WL 1218044, at \*10-11.

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 6

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

n.5. This argument, however, fails to acknowledge that "AFGE's protected activity occurred in the weeks leading up to the challenged actions." Mot. at 18. And it is not just proximity. It is clear that the Trump Administration was fixated on AFGE's litigation and other efforts opposing the Administration's agenda. *See, e.g., supra* at 5-6.

    *3.*    Because Plaintiffs have made a prima facie of retaliatory intent, the burden shifts to Defendants to show that the CBA recission would have occurred absent AFGE's protected activity. *Boquist v. Courtney*, 32 F.4th 764, 777-78 (9th Cir. 2022). Defendants have provided no such evidence.

    The only effort by Defendants arguably to satisfy this requirement is a bare assertion that a non-retaliatory reason is "self-evident" because of the change of presidential administration. Opp'n at 19. This is the opposite of self-evident: TSOs maintained their bargaining rights during the first Trump administration. And unions that the President believes will "work with him," *see supra* at 5, still have bargaining rights.[7] In short, Defendants have not proffered any evidence that the CBA would have been revoked absent AFGE's protected speech.

### B.  Plaintiffs Are Likely to Succeed on their APA Claims

    As set forth in our Motion, Defendants' rescission of the CBA and outstanding grievances were arbitrary and capricious and contrary to law. Mot. at 20-28. Defendants do not contest that the Noem Determination was a final agency action. Rather, Defendants argue that the APA does not apply here and that the APA claims fail on the merits. Neither argument succeeds.

---

[7] *See* Order, 90 Fed. Reg. 16427 (Apr. 17, 2025) (expressly restoring bargaining rights to specific unions); Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of union rights*, Government Executive (Apr. 18, 2025), https://www.govexec.com/workforce/2025/04/va-selectively-enforcing-trumps-order-stripping-workers-union-rights/404694/ (VA spokesperson stating that unions whose rights were restored "filed no or few grievances against VA").

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 7

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1.     First, the government contends that APA review is unavailable because the decision to rescind the CBA is an action "committed to agency discretion by law" and resulted from a "complicated balancing" of factors. Opp'n at 10-15. But even when a statute "conveys broad discretion" and demands a discretionary judgment that "involves balancing a number of considerations," APA review remains available when an agency restricts its own discretion and "manageable standards are available" to evaluate the agency's exercise of discretion. *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751-53 (9th Cir. 2021). Here, TSA entered into the 2024 CBA, which is both a self-imposed restriction of agency discretion and by its terms provides standards to evaluate the agency's subsequent actions. For example, the CBA limits TSA for a fixed term, provides that certain negotiated terms supersede TSA policies, and leave other terms to management discretion. *See, e.g.,* Dkt. #19-1 at 211, Art. 37.B (durational clause); *id.* at 90, Art. 17.A.3 (leave provisions take precedence over TSA policies); *id.* at 76, Art. 15.C.2 (management discretion over telework).

As the Ninth Circuit has explained, a wholly discretionary choice can "give rise to a resulting non-discretionary duty that is governed by a manageable legal standard." *Trout Unlimited*, 1 F.4th at 756. For example, while no one is obliged to attempt to rescue another, "once a rescue is attempted, the rescuer is held to a duty of care." *Id.* The same is true for TSA's choice to set terms and conditions of employment by negotiating a CBA: TSA had no obligation to enter into a CBA, but once TSA "imposed mandatory, judicially reviewable duties on the agency" by agreeing to the CBA, courts may review its attempt to rescind that CBA. *Id.*

Defendants, however, argue that the CBA is irrelevant because it is not a "federal agency regulation[]." Opp. 14. But it has similar binding force, and courts recognize that it is not only regulations that can permit an APA claim. For example, in *Alcaraz v. INS*, 384 F.3d 1150, 1161

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 8

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

(9th Cir. 2004), the court held that "various memoranda" issued by INS provided sufficient law to apply for APA jurisdiction, emphasizing that "established agency policies" could provide a meaningful standard. *See also ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (recognizing that "regulations or agency practice" can provide law to apply); *cf. NTEU v. FLRA*, 45 F.4th 121, 123 (D.C. Cir. 2022) (explaining that CBAs covered by Chapter 71 take precedence over subsequent agency regulations). Here, the 2024 CBA sets clear limits on agency discretion and provide a meaningful standard for review.

*2.*    As Plaintiffs' Motion established, whether viewed as an arbitrary or capricious claim or contrary to law claim, *see California v. ATF*, 718 F.Supp.3d 1060, 1085 (N.D. Cal. 2024), the Defendants' recission of the CBA violates the APA. Mot. at 23-25. In response, Defendants equate the CBA to internal policies that lack the force and effect of law and assert that the recission of the CBA was well-reasoned. Opp'n at 18. Neither point is persuasive.

