1

Judge Pechman

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                      AT SEATTLE

10

11  AMERICAN FEDERATION OF                    CASE NO.  C25-0451MJP
    GOVERNMENT EMPLOYEES, AFL-CIO;
12  AMERICAN FEDERATION OF                    **NOTICE OF MOTION AND MOTION
    GOVERNMENT EMPLOYEES, AFL-CIO            TO DISMISS FOR LACK OF SUBJECT
13  TSA LOCAL 1121; COMMUNICATIONS           MATTER JURISDICTION AND FOR
    WORKERS OF AMERICA, AFL-CIO; and         FAILURE TO STATE A CLAIM;
14  ASSOCIATION OF FLIGHT ATTENDANTS-        MEMORANDUM OF POINTS AND
    CWA, AFL-CIO,                            AUTHORITIES IN SUPPORT THEREOF**
15
                            Plaintiffs,       (ORAL ARGUMENT REQUESTED)
16
17          v.                                (Note on motion calendar for:
                                                June 24, 2025)
18  KRISTI NOEM, in her official capacity as
    Secretary of Homeland Security; HA NGUYEN
19  McNEILL, in her official capacity as Acting
    Administrator of the Transportation Security
20  Administration; and TRANSPORTATION
    SECURITY ADMINISTRATION,
21
                            Defendants.
22

23

24        Defendants Kristi Noem and Ha Nguyen McNeill, in their official capacities, and the

25  Transportation Security Administration ("TSA"), through their attorneys, Teal Luthy Miller, Acting

26  United States Attorney for the Western District of Washington, and Brian C. Kipnis, Assistant

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR                    UNITED STATES ATTORNEY
    LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF                    5220 UNITED STATES COURTHOUSE
    POINTS AND AUTHORITIES IN SUPPORT THEREOF - 1                              700 Stewart Street
    (Case No. C25-0451MJP)                                                Seattle, Washington 98101-1271
                                                                              (206)-553-7970

United States Attorney, hereby move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing this lawsuit for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## INTRODUCTION

Relying on the limited waiver of sovereign immunity in the Administrative Procedure Act ("APA"), Plaintiffs seek an order from this Court specifically enforcing a collective bargaining agreement ("CBA") between TSA and the American Federation of Government Employees ("AFGE") that was rescinded by TSA in February 2025.  Plaintiffs' lawsuit should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because their claims concern labor-management relations in the federal workplace and such claims have been channeled to the Federal Labor Relations Authority ("FLRA"), depriving district courts of jurisdiction.  Additionally, pursuant to 5 U.S.C. § 702, this Court is "impliedly forbidden" by the Tucker Act, 28 U.S.C. § 1491(a)(1), from adjudicating Plaintiffs' contract-based claims.  Lastly, subject matter jurisdiction does not exist to review the agency action in question because it is committed to agency discretion by law.  5 U.S.C. § 701(a)(2).

Plaintiffs' constitutional claims are also subject to dismissal under Rule 12(b)(6).  Their Due Process claim does not allege a deprivation of a constitutionally protected property interest.  And their First Amendment retaliation claim relies on allegations that do not rise above the level of speculation.

## STATUTORY FRAMEWORK

1.      TSA was created by the Aviation and Transportation Security Act of 2001 ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597.  Congress intended to provide the agency head with very broad flexibility to manage the workforce of security screening personnel and "render[] inapplicable general federal statutes that otherwise would apply" to employment of screeners.  *See, e.g., Conyers v. MSPB*, 388 F.3d 1380, 1382-83 (Fed. Cir. 2004); H.R. Conf. Rep. No. 107-296, at 64 (2001) ("[I]n order to ensure that Federal screeners are able to provide the best security possible, the

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 2
(Case No. C25-0451MJP)

Secretary must be given wide latitude to determine the terms of employment of screeners.").

Accordingly, ATSA § 111(d) provides "notwithstanding any other provision of law, the [TSA

Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and

conditions of employment of Federal service" for the screening workforce.  115 Stat. at 620

(49 U.S.C. § 44935 note).  As the Ninth Circuit has recognized, this provision affords the TSA

Administrator "significant discretion over the employment of security screeners."  *AFGE Local 1 v.*

*Stone*, 502 F.3d 1027, 1030 (9th Cir. 2007).  That discretion encompasses both individualized

decisions about particular screeners and policy decisions for the screening workforce as a whole.

*See, e.g., AFGE TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 85 (D.D.C. 2006) ("[T]he plain text of

Section 111(d) clearly signals Congress's intention to grant the [TSA Administrator] authority to

design a personnel management system for airport security screeners[.]"); *Springs v. Stone*,

362 F. Supp. 2d 686, 699 (E.D. Va. 2005) (rejecting argument that ATSA § 111(d) does not

empower the TSA Administrator "to design and implement a [reduction in force]" policy for

screening personnel); *Connors v. United States*, 863 F.3d 158, 161-162 (2d Cir. 2017).

When TSA was incorporated into the Department of Homeland Security, *see* 6 U.S.C.

§ 203(2), all of the statutory authority bestowed on the TSA Administrator, including the discretion

granted by ATSA § 111(d), was "vested in" the Secretary of Homeland Security under 6 U.S.C.

§ 112(a)(3).  Accordingly, the Secretary is authorized to make determinations under ATSA § 111(d).

2.       In the Federal Service Labor-Management Relations Act ("FSLMRS"), Pub. L.

No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (1978), codified at 5 U.S.C. §§ 7101-7135, Congress

established a dedicated mechanism for resolving federal labor-management disputes.  The FSLMRS

"provides several alternative mechanisms to challenge management actions."  *Am. Fed'n of Gov't*

*Emps. v. Sec'y of Air Force*, 716 F.3d 633, 637 (D.C. Cir. 2013).  For example, "any person" may

file a charge of an "unfair labor practice" with the FLRA.  *See* 5 U.S.C. § 7118(a)(1).  A final

decision of the FLRA is reviewable only in the appropriate court of appeals.  5 U.S.C. § 7123(a).

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 3
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1

**STATEMENT OF FACTS**

2      As an exercise of discretion under ATSA § 111(d), the former TSA Administrator issued a

3  Determination in December 2022, allowing TSA screeners to engage in collective bargaining and

4  recognized AFGE as the exclusive representative for the workforce.  Pursuant to that determination,

5  AFGE and TSA entered into a CBA in May 2024.  Dkt. # 1, ¶¶ 2, 50.

6      Following the transition of presidential administrations, on February 27, 2025, the newly

7  appointed Secretary, exercising her authority under, *inter alia*, ATSA § 111(d), issued a new

8  Determination (the "Noem Determination") superseding and replacing the 2022 Determination.

9  Dkt. # 1, ¶¶ 8, 27.  The Noem Determination rescinded the CBA and revoked AFGE's status as the

10  exclusive representative for TSA screeners.  *Id.* at ¶¶ 9-10, 70-71.

