1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Honorable Marsha Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, | CASE NO. 2:25-cv-451-MJP **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs,

v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; HA NGUYEN MCNEILL, in her official capacity as Acting Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION,

Defendants.

NOTE ON MOTION CALENDAR: JUNE 24, 2025

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – i
CASE NO. 2:25-cv-451-MJP

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................**Error! Bookmark not defined.**

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 1

    A.    TSA Is Created and Recognizes Transportation Security Officers' Collective Bargaining Rights ............................................................................................. 1

    B.    TSOs Choose AFGE as Their Exclusive Representative and Form Collective Bargaining Agreements with TSA ............................................................................ 2

    C.    After AFGE Stands Up For Federal Workers in Court, Secretary Noem Purports to Rescind the 2024 CBA ........................................................................... 3

    D.    Procedural History ........................................................................... 6

LEGAL STANDARD ..................................................................................... 7

ARGUMENT .................................................................................................. 7

    I.    This Court Has Jurisdiction Over Plaintiffs' Claims ........................................ 7

        A.    Plaintiffs' Claims Are Not Channeled to the FLRA ............................... 7

        B.    This Court's Jurisdiction Is Not Barred By the Tucker Act ..................... 12

        C.    Defendants' Actions Are Reviewable Under the APA ............................ 14

    II.    Plaintiffs AFGE and AFGE TSA Local 1121 Have Adequately Alleged Their Fifth Amendment Claim ................................................................................ 17

    III.    AFGE Has Adequately Alleged Its First Amendment Claim ........................... 21

CONCLUSION .............................................................................................. 27

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adetuyi v. City & Cnty. of San Fransisco,*
  63 F.Supp.3d 1073 (N.D. Cal. 2014) ...................................................................26

*Adlerstein v. U.S. Customs & Border Prot.,*
  No. CIV 19-500, 2020 WL 5846600 (D. Ariz. Sept. 30, 2020) ............................26

*AFGE Loc. 1 v. Stone,*
  502 F.3d 1027 (9th Cir. 2007) .................................................................................2

*AFGE Loc. 446 v. Nicholson,*
  475 F.3d 341 (D.C. Cir. 2007) ..........................................................................9, 11

*AFGE v. Ezell,*
  No. 25-cv-10276, (D. Mass. Feb. 6, 2025 & Feb. 10, 2025) ..........................5, 23

*AFGE v. Loy,*
  367 F.3d 932 (D.C. Cir. 2004) ..........................................................................9, 10

*AFGE v. OPM,*
  __ F.Supp.3d __, 2025 WL 900057 (N.D. Cal. March 24, 2025) ..........................11

*AFGE v. OPM,*
  No. 3:25-cv-01780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025) .....................5, 23

*AFGE v. Trump,*
  929 F.3d 748 (D.C. Cir. 2019) ..............................................................................10

*AFGE v. Trump,*
  No. 1:25-cv-00264 (D.D.C. Jan. 29, 2025) .......................................................5, 23

*Alcaraz v. INS,*
  384 F.3d 1150 (9th Cir. 2004) ...............................................................................16

*Ariz. Students Ass'n v. Ariz. Bd. of Regents,*
  824 F.3d 858 (9th Cir. 2016) ....................................................................14, 22, 23

*ASSE Int'l, Inc. v. Kerry,*
  803 F.3d 1059 (9th Cir. 2015) ...............................................................................16

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ..........................................................................................11, 12

*Boquist v. Courtney,*
  32 F.4th 764 (9th Cir. 2022) ......................................................................22, 23, 24

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – iii
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

*Brodowy v. United States*,
    No. 05-961C, 2006 WL 5631717 (Fed. Cl. July 11, 2006) .....................................................13

*Community Legal Services in East Palo Alto v. HHS*,
    137 F.4th 932 (9th Cir. 2025) ..........................................................................................13

*Conyers v. Rossides*,
    558 F.3d 137 (2d Cir. 2009).............................................................................................15

*DeBoer v. Pennington*,
    206 F.3d 857 (9th Cir. 2000) ...........................................................................................18

*Dent v. Nat'l Football League*,
    968 F.3d 1126 (9th Cir. 2020) ...........................................................................................7

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020)............................................................................................................15

*DOD v. AFGE, AFL-CIO, Dist. 10*,
    No. 6:25-cv-119 (W.D. Tex. Mar. 27, 2025) .............................................................6, 26

*Doe v. Tenet*,
    329 F.3d 1135 (9th Cir. 2003) .........................................................................................13

*Entler v. Gregoire*,
    872 F.3d 1031 (9th Cir. 2017) .........................................................................................22

*Fouladi v. City of Tucson*,
    94 F. App'x 485 (9th Cir. 2004) ......................................................................................24

*Hill v. City of Scottsdale*,
    No. CV11-1324, 2012 WL 2952377 (D. Ariz. Jul. 19, 2012) .........................................21

*Int'l Bhd. of Teamsters v. DOT*,
    861 F.3d 944 (9th Cir. 2017) ...........................................................................................15

*Int'l Union, United Gov't Sec. Officers of Am. v. Clark*,
    706 F.Supp.2d 59 (D.D.C. 2010) .....................................................................................18

*Jenner & Block LLP v. DOJ*,
    __ F.Supp.3d __, 2025 WL 1482021 (D.D.C. May 23, 2025) ..........................................5

*Khenaisser v. Zinke*,
    693 F. App'x 608 (9th Cir. 2017) .....................................................................................11

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ...........................................................................................7

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – iv
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400     **BARNARD**
SEATTLE, WASHINGTON 98119     **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132     **LAVITT LLP**

*Lujan v. G & G Fire Sprinklers, Inc.*,
  532 U.S. 189 (2001) ...................................................................................21

*Lynch v. United States*,
  292 U.S. 571 (1934) ...................................................................................21

*M-S-R Public Power Agency v. Bonneville Power Admin.*,
  297 F.3d 833 (9th Cir. 2002) .....................................................................14

*Madera Irrigation Dist. v. Hancock*,
  985 F.2d 1397 (9th Cir. 1993) ...................................................................17

*NRA v. Vullo*,
  602 U.S. 175 (2024) ...................................................................................25

*NTEU v. Chertoff*,
  452 F.3d 839 (D.C. Cir. 2006) .............................................................17, 20

*NTEU v. FLRA*,
  45 F.4th 121 (D.C. Cir. 2022) ....................................................................16

*NTEU v. Trump*,
  __ F.Supp.3d __, 2025 WL 1218044 (D.D.C. Apr. 28, 2025) (Friedman, J.) ...................9, 11

*NTEU v. Trump*,
  770 F.Supp.3d 1 (D.D.C. Feb. 20, 2025) (Cooper, J.) .......................................10, 11

*O'Brien v. Welty*,
  818 F.3d 920 (9th Cir. 2016) .....................................................................22

*Ortloff v. Trimmer*,
  No. C16-1257RSL, 2018 WL 2411755 (W.D. Wash. May 29, 2018) ...................................19

*Pacito v. Trump*,
  __ F.Supp.3d __, 2025 WL 893530 (W.D. Wash. Mar. 24, 2025) ..................................13

*Perkins Coie LLP v. DOJ*,
  __ F.Supp.3d __, 2025 WL 1276857 (D.D.C. May 2, 2025) .............................5, 24, 25, 26

*Phillips v. Marion Cnty. Sheriff's Off.*,
  494 F. App'x 797 (9th Cir. 2012) ..........................................................18, 19

*Public Citizen, Inc. v. Trump*,
  No. 25-cv-00164 (D.D.C. Jan. 20, 2025)........................................................23

*San Bernardino Physicians' Servs. Med. Grp. v. County of San Bernardino*,
  825 F.2d 1404 (9th Cir. 1987) ...................................................................19

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

*Sanchez v. City of Santa Ana,*
    915 F.2d 424 (9th Cir. 1990) ...................................................................18

*St. Bernard Par. Gov't v. United States,*
    134 Fed. Cl. 730 (2017) .........................................................................13

*T.T. v. Bellevue Sch. Dist.,*
    376 F. App'x 769 (9th Cir. 2010) ............................................................18

*Trout Unlimited v. Pirzadeh,*
    1 F.4th 738 (9th Cir. 2021) ...............................................................15, 16

*TSA & AFGE,*
    59 F.L.R.A. 423 (2003)..........................................................................9, 10

*TSA & AFGE,*
    65 F.L.R.A. 242 (2010) ............................................................................10

*Tucson Airport Auth. v. Gen. Dynamics Corp.,*
    136 F.3d 641 (9th Cir. 1998) ...................................................................14

*United Aeronautical Corp. v. U.S.A.F.,*
    80 F.4th 1017 (9th Cir. 2023) ..................................................................12

*United States v. Park Place Assocs., Ltd.,*
    563 F.3d 907 (9th Cir. 2009) ...................................................................13

*Westlands Water Dist. v. U.S. Dep't of Interior,*
    850 F.Supp. 1388 (E.D. Cal. 1994)...........................................................21

*Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President,*
    __ F.Supp.3d __, 2025 WL 1502329 (D.D.C. May 27, 2025) ......................5

*Wright v. Riveland,*
    219 F.3d 905 (9th Cir. 2000) ...................................................................17

**Statutes**

5 U.S.C. § 701(a)(2)................................................................................14, 15

5 U.S.C. § 7123(a) .........................................................................................11

49 U.S.C. § 114.............................................................................................1, 2

49 U.S.C. § 44901............................................................................................1

Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597
    (2001)..................................................................................1, 2, 8, 15

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

**Other Authorities**

@elonmusk, X (Feb. 12, 2025),
     https://x.com/elonmusk/status/1889879302965191056..........................................................23

*Addressing Risks From Perkins Coie LLP*, E.O. 14230, 90 Fed. Reg. 11781 (Mar.
     6, 2025) ..........................................................................................................................25

Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of
     union rights*, Government Executive (Apr. 18, 2025),
     https://www.govexec.com/workforce/2025/04/va-selectively-enforcing-
     trumps-order-stripping-workers-union-rights/404694/..........................................26

*Exclusions From Federal Labor-Management Relations Programs*, E.O. 14251,
     90 Fed. Reg. 14553 (Mar. 27, 2025).........................................................................25

*Fact Sheet*, The White House (Mar. 27, 2025), https://www.whitehouse.gov/fact-
     sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-
     national-security-missions-from-federal-collective-bargaining-requirements/..................6, 26

Order, 90 Fed. Reg. 16427 (Apr. 17, 2025) .......................................................................26

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

## INTRODUCTION

Transportation Security Officers ("TSOs") employed by the Transportation Security Administration ("TSA") are dedicated to protecting our airports and airplanes, ensuring that air travelers and the workers who serve them are kept safe. Last May, their chosen exclusive representative for more than a decade, the American Federation of Government Employees ("AFGE"), entered into a new collective bargaining agreement ("CBA") with the TSA in which the agency agreed to set certain terms and conditions of employment for the duration of the CBA. Following AFGE's lawsuits against the Trump Administration, Secretary of Homeland Security Kristi Noem unilaterally rescinded that CBA in a memorandum directly attacking AFGE, and Defendants have terminated grievances filed pursuant to the agreement. As this Court recognized in its June 2, 2025 Order granting AFGE and AFGE TSA Local 1121's Motion for Preliminary Injunction, this Court has jurisdiction, and Plaintiffs are likely to succeed on their APA and constitutional claims. Dkt. #39 ("Order"). Defendants' Motion to Dismiss should be denied.

## BACKGROUND

### A. TSA Is Created and Recognizes Transportation Security Officers' Collective Bargaining Rights

In 2001, Congress created the Transportation Security Administration when it enacted the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597 (2001). Under the ATSA, the TSA Administrator is "responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation." 49 U.S.C. § 114(e). The Administrator is required to "provide for the screening of all passengers and property . . . that will be carried aboard a passenger aircraft." *Id.* § 44901(a). Subject to certain limitations, this screening "shall be carried out by a Federal Government employee." *Id.*

Unlike most federal employees, TSA employees are not governed by the Title 5 personnel

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

system. Instead, Congress provided that TSA employees are generally covered by the Federal Aviation Administration personnel system, subject to modifications by TSA. *Id.* § 114(n); *see AFGE Loc. 1 v. Stone*, 502 F.3d 1027, 1030-31 (9th Cir. 2007). As for transportation security officers, Congress stated that, "[n]otwithstanding any other provision of law," the Administrator "may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment." ATSA § 111(d), 49 U.S.C. § 44935 note. Even more explicitly, Congress provided that the Administrator "shall establish levels of compensation and other benefits for individuals so employed." *Id.*

In 2011, after examining workforce data, "listen[ing] to many views in the context of considering TSA's mission requirements," then-TSA Administrator Pistole issued a determination that established a "comprehensive structure . . . that will provide for genuine, binding collective bargaining on specified subjects at the national level[.]" Dkt. #1 ("Compl.") ¶ 39.

**B. TSOs Choose AFGE as Their Exclusive Representative and Form Collective Bargaining Agreements with TSA**

In June 2011, TSOs elected AFGE to be their exclusive representative, and AFGE began collectively bargaining with TSA. Compl. ¶ 41. The parties signed their first binding CBA in November 2012, and bargaining continued during the Obama and Trump administrations, with TSA and AFGE agreeing to new CBAs in 2016 and 2020. *Id.* ¶ 42-43.

In December 2022, then-TSA Administrator Pekoske issued a new determination on collective bargaining that "recogniz[ed] that TSA's dedicated employees are critical to the success of our mission" and generally expanded collective bargaining rights to TSOs akin to rights granted to other federal employees in Chapter 71 of Title 5. *Id.* ¶¶ 44-46. The determination reserved certain management rights to TSA and reserved sole discretion over pay and policies affecting pay. *Id.* ¶¶ 47-48. It also made clear that Chapter 71's provisions granting jurisdiction to the Federal

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

Labor Relations Authority ("FLRA") to hear disputes between unions, their members, and agencies did not apply to the AFGE-TSA bargaining relationship. *Id.* ¶ 49.

AFGE and TSA signed their current CBA in May 2024 ("2024 CBA"). *Id.* ¶ 50. The CBA, which sets certain terms and conditions of employment, provides that it "may only be changed upon mutual written consent of the parties" and will "remain in full force and effect" for seven years. *Id.* ¶¶ 51, 61. TSA touted the CBA as a massive success for the agency: Administrator Pekoske stated at the signing ceremony, "[if] we didn't have this CBA, if we didn't have this pay package, I would submit to you, we probably wouldn't have a TSA in five or 10 years. That's how important it is." *Id.* ¶ 52.

The 2024 CBA granted TSOs and AFGE enforceable rights. Among other things, it recognized AFGE as TSOs' exclusive representative. *Id.* ¶ 54. It also provided that discipline or adverse actions "may be taken for just cause and only for reasons that will promote the efficiency of the service." *Id.* ¶ 55. And while no TSO is required to join the union or pay dues, if a TSO voluntarily chooses to pay dues through their paycheck, the 2024 CBA guaranteed that TSA would deduct those dues and "timely remit the dues deduction to AFGE." *Id.* ¶¶ 57-58. The 2024 CBA also established a binding grievance and arbitration process allowing parties to challenge CBA violations or other violations affecting conditions of employment. *Id.* ¶ 56.

**C. After AFGE Stands Up For Federal Workers in Court, Secretary Noem Purports to Rescind the 2024 CBA**

On February 27, 2025, Secretary Noem issued a memorandum to Adam Stahl, the senior official performing the duties of the Administrator of TSA, entitled "Supporting the TSA Workforce by Removing a Union That Harms Transportation Security Officers" ("Noem Determination"). Compl. ¶ 68. The memorandum attacked AFGE by name, claiming that past determinations allowing bargaining "solely benefited the American Federation of Government

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Employees (AFGE) at TSOs' expense." *Id.* ¶ 69. The Noem Determination purports to rescind, "[e]ffective immediately," the 2022 Determination governing collective bargaining. *Id.* ¶ 70. The memo asserted that the 2024 CBA is "no longer applicable or binding and is hereby rescinded," and that "AFGE is no longer the exclusive representative of" TSOs. *Id.* ¶ 71. It discontinued the system allowing TSOs to pay voluntary union dues from their paycheck. *Id.* ¶ 73. And it instructed TSA, within 90 days, to terminate "any functions, processes, or obligations arising out of the 2024 CBA," including grievances filed under the CBA and ongoing compliance obligations from grievance awards. *Id.* ¶ 74. AFGE received no notice that the Noem Determination was being considered and had no opportunity to be heard on the issue. *Id.* ¶ 76.

A week later, on March 7, TSA informed AFGE and the public about the Noem Determination, stating that the 2024 CBA had been rescinded, that all pending grievances by AFGE would be terminated, and that TSOs no longer had a union representative or any bargaining rights. *Id.* ¶ 78. TSA's March 7 press release again attacked AFGE, asserting that TSOs "are losing their hard-earned dollars to a union that did not represent or protect their interests." *Id.* ¶ 79. It also quoted a DHS spokesperson who claimed—ignoring that no TSO is required to pay union dues— that Noem's action meant TSOs "will no longer lose their hard-earned dollars to a union that does not represent them." *Id.* ¶ 80.

The Trump administration is monitoring and fixated on those who seek to enforce their rights in court. *Id.* ¶ 66. In February, then-administration member Elon Musk reposted a story on X about a lawsuit blocking NIH cuts stating, "Which law firms are pushing these anti-democratic cases to impede the will of the people?" *Id.* And the day before the Noem Determination was made public, President Trump issued a memorandum for agency heads targeting litigants like AFGE,

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

**TEL** 800.238.4231 | **FAX** 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

stating "[i]n recent weeks, activist organizations . . . have obtained sweeping injunctions . . . undermining the democratic process." *Id.* ¶ 77.

AFGE is among the groups that have been exercising their First Amendment rights to sue the government. *Id.* ¶ 65; *see, e.g.*, *AFGE v. Trump,* No. 1:25-cv-00264 (D.D.C.); *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass.); *AFGE v. OPM*, No. 3:25-cv-01780 (N.D. Cal.). And Defendants' targeted attack on AFGE came on the heels of AFGE's public efforts to combat the administration's attacks on federal workers. In February, AFGE obtained a stay of the administration's "Fork" deferred resignation program. *AFGE v. Ezell*, No. 25-cv-10276, ECF 42, 60 (D. Mass. Feb. 6, 2025 & Feb. 10, 2025). Later that same month, AFGE and allied organizations filed suit on February 19 challenging the administration's mass termination of probationary employees, and the court granted a temporary restraining order ("TRO") on February 27. *See AFGE v. OPM*, No. 3:25-cv-01780, 2025 WL 660053, at *14 (N.D. Cal. Feb. 28, 2025) (referencing Feb. 27 oral order granting TRO). The Noem Determination was issued the same day as the TRO.

Defendants' rescission of the 2024 CBA is part of a pattern of retaliatory actions taken by this administration in response to protected First Amendment activity it views as hostile to its policy agenda. Compl. ¶ 124. For example, multiple law firms have been targeted for retaliation due to their litigation efforts. *See, e.g., Perkins Coie LLP v. DOJ*, __ F.Supp.3d __, 2025 WL 1276857, at *26-38 (D.D.C. May 2, 2025); *Jenner & Block LLP v. DOJ*, __ F.Supp.3d __, 2025 WL 1482021, at *6-21 (D.D.C. May 23, 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, __ F.Supp.3d __, 2025 WL 1502329, at *13-16 (D.D.C. May 27, 2025).

And retaliation against AFGE has also continued. On March 27, the President issued an executive order that would eliminate bargaining rights for most federal employees, with a White

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

House Fact Sheet published that night justifying the action because "[c]ertain Federal unions have declared war on President Trump's agenda" and that "[t]he largest Federal union"—AFGE—"describes itself as 'fighting back' against Trump." *Fact Sheet*, The White House (Mar. 27, 2025), https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/. Furthermore, agencies including DHS sued AFGE local unions the same day seeking to terminate other CBAs, referring in their complaint to an AFGE publication where it outlined the ways it is "fighting back" against the administration in the courts and otherwise. Compl., *DOD v. AFGE, AFL-CIO, Dist. 10*, No. 6:25-cv-119, ECF 1 at ¶ 172 (W.D. Tex. Mar. 27, 2025).

### D. Procedural History

Plaintiffs filed their Complaint on March 13, 2025. Dkt. #1 ("Compl."). The Complaint asserts four claims related to Defendants' rescission of the 2024 CBA and termination of grievances: that Defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"), *id.* ¶¶ 102-111 (Count I); that Defendants acted contrary to law in violation of the APA, *id.* ¶¶ 112-117 (Count II); that Defendants retaliated against AFGE in violation of the First Amendment, *id.* ¶¶ 118-126 (Count III); and that Defendants violated the Due Process Clause of the Fifth Amendment, *id.* ¶¶ 127-131 (Count IV). Plaintiffs AFGE and AFGE TSA Local 1121 moved for a preliminary injunction on April 4, 2025. Dkt. #18. After briefing, this Court held oral argument on May 27, 2025. Dkt. #36. That same day, Defendants filed their motion to dismiss. Dkt. #37.

On June 2, 2025, this Court granted the motion for preliminary injunction, finding that AFGE and AFGE TSA Local 1121 were likely to succeed on the merits on each of their claims. Dkt. #39 ("Order").

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

**LEGAL STANDARD**

When resolving a facial challenge to this court's subject matter jurisdiction like Defendants' under Federal Rule of Civil Procedure 12(b)(1), a court must "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor" when "determin[ing] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

When resolving a motion to dismiss under Rule 12(b)(6), a court must likewise accept material allegations as true and "construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (internal quotation marks omitted). A motion to dismiss should be denied if a complaint "contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Dismissal is only proper where the allegations in the complaint do not factually support a cognizable legal theory." *Id.*

**ARGUMENT**

**I.    This Court Has Jurisdiction Over Plaintiffs' Claims**

Defendants argue that this Court lacks subject-matter jurisdiction because Plaintiffs' claims must exclusively be raised before the FLRA, Dkt. #37 ("MTD") at 5-11, or pursuant to the Tucker Act before the Court of Federal Claims, *id.* at 16-20. They also contend that this Court lacks jurisdiction over Plaintiffs' APA claims because Defendants' actions were "committed to agency discretion by law." *Id.* at 11-16. But as this Court has previously recognized, Plaintiffs' claims are properly before this Court.

**A.    Plaintiffs' Claims Are Not Channeled to the FLRA**

Defendants contend that Plaintiffs are foreclosed from seeking relief in this Court because "Congress has channeled the dispute Plaintiffs raise in this case to the FLRA." MTD at 5.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 7
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

Defendants are wrong. Congress did no such thing. *See* ATSA § 111(d). Moreover, as this Court has recognized, "Defendants' argument falls apart because the 2011 and 2022 Determinations and the Noem Determination expressly bar FLRA review in the first instance." Order at 15. From the outset, TSOs' collective bargaining framework has been set by TSA Administrator "determinations," not the statutory labor law provisions in Chapter 71. *See* Compl. ¶¶ 38-39, 44-49; Order at 15-16. And these determinations have all precluded relief from the FLRA on the issue here. Jurisdiction over Plaintiffs' claims therefore rests in this Court.

The 2011 Determination that established TSOs' first collective bargaining structure stated that the structure was "different and distinct, separate and independent, from that provided in 5 U.S.C. Chapter 71[.]" Order at 15 (quoting Dkt. #19-1 at 6). The Determination permitted the FLRA to conduct a union election, but otherwise specifically provided that "ATSA § 111(d) supersedes the Federal Services Labor-Management Relations statute (5 U.S.C. Chapter 71) in all other respects and therefore Chapter 71 shall not apply, or afford any rights, to management, unions, or covered employees that are not expressly provided in this Determination." *Id.* (quoting Dkt. #19-1 at 7). Even in 2022, when TSA expanded TSOs' collective bargaining rights in limited ways, the 2022 Determination expressly stated that "[a]s jurisdiction on FLRA cannot be conferred administratively, any provision of Chapter 71 or its implementing regulations regarding FLRA are not adopted by this Determination." *Id.* (quoting Dkt. #19-1 at 26); *see* Compl. ¶ 49.

Further nailing shut any FLRA avenue for relief, the recent Noem Determination revoked AFGE's rights as exclusive representative and made clear that the Determination "does not incorporate by reference any provisions of Chapter 71 of Title 5[.]" *Id.* at 15-16 (quoting Dkt #19-1 at 226). As such, as this Court acknowledged, "by the plain language of these three Determinations, Plaintiffs would not be permitted to pursue their claims before the FLRA." *Id.* at

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

16. Because Plaintiffs cannot access the FLRA, this Court retains jurisdiction. See *NTEU v. Trump*, __ F.Supp.3d __, 2025 WL 1218044, at *6 (D.D.C. Apr. 28, 2025) (Friedman, J.) (finding jurisdiction over elimination of union rights "[b]ecause there is no 'special statutory review scheme'" available to the union), *stayed on other grounds*, 2025 WL 1441563 (D.C. Cir. May 16, 2025).[1]

The cases cited by Defendants involving election petitions, MTD at 6-7, do not compel a different result. Following the creation of TSA in 2001, there was litigation initiated both before the FLRA and in federal court regarding whether individual TSOs, who had filed election petitions pursuant to Chapter 71, could elect a representative and require TSA to bargain. *See TSA & AFGE*, 59 F.L.R.A. 423 (2003); *AFGE v. Loy*, 367 F.3d 932 (D.C. Cir. 2004). After the election petitions had been filed, TSA Administrator Loy issued a determination, which was silent as to Chapter 71, but stated that TSOs were not "entitled to engage in collective bargaining or be represented for the purpose of engaging in such bargaining by any representative or organization." *Loy*, 367 F.3d at 934. In those circumstances, to determine how to rule on the election petitions, the FLRA necessarily had to address the antecedent question of whether the Loy Determination was valid and if so, what it meant. (If TSOs could not have a bargaining representative by virtue of the Loy Determination, then the FLRA could not order an election to determine whether AFGE was going to be their bargaining representative.) And the D.C. Circuit's *Loy* decision correspondingly found

---

[1] Defendants argue that *NTEU* is inapposite, suggesting without authority that exemptions created by Executive Order should be treated differently than exemptions created by the TSA Administrator exercising Congressionally granted authority. MTD at 11 n.1. But the precise means by which FLRA review is foreclosed is beside the point. *Cf. AFGE Loc. 446 v. Nicholson*, 475 F.3d 341, 347-48 (D.C. Cir. 2007) (district court review available when FLRA lacks authority to review agency determination).

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    that having brought Chapter 71 election petitions before the FLRA, AFGE could not split their

2    claims and challenge the Loy Determination separately in federal court. 367 F.3d at 936.[2]

3        Here, in contrast, the question is not one of TSOs' rights to conduct an election or whether

4    TSOs have statutorily-conferred bargaining rights. And, unlike the legal framework in effect

5    during this prior litigation—which had no express Chapter 71 exclusion—there is no arguable

6    FLRA path available as TSA has expressly deprived the FLRA of jurisdiction over TSOs and their

7    bargaining representative. Since 2011, the bargaining relationship has been "different and distinct,

8    separate and independent" from Chapter 71, with the 2022 Determination making clear that it did

9    not adopt "any provision of Chapter 71 . . . regarding FLRA." Order at 15-16. And if there was

10   any doubt on this point, the Noem Determination made clear the FLRA pathway was closed

11   because it expressly "does not incorporate by reference *any provisions* of Chapter 71." *Id.*

12   (emphasis added).

13       As this Court has recognized, Order at 17-18, this case is far afield from recent decisions

14   relied upon by Defendants, *AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) and *NTEU v. Trump*,

15   770 F.Supp.3d 1 (D.D.C. Feb. 20, 2025) (Cooper, J.), MTD at 5-11, both of which address unions

16   representing non-TSA employees within the ambit of Chapter 71. In *AFGE*, the D.C. Circuit

17   concluded that Chapter 71 "provides the unions with several 'administrative options' for

18   challenging the executive orders before the FLRA, followed by judicial review." 929 F.3d at 757.

19   Likewise, in *NTEU*, Judge Cooper explained that the plaintiff "acknowledge[d] that it could bring

20

21   [2] The FLRA's 2003 decision interpreted the Loy Determination to preclude collective bargaining
     representation for TSOs and held that the scope of that Determination therefore also precluded
22   representation for non-bargaining purposes. 59 F.L.R.A. at 429. In 2010, the FLRA reached the
     opposite conclusion, finding that although the Loy Determination precluded collective bargaining
23   representation, TSOs were entitled to petition for a representative under Chapter 71 for non-
     bargaining purposes. *TSA & AFGE*, 65 F.L.R.A. 242 (2010). Both decisions were reached against
24   the backdrop of a Determination that was silent as to the applicability of Chapter 71 to TSOs.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 10
CASE NO. 2:25-cv-451-MJP

its claims before the FLRA." 770 F.Supp.3d at 6; *see* Order at 18. In contrast to these and other cases relied on by Defendants, *see, e.g., Khenaisser v. Zinke*, 693 F. App'x 608, 609 (9th Cir. 2017), Plaintiffs have no way to bring the claims asserted in the Complaint—which arise from rescinding a CBA formed outside of Chapter 71—before the FLRA. Put simply: When an agency's determination precludes FLRA review, district courts retain jurisdiction. *Cf. Nicholson*, 475 F.3d at 347-48 (district court had jurisdiction where challenged action was "expressly outside the FLRA's purview" and union is "presumptively entitled to judicial review of its claim"); *NTEU*, 2025 WL 1218044, at *5 (channel not available when agencies "have been excluded from the FSLMRS's coverage") (Friedman, J.).

Considering the "*Thunder Basin* factors" discussed in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 186 (2023), leads to the same result: "the *Thunder Basin* considerations all point to allowing the case to proceed in this Court." Order at 19. First, absent jurisdiction here, "meaningful judicial review" would be unavailable because Plaintiffs cannot bring their claims before the FLRA. Although Defendants insist that Plaintiffs can obtain FLRA review through unfair labor practice ("ULP") charges, MTD at 10-11, both the 2022 Determination and Noem Determination make clear that there is no FLRA jurisdiction to hear ULPs resulting from the TSA and AFGE relationship. Order at 16. And even if there was jurisdiction to hear a ULP claim, as this Court has recognized, there is currently no General Counsel at the FLRA, which makes it impossible for a ULP to actually make it to the Authority. Order at 16; *see* 5 U.S.C. § 7123(a). As Judge Alsup recognized in *AFGE v. OPM*, __ F.Supp.3d __, 2025 WL 900057, at *4 (N.D. Cal. March 24, 2025), there is no meaningful judicial review when "collective-bargaining related pathways are also unavailing."

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

Second, Plaintiffs' claims are collateral to the types of claims brought before the FLRA because they challenge the recission of a CBA formed outside the typical Chapter 71 process. The collateral factor is intended "to give the agency a heightened role in the matters it customarily handles." *Axon*, 598 U.S. at 186. The FLRA customarily hears ULP and negotiability disputes involving agencies and unions covered by Chapter 71. It does not "regularly adjudicate," *id.* at 193, questions about whether an agency can unilaterally end a CBA that was created outside of the Chapter 71 framework.

Finally, the FLRA does not have relevant expertise to bring to bear here because the collective bargaining relationship between AFGE and TSA has always been outside FLRA's jurisdiction. The questions presented here are "standard questions of administrative and constitutional law." *See id.* at 194. As such, it is Article III courts, not the FLRA, who have the comparative expertise to address Plaintiffs' APA and constitutional claims. Order at 19.

## B. This Court's Jurisdiction Is Not Barred By the Tucker Act

Defendants also argue that this Court lacks subject matter jurisdiction over all or most of Plaintiffs' claims because "the limited waiver of sovereign immunity in the Tucker Act provides the exclusive means to sue the federal government for relief on claims based on a contract." MTD at 16-17. However, as this Court has explained, this "misconstrues Plaintiffs' claims." Order at 19.

It is undisputed that "[w]here a statute vests exclusive jurisdiction over a category of claims in a specialized court . . . , it 'impliedly forbids' an APA action brought in federal district court." *United Aeronautical Corp. v. U.S.A.F.,* 80 F.4th 1017, 1022 (9th Cir. 2023). But as this Court has recognized, Order at 20, because the 2024 CBA is not the type of contract that gives rise to jurisdiction in the Court of Federal Claims, this Court retains jurisdiction.

The Tucker Act's consent to suit "does not extend to every contract." Order at 20 (quoting *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008)). Instead, "for

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

a government contract to give rise to Tucker Act jurisdiction, it must be 'money-mandating'—meaning it must give the contracting parties a substantive right to recover damages in the event of breach." *Pacito v. Trump*, __ F.Supp.3d __, 2025 WL 893530, at *4 (W.D. Wash. Mar. 24, 2025). Because nothing in the 2024 CBA provides for monetary damages for breach, "the agreement is not money-mandating," and the Court of Federal Claims lacks jurisdiction. *St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730, 735 (2017). Indeed, the Court of Federal Claims has previously held that a federal sector CBA is "not a contract within the meaning of the Tucker Act," such that the court lacked jurisdiction over a claim to enforce the CBA without identifying some other money-mandating provision. *Brodowy v. United States*, No. 05-961C, 2006 WL 5631717, at *3-4 (Fed. Cl. July 11, 2006), *aff'd on other grounds*, 482 F.3d 1370 (Fed. Cir. 2007). Accordingly, this Court retains jurisdiction over Plaintiffs' claims.[3]

Defendants do not contest that the CBA is not a money-mandating contract. MTD at 19. Instead, they point to cases where plaintiffs unable to obtain their requested relief from the Court of Federal Claims were nonetheless barred from district courts. *Id.* None stand for the proposition that claims based on agreements that fall outside Tucker Act jurisdiction cannot be raised in this Court. For example, the plaintiff in *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 917 (9th Cir. 2009), was seeking to enforce an arbitration award resulting from a joint venture agreement that was clearly money-mandating: the award granted the plaintiff $93 million in damages. And *Doe v. Tenet*, 329 F.3d 1135, 1141-42 (9th Cir. 2003), *rev'd on other grounds*, 544

---

[3] The government's citation to *Community Legal Services in East Palo Alto v. HHS*, 137 F.4th 932 (9th Cir. 2025), MTD at 19 n.3, supports this Court's jurisdiction. There, the majority explained that while the "Tucker Act's exclusive jurisdiction has been construed to impliedly forbid" certain APA claims, "there cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Id.* at 939 (cleaned up).

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 13
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

U.S. 1 (2005), and *M-S-R Public Power Agency v. Bonneville Power Administration*, 297 F.3d 833, 840 n.7 (9th Cir. 2002), merely show that when a contract falls within the confines of the Tucker Act, the fact that certain contractual remedies are unavailable at the Court of Claims does not mean that they are available in district court.

Finally, going further than their preliminary injunction opposition—which only argued that the Tucker Act foreclosed Plaintiffs' APA and Fifth Amendment Claims, Dkt. #26 at 16—Defendants appear to contend that this court lacks jurisdiction over AFGE's First Amendment claim, MTD at 18. This is wrong. *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998), only states that "contractually-based" constitutional claims are precluded by the Tucker Act. There, plaintiffs' due process, takings, and public debt clause claims were "in the first instance" dependent on whether a contract within the terms of the Tucker Act imposed obligations on the government. *Id.* But here, AFGE's First Amendment retaliation claim is based on the Constitution itself and does not depend on the terms of the CBA—as the Ninth Circuit has recognized, the First Amendment protects against retaliatory acts even when the government had "no affirmative obligation" to maintain a particular practice. *Ariz. Students Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016). As such, even if the CBA were the type of contract that led to Tucker Act jurisdiction, which it is not, AFGE's First Amendment claim remains properly before this Court.

### C.  Defendants' Actions Are Reviewable Under the APA

Defendants argue that this Court lacks jurisdiction to hear Plaintiffs' APA claims due to the APA's exemption for actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2);

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

MTD at 11-16.[4] But as this Court has recognized, TSA's cabining of its statutory discretion through the 2024 CBA provides a judicially reviewable standard that permits APA review. Order at 20-25.

While actions "committed to agency discretion by law" are excluded from APA review, 5 U.S.C. § 701(a)(2), that exception is read "quite narrowly" to honor the APA's "presumption of judicial review." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16-17 (2020) (internal quotations omitted). Even when a statute "conveys broad discretion" and demands a discretionary judgment that "involves balancing a number of considerations" such as resource prioritization, APA review remains available when an agency restricts its own discretion and "manageable standards are available" to evaluate the agency's exercise of discretion. *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751-53 (9th Cir. 2021) (cleaned up).

It is true that ATSA § 111(d) grants broad statutory discretion to TSA to set terms and conditions of employment for TSOs. As such, absent a CBA or other limitation on that discretion, employees are unable to bring statutory challenges to hiring or termination decisions. *See Conyers v. Rossides*, 558 F.3d 137, 144-48 (2d Cir. 2009). But Plaintiffs' claims are not based on an statutory violation. Here, TSA entered into the 2024 CBA, which is a self-imposed restriction of agency discretion and by its terms provides standards to evaluate the agency's subsequent actions.[5]

---

[4] Defendants only challenge this Court's jurisdiction to hear Plaintiffs' APA claims under 12(b)(1); they do not bring a 12(b)(6) challenge to either APA claim. *See* MTD 11-16.

[5] Although Defendants cite to *Int'l Bhd. of Teamsters v. DOT* to argue that Plaintiffs cannot bring an arbitrary and capricious claim absent a "statutory benchmark," MTD at 17-18, the plaintiffs in that case exclusively relied upon statutes as providing the meaningful standard for review and argued unsuccessfully in the alternative that the APA itself provided law to apply. 861 F.3d 944, 954-55 (9th Cir. 2017) (internal quotation marks omitted). *IBT* therefore holds that "where there is no law to apply for purposes of section 701(a)(2), it is legally irrelevant whether an agency has made a 'finding' that is 'contrary to the evidence before it.'" *Id.* at 955. Here, there is law to apply: the 2024 CBA.

18 WEST MERCER ST., STE. 400     **BARNARD**
SEATTLE, WASHINGTON 98119     **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132     **LAVITT LLP**

*See* Order at 22-23. For example, the CBA limits TSA for a fixed duration, provides that certain negotiated terms supersede TSA policies, and leaves other terms to management discretion. *See, e.g.,* Compl. ¶¶ 59-60; Dkt. #19-1 at 211, Art. 37.B (durational clause); *id.* at 90, Art. 17.A.3 (leave provisions take precedence over TSA policies); *id.* at 76, Art. 15.C.2 (management discretion over telework).

As the Ninth Circuit has explained, a wholly discretionary choice can "give rise to a resulting non-discretionary duty that is governed by a manageable legal standard." *Trout Unlimited*, 1 F.4th at 756; *see* Order at 23. For example, while no one must attempt to rescue another, "once a rescue is attempted, the rescuer is held to a duty of care." Order at 23. The same is true for TSA's choice to set terms and conditions of employment by negotiating a CBA: TSA had no obligation to enter into a CBA, but once TSA "imposed mandatory, judicially reviewable duties on the agency" by agreeing to the CBA, courts may review its attempt to rescind that CBA. *Trout Unlimited*, 1 F.4th at 756.

Defendants, however, argue that the CBA is irrelevant because it is not a "regulatory standard" or "regulatory requirement[]." MTD at 13-15. But it has similar binding force, and not only regulations can provide a basis for an APA claim. As this Court recognized, Order at 21-22, in *Alcaraz v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004), the Ninth Circuit held that "various memoranda" issued by INS provided sufficient law to apply for APA jurisdiction, emphasizing that "established agency policies" could provide a meaningful standard. *See also ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (recognizing that "regulations or agency practice" can provide law to apply); *cf. NTEU v. FLRA*, 45 F.4th 121, 123 (D.C. Cir. 2022) (explaining that CBAs covered by Chapter 71 take precedence over subsequent agency regulations). And as this

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 16
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Court previously concluded, the CBA has the force and effect of law, as required to provide law to apply for an APA claim. Order at 24-25.

Defendants assert that the 2024 CBA does not set "standards governing how statutory discretion must be exercised." MTD at 13. But setting standards to govern an employer's discretion is at the core of collective bargaining. *See NTEU v. Chertoff*, 452 F.3d 839, 860 (D.C. Cir. 2006) (collective bargaining necessarily imposes "mutual obligations"). As this Court has previously found, the 2024 CBA sets clear limits on agency discretion and provide a meaningful standard for review. Order at 22-23.

## II. Plaintiffs AFGE and AFGE TSA Local 1121 Have Adequately Alleged Their Fifth Amendment Claim

The Due Process Clause protects against government deprivation of constitutionally protected property interests. It restricts the "exercise of sovereign power which would impair obligations under government contracts." *Madera Irrigation Dist. v. Hancock*, 985 F.2d 1397, 1401 (9th Cir. 1993). And it also protects against the deprivation of protected property interests with a "lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (internal quotations omitted). In Count IV of their Complaint, Plaintiffs AFGE and Local 1121 allege that Defendants violated the due process rights of AFGE and their members by unilaterally rescinding the 2024 CBA without notice or an opportunity to be heard. Compl. ¶¶ 128-131.

Defendants contend that the Fifth Amendment claim should be dismissed for two reasons: (1) that the 2024 CBA does not create constitutionally protected property interests, and (2) that plaintiffs can adequately challenge the recission of the CBA before the FLRA. MTD at 20-21. Both contentions are incorrect.

**1.** Plaintiffs have pleaded facts establishing that the 2024 CBA created constitutionally protected property interests. The 2024 CBA grants employment protections to

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

TSOs, providing that discipline or adverse actions "may be taken for just cause and only for reasons that will promote the efficiency of the service" and setting forth a binding grievance and arbitration process to enforce these protections and other contractual rights. Compl. ¶¶ 55-56; *see* Order at 8. It also guarantees AFGE's exclusive representative status, allowing the union to represent bargaining unit employees in negotiations and through the contractual grievance and arbitration process. Compl. ¶¶ 54, 56; *see* Order at 8.

These allegations are more than sufficient to state a claim as this Court, and others, have found that the types of rights conferred by the 2024 CBA are the types that constitute constitutionally protected property interests. Order at 36; *see Phillips v. Marion Cnty. Sheriff's Off.*, 494 F. App'x 797, 799 (9th Cir. 2012) (property interest in arbitration award under CBA); *Int'l Union, United Gov't Sec. Officers of Am. v. Clark*, 706 F.Supp.2d 59, 65 (D.D.C. 2010) (just cause provision in federal-contractor CBA created property interest), *aff'd sub nom. Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25 (D.C. Cir. 2014).

Indeed, Plaintiffs and their members have a property interest in these rights created by the 2024 CBA because they have "a legitimate claim of entitlement to" them, "not merely a unilateral expectation." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 428 (9th Cir. 1990); *cf. DeBoer v. Pennington*, 206 F.3d 857, 869 (9th Cir. 2000), *vacated on other grounds sub nom. City of Bellingham v. DeBoer*, 532 U.S. 992 (2001)) (cited in MTD at 20) (recognizing that contracts with government entities give rise to constitutionally protected property interests "where the contract confers a protected status due to . . . permanence, as is the case with tenure[.]"). By placing binding limits on TSA, the 2024 CBA creates a "significant substantive restriction on [TSA's] . . . decision making," *T.T. v. Bellevue Sch. Dist.*, 376 F. App'x 769, 771 (9th Cir. 2010) (quoting *Stiesberg v. California*, 80 F.3d 353, 356 (9th Cir. 1996)), that gives Plaintiffs and their members a legitimate

18 WEST MERCER ST., STE. 400     **BARNARD**
SEATTLE, WASHINGTON 98119     **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132     **LAVITT LLP**

1    claim of entitlement to their contractual rights, *see Phillips*, 494 F. App'x at 799. And while it is

2    true that not all contractual rights are protected by the Due Process Clause, the CBA is comparable

3    to the "prime protected category" of employment contracts. *See San Bernardino Physicians' Servs.*

4    *Med. Grp. v. County of San Bernardino*, 825 F.2d 1404, 1408-09 (9th Cir. 1987).

5    　　In their Motion, Defendants argue that Plaintiffs have not alleged that their members have

6    a protected property interest because the CBA's just cause provision conveys no real protection.

7    MTD at 21. There are two problems with this contention. First, the Complaint alleges that the 2024

8    CBA provides for enforceable just cause protections, Compl. ¶ 55, the truth of which is supported

9    by the Noem Determination's claim that its recission helps move TSA towards a "flexible, at-will

10    workforce," *id.* ¶ 101. Second, Defendants' legal support for their argument is inapposite.

11    Defendants point to *Ortloff v. Trimmer*, No. C16-1257RSL, 2018 WL 2411755, at *3 (W.D. Wash.

12    May 29, 2018), where the court found that CBA language providing that probationary employees

13    without access to grievance procedures could be fired for "bona fide reason(s) relating to the

14    business operation" was akin to a mere "reasonableness" standard which did not give rise to

15    constitutional protection. MTD at 21. But as this Court explained, the 2024 CBA's just cause

16    employment protections are "far beyond the limited standards at issue in *Ortloff*." Order at 37.

17    "[C]ontractual language providing for discharge from employment only for 'cause'" can create a

18    "constitutionally protectible entitlement." *San Bernardino Physicians' Servs. Med. Grp.*, 825 F.2d

19    at 1408.

20    　　Additionally, AFGE itself holds a protected property interest in the CBA because it confers

21    a "protected status," that of exclusive representative, upon the union. Compl. ¶ 54; *see* Order at 8.

22    Without this status, AFGE is unable to perform core services for its federal employee members

23    including negotiating on their behalf and representing them in the contractual grievance and

24

arbitration process. Compl. ¶ 89. Defendants claim, however, that this protected status lacks permanence because "[t]here is no clause in the CBA restricting TSA's authority to terminate the CBA at any time and for any reason," such that the CBA was "subject to rescission at any time at the sole judgment of the government." MTD at 21. This contention is belied by the CBA's text, which stated that the agreement would "remain in full force and effect until seven (7) years from its effective date" and set forth how and when it could be changed. Compl. ¶¶ 51, 61; *see* Dkt. #19-1 at 211, Art. 37. As such, Defendants' claim that AFGE received no protected status from the CBA "because the CBA was never anything more than conditional; it could not create any entitlements for AFGE" falls short. MTD at 21. Indeed, permitting unilateral abrogation of CBAs "undermines the very idea of collective bargaining"—to imagine that collective bargaining, as permitted by past determinations, might exist "without imposing mutual obligations is simply bizarre." *Chertoff*, 452 F.3d at 860.

**2.**     In addition to disputing Plaintiffs' protected property interest, Defendants also argue that Plaintiffs have adequate post-deprivation process available because review is available at the FLRA. MTD at 21. There are several reasons to reject this argument.

First, for the reasons explained *supra* at Part I.A, post-deprivation review is not available before the FLRA because the determinations establishing the collective bargaining scheme do not permit FLRA review.

Second, even if there was a post-deprivation process available to Plaintiffs, it would not be able to remedy the current and ongoing deprivation of Plaintiffs' rights. Defendants' argument to the contrary cites cases that stand for the inapposite proposition that where harm is monetary in nature, deprivation of contractual rights can be remedied through a subsequent damages award. *See* MTD at 20-21 (citing *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (a

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

contractual property interest in a "claim for payment," unlike being denied a "present entitlement," could be resolved through a breach of contract damages award); *Hill v. City of Scottsdale*, No. CV11-1324, 2012 WL 2952377, at \*6 (D. Ariz. Jul. 19, 2012) (plaintiffs' interest in how accumulated medical leave was apportioned was "readily compensable in monetary damages"). Here, Plaintiffs are not seeking damages for breach and the irreparable harm caused by the elimination of their contractual workplace protections, Order at 37, cannot be "fully protected," *Lujan*, 532 U.S. at 196, by post-deprivation process.

Finally, it is worth noting that Defendants seek to downplay what has occurred here, framing the Noem Determination's wholesale recission of the 2024 CBA as a mere breach of contract. *See* MTD at 20. But as Plaintiffs explained in their complaint, the Noem Determination proclaimed that the CBA "is hereby rescinded" and TSA has stated "[t]here is no CBA between TSA and AFGE." Compl. ¶¶ 71, 82. The abrogation of constitutionally protected property interests resulting from a government contract is barred by the Fifth Amendment, which provides an independent reason that Defendants' motion to dismiss Count IV should be denied. *Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F.Supp. 1388, 1402 (E.D. Cal. 1994) (under *Lynch v. United States*, 292 U.S. 571, 579 (1934), Due Process Cause violated when the government abrogates cognizable property rights arising out of government contract).

## III.    AFGE Has Adequately Alleged Its First Amendment Claim

In Count III of the Complaint, AFGE alleges that Defendants' rescission of the 2024 CBA and termination of contractual grievances constituted unlawful retaliation against AFGE for exercising its First Amendment rights. Compl. ¶¶ 119-26. Establishing a First Amendment retaliation claim requires showing "that (1) [the plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 21
CASE NO. 2:25-cv-451-MJP

1    motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)

2    (internal quotations omitted). Once a plaintiff establishes a prima facie case for First Amendment

3    retaliation, "the burden shifts to the defendant official to demonstrate that even without the impetus

4    to retaliate he would have taken the action complained of." *Boquist v. Courtney*, 32 F.4th 764,

5    777-78 (9th Cir. 2022) (internal quotation marks omitted). A plaintiff need only show an intention

6    to interfere with First Amendment rights and "some injury as a result"— not actual suppression of

7    speech. *Ariz. Students Ass'n*, 824 F.3d at 867.

8          Defendants rightly do not contest the first and second prong of AFGE's retaliation claim.

9    AFGE alleged that it has previously filed lawsuits against the Trump administration on issues

10   affecting federal workers and the public, Compl. ¶¶ 65-67, and suing the government is protected

11   by the First Amendment, *see Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017). It is likewise

12   clear that AFGE has alleged facts demonstrating that Defendants' actions would chill a person of

13   ordinary firmness: rescinding the 2024 CBA and accordingly refusing to deduct and transmit

14   voluntary union dues to AFGE is sufficient for a retaliation claim. Compl. ¶¶ 71, 73; *see Ariz.*

15   *Students' Ass'n*, 824 F.3d at 868-70.

16         Instead, Defendants argue the claim should be dismissed for failing to plausibly allege

17   causation. MTD at 22-24. "At the pleading stage, a plaintiff adequately asserts First Amendment

18   retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory

19   intent to the suppressive conduct." *Ariz. Students' Ass'n*, 824 F.3d at 870. Retaliatory motive in

20   First Amendment cases can be demonstrated using "circumstantial evidence such as a proximity

21   in time between the protected speech and the adverse action, the defendant's expression of

22   opposition to the protected speech, and evidence that the defendant proffered false or pretextual

23

24

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 22
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

explanations for the adverse action." *Boquist*, 32 F.4th at 777. Plaintiffs have more than plausibly alleged such evidence regarding Defendants' retaliatory actions.

As this Court has recognized, the Noem Determination "follows closely AFGE's litigation efforts to push back against the Trump Administration's attacks on federal workers." Order at 34; *see* Compl. ¶ 65. AFGE's protected activity occurred in the weeks leading up the challenged actions: it first sued the new administration in January. *Public Citizen, Inc. v. Trump*, No. 25-cv-00164, ECF 1 (D.D.C. Jan. 20, 2025); *AFGE v. Trump*, No. 25-cv-00264, ECF 1 (D.D.C. Jan. 29, 2025). In February, it sought preliminary relief against the administration regarding the "Fork" deferred resignation program, obtaining a stay of the program deadline, which affected employees at agencies including DHS. *AFGE v. Ezell*, No. 25-cv-10276, ECF 42, 60 (D. Mass. Feb. 6, 2025 & Feb. 10, 2025). On February 19, AFGE and allied organizations sued the administration over its mass termination of probationary employees, which resulted in a ruling on February 27 that OPM lacked authority to direct the firings of probationary workers. *See AFGE v. OPM*, 2025 WL 660053, at \*14; Compl. ¶ 67. Furthermore, Plaintiffs alleged that the administration is monitoring which entities were filing suits against them, highlighting one online post from then-White House advisor Elon Musk regarding the same.[6] Compl. ¶ 66 ("Which law firms are pushing these anti-democratic cases to impede the will of the people?"). This "temporal proximity between [AFGE's] protected activity and [Defendants'] alleged retaliatory conduct" serves as circumstantial evidence of causation. *Ariz. Students' Ass'n*, 824 F.3d at 870.

---

[6] Musk also retweeted a post attacking a coalition of organizations who filed legal challenges to various Trump administration policies that called out AFGE by name and claimed "[a]lmost every single lawsuit that has been filed against the second Trump administration has come from this group." @elonmusk, X (Feb. 12, 2025), https://x.com/elonmusk/status/1889879302965191056.

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 23
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1      Citing *Fouladi v. City of Tucson*, 94 F. App'x 485, 486 (9th Cir. 2004), Defendants argue

2  that "temporal proximity is not sufficient alone" to show causation. MTD at 23. It is true that

3  *Fouladi* explains that "the surrounding circumstances must also be considered." 94 F. App'x at

4  486. But as this Court has recognized, AFGE is not relying solely on temporal proximity, and the

5  surrounding circumstances bolster AFGE's claim. *See* Order at 34-35.

6      First, the Noem Determination itself shows animus towards AFGE and puts forward false

7  and pretextual explanations for rescinding the CBA. From the very subject line it targets a "Union

8  That Harms Transportation Security Officers." Compl. ¶ 68. It claims that collective bargaining

9  has "solely benefited the American Federation of Government Employees (AFGE) at TSOs'

10  expense." *Id.* ¶ 69. And when TSA announced the rescission of the CBA, it again counterfactually

11  claimed that TSOs "are losing their hard-earned dollars to a union that did not represent or protect

12  their interests." *Id.* ¶¶ 79-80. As this Court has recognized, "[i]t is simply not true that the AFGE

13  has solely benefitted from the CBA or that the CBA has come at TSOs expense." Order at 34.

14  These specific factual allegations that Defendants have "proffered false or pretextual explanations"

15  for its action further demonstrate that AFGE has plausibly alleged a First Amendment retaliation

16  claim. *Boquist*, 32 F.4th at 777.

17      Seeking to downplay this circumstantial evidence, Defendants contend that their attacks on

18  AFGE are themselves protected government speech, arguing that "criticism of AFGE by the

19  government is fair game and bears no relationship to a First Amendment violation." MTD at 23.

20  But as the court in *Perkins Coie LLP v. DOJ*, __ F.Supp.3d __, 2025 WL 1276857, at *18 (D.D.C.

21  May 2, 2025), explained when facing a similar argument, this "attempt to reframe this case as

22  about governmental speech is subterfuge." As in *Perkins Coie*, "the claims that the government

23  seeks to dismiss in this lawsuit challenge the use of governmental power, not governmental

24

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

speech." *Id.* Plaintiffs do not contest that a government official "can share her views freely and criticize particular beliefs"—the issue here is that Defendants have impermissibly "use[d] the power of the State to punish or suppress disfavored expression." *NRA v. Vullo*, 602 U.S. 175, 188 (2024). Defendants' statements regarding AFGE are being raised not to silence the government, but instead for a permissible purpose: evidence supporting the claim that the 2024 CBA was rescinded in retaliation for AFGE's protected activity.

Furthermore, Plaintiffs alleged that the rescission of the 2024 CBA was "in accord with a broader Trump administration policy of terminating contracts in retaliation for protected speech," highlighting the executive order targeting Perkins Coie, which attempted to justify punitive actions against the firm on the ground that it had "worked . . . to judicially overturn . . . election laws.". Compl. ¶ 124; *Addressing Risks From Perkins Coie LLP*, E.O. 14230, 90 Fed. Reg. 11781 (Mar. 6, 2025). The same day as the Perkins Coie EO, President Trump issued a memorandum to agency heads stating that "activist organizations . . . have obtained sweeping injunctions . . . functionally inserting themselves into the executive policy making process and therefore undermining the democratic process." Compl. ¶ 77.

AFGE's allegation of a broader retaliatory scheme has proven true: President Trump has issued additional executive orders targeting law firms for their First Amendment-protected activity. *See Perkins Coie*, 2025 WL 1276857 at *37 (collecting other actions taken against law firms). And, even more directly on point, in late March, President Trump issued an executive order that stripped labor rights from most federal employees, including other employees at DHS. E.O. 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025). In so doing, it expressly called out the "largest Federal

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

union," AFGE, for its First Amendment activity.[7] Specifically, the White House justified its action in an official Fact Sheet that attacked "hostile Federal unions" (as opposed to "unions who work with him"), claiming that "[c]ertain Federal unions have declared war on President Trump's agenda," and specifically calling out AFGE for "describ[ing] itself as 'fighting back' against Trump."[8] That same day, DHS and other agencies sued AFGE affiliates, justifying the necessity of the lawsuit by citing an AFGE publication outlining how AFGE is "fighting back," including through filing lawsuits, lobbying, and making public statements. Compl., *DOD v. AFGE, AFL-CIO, Dist. 10*, No. 6:25-cv-119, Dkt. #1 at ¶ 172 (W.D. Tex. Mar. 27, 2025). And in the aftermath of the Executive Order stripping federal bargaining rights, one agency has reinstated bargaining rights on an explicitly union-by-union basis, admitting that this decision was based on the number of grievances filed against the agency. *See* Order, 90 Fed. Reg. 16427 (Apr. 17, 2025); Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of union rights*, Government Executive (Apr. 18, 2025), https://www.govexec.com/workforce/2025/04/va-selectively-enforcing-trumps-order-stripping-workers-union-rights/404694/ (VA spokesperson stating that unions whose rights were restored "filed no or few grievances against VA").

As the court in *Perkins Coie* recognized, actions pointing towards a "campaign of retribution," including those subsequent to the challenged act, provide circumstantial evidence to support a First Amendment retaliation claim. 2025 WL 1276857 at *37-38; *see also Adetuyi v. City & Cnty. of San Fransisco*, 63 F.Supp.3d 1073, 1089-90 (N.D. Cal. 2014) (Title VII)*; Adlerstein v. U.S. Customs & Border Prot.*, No. CIV 19-500, 2020 WL 5846600, at *12 (D. Ariz.

---

[7] White House Fact Sheet, s*upra* at 5-6, https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/.

[8] *Id.*

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 26
CASE NO. 2:25-cv-451-MJP

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

Sept. 30, 2020) ("pattern of antagonism and ongoing retaliatory conduct" supports First Amendment retaliation claim); Order at 35 (recognizing that a "pattern of ongoing retaliation" supports a First Amendment claim). Especially when combined with the other factual allegations discussed above, AFGE has alleged specific facts that put forward a plausible First Amendment retaliation claim, and Defendants' motion to dismiss Count III should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion to dismiss.

Respectfully submitted,

Date: June 17, 2025

*/s/Robert H. Lavitt*
Robert H. Lavitt, WSBA No. 27758
Barnard Iglitzin & Lavitt LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6004
lavitt@workerlaw.com

*I certify that this memorandum contains 8393 words, in compliance with the Local Civil Rules.*

*/s/ Abigail V. Carter*
 Abigail V. Carter*
*/s/ J. Alexander Rowell*
J. Alexander Rowell*
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W. Suite 1000
Washington, D.C. 20005
(202) 842-2600
(202) 842-1888 (fax)
acarter@bredhoff.com
arowell@bredhoff.com

*/s/ Norman L. Eisen*
Norman L. Eisen*
*/s/ Pooja Chaudhuri*
Pooja Chaudhuri*
*/s/ Taryn Wilgus Null*
Taryn Wilgus Null*

PLS.' OPP'N TO DEFS.' MOT. TO DISMISS – 27
CASE NO. 2:25-cv-451-MJP

State Democracy Defenders Fund
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
(202) 594-9958
norman@statedemocracydefenders.org
pooja@ statedemocracydefenders.org
taryn@statedemocracydefenders.org

`   *Admitted pro hac vice*

*Counsel for Plaintiffs*

*/s/ Rushab B. Sanghvi*
Rushab B. Sanghvi*
*/s/ Andres M. Grajales*
Andres M. Grajales*
American Federation Of
Government Employees, AFL-CIO
80 F Street, NW
Washington, DC 20001
(202) 639-6426
SanghR@afge.org
Grajaa@afge.org

 *Admitted pro hac vice*

*Counsel for Plaintiff American Federation of Government Employees (AFGE)*

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**