Judge Pechman

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; HA NGUYEN McNEILL, in her official capacity as Acting Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION,<br><br>Defendants. | CASE NO. C25-0451MJP<br><br>**DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM** |

**INTRODUCTION**

As established in Defendants' motion, Plaintiffs' lawsuit should be dismissed for lack of subject-matter jurisdiction because their claims are not cognizable under the Administrative

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 1
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Procedure Act's limited waiver of sovereign immunity. Additionally, Plaintiffs' constitutional claims are subject to dismissal for failure to state a claim. Plaintiffs' opposition does not successfully refute these arguments.

**ARGUMENT**

PLAINTIFFS' CLAIMS MUST BE CHANNELED TO THE FLRA

Defendants' motion explained that Plaintiffs can raise their challenge to the Noem Determination by filing a charge of an unfair labor practice with the FLRA. In response, Plaintiffs assert that both TSA's 2022 Determination on collective bargaining, which is the predicate for the 2024 CBA, and the challenged 2025 Noem Determination do not allow for FLRA review. *See* Dkt. # 42 at 15. While Plaintiffs are correct that the determinations preclude FLRA review of disputes arising *under* the CBA or disputes about particular personnel actions, the determinations do not address the specific question presented here: whether the FLRA may review termination of a CBA resulting from recission and replacement of the ATSA § 111(d) determination on which it was predicated.[1] That question is unprecedented, and the FLRA should have the opportunity to consider it. As explained in Defendants' motion, and acknowledged by Plaintiffs, the FLRA has previously examined ATSA § 111(d) determinations to interpret them and determine their validity, *see* Dkt. # 42 at pp. 16 & 17 *n*.2, and the Court should not accept Plaintiffs' assumption that the FLRA would find no jurisdiction over the dispute presented in this case when they have not even attempted to bring the matter to the FLRA.

II. THE DECISION TO RESCIND THE CBA WAS AN EXERCISE OF UNREVIEWABLE AGENCY DISCRETION

Defendants' motion explained that ATSA § 111(d) confers unfettered discretion to set terms and conditions of employment for TSA's screening workforce, including with regard to collective bargaining and representation rights, thereby precluding APA review of the Noem Determination.

---

[1] DHS did not terminate the CBA under the framework of the 2022 Determination that had allowed for collective bargaining. Instead, the CBA was terminated as a result of the 2022 Determination being rescinded and replaced with the Noem Determination that does not allow collective bargaining.

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 2
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

In response, Plaintiffs concede that neither ATSA § 111(d) nor any DHS or TSA regulations or policies limit the agency's discretion in a way that provides standards that could be applied to adjudicate an APA claim. But Plaintiffs argue that the 2024 CBA "is a self-imposed restriction of agency discretion" and the terms of that agreement provide the "standards to evaluate" their APA claims. Dkt. # 22 at 35. Plaintiffs' contention is unavailing.

First, Plaintiffs are incorrect that "the CBA limits TSA for a fixed duration." *Id.* at 23. Plaintiffs argue that because the CBA stated a fixed term, TSA locked itself into the agreement for that term *regardless* of whether future leadership made new determinations under ATSA § 111(d). But the CBA does not actually say that. In fact, the CBA is silent as to termination prior to expiration of the full term, and silent as to the effect of a new ATSA § 111(d) determination. Because the CBA was entirely contingent upon TSA's 2022 Determination regarding collective bargaining, TSA understood—and Plaintiffs should have understood—that if the 2022 Determination was superseded and replaced by a new determination, then the continued validity of the CBA would depend on the terms of that new determination. Simply put, TSA did not intend to—and did not—restrict its statutory discretion. Had that been the intent of the parties in entering into the CBA, the CBA would not have been silent on such an important point. Instead, the CBA would have stated that intention in clear and unmistakable terms. Rather, the fixed term stated in the CBA was applicable to the contractual relationship between TSA and AFGE only *under the framework of the 2022 Determination*; as long as that framework remained in place, the parties were bound by the agreement for the stated term. But once the 2022 Determination was superseded and replaced, which is exactly what happened when the challenged Noem Determination was issued, the CBA was no longer applicable.

Second, Plaintiffs have not cited a single judicial decision in which a court found that a collective bargaining agreement—or any other type of contract—supplied the judicially manageable standards for judging an APA claim challenging an agency action pursuant to a statute that undisputedly affords unfettered discretion. Instead, in every case cited by Plaintiffs, the applicable standards for reviewing an exercise of statutory discretion came from regulations or policies

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 3
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

establishing clear requirements for agency decision-making. There simply does not appear to be any precedent for allowing an APA claim to proceed based only on contract terms. As explained in Defendants' motion, there are no regulations or agency policies limiting the discretion afforded by ATSA § 111(d), and Plaintiffs can point to no language in the CBA that purported to restrict TSA's ability to make a new determination under ATSA § 111(d) to replace the 2022 Determination.

Third, Plaintiffs' citation to case law from the immigration enforcement context is misplaced. Those cases involved exercises of "enforcement discretion" that the Supreme Court recognized in *Heckler v. Chaney*, 470 U.S. 821, 830 (1985), which is fundamentally different from the discretion at issue in this case. Enforcement discretion is not the product of a statute; rather, it is grounded on "tradition" and "the general unsuitability for judicial review of agency decisions to refuse enforcement." *Id*. By contrast, the Noem Determination challenged in this case was made under a particular statute clearly and specifically conferring unfettered discretion to manage TSA's screening workforce. And the determination has nothing to do with criminal or civil enforcement actions. Accordingly, this case bears no resemblance to immigration enforcement cases, and they are simply not instructive. The holdings in the immigration cases pertain only to delineating the boundaries of an agency's general enforcement discretion (which is not at issue here); they have nothing to say about finding judicially manageable standards of review for the exercise of statutory discretion challenged in this case.[2]

Finally, Plaintiffs' particular reliance on *Alcaraz v. INS*, 384 F.3d 1150 (9th Cir. 2004), *see* Dkt. # 42 at p. 23; Dkt. # 34 at pp. 13-14, is unavailing. In *Alcaraz*, an immigration statute gave the Attorney General discretionary authority to provide certain "aliens rendered ineligible for suspension of deportation" the opportunity to apply for a new form of relief called "cancellation of removal." *Id.* at 1152-53. The process of providing that opportunity was called "repapering." *Id.* at 1153. The

---

[2] The Court's preliminary injunction order appears to misapprehend Defendants' position. The order states that "Defendants argue that the Noem Determination is unreviewable as a form of non-enforcement decision that the Supreme Court has exempted from review." Dkt. # 39 at p. 23, *ll.* 11-13. That is not Defendants' position. In fact, Defendants' position is just the opposite: the Noem Determination is *not* an exercise of enforcement discretion. Instead, it is an exercise of a specific statutory grant of discretion. Defendants' argument is that case law concerning enforcement discretion is inapposite, as this case does not involve an exercise of enforcement discretion.

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 4
(Case No. C25-0451MJP)

Attorney General exercised the statutorily-granted discretion through a series of memoranda that *required* immigration courts to *consider* whether repapering was appropriate when an alien appeared eligible.  *See id.* at 1154-55.  The *Alcaraz* plaintiffs "were clearly eligible," but when the Board of Immigration Appeals reviewed their case, "it failed to consider them for repapering."  *Id.* at 1153.  The plaintiffs claimed that failure violated the APA, and the government argued that repapering decisions were committed to agency discretion and thus unreviewable.  The court held that although the statute granted discretion to the Attorney General, after the Attorney General exercised that discretion to *require* immigration courts—which are components of the Department of Justice under the Attorney General's control—to *consider* whether repapering was appropriate in every case in which an alien appeared eligible, the Board did not have discretion to skip such consideration.  The court stopped short of holding that the Board was required to *grant* repapering for the plaintiffs, finding that "further factual development" was needed about whether the policy memoranda at issue actually "obligated" the Board to repaper eligible aliens or if the decision to grant or deny repapering was left to the Board's discretion in individual cases.  *Id.* at 1161-63.  But the court found that there was no question that the Board was at least required by the memoranda to *consider* the issue, and its failure to do so was reviewable under the APA, even if the ultimate decision to grant or deny repapering remained subject to the Board's discretion.

*Alcaraz* is distinct from this case in important ways.  *Alcaraz* involved a statutory grant of discretion to a cabinet-level official who exercised that discretion by issuing mandatory direction to subordinate components.  The question in the case was whether one such component had in fact followed the direction, and the court held that APA review was available to answer that question.  As the *Alcaraz* court noted, it is noncontroversial that subordinate "agencies may be required to abide by certain internal policies" set by departmental leadership.  *Id.* at 1162.

The situation in this case bears no resemblance to *Alcaraz*.  Here, Plaintiffs assert that prior substantive policy decisions by a past TSA Administrator—the 2022 Determination and the 2024 CBA—restricted the statutory discretion possessed by the current Secretary of Homeland Security.  Further, the policy memoranda at issue in *Alcaraz* were found by the court to have established a

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 5
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

mandatory procedural requirement: immigration courts were required to *consider* repapering for aliens who appeared eligible (even if the decision to grant or deny repapering remained discretionary). Here, by contrast, the 2022 Determination and 2024 CBA did not even purport to establish mandatory procedural requirements for how future DHS and TSA leaders must exercise their discretion under ATSA § 111(d).

In sum, Plaintiffs have not provided any support for their position that the CBA provides judicially manageable standards of review that can be applied to the challenged determination in this case.

III. PLAINTIFFS' CLAIMS ARE IMPLIEDLY FORBIDDEN BY THE TUCKER ACT

As Plaintiffs admit, the CBA is a contract. Dkt. 1, ¶ 7. This admission is binding on Plaintiffs and the Court. *See Bancroft v. Minnesota Life Ins. Co.*, 329 F. Supp. 3d 1236, 1255 n.15 (W.D. Wash. 2018), *aff'd*, 783 F. App'x 763 (9th Cir. 2019) (internal quotations omitted).

As a jurisdictional matter, APA claims seeking injunctive relief that are based on a contract are impliedly forbidden by the Tucker Act, 28 U.S.C. § 1491(a)(1). *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 646 (9th Cir. 1998); *N. Star Alaska v. United States*, 14 F.3d 36, 38 (9th Cir. 1994) ("[W]e decline to overrule this Court's very specific holdings that the APA does *not* waive sovereign immunity for contract claims seeking [equitable] relief." (emphasis original)). Because all of Plaintiffs' claims are based on the CBA, the Court lacks subject matter jurisdiction and must dismiss the case.

Plaintiffs' argument to the contrary rests on a requirement that has never been adopted in this Circuit, *i.e.*, that for an APA claim based on a contract to be impliedly forbidden by the Tucker Act, the Court of Federal Claims must be able to afford relief on the claim. Plaintiffs assert that only claims based on "money-mandating" contracts are adjudicable by the Court of Federal Claims, and because the CBA is not a money-mandating contract, their APA claims are not barred. Dkt. # 42, pp. 19-21.

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 6
(Case No. C25-0451MJP)

United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

The problem with this argument is that no case cited by Plaintiffs supports it.[3] Plaintiffs only cite cases holding that the Court of Federal Claims' jurisdiction is limited to contracts that are "money-mandating." Just so, perhaps, but not the point here. None of the cases cited by Plaintiffs support the proposition that Tucker Act preclusion applies only to APA claims based on "money-mandating" contracts. To the contrary, the Ninth Circuit has steered a decidedly different course. In several cases, the Circuit has held that contract-based APA claims are precluded regardless of whether relief is available in the Court of Federal Claims. *Doe v. Tenet*, 329 F.3d 1135, 1141 (9th Cir. 2003), *rev'd*, 544 U.S. 1 (2005) ("The fact that the Court of Federal Claims has no power to grant specific enforcement of a contract does not mean that a suit for specific enforcement can be brought in district court."); *Tucson Airport Auth.*, 136 F.3d at 644 ("[T]hat a plaintiff against the United States may receive less than complete relief in the federal courts should not necessarily be viewed as an inappropriate result[.]"). Whether a contract is "money-mandating" has *never* been part of the Circuit's analysis. Plaintiffs thus ask this Court to make new law out of whole cloth.

Notably, Plaintiffs make no effort to reconcile their argument with *Tucson Airport Authority*, which did not involve a money-mandating contract. Rather, under the contract at issue, the United States was alleged to have undertaken a duty to defend the plaintiff, General Dynamics, in litigation brought by third parties. *Id.* at 643. The Court held that because General Dynamics' claims were based on a contract, they were impliedly forbidden by the Tucker Act. *Id.* at 647. As noted above, the Court acknowledged that General Dynamics might not be able to obtain complete relief in the federal courts. *Id.* at 644. But that fact was not found by the Court to be outcome determinative. As the Court concluded, "this result is clearly dictated by the principles of sovereign immunity and the

---

3  The decision in *Pacito v. Trump*, ___ F.Supp.3d ___, 2025 WL 893530 (W.D. Wash. Mar. 24, 2025), is inapposite. The decision neither cited any authority for the proposition that a contract must be money-mandating for Tucker Act preclusion to apply, nor addressed the obvious incongruity of that proposition with *Tucson Airport Authority*. In any event, the Court chose not to decide the issue. *Id.* at *5 ("[T]he Court need not resolve whether the USRAP cooperative agreements constitute 'contracts' enforceable under the Tucker Act . . ."). Moreover, the preliminary injunction in *Pacito* was largely stayed pending appeal because "the government is likely to succeed on the merits." 2025 WL 1325306 (9th Cir. April 21, 2025).

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 7
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

limited jurisdiction of federal courts, which only Congress—and not this court—can change." *Id.* at 648.

Similarly, *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907 (9th Cir. 2009), did not involve a money-mandating contract. The Plaintiff was seeking to confirm an arbitration award. The Court concluded that the district court did not acquire jurisdiction over plaintiff's claim not just because it sought money damages but also because it sought "enforcement of contractual rights." *Id.* at 932. As in *Tucson Airport Authority*, the Court drew no distinction between contractual rights that are based on money-mandating contracts or other type of contracts. Indeed, as to "whether [plaintiff] ha[d] an adequate remedy elsewhere," the Court "express[ed] no opinion." *Id*. at 644. Finding the plaintiff's argument for district court jurisdiction "materially indistinguishable" from the argument it rejected in *Tucson Airport Authority*, the Court concluded that the action was barred by sovereign immunity. *Id.* at 931-932. The Court expressed its regret about the outcome of its analysis, acknowledging that the Court of Appeals for the Federal Circuit had already signaled that neither it nor the Court of Federal Claims had jurisdiction but, according to the Court, "we cannot exercise jurisdiction where none exists." *Id*. at 935.

Plaintiffs' contention that its APA claims, all based on a contract, are not impliedly forbidden by the Tucker Act because the CBA is not money-mandating should be rejected because no cases support it and because the argument is contrary to decided precedent in this Circuit.[4]

Plaintiffs also do not dispute that all its claims, aside from its First Amendment claim, are based on the CBA.[5] However, like its due process claim, Plaintiffs' First Amendment claim is based on the CBA itself and is therefore foreclosed. Plaintiffs' due process claim is based on the recission

---

4 *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs*., 137 F.4th 932, (9th Cir. 2025), is not to the contrary. The case did not turn on the nature of the underlying contract. Rather, in the context of a motion for a stay pending appeal, the Court concluded that a subcontractor who had no right to sue the Government under the Tucker Act was not impliedly forbidden from pursuing an APA claim. *Id.* at 938-939. Even if *Cmty. Legal Servs in E. Palo Alto* is construed to somehow be in conflict with *Tucson Airport Authority,* as the decision that is earlier in time, *Tucson Airport Authority* is controlling. *See Atonio v. Wards Cove Packing Co., 768* F.2d 1120, 1132 *n.*6 (9th Cir.), *reh'g granted, opinion withdrawn,* 787 F.2d 462 (9th Cir. 1985), *and on reh'g en banc,* 810 F.2d 1477 (9th Cir. 1987).

5 As noted previously, Plaintiffs' due process claim is clearly foreclosed by the law of the Circuit. See Dkt. 37, p. 18, *l.* 17 – p. 19*, l.* 2. Plaintiffs' opposition does not rebut this argument.

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 8
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1 of the CBA because, according to Plaintiffs, its due process right to a hearing was triggered by the resulting deprivation of a constitutionally protected property interest. As such, the claim is therefore impliedly forbidden by the Tucker Act. *Tucson Airport Auth.*, 136 F.3d at 647 (declining to follow *Transohio v. Dir., Of. Of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992)). Similarly, the alleged violation of AFGE's First Amendment rights did not occur in a vacuum. That alleged infringement of its rights also resulted from the recission of the CBA, which Plaintiffs have alleged was an act of retaliation for engaging in constitutionally protected activities.

In summary, all of Plaintiffs' claims are impliedly forbidden by the Tucker Act and they should be dismissed for lack of subject-matter jurisdiction on that ground.

IV. PLAINTIFFS' DUE PROCESS CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As Plaintiff now concedes, not all contracts with a government entity give rise to a constitutionally protected property interest. Dkt. # 42, p. 26, *ll*. 1-2; *see DeBoer v. Pennington*, 206 F.3d 857, 869 (9th Cir. 2000), *vacated on other grounds sub nom. City of Bellingham v. DeBoer*, 532 U.S. 992 (2001). Because Plaintiffs' claim is not the type of government contract that has been found to create a constitutionally protected property interest, Plaintiffs' due process claim should be dismissed.

As set forth in Defendants' motion, the Ninth Circuit has identified only two types of contracts with government entities giving rise to property interests protected under the Due Process Clauses of the Fifth and Fourteenth Amendments. The "first type arises where the contract confers a protected status due to extreme dependence, as is the case with welfare benefits, or permanence, as is the case with tenure, or sometimes both, as frequently occurs in the case of social security benefits." *DeBoer*, 206 F.3d at 869 (cleaned up). The second type arises where the contract itself contains a provision allowing the governmental entity to terminate the contract only for cause. *Id*.

The CBA does not fit within either category, either as to AFGE or its members. AFGE claims to have "protected status" merely because, under the CBA, it is the exclusive representative of its membership. However, Plaintiffs' argument ignores the full description given in *DeBoer* of

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM - 9
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

the type of party to a government contract able to claim a special status for purposes of the Due Process Clause. The protected status necessary to invoke constitutional due process in the context of a government contract is one of "extreme dependence, as is the case with welfare benefits, or permanence, as is the case with tenure, or sometimes both, as frequently occurs in the case of social security benefits." *Id.* Neither AFGE's nor its members' level of dependence on the CBA can reasonably be compared to that of a welfare recipient.

Nor does the CBA afford either the union or its members "permanence" akin to lifetime tenure. To the contrary, nothing in the CBA precludes termination of the agreement as the result of a new ATSA § 111(d) determination. As explained above in Defendants' arguments about APA non-reviewability, because the CBA was entirely contingent upon the framework created by TSA's 2022 Determination, and the parties understood that DHS and TSA leadership have the statutory authority to issue a new determination at any time, the CBA did not include any provisions purporting to prohibit termination before expiration of the seven-year term. A contract of that nature does not create a constitutionally protected due process interest. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 371 (9th Cir. 1990) (no constitutionally protected property interest arises from a contract that does not impose "significant constraints" on termination by the contracting agency). In the absence of a provision directly limiting when and under what circumstances the CBA could be terminated by TSA, the CBA provides no protections that give rise to a constitutionally protected right to due process.

Finally, even if the Court concludes that Plaintiffs have adequately plead a due process violation, the Court lacks subject-matter jurisdiction to adjudicate the claim because the supposed property interest giving rise to the due process claim is the CBA itself. *See Tucson Airport Auth.*, 136 F.3d at 647 (declining to follow *Transohio*, 967 F.2d 598).

V. **PLAINTIFFS' FIRST AMENDMENT RETALIATION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

As set forth in Defendants' principal memorandum, Plaintiffs' claim that the recission of the CBA was a retaliatory act for their exercise of First Amendment rights rests on conclusory

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION AND FOR
FAILURE TO STATE A CLAIM - 10
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1  allegations, speculation, and discrete events having nothing to do with TSA. Plaintiffs' opposition
2  also relies on assertions of fact that are not alleged in the operative complaint. *See* Dkt. # 42, pp. 32-
3  34. While it may be acceptable to refer to matters beyond the allegations of a complaint in the
4  context of seeking a preliminary injunction, it is not proper in responding to a motion to dismiss.
5  *See Harper v. United States Dep't of the Interior*, 571 F. Supp. 3d 1147, 1159 (D. Idaho 2021), *rev'd*
6  *and remanded on other grounds, Harper v. Nedd*, 71 F.4th 1181 (9th Cir. 2023). All that is alleged
7  in Plaintiffs' complaint is that the Secretary and the agency had unkind things to the say about
8  AFGE in connection with the decision to rescind the contract, which Plaintiffs believe are untrue.
9  *See e.g.,* Dkt. # 1, ¶¶ 68-69, 79-80. But nothing on the face of those statements evidences a
10 retaliatory intent. And as tension between management and unions in a collective bargaining setting
11 (for a host of reasons) is not at all an uncommon phenomenon, expressions of negative views about a
12 union is hardly indicative of a First Amendment violation. Plaintiffs make much of the fact that
13 prior to the Noem Determination, they filed lawsuits against other agencies of the federal
14 government. But they allege nothing to connect the filing of those lawsuits to the decision to
15 terminate the CBA. *Id.* at ¶¶ 65, 67, 69. Similarly, the complaint alleges a host of discrete facts,
16 *e.g.*, the Administration's alleged desire to "slash" the federal workforce, its alleged "monitoring" of
17 entities filing suit against the Administrations, *id.* at ¶¶ 63-64, 66, again without presenting any
18 connection between those facts and the decision to rescind the CBA. Finally, Plaintiffs allege that
19 *after* the CBA was rescinded, the President issued a directive to all federal agencies instructing them
20 to request that courts require plaintiffs who obtain injunctions against the Administration to post
21 security. *Id.,* at ¶ 77. No allegation factually connects this memorandum to the Noem
22 Determination. All other facts asserted by Plaintiffs in opposition to the motion to dismiss are not
23 alleged in their complaint and may not be considered in connection with this motion.
24     Regardless, Plaintiffs' argument does not overcome the fundamental truth that their
25 complaint does not allege a single fact that supports their conclusory allegation that the Noem
26 Determination was motivated by a desire to punish AFGE for engaging in protected First
27 Amendment activities. Instead, in the absence of any alleged facts that demonstrate an intent to
28 DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR
   LACK OF SUBJECT-MATTER JURISDICTION AND FOR
   FAILURE TO STATE A CLAIM - 11
   (Case No. C25-0451MJP)

retaliate against AFGE, Plaintiffs' complaint relies on nothing more than rank speculation. Because Plaintiffs' allegations do not rise above the speculative level, their First Amendment claim should be dismissed for failure to state a claim upon which relief can be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (complaint that does not permit "more than the mere possibility of misconduct" should be dismissed); *and see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

## CONCLUSION

For the foregoing reasons, and for those reasons stated in their motion, Defendants respectfully request that their motion be granted, and the lawsuit be dismissed for lack of subject-matter jurisdiction or alternatively that Counts III and IV of the complaint be dismissed for failure to state a claim.

## CERTIFICATION

I certify that this memorandum contains 4,192 words, in compliance with Local Civil Rule LCR 7(e)(3).

DATED this 24th day of June 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
E-mail: brian.kipnis@usdoj.gov

Attorneys for Defendants

DEFENDANTS' REPLY RE: MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM - 12
(Case No. C25-0451MJP)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970