First, to determine whether a document has independent force and effect of law, the agency pronouncement must prescribe substantive rules and satisfy any procedural requirements imposed by Congress. *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901-02 (9th Cir. 1996). Here, because the CBA sets forth rules that "affect[] individual rights and obligations," it is a substantive rule. *Id.* Additionally, TSA entered into the CBA pursuant to its congressionally granted authority to set terms and conditions of employment for TSOs. ATSA § 111(d). And while Defendants argue that the CBA lacks the force of law because it was not promulgated through notice and comment, the APA's notice and comment requirements do not apply to matters "relating to agency management or personnel." 5 U.S.C. § 553(a)(2).

Second, Defendants cannot show that the rescission of the CBA constituted reasoned decision-making. Mot. at 20-23. The requirements governing when an agency may change its

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 9

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

policies under *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), are not limited to "a rule or a formal agency position of general applicability," *see* Opp'n at 16, as Defendants claim. *See Pacito*, 2025 WL 893530, at *10-11 (applying *Fox* to agency decision to terminate cooperative agreements with resettlement agencies). Although Defendants assert that the Determination explained that changing course "brings TSA into alignment with the policies of the current Administration," Opp'n at 17, Defendants do not rebut Plaintiffs' explanation of why the cited Executive Orders were inapt, Mot. at 22-23. Nor do Defendants explain why exercising the management rights within the CBA—or even refusing to comply with specific sections of the CBA—is not an alternative "within the ambit" of existing policy that should have been considered. The fact that Defendants now deem this not a "realistic alternative," Opp'n at 17, does not excuse the failure to consider it. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (courts may not accept "*post hoc* rationalizations for agency action."). Accordingly, Plaintiffs are likely to succeed on their APA claims.

### C.  Plaintiffs Are Likely to Succeed on Their Fifth Amendment Claims

As Plaintiffs' Motion established, Defendants violated the Fifth Amendment by unlawfully abrogating the CBA and by doing so without sufficient process. Mot. at 28-32. Not contesting the abrogation of any property rights in the contract, Defendants instead argue that the 2024 CBA cannot convey property rights because it is an illusory agreement. Opp'n at 20. But their contention that the CBA was "subject to recission or change at any time at the sole judgment of the government" is belied by its text, which set forth precise standards for how and when it could be renegotiated. Dkt. #19-1 at 211, Art. 37. And it is belied by the very concept of collective bargaining: permitting unilateral abrogation of CBAs "undermines the very idea of collective bargaining" and "has no antecedent." *NTEU v. Chertoff*, 452 F.3d 839, 860 (D.C. Cir. 2006). To

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 10

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1   imagine that collective bargaining, as permitted by past determinations, might exist "without

2   imposing mutual obligations is simply bizarre." *Id.*

3          Furthermore, AFGE has a property interest in the CBA because its recognition clause

4   confers a "protected status," that of exclusive representative. *See Unger v. National Residents*

5   *Matching Program,* 928 F.2d 1392, 1397 (3d. Cir. 1991) (contract rights that "confer[] a protected

6   status" including those characterized by permanence are property). Plaintiffs' members also have

7   property interests in their CBA-provided just cause protections. *See* Dkt. #19-1 at 156, Art. 27.C.3;

8   *Phillips v. Marion Cnty. Sheriff's Off.*, 494 F. App'x 797, 799 (9th Cir. 2012) (property interest in

9   arbitration award under CBA); *Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 706

10  F.Supp.2d 59, 65 (D.D.C. 2010) (just cause provision in federal-contractor CBA created property

11  interest), *aff'd sub nom. Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25 (D.C. Cir.

12  2014).[8] Thus, because Plaintiffs and its members have protected property rights in the CBA, the

13  Defendant's unlawful abrogation of that CBA, without due process, entitles Plaintiffs to relief. [9]

14  **III.    Defendants Do Not Meaningfully Contest Irreparable Harm**

15         In their motion, Plaintiffs put forward evidence showing multiple different categories of

16  irreparable harm, including (1) their members' loss of the benefits of unionization, (2) loss of

17

18

19  ───────────────────

20  [8] Defendants' citation to *Ortloff v. Trimmer*, 2018 WL 2411755, at *3 (W.D. Wash. May 29, 2018), does not compel a different result because it involved probationary employees who could be terminated without just cause and without recourse to grievance procedures. And although Defendants claim that "TSA has an administrative grievance process available to process grievances initiated under the CBA," Opp'n at 20 n.6, their evidence shows that this process is not available for grievances filed regarding CBA violations and that Plaintiffs' members now lack the negotiated resort to an impartial arbitrator. Dkt. #27-1 at 3, Dkt. #27-2 at 2.

21

22

23  [9] Defendants assert a post-deprivation process would be available under the FLRA. Opp'n at 20-21. But for the reasons explained *supra* at Part I.A, Plaintiffs' members do not have access to the FLRA.

24

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 11

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    bargaining power and inability to provide core services, (3) loss of union dues, and (4) loss of

2    Constitutional rights. Mot. 32-34. Each category independently justifies injunctive relief.

3    First, Defendants do not contest that Plaintiffs members have been irreparably harmed due

4    to lost benefits of union representation—which is "immeasurable in dollar terms once it is delayed

5    or lost," *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011)—or that Plaintiffs

6    themselves have been irreparably harmed because they have lost bargaining power and have been

7    prohibited from providing their core services. Opp'n at 21-22. *See NTEU*, 2025 WL 1218044, at

8    *17-18 (reduced bargaining power from elimination of bargaining rights is irreparable).

9    When Defendants boasted that they ended payroll deduction of union dues, they stated that

10    "[n]early $15 million annually was being deducted for union dues, to the primary benefit of

11    AFGE." Dkt. #19-1 at 233 (March 7 email). But now, they argue that Plaintiffs' "economic loss is

12    speculative" and that "[t]he termination of automatic withholding is not the cause of Plaintiffs[']

13    loss." Opp'n at 21. It is not speculative that the elimination of the method by which 93 percent of

14    members paid union dues, Dkt. #19 at 2-3, ¶ 8, will harm Plaintiffs, who have explained why these

15    losses are not recoverable, Mot. at 33. Furthermore, Defendants have not just stopped payroll

16    deduction: they have ended the primary reasons to join a union, exclusive representation and

17    collective bargaining. This will reduce Plaintiffs' ability to retain and recruit members going

18    forward. Dkt. #19 at 8, ¶¶ 43-44; *see Small*, 661 F.3d at 1193 ("Whether or not the employer

19    bargains with a union chosen by his employees is normally decisive of its ability to secure and

20    retain its members."); *NTEU*, 2025 WL 1218044 at *19 (loss of dues from eliminating bargaining

21    rights not speculative and irreparable).

22    As to the Constitutional injury, Defendants rely upon *CTIA – The Wireless Ass'n v. City of*

23    *Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019), noting that "mere assertion of First Amendment

24

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 12

rights" is insufficient to show irreparable injury. But although a "mere assertion" is not enough, "[i]rreparable harm is relatively easy to establish in a First Amendment case" as it can be established by "demonstrating the existence of a colorable First Amendment claim." *Id.* (internal quotations omitted); *see also Museum of Handcar Tech. LLC v. Transp. Agency for Monterey Cnty.*, __ F.Supp.3d __, 2025 WL 1114458, at *9 (N.D. Cal. April 14, 2025) (applying standard to retaliation claim). Because AFGE has put forward a meritorious First Amendment claim, *see supra* Part II.A, it has shown irreparable harm and without relief, the chilling effect on its members will continue. Dkt. #20 at 5, ¶ 17 (noting members' fear of retaliation).

## IV.    The Equities Favor Relief

Defendants claim the public interest lies in being able to "implement change following elections," Opp'n at 23, but the equities do not favor newly elected officials being granted free reign to punish "hostile Federal unions" who speak out against them, *supra* at 5. Instead, they "favor preventing the violation of a party's constitutional rights." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (cleaned up).

## V.    No Bond is Warranted

Federal Rule of Civil Procedure 65(c) "invests the district court with discretion as to the amount of security required, *if any.*" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Defendants dutifully request a bond as instructed by the President's Memorandum attacking "activist organizations," *see* Mot. at 13, but give no justification beyond a bare assertion of harm. Opp'n at 23. In light of the public interest and the harms that would emerge from requiring sizeable bonds to enforce constitutional rights, this court should require no bond or a nominal bond. *See AFGE v. OPM*, 2025 WL 1150698, at *16 (N.D. Cal. Apr. 18, 2025) ($1 bond per union plaintiff); *NTEU*, 2025 WL 1218044, at *21 (no bond).

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 13

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

**CONCLUSION**

For the reasons stated above and in their Motion, Plaintiffs ask this Court to issue a preliminary injunction.

Respectfully submitted,

Date: May 2, 2025

*/s/Robert H. Lavitt*
Robert H. Lavitt, WSBA No. 27758
Barnard Iglitzin & Lavitt LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6004
lavitt@workerlaw.com

*I certify that this memorandum contains 4184 words, in compliance with the Local Civil Rules.*

*/s/ Abigail V. Carter*
Abigail V. Carter*
*/s/ J. Alexander Rowell*
J. Alexander Rowell*
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W. Suite 1000
Washington, D.C. 20005
(202) 842-2600
(202) 842-1888 (fax)
acarter@bredhoff.com
arowell@bredhoff.com

*/s/ Norman L. Eisen*
Norman L. Eisen*
*/s/ Pooja Chaudhuri*
Pooja Chaudhuri*
*/s/ Taryn Wilgus Null*
Taryn Wilgus Null*
State Democracy Defenders Fund
600 Pennsylvania Avenue SE, Suite 15180
Washington, D.C. 20003
(202) 594-9958
Norman@statedemocracydefenders.org
pooja@ statedemocracydefenders.org

*\*Admitted pro hac vice*

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 14

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

*Counsel for Plaintiffs*

*/s/ Rushab B. Sanghvi*
Rushab B. Sanghvi*
*/s/ Andres M. Grajales*
Andres M. Grajales*
American Federation Of
Government Employees, AFL-CIO
80 F Street, NW
Washington, D.C. 20001
(202) 639-6426
SanghR@afge.org
Grajaa@afge.org


*Admitted pro hac vice*

*Counsel for Plaintiff American Federation
of Government Employees (AFGE)*

REPLY BRIEF ISO PRELIMINARY INJUNCTION – 15

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**