11

**STANDARDS OF REVIEW**

12      1.      Pursuant to Rule 12(b)(1), a party may challenge a claim for relief for lack of subject

13  matter jurisdiction.  A motion to dismiss under Rule 12(b)(1) may present either a facial or factual

14  attack.  *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

15  Where, as here, a facial challenge is presented, the Court must presume the truth of Plaintiffs' factual

16  allegations "and draw all reasonable inferences in [their] favor."  *Doe v. Holy*, 557 F.3d 1066, 1073

17  (9th Cir. 2009).  However, the Court should not "assume the truth of legal conclusions merely

18  because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618,

19  624 (9th Cir. 1981).

20      2.      Pursuant to Rule 12(b)(6), a party may challenge a claim for relief on grounds that it

21  fails to state a claim upon which relief may be granted.  "To survive a Rule 12(b)(6) motion to

22  dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

23  that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, (2009) (internal quotation marks

24  omitted).  "Factual allegations must be enough to rise above the speculative level."  *Bell Atl. Corp. v.*

25  *Twombly*, 550 U.S. 544, 555 (2007).  Where the complaint does not permit the court to infer more

26

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 4
(Case No. C25-0451MJP)

1  than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the

2  pleader is entitled to relief." *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

3  **ARGUMENT**

4  I.    EXCLUSIVE ORIGINAL JURISDICTION RESTS WITH THE FLRA

5      The Court lacks subject-matter jurisdiction over this lawsuit because Congress has implicitly

6  precluded district courts from reviewing the agency action at issue—a determination concerning

7  collective bargaining and representation rights for TSA's screening workforce— "by specifying a

8  different method to resolve" a dispute concerning that type of action. *Axon Enter., Inc. v. FTC*,

9  598 U.S. 175, 185 (2023). As explained below, Congress has channeled the dispute Plaintiffs raise

10 in this case to the FLRA.

11     The FSLMRS "establishes a scheme of administrative and judicial review" for labor relations

12 disputes between the Executive Branch and unions representing federal employees. *AFGE v. Trump*,

13 929 F.3d 748, 752 (D.C. Cir. 2019). That scheme is the exclusive avenue for raising and

14 adjudicating legal challenges within its scope. *Id*. at 755; *Columbia Power Trades Council v. U.S.*

15 *Dep't of Energy*, 671 F.2d 325, 327 (9th Cir. 1982) ("[T]he [FLRA] possesses exclusive jurisdiction

16 over federal labor relations matters."); *Karahalios v. Def. Language Inst./Foreign Language Ctr.*

17 *Presidio of Monterey*, 821 F.2d 1389, 1393 (9th Cir. 1987) (noting "grievances of federal

18 employees" must be "channel[ed]" to the FLRA, and the district court lacks jurisdiction to consider

19 them), *aff'd*, 489 U.S. 527 (1989). Thus, if a dispute is of the type Congress intended to fall within

20 the ambit of FSLMRS's special scheme, an aggrieved union is confined to that scheme and cannot

21 proceed instead, or in parallel, with an action in district court. *Trump*, 929 F.3d at 754; *see generally*

22 *Axon*, 598 U.S. at 185. A district court presented with such a dispute lacks subject-matter

23 jurisdiction and must dismiss the case. *Trump*, 929 F.3d at 754; *Axon*, 598 U.S. at 185.

24     Under the FSLMRS, the FLRA is the exclusive entity charged with reviewing covered

25 disputes in the first instance. *See, e.g., Trump*, 929 F.3d at 752*; Khenaisser v. Zinke*, 693 F. App'x

26 608, 609 (9th Cir. 2017) (district court lacks jurisdiction over unfair labor practice claims, which

27

28 NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
   LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
   POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5
   (Case No. C25-0451MJP)

must be channeled to the FLRA).  Judicial review of the FLRA's decisions is thereafter available in the courts of appeals.  *Id.*; 5 U.S.C. § 7123(a).  When hearing a petition for review of an FLRA decision, the courts of appeals may review broad statutory and constitutional claims even if the FLRA lacked the authority to consider such claims in its proceedings.  *Trump*, 929 F.3d at 759.

Here, Plaintiffs challenge the Noem Determination that TSA's screening workforce is not entitled to engage in collective bargaining or be exclusively represented by any organization for any purpose.  That challenge is plainly the type of dispute Congress channeled to the FLRA.  Indeed, the history of AFGE's past efforts to challenge a nearly identical TSA Determination issued in 2003 confirms the FLRA, and not a district court, is the proper forum in which to dispute TSA decisions regarding the availability of collective bargaining and representation rights for the agency's screening workforce.

Using the exact same language as the Noem Determination, the 2003 Determination stated that TSA screeners were not "entitled to engage in collective bargaining or be represented for the purpose of engaging in such bargaining by any representative or organization."  AFGE sought to challenge that determination in both FLRA proceedings and a district court lawsuit.  In *AFGE & TSA*, 59 F.L.R.A. 423 (2003), the union asserted, among other claims, that TSA lacked statutory authority to make a discretionary determination prohibiting collective bargaining rights for the screening workforce.  The FLRA granted review of the union's claims and ruled on the merits of the statutory claim, holding the 2003 Determination was a lawful exercise of TSA's authority, as Congress empowered the agency with "unfettered discretion" to determine the terms and conditions of employment for screener personnel, including with regard to collective bargaining rights.  *Id.* at 430.

By contrast, AFGE's parallel effort to challenge the 2003 Determination in a district court lawsuit was barred on jurisdictional grounds.  The union filed a complaint seeking an injunction and declaratory judgment on the grounds that TSA "did not have statutory authority" to foreclose bargaining and doing so was "arbitrary and capricious agency action in violation of the

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 6
(Case No. C25-0451MJP)

1    Administrative Procedure Act, 5 U.S.C. § 706." *AFGE v. Loy*, 281 F. Supp. 2d 59, 61-62 (D.D.C.

2    2003).  That court held "the Union's arguments concerning the statutory issues have been, and

3    should be, made in the first instance to the FLRA and then, if needed to the Courts of Appeals [in a

4    petition for review of the FLRA's decision]."  *Id.* at 62.  When AFGE appealed the district court's

5    conclusion that it lacked jurisdiction, the D.C. Circuit affirmed, holding the FLRA "had exclusive

6    authority to render judgment" as an initial matter on the union's statutory challenges to the TSA

7    Administrator's ATSA § 111(d) Determination with judicial review "only in a court of appeals

8    pursuant to [5 U.S.C.] § 7123." *AFGE v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004); *see also id.* at

9    935.

10          These mutually reinforcing decisions by the FLRA and the D.C. Circuit firmly establish that

11   the FLRA—and not a district court—was the proper forum for AFGE to initiate a challenge to the

12   2003 Determination.  The same holds true in this lawsuit: Plaintiffs must bring their challenge to the

13   Noem Determination to the FLRA in the first instance, as Congress has channeled review of this

14   type of dispute to the FLRA and thereby deprived district courts of subject-matter jurisdiction.

15          Here, Plaintiffs claim, among other things, that the Noem Determination "is arbitrary and

16   capricious" and "contrary to law" in violation of the APA.  Dkt. # 1, ¶ 11; see also *id.* ¶¶ 102–111;

17   112–117.  Those are the exact same claims AFGE brought against the 2003 Determination.  *See Loy*,

18   281 F. Supp. 2d at 62.  As was the result then, this Court should find it lacks subject-matter

19   jurisdiction over those claims, as Congress has channeled review to the FLRA.  *Loy*, 367 F.3d at

20   936; *see also AFGE v. Ezell*, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (explaining that APA

21   claims attacking agency action regarding federal sector labor issues "are the type of challenges

22   Congress intended for review within the [FSLMRS] scheme.").

23          Plaintiffs may argue their other claims—a First Amendment retaliation claim and a Fifth

24   Amendment due process claim—are not of the type Congress intended to channel to the FLRA.  But

25   the FSLMRS review scheme is not implemented piecemeal on a claim-by-claim basis.  *See Trump*,

26   929 F.3d at 758 (explaining "[w]e need not map the precise contours of the FLRA's authority" with

27

28   NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
     LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
     POINTS AND AUTHORITIES IN SUPPORT THEREOF - 7
     (Case No. C25-0451MJP)

1  regard to every claim asserted to determine that a case must be channeled to the FLRA); *see also*

2  *Sec'y of Air Force*, 716 F.3d at 637 (rejecting the union's argument that the district court has

3  jurisdiction because "it can more efficiently adjudicate" the union's claims that the federal policy at

4  issue is "contrary to statute on a nationwide, rather than local-by-local, basis").  Instead, if the

5  subject matter of an agency decision—like the Noem Determination at issue here—is within the

6  FLRA's purview, all legal claims challenging that decision must be brought before the FLRA in the

7  first instance.  *Cf., NTEU v. Trump*, 2025 WL 561080, at *5 (D.D.C. Feb. 202, 2025) (explaining

8  claims "brought by a union representing federal employees against their federal employers" are

9  "federal labor-management relations claims" and thus "of the type generally covered by the

10  FSLMRS scheme" such that they must be brought to the FLRA).  Accordingly, the exact nature of

11  Plaintiff's additional legal theories does not matter; their overall challenge to the Noem

12  Determination must be brought together in the FLRA.  *See Loy*, 367 F.3d at 936-37 ("What matters

13  is whether" the gravamen of the complaint is "'arguably' within the FLRA's authority to decide.");

14  *see also id*. at 936 ("Parties may not bifurcate their case, pursuing only statutory claims before the

15  FLRA while litigating closely related constitutional claims in the district court."); *AFGE v. OPM*,

16  2025 WL 900057, at *4 (N.D. Cal. Mar. 24, 2025) (explaining "collective-bargaining related" claims

17  "could carry [other claims] with them" to the FLRA and beyond to a court of appeals).

18       Importantly, it also does not matter that the FLRA may be unable to act on all of Plaintiffs'

19  claims.  *See Trump*, 929 F.3d at 756 (discussing *AFGE v. Sec'y of the Air Force*, 761 F.3d 633

20  (D.C. Cir. 2013), and explaining unions were required to raise their challenges to a dress code

21  regulation "through the [FSLMRS] scheme even if that made it impossible to obtain particular forms

22  of review or relief"); *NTEU*, 2025 WL 561080, at *7 ("NTEU's assertion that it cannot recover all

23  the relief it seeks from the FLRA does not change the Court's analysis.").  If the FLRA determines it

24  cannot act on a particular claim presented to it, that claim is preserved for review by a court of

25  appeals after final action by the FLRA.  *Trump*, 929 F.3d at 759 ("[W]e may review the unions'

26  broad statutory and constitutional claims on appeal from an FLRA proceeding even if the FLRA

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 8
(Case No. C25-0451MJP)

cannot."). Accordingly, "meaningful judicial review" is ultimately available through the process prescribed by the FSLMRS on any legal claim Plaintiffs have asserted, or could potentially assert, to challenge the Noem Determination. *Id.*; *see also id.* at 758 ("[I]t is of no dispositive significance whether the [FLRA] has the authority to rule on constitutional claims so long as the claims can eventually reach an Article III court fully competent to adjudicate them.") (quotations omitted)). But that review is only available in the courts of appeals—not this Court or any other district court—and only after Plaintiffs have brought their challenge to the FLRA. *See, e.g.*, *Anoruo v. McDonald*, 2016 WL 7115999, at *4 (D. Nev. Dec. 5, 2016).

Certain challenges to agency action may be outside the coverage of a special statutory review scheme like that established in the FSLMRS. *See Axon*, 598 U.S. at 185. But a challenge to agency action can only "be found to fall outside of the scope of a special statutory scheme in limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claims are wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *Trump*, 929 F.3d at 755 (quotation omitted). "These considerations do not form three distinct inputs into a strict mathematical formula," but are "general guideposts" for determining whether a challenge falls outside "an overarching congressional design." *Trump*, 929 F.3d at 755 (quotations omitted). Here, all three considerations point to the conclusion that Plaintiffs cannot proceed in this Court and must bring their claims to the FLRA.

First, as explained above, "all meaningful judicial review is not foreclosed by requiring [Plaintiffs] to proceed through the [FSLMRS] scheme," as they can ultimately have their claims considered by a court of appeals after FLRA proceedings conclude. *Id.* Second, Plaintiffs' challenge here is not "wholly collateral" to the FSLMRS scheme, as disputes about TSA's authority with regard to collective bargaining and exclusive representation rights for its screening workforce have been adjudicated by the FLRA, *see e.g.,* 59 F.L.R.A. 423, *supra*; *see also AFGE & TSA*, 65 F.L.R.A. 242 (2010), and the relief sought in the complaint is available through the FSLMRS scheme, either by order of the FLRA or from a reviewing court of appeals, *see Trump*, 929 F.3d at

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 9
(Case No. C25-0451MJP)

United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

760.  Finally, Plaintiffs' challenge is plainly not "beyond the expertise" of the FLRA.  As noted, the FLRA has previously adjudicated similar issues arising from determinations about TSA's screening workforce made pursuant to ATSA § 111(d), and it has "specialized experience in the field of federal labor relations" that is more than just "helpful background knowledge."  *Id.* (quotations omitted).

Because none of the three factors above supports excluding this case from the FSLMRS special review scheme, this Court lacks subject-matter jurisdiction over Plaintiffs' claims.  Plaintiffs may only pursue their claims by presenting them to the FLRA in the first instance.  *See Trump*, 929 F.3d at 761 (finding lack of subject-matter jurisdiction after three-factor analysis); *see also NTEU*, 2025 WL 561080, at *8 (same); *Ezell*, 2025 WL 470459, at *2 (same); *Nat'l Ass'n of Agric. Emps. v. Trump*, 462 F. Supp. 3d 572, 586 (D. Md. 2020) (same).

It is no answer to the above for Plaintiffs to argue that they have no way to bring their claims before the FLRA.  Plaintiffs cannot identify any FLRA decision or federal court decision holding that the FLRA cannot review an ATSA § 111(d) determination about collective bargaining and representation rights for TSA's screening workforce.  Indeed, as explained above, the FLRA has previously reviewed such determinations.  Nor is it any answer for Plaintiffs to say that prior FLRA proceedings are distinguishable because they were initiated by petitions to hold an election. Plaintiffs may raise their challenge to the Noem Determination by filing a charge of an unfair labor practice.  The FSLMRS provides that the FLRA may consider a claim that an agency has committed an unfair labor practice by enforcing "any rule or regulation . . . which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed."  5 U.S.C. § 7116(a)(8).  Here, Plaintiffs claim that the Noem Determination unlawfully rescinded a preexisting CBA.  That claim is, at a minimum, "arguably" within the FLRA's purview to review unfair labor practices.  *See Loy*, 367 F.3d at 936-37 ("What matters is whether" the gravamen of the complaint is "'arguably' within the FLRA's authority to decide.").

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 10
(Case No. C25-0451MJP)

United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1      Finally, it may not simply be assumed that the FLRA would refuse jurisdiction to hear

2 Plaintiffs' claims if presented in an unfair labor practice charge.  And this Court's subject-matter

3 jurisdiction may not be premised on an assumption alone, nor enable Plaintiffs to circumvent the

4 process prescribed in the FSLMRS.  Plaintiffs must bring their claims to the FLRA and allow it to

5 determine its own jurisdiction.  And even if Plaintiffs are proven correct by the FLRA's concluding

6 that it lacks jurisdiction, a circuit court could review the FLRA's decision and address any claim

7 presented in the case.[1]

8

9   **II.  THE NOEM DETERMINATION WAS AN EXERCISE OF UNREVIEWABLE AGENCY DISCRETION**

10      As to Plaintiffs' APA claims, this Court lacks subject-matter jurisdiction for the additional

11 reason that the APA simply does not provide for review of the Noem Determination.  "Most—but

12 not all—final agency actions are reviewable" under the APA.  *Trout Unlimited v. Pirzadeh*, 1 F.4th

13 738, 751 (9th Cir. 2021).  Applicable here, 5 U.S.C. § 701(a)(2) excepts from judicial review agency

14 action "committed to agency discretion by law."  That exception has been restricted to two "rare

15 circumstances:" (1) "where the relevant statute 'is drawn so that a court would have no meaningful

16 standard against which to judge the agency's exercise of discretion,'" and/or (2) where the

17 challenged agency action required "'a complicated balancing of a number of factors which are

18 peculiarly within [the agency's] expertise.'"  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (*quoting

19 Heckler v. Chaney*, 470 U.S. 821, 830-31 (1985)); *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir.

20 2000).  When a challenged agency action falls within the exception, a district court lacks subject-

21 matter jurisdiction over APA claims, and they must be dismissed.  *See, e.g., Spencer Enters., Inc. v.

22 United States*, 345 F.3d 638, 691 (9th Cir. 2003).

23

24 1  The recent preliminary injunction decision in *NTEU v. Trump*, 2025 WL 1218044 (D.D.C. Apr. 28, 2025), which
25 allowed a union to pursue in district court a challenge to an Executive Order that should have been channeled to the
FLRA, was wrongly decided and the government has filed an appeal.  *NTEU v. Trump*, 2025 WL 1441563, at *1
26 (D.C. Cir. May 16, 2025).  In any event, *NTEU v. Trump* is inapposite here because it pertains to categorical exemptions
from the FSLMRS statute.  Here, labor relations disputes pertaining to TSA's screening workforce have not been
27 categorically withheld from the FSLMRS review scheme by an Executive Order.  Indeed, as noted above, the FLRA has
previously considered disputes regarding TSA determinations issued under ATSA § 111(d).

28 NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 11
(Case No. C25-0451MJP)

In this case, the agency action Plaintiffs seek to challenge under the APA—a determination regarding collective bargaining and representation rights for TSA's screening workforce made pursuant to ATSA §111(d) —is precisely the type of action excepted from APA review.  Both of the circumstances triggering the exception are present here.  First, Section 111(d) was purposefully drawn to confer broad discretion to manage TSA's screening workforce, and it does not provide any judicially manageable standards for reviewing the exercise of that discretion.  Second, the Noem Determination plainly required complicated balancing of a number of factors peculiarly within TSA and DHS expertise, "including the prioritization of agency resources, likelihood of success in fulfilling the agency's statutory mandate, and compatibility with the agency's overall policies." *Newman*, 223 F.3d at 943 (quotation omitted).

> i.    *There is no meaningful standard of review to be applied.*

With regard to a lack of judicially manageable standards, ATSA § 111(d) does not provide any framework "for judging how and when an agency should exercise its discretion." *Trout Unlimited*, 1 F.4th at 751 (quotation omitted).  Accordingly, the statute "can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Heckler*, 470 U.S. at 830.  The Second Circuit reached that conclusion in *Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009), involving a challenge to the TSA Administrator's "decision not to utilize the FAA's personnel management system" for TSA's screening workforce.  The Second Circuit held the challenged decision was "committed to agency discretion by ATSA Section 111(d) and, thus, is not reviewable under the APA." *Id*. at 148.  The court was careful to note its holding was limited only to the specific challenged decision, and it did not reach the question of "whether APA review is unavailable with respect to all of the Administrator's decisions regarding screener employment." *Id*.  However, the court strongly indicated the type of decision challenged here is also unreviewable under the APA.  The Second Circuit explained when the ATSA was enacted "it was understood that matters . . . such as whether screeners can join a union . . . were left to the Administrator's discretion." *Id*. at 147 (quotation omitted); *see also Connors*, 863 F.3d at 161 ("ATSA's grant of

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 12
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

TSA discretion over screening personnel employment matters is sweeping in its breadth.").

As *Conyers* clearly suggests, a determination about whether to permit TSA's screening workforce to engage in collective bargaining or be represented by a union is exactly the kind of decision that ATSA § 111(d) intended to commit to agency discretion.  The FLRA, too, has recognized the point, holding "TSA screeners have collective bargaining rights only at the discretion of the [TSA Administrator]."  *AFGE*, 59 F.L.R.A. at 429.  And because Section 111(d) "is not ambiguous in granting . . . unfettered discretion," *id*. at 429 *n*.6, the statute does not provide any judicially manageable standards for judging exercises of that discretion.  Accordingly, the challenged determination here is simply not reviewable under the APA.  *Cf. Springs*, 362 F. Supp. 2d at 703 (finding TSA's reduction-in-force policy for the screening workforce was unreviewable under the APA because "ATSA offers no guidance on how TSA should implement a RIF," and "[t]here is simply nothing to which this Court could turn to evaluate whether the RIF standards developed by TSA were arbitrary or capricious").

Plaintiffs seem to tacitly concede that the ATSA itself does not provide any meaningful standards that could be applied to consider its APA claims.  Thus, Plaintiffs have argued instead that agency policy is the source of such standards.  Dkt. # 18 at p. 27.  The flaw in this argument is that the agencies have not promulgated any regulation specifying procedures or limitations on the exercise of Section 111(d) authority.  Nor have they otherwise adopted any overarching procedural policy for how Section 111(d) determinations should be made.  Certainly, TSA's prior 2022 Determination, and the 2024 CBA pursuant to that determination, are not policies that cabin the otherwise unfettered discretion granted by Section 111(d).  They are neither federal agency regulations having the force and effect of law nor general procedural policy or any standards governing how statutory discretion must be exercised.  Instead, the 2022 Determination and the CBA are themselves exercises of statutory discretion.  In other words, they are exercises of informal policy; they do not establish overarching procedural policies or standards about how future substantive policy choices under ATSA § 111(d) should be made.  And when an agency makes a

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 13 (Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

policy choice as an exercise of unfettered statutory discretion, that choice does not open the door to APA review of all future policy choices going forward. *See Trout Unlimited*, 1 F.4th at 765 (Bress, J., dissenting) (explaining that when an agency makes a decision under a statutory scheme affording unfettered discretion, a later decision to change course may be "lousy, prudent, or somewhere in between," but cannot be reviewed under the APA given the absence of any "legal standard in the statute . . . by which to form that judgment").

Case law previously cited by Plaintiffs does not support a conclusion that the 2022 Determination and 2024 CBA provide meaningful standards for review of the Noem Determination. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020), and *Velazquez-Hernandez v. ICE*, 500 F. Supp. 3d 1132 (S.D. Cal. 2020), arising in the context of immigration enforcement, are inapposite. Both cases involved exercises of "enforcement discretion" as recognize in *Heckler v. Chaney*, 470 U.S. 821. That type of discretion is fundamentally different. Enforcement discretion is not the product of a statute; rather, it is grounded on "tradition" and "the general unsuitability for judicial review of agency decisions to refuse enforcement." *See* 470 U.S. at 831. By contrast, the challenged determination in this case was made under a particular statute clearly and specifically conferring unfettered discretion to manage TSA's screening workforce. And the determination has nothing to do with criminal or civil enforcement actions. Accordingly, this case bears no resemblance to immigration enforcement cases, and they are simply not instructive.

Four other cases cited by Plaintiffs, *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015); *King Cnty. v. Azar*, 320 F. Supp. 3d 1167 (W.D. Wash. 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, 328 F. Supp. 3d 1133, 1148-49 (E.D. Wash. 2018); and *Trout Unlimited v. Pirzadeh*, 1 F.4th 738 (9th Cir. 2021)), are also plainly distinguishable. All four cases involve the issuance of regulations having the force and effect of law to implement a statute granting discretion. And none holds that, in the absence of such regulations, an agency limits its future discretion simply by making a substantive policy decision. Here, there are no DHS or TSA regulations promulgated under ATSA § 111(d) to prescribe how decisions regarding TSA's screening workforce should be

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 14
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

made.  Nor are there any regulations establishing collective bargaining or representation rights for

TSA's workforce.  Accordingly, unlike the situation in these four cases, this Court cannot judge the

challenged determination against a "regulatory standard," *Planned Parenthood*, 328 F. Supp. 3d at

1147, or "regulatory requirements," *King Cnty.*, 320 F. Supp. 3d at 1177.[2]

In summary, because there are no judicially manageable standards of review that can be

applied to the challenged determination in this case, there is no jurisdictional basis for Plaintiffs'

claims under the APA.  *See Springs*, 362 F. Supp. 2d at 703.

> ii.  *The challenged determination necessarily involved a complicated balancing of factors within the particular expertise of DHS and TSA.*

As demonstrated above, the Noem Determination is excepted from APA review under

5 U.S.C. § 701(a)(2) because Plaintiffs have not identified—and cannot identify—any meaningful

standard against which to judge the agency's exercise of discretion under ATSA § 111(d).  But the

Noem Determination is also unreviewable for the additional and independent reason that it was the

result of decision-making involving "complicated balancing of a number of factors which are

peculiarly within [the agency's] expertise."  *Lincoln*, 508 U.S. at 191 (quotation omitted).

As the Ninth Circuit has explained, decision-making factors especially within an agency's

expertise include "prioritization of agency resources, likelihood of success in fulfilling the agency's

statutory mandate, and compatibility with the agency's overall policies."  *Newman*, 223 F.3d at 943

(quotation omitted).  On its face, the Noem Determination was plainly based on consideration of

such factors.  The Determination states past decisions allowing collective bargaining for TSA

screeners "impeded Congressional intent of a flexible workforce" and "failed to serve TSA's critical

mission to protect the transportation system and keep Americans safe."  The Determination also

states it was made, in part, to be "consistent with" broader policies for the federal government

overall set forth in Executive Orders and policy memoranda issued by the President and Office of

---

2  Other cases previously relied upon by Plaintiffs do not result in a different conclusion.  *NRDC v. Haaland*, 102 F.4th 1045 (9th Cir. 2024) is inapposite.  The defendants did not argue that the challenged decision was committed to agency discretion by law and thus excepted from APA review.  *Abdelhamid v. Ilchert*, 774 F.2d 1447 (9th Cir. 1985), supports Defendants' position.  *Id.* at 1450.

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 15
(Case No. C25-0451MJP)

Personnel Management.  In addition, the Determination states it was made "to ensure that [TSA screeners'] critical national security responsibilities are carried out to maximize governmental efficiency and productivity."

Because the Noem Determination is clearly the type of discretionary decision that requires balancing many different considerations involving agency expertise, it cannot be reviewed under the APA.  *Cf. Iqbal v. Blinken*, 2023 WL 7418353 (E.D. Cal. Nov. 9, 2023).

### III.    ADJUDICATION OF PLAINTIFFS' CONTRACT CLAIMS UNDER THE APA IS IMPLIEDLY FORBIDDEN BY THE TUCKER ACT

Plaintiffs' complaint invokes the waiver of sovereign immunity embodied in the APA. However, the claims in Plaintiffs' complaint are based on rights that Plaintiffs claim to possess solely due to contractual commitments made by TSA to AFGE, as embodied in the CBA, and their complaint seeks a remedy, specific performance of the CBA, that is quintessentially a contract remedy.  *See* Dkt. # 1, p. 23.  However, the waiver of sovereign immunity embodied in the APA encompasses neither the contract-based claims asserted by Plaintiff nor the specific performance remedy they seek.

The APA is a limited waiver of the Government's sovereign immunity.  *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1028 (9th Cir. 2023).  Among those limitations, the APA does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702; *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998).  That statutory carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

The so-called Tucker Act, 28 U.S.C. § 1491(a)(1), is a statute that "impliedly forbids" relief under the APA with respect to contractual claims asserted against the federal government.  *Tucson Airport Auth.*, 136 F.3d at 646; *see also N. Star Alaska v. United States*, 9 F.3d 1430, 1432 (9th Cir. 1993) (*en banc*).  In simple terms, because the limited waiver of sovereign immunity in the Tucker

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 16
(Case No. C25-0451MJP)

Act provides the exclusive means to sue the federal government for relief on claims based on a contract, it forecloses a party from seeking relief against the federal government on that type of claim under the APA. *See Tucson Airport Auth.*, 136 F.3d at 648. And that is true even if the U.S. Court of Federal Claims is jurisdictionally incapable of providing a remedy on the claim. *Doe v. Tenet*, 329 F.3d 1135, 1141-1142 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005).

Because of these sovereign immunity-based limitations on the subject matter jurisdiction of this Court, Plaintiffs' complaint, which is comprised entirely of contract-based claims, is subject to dismissal for lack of subject matter jurisdiction. Count I of Plaintiffs' complaint alleges TSA's rescission of the CBA was a "reversal of existing policy" that, in Plaintiffs' view, was inadequately explained and, therefore, "arbitrary and capricious." Dkt. # 1, ¶ 107 (citing 5 U.S.C. § 706(2)(a). The so-called "reversal of policy," however was TSA's decision to terminate its agreement with AFGE. Regardless of how Plaintiffs may characterize Defendants' actions, the essence of their claim is unchanged, *i.e.*, AFGE had a "binding contract" with TSA that was unlawfully rescinded and for which Plaintiffs seek an order compelling specific performance of the contract by TSA. *See Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C. Cir. 1982)*; and see Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir. 1963) (district court lacked jurisdiction where "the claim [was] in substance a breach of contract claim"). As such, Count I is subject to dismissal. *See Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, ___ F.4th ___, 2025 WL 1393876, at *2 (9th Cir. May 14, 2025) (Tucker Act impliedly forbids an APA action seeking injunctive relief that is a disguised breach-of-contract claim).

The conclusion that Count I is a disguised breach-of-contract claim is reinforced by the fact that Plaintiffs' Complaint identifies no statutory basis for the claim. Thus, judicial review of Defendants' actions for supposedly arbitrary and capricious agency action is not possible because there is no benchmark against which the Court can measure the rationality or irrationality of Defendants' actions. *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 955 (9th Cir. 2017) ("[A]rbitrary and capricious review does not apply in the absence of a statutory benchmark

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 17
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    against which to measure an agency's exercise of discretion.").  Further, it is well-settled that the

2    APA itself is not a source of substantive rights.  *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr.*

3    *Rev.*, 959 F.2d 742, 753 (9th Cir. 1991).  Thus, Plaintiffs cannot rely on the circular logic that the

4    "statutory basis" for their APA arbitrary and capricious claim is "the APA itself."  *See Or. Nat. Res.*

5    *Council v. Thomas*, 92 F.3d 792, 798 *n*.11 (9th Cir. 1996) (rejecting proposition that there is such a

6    thing as a "free-standing APA 'arbitrary and capricious claim[ ]" and suggesting standing is lacking

7    where the statutory basis for an APA claim is absent.)

8        There is no nuance to Plaintiffs' Count II.  Plaintiffs allege the "United States are as much

9    bound by their contracts as are individuals," *id.* at ¶ 114, and the CBA "is a binding contract,"

10    Defendants "lack[ed] authority to unilaterally rescind," *id.* at ¶ 115.  Count II has no statutory basis.

11    It relies on the CBA itself.  Thus, Count II, which is patently a breach of contract claim, should also

12    be dismissed.  *Villegas v. United States*, 926 F. Supp. 2d 1185, 1204 (E.D. Wash. 2013).

13        Like Count I, Count III of Plaintiffs' complaint simply attaches a different label to TSA's

14    rescission of the CBA, characterizing it as "an act of retaliation" for the exercise of constitutional

15    rights.  Dkt. # 1, ¶ 8.  Simply, placing a constitutional label on a contract-based claim does make it

16    justiciable under the APA.  *See Tucson Airport Auth.*, 136 F.3d at 647.

17        Count IV, another constitutional claim, is also contract-based and subject to dismissal.

18    According to the Complaint "[b]y unilaterally rescinding the 2024 CBA and terminating all pending

19    grievances and arbitrations initiated pursuant to that CBA, the Noem Determination eliminates

20    protected property interests of AFGE, its affiliates, and its members without due process."  Dkt. # 1,

21    ¶ 130.   Because the property interest giving rise to Plaintiffs' Due Process claim is the CBA itself,

22    Plaintiffs' Count IV is also a contract-based claim for which judicial review under the APA is

23    unavailable.  *Tucson Airport Auth.*, 136 F.3d at 647 (declining to follow *Transohio v. Dir., Of. of*

24    *Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992)); *see also Doe v. Tenet*, 329 F.3d 1135, 1142 (9th

25    Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 ("Our circuit has taken a stricter view, however, and

26

27

28    NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
     LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
     POINTS AND AUTHORITIES IN SUPPORT THEREOF - 18
     (Case No. C25-0451MJP)

1  has held that constitutional claims based on a contractual property interest fall within the Tucker Act

2  and may not be brought in district court.")

3      Moreover, the nature of the relief sought by all of these counts "sounds in contract." *United

4  States Conf. of Cath. Bishops v. U.S. Dep't of State*, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025).

5  Stripped of equitable phrasing, the requested relief seeks just one thing: to compel Defendants to

6  resume operating in accordance with and under the terms of the rescinded CBA.  In other words,

7  Plaintiffs are seeking "the classic contractual remedy of specific performance." *Spectrum Leasing

8  Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985).

9      Notably, it is not required for subject matter jurisdiction over a contract-based APA claim to

10  be foreclosed that the underlying contract be "money mandating."  While a claim that is

11  jurisdictionally cognizable under the Tucker Act will never be cognizable under the APA, the

12  converse is not true.  Even though a contract-based claim may not be jurisdictionally cognizable

13  under the Tucker Act, it may still be impliedly forbidden by the Tucker Act.  *See United States v.

14  Park Place Assocs., Ltd.,* 563 F.3d 907, 935 (9th Cir. 2009) (plaintiff held "barred … from our

15  courts" despite being turned away by the Court of Federal Claims).  As the Ninth Circuit has

16  explained, "[t]he fact that the Court of Federal Claims has no power to grant specific enforcement of

17  a contract does not mean that a suit for specific enforcement can be brought in district court." *Doe v.

18  Tenet*, 329 F.3d 1135, 1141-1142 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 1 (2005).  "The

19  Tucker Act is a limited waiver of sovereign immunity for contract actions; equitable contract

20  remedies denied to the Court of Federal Claims are not within the waiver and may not be enforced

21  against the United States at all." *Id.; and see M–S–R Pub. Power Agency v. Bonneville Power

22  Admin.*, 297 F.3d 833, 840 n.7 (9th Cir. 2002) (dismissing claims sounding in contract and stating:

23  "Where, as here, petitioner seeks equitable relief rather than damages, he may go wanting.").[3]

24

---

25  3 *Cf. Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, ___ F.4th ___, 2025 WL
1393876, at *3 (9th Cir. May 14, 2025) (Government did not make a strong showing it was likely to prevail on an
26  argument that a subcontractor who did not have a contract with the Government and who the Government conceded had
no right to sue under the Tucker Act was precluded from challenging a decision to withdraw grant funding for counsel to
27  represent unaccompanied children in immigration proceedings under the APA).

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 19
(Case No. C25-0451MJP)

In summary, because Plaintiffs' claims all rest on an alleged violation of rights arising from a contract, *i.e.*, the CBA, and seek a classically contractual remedy, *i.e.,* specific performance, they should all be dismissed for lack of subject matter jurisdiction.

IV.    PLAINTIFFS' COUNT IV (DUE PROCESS) FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

AFGE's argument that its Due Process rights have been violated rests on the unfounded assumption that every breach of a contract by the government not preceded by some form of a hearing necessarily results in a violation.  That is not the law.  First, not all contracts with a government entity give rise to a constitutionally protected property interest.  *See DeBoer v. Pennington*, 206 F.3d 857, 869 (9th Cir. 2000), *vacated on other grounds sub nom. City of Bellingham v. DeBoer*, 532 U.S. 992 (2001).  And even where a protected interest exists, the Constitution does not necessarily guarantee pre-deprivation process, as post-deprivation procedures such as "an ordinary breach-of-contract suit" may be adequate.  *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001).

Here, the existence of the CBA did not create a property interest protected by the Fifth Amendment.  The Ninth Circuit has identified two types of contracts with government entities giving rise to property interests protected under the Due Process Clauses of the Fifth and Fourteenth Amendments.  The CBA falls into neither category.  The "first type arises where the contract confers a protected status due to extreme dependence, as is the case with welfare benefits, or permanence, as is the case with tenure, or sometimes both, as frequently occurs in the case of social security benefits."  *DeBoer*, 206 F.3d at 869 (cleaned up).  The second type arises where the contract itself contains a provision allowing the governmental entity to terminate the contract only for cause.  *Id.*

The CBA does not confer any "protected status" on AFGE.  AFGE's relationship to TSA is clearly not remotely similar to that of an aged, blind or disabled person who is reliant on government benefits for their necessities of daily living.  Indeed, AFGE derives its revenue, not from TSA, but from membership dues paid by TSA employees.  *See* dkt. # 1, ¶ 88.  The CBA also contains no term

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 20
(Case No. C25-0451MJP)

conferring a status on AFGE of "permanence" akin to tenure.  There is no clause in the CBA restricting TSA's authority to terminate the CBA at any time and for any reason.

The CBA was entirely dependent upon the 2022 Determination by TSA's former Administrator, which was itself an exercise of broad statutory discretion and thus subject to recission at any time at the sole judgment of the government.  Accordingly, because the CBA was never anything more than conditional; it could not create any entitlements for AFGE.  *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

AFGE also asserts the CBA granted its TSA screener members "a property right in their continued employment" by providing that adverse actions could only be taken for "just cause" and "reasons that will promote the efficiency of the service."  Dkt. # 18, p. 29, *ll*. 20-22.  But "Ninth Circuit precedent makes clear that where the only substantive restrictions on government decision-making are 'reasonableness' or 'good faith,'" a CBA "does not give rise to a constitutionally protected property interest."  *Ortloff v. Trimmer*, 2018 WL 2411755, at *3 (W.D. Wash. May 29, 2018) (and cases cited) (finding CBA requirement of termination only for "bona fide reasons relating to the business operation" did not create "a property interest sufficient to support a due process claim").[4]

Even assuming AFGE (or its TSA screener members) somehow acquired a constitutionally protected property interest arising from the CBA, Due Process does not require a hearing or other pre-deprivation process before recission of the contract, as the post-deprivation process available through a challenge to the recission in the FLRA (and the courts of appeals on a petition for review of an FLRA decision) is adequate.  *See, e.g., Hill v. City of Scottsdale*, 2012 WL 2952377, at *6 (D. Ariz. Jul. 19, 2012).

---

4  While the Plaintiff in *Ortloff* was fired during probation, the Court's holding does not turn on that fact but on the fact that there were not "particularized standards or criteria that significantly constrain[ed]" the decision.  *Allen v. City of Beverly Hills*, 911 F.2d 367, 371 (9th Cir. 1990) (quoting *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1436 (9th Cir.1986), *cert. denied*, 479 U.S. 1064 (1987).

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 21
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

V.    PLAINTIFFS' COUNT III (FIRST AMENDMENT RETALIATION) FAILS TO
      STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

In their First Amendment retaliation claim (Count III), Plaintiffs allege that the Noem
Determination and subsequent implementation by TSA constitute retaliation for lawsuits AFGE has
filed against the Administration.  Compl. ¶¶ 119–121.  As noted previously, there is no subject
matter jurisdiction in this Court to adjudicate this claim for the reasons set forth above.  In any event,
this claim—which is based wholly on speculation and alleged temporal proximity between the filing
of lawsuits and the issuance of the Determination—fails to meet Rule 12(b)(6) standards for the
legal sufficiency of a claim.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations
sufficient "to rise above the speculative level." *Bell Atl. Corp.,* 550 U.S. at 555.  A claim is facially
plausible when the plaintiff's complaint alleges facts allowing the court to draw a reasonable
inference the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.  However,
where the complaint does not permit the court to infer more than the mere possibility of misconduct,
the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679.
(internal quotations omitted).

Plaintiffs burden on Count III is to establish that there was a "but for" causal connection
between AFGE's activities and TSA decision to terminate the CBA. *See Nieves v. Bartlett*,
587 U.S. 391, 399 (2019).  But Plaintiffs' Count III never rises above the "speculative level."
Instead, its crucial allegation that the rescission of the CBA was motivated by unconstitutional
retaliation rests entirely on conclusory allegations and external circumstances whose alleged
relationship to the Secretary's determination rests on nothing more than mere conjecture and
speculation.

Plaintiffs' complaint alleges the new administration has taken actions that could be construed
as reflecting general hostility toward federal workers, unions representing federal workers and
entities that have brought legal actions to enjoin policies of the administration, and they assert AFGE
has been on the "front lines" in bringing lawsuits against other federal agencies to challenge the

NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - 22
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1  administration's policies.  Dkt. # 1, ¶¶ 63-65, 77, 79.  They also allege the administration has been

2  "monitoring which entities are filing suit against the administration."  *Id.* at 66.  Despite this,

3  nowhere in Plaintiffs' complaint are any facts alleged that, if proven, would establish a connection

4  between these disparate and otherwise unrelated circumstances and TSA's Determination to rescind

5  the CBA.  Mere temporal proximity is not sufficient alone to establish a causal connection,

6  particularly where, on the face of the Noem Determination, no connection is suggested.  *See Fouladi*

7  *v. City of Tucson*, 94 F. App'x 485, 486 (9th Cir. 2004).

8       Also, Plaintiffs allege Secretary Noem and TSA have had unkind things to say about AFGE,

9  including that the union is self-serving, "ineffective" and "harmful" to TSOs.  *Id.* at ¶¶ 68-69, 79-80.

10  Once again, none of these alleged facts remotely demonstrates TSA's actions were plausibly

11  motivated by a desire to retaliate against AFGE for its protected First Amendment activity.  They are

12  instead entirely consistent with the legitimate pursuit of a valid policy objective that TSA would

13  implement in any event – removing impediments to TSA's accomplishment of its crucial national

14  security function.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

15       More to the point, antagonism between labor unions and management is not an uncommon

16  feature in collective bargaining and hardly probative of unconstitutional motives.  And criticism of

17  AFGE by the government is fair game and bears no relationship to a First Amendment violation.

18  *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015) ("[A]s a

19  general matter, when the government speaks it is entitled to promote a program, to espouse a policy,

20  or to take a position.  In doing so, it represents its citizens, and it carries out its duties on their

21  behalf.").

22       Nowhere in Plaintiffs' complaint are facts alleged that, if proven, bring their complaint over

23  the line from speculation to plausibility that TSA's decision was motivated by an unconstitutional

24  intent to retaliate against AFGE for filing lawsuits against other federal agencies over other matters.

25  Thus, AFGE's complaint does not permit this Court to infer "more than the mere possibility of

26  misconduct," and that is not sufficient to survive a 12(b)(6) motion.  *Iqbal*, 556 U.S. at 679.

27

28  NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR
    LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF
    POINTS AND AUTHORITIES IN SUPPORT THEREOF - 23
    (Case No. C25-0451MJP)

1    Because Plaintiffs' Count III fails to allege facts that would allow a finder of fact to conclude

2    the CBA was terminated in retaliation for Plaintiffs' exercise of its First Amendment rights, it should

3    be dismissed for failure to state a claim.

4                                              **CONCLUSION**

5    For the foregoing reasons, Defendants respectfully request that their motion be granted, and

6    the lawsuit be dismissed for lack of subject matter jurisdiction and, alternatively that Counts III and

7    IV of the complaint be dismissed for failure to state a claim upon which relief may be granted.

8                                           **CERTIFICATION**

9    I certify that this memorandum contains 8,429 words, in compliance with Local Civil Rule

10   LCR 7(e)(3).

11              DATED this 27th day of May 2025.

12                          Respectfully submitted,

13                          TEAL LUTHY MILLER
                            Acting United States Attorney
14

15

16                          */s/ Brian C. Kipnis*
                            BRIAN C. KIPNIS
17                          Assistant United States Attorney
                            Office of the United States Attorney
18                          5220 United States Courthouse
                            700 Stewart Street
19                          Seattle, Washington 98101-1271
                            Phone: 206 553 7970
20                          E-mail: brian.kipnis@usdoj.gov

21                          Attorneys for Defendants

22

23

24

25

26

27

28   NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS FOR                    UNITED STATES ATTORNEY
     LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF                       5220 UNITED STATES COURTHOUSE
     POINTS AND AUTHORITIES IN SUPPORT THEREOF - 24                                  700 Stewart Street
                                                                               Seattle, Washington 98101-1271
     (Case No. C25-0451MJP)                                                          (206)-553-7970