1

2

THE HONORABLE JAMAL N. WHITEHEAD

3

4

5

6

7   **UNITED STATES DISTRICT COURT**
    **WESTERN DISTRICT OF WASHINGTON**
    **AT SEATTLE**

8

9   AMERICAN FEDERATION OF
    GOVERNMENT EMPLOYEES, AFL-CIO;
    AMERICAN FEDERATION OF
10  GOVERNMENT EMPLOYEES, AFL-CIO TSA
    LOCAL 1121; COMMUNICATIONS
11  WORKERS OF AMERICA, AFL-CIO; and
    ASSOCIATION OF FLIGHT ATTENDANTS-
12  CWA, AFL-CIO,

13                              Plaintiffs,

14      v.

15  KRISTI NOEM, in her official capacity as
    Secretary of Homeland Security; U.S.
16  DEPARTMENT OF HOMELAND SECURITY;
    HA NGUYEN MCNEILL, in her official
17  capacity as the Senior Official Performing the
    Duties of the Administrator of the Transportation
18  Security Administration; and
    TRANSPORTATION SECURITY
19  ADMINISTRATION,

20                              Defendants.

CASE NO. 2:25-cv-451-JNW

**PLAINTIFFS AFGE AND AFGE
LOCAL 1121's EMERGENCY
MOTION TO ENFORCE
PRELIMINARY INJUNCTION**

NOTE ON MOTION CALENDAR:
December 18, 2025

21

22

23

24

PLS.' MOT. TO ENFORCE PRELIM. INJ. – i
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

   A.   Plaintiffs' Collective Bargaining at TSA and the February Determination. ...................... 2

   B.   Plaintiffs Challenge the Termination of the 2024 CBA and Existing Grievances, with the Court Entering a Preliminary Injunction to Protect the Status Quo. .................................. 3

   C.   Defendants Inform AFGE that, as of January 11, 2026, They Will Again Terminate the 2024 CBA and Existing Grievances. ................................................................................. 5

ARGUMENT ................................................................................................................. 6

   I.   Defendants' Announced Rescission of the 2024 CBA Violates the Preliminary Injunction. .............................................................................................................. 7

   II.   Defendants May Not Evade the Preliminary Injunction By Repackaging Their Termination of the 2024 CBA. ................................................................................ 8

   III.   Defendants' Repackaging of Their Rescission of the 2024 CBA Does Not Moot This Case. .................................................................................................................... 12

CONCLUSION ............................................................................................................. 13

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**Cases**

3

*Akiachak Native Cmty. v. U.S. Dep't of the Interior*,
  827 F.3d 100 (D.C. Cir. 2016) .............................................................13

4

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
  941 F.3d 1195 (9th Cir. 2019) ............................................................13

5

6

*Boardman v. Pac. Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) ..............................................................7

7

*City & County of San Francisco v. Trump*,
  782 F. Supp. 3d 830 (N.D. Cal. 2025) ...............................................11

8

*City of Seattle v. Trump*,
  2025 WL 3041905 (W.D. Wash. Oct. 31, 2025) ................................11

9

10

*F.V. v. Jeppesen*,
  466 F. Supp. 3d 1110 (D. Idaho 2020) ..............................................12

11

*Kescoli v. Babbitt*,
  101 F.3d 1304 (9th Cir. 1996) ............................................................13

12

*Loc. 28 of the Sheet Metal Workers Int'l Ass'n v. EEOC*,
  478 U.S. 421 (1986).............................................................................9

13

14

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949)...........................................................................10

15

*Movers Conf. of Am. v. United States*,
  251 F. Supp. 882 (S.D. Cal. 1966).....................................................12

16

17

*N.E. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of
  Jacksonville*,
  508 U.S. 656 (1993)...........................................................................13

18

19

*Pacito v. Trump*,
  2025 WL 1397613 (W.D. Wash. Apr. 11, 2025).............................6, 8

20

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) ............................................................12

21

22

*WildEarth Guardians v. Haaland*,
  2023 WL 8613628 (9th Cir. Dec. 13, 2023) ......................................13

23

24

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

1

## INTRODUCTION

2

On February 27, 2025, DHS Secretary Kristi Noem unilaterally terminated the collective

3

bargaining agreement (CBA) in effect between Plaintiff American Federation of Government

4

Employees (AFGE) and Defendant Transportation Security Administration (TSA). After Plaintiffs

5

were informed of the rescission of the CBA one week later, they filed this lawsuit challenging the

6

termination as unlawful. On June 2, the Court granted Plaintiffs' motion for a preliminary

7

injunction. In particular, Prong (2) of the injunction prohibits Defendants from "[d]enying

8

Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working

9

conditions guaranteed in the 2024 CBA." Dkt. #39 at 40. As the basis for this injunction, the Court

10

held that Plaintiffs were likely to succeed on each of their claims—including that Secretary

11

Noem's termination of the CBA violated the Administrative Procedure Act because the CBA has

12

the force and effect of law, *id.* at 33, and that the termination of the CBA without process violated

13

Plaintiffs' due process rights, *id.* at 35-37. Defendants chose not to appeal the injunction.

14

Nonetheless, on Friday of last week, Defendants informed AFGE and its bargaining-unit

15

employees that they plan to terminate the CBA *again* on January 11, 2026. They contend they can

16

do so because, in late September, Secretary Noem signed a new memorandum that orders the

17

agency to take the exact same actions that she had ordered in February: terminate the CBA and

18

cancel all grievances filed under the CBA. The Court's injunction, however, prohibits Defendants

19

from denying TSA bargaining-unit members the rights and working conditions set forth in the

20

CBA, regardless of the form that the agency's determination takes. This Court should not

21

countenance Defendants' attempt to evade the Court's injunction.

22

23

24

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 1
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

**BACKGROUND**

**A.  Plaintiffs' Collective Bargaining at TSA and the February Determination.**

Since 2011, AFGE has been the exclusive representative of Transportation Security Officers (TSOs) at TSA. Dkt. #19 ¶¶ 6-7, 9. It, alongside its local unions, including AFGE TSA Local 1121, represents approximately 47,000 TSOs. *Id.* ¶ 4. AFGE and TSA signed their first binding CBA governing working conditions in 2012, and the parties agreed to new CBAs in 2016 and 2020. *Id.* ¶¶ 9-10. In December 2022, then-TSA Administrator Pekoske issued a new determination on collective bargaining that expanded collective bargaining rights to TSOs such that they are generally akin to rights granted to other federal employees. *Id.* ¶ 12.

AFGE and TSA signed their current CBA in May 2024 (2024 CBA). Dkt. #19 ¶¶ 16-18 & Ex. 3. The 2024 CBA provides that it "may only be changed upon mutual written consent of the parties" and will "remain in full force and effect" for seven years. Dkt. #19-1, Ex. 4 Arts. 13.A.3, 37.B. The 2024 CBA grants TSOs—and AFGE as their representative—enforceable rights, including recognizing AFGE as TSOs' exclusive representative, *id.* Art. 5.A, providing that discipline or adverse actions "may be taken for just cause and only for reasons that will promote the efficiency of the service," *id.* Art. 27.C, and dues deduction for union-member TSOs who voluntarily opt to pay dues through their paycheck, *id.* Art. 7. It also establishes a binding grievance-and-arbitration process allowing the parties to challenge CBA violations or other violations affecting conditions of employment. *Id.* Arts. 28-29.

On February 27, 2025, Secretary Noem issued a memorandum entitled "Supporting the TSA Workforce by Removing a Union That Harms Transportation Security Officers" ("February Determination"). Dkt. #19 ¶¶ 28-29; Dkt. #19-1, Ex. 5. The February Determination purported to rescind, "[e]ffective immediately," the 2022 determination governing collective bargaining. Dkt. #19-1, Ex. 5 at 3. It asserted that the 2024 CBA is "no longer applicable or binding and is

PLS.' MOT. TO ENFORCE PRELIM. INJ.  – 2
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

hereby rescinded," and that "AFGE is no longer the exclusive representative of" TSOs. *Id.* It discontinued TSOs' option to pay voluntary union dues from their paycheck. *Id.* at 4. And it instructed TSA to terminate "any functions, processes, or obligations arising out of the 2024 CBA," including grievances filed under the CBA. *Id.*

The February Determination attacked AFGE by name, claiming that past determinations regarding bargaining rights "have solely benefited the American of Federation of Government Employees (AFGE) at TSOs' expense." *Id.* at 2. The press release announcing this determination again singled out AFGE, asserting that TSOs "are losing their hard-earned dollars to a union that did not represent or protect their interests." Dkt. #19-1, Ex. 7 at 2. AFGE received no notice that the February Determination was being considered and had no opportunity to be heard on the issue. Dkt. #19 ¶ 30.

**B. Plaintiffs Challenge the Termination of the 2024 CBA and Existing Grievances, with the Court Entering a Preliminary Injunction to Protect the Status Quo.**

Plaintiffs filed their Complaint in this action on March 13, 2025. Dkt. #1. The Complaint asserts four claims challenging the termination of the 2024 CBA and existing grievances: that Defendants acted arbitrarily and capriciously in violation of the Administrative Procedure Act ("APA"), *id.* ¶¶ 102-111 (Count I); that Defendants acted contrary to law in violation of the APA, *id.* ¶¶ 112-117 (Count II); that Defendants retaliated against AFGE in violation of the First Amendment, *id.* ¶¶ 118-126 (Count III); and that Defendants violated Plaintiffs' and their members' Fifth Amendment rights by eliminating their property interests without due process, *id.* ¶¶ 127-131 (Count IV). Plaintiffs AFGE and AFGE TSA Local 1121 moved for a preliminary injunction on April 4. Dkt. #18.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 3
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

On June 2, the Court granted the motion for preliminary injunction, holding that Plaintiffs were likely to succeed on the merits on each of their claims. Dkt. #39 ("Preliminary Injunction"). At the conclusion of its 41-page opinion, the Court set forth its order, repeated here in full:

> Defendants and all their respective officers, agents, servants, employees, and attorneys are hereby enjoined from the following:
>
> 1.    Enforcing, implementing, or otherwise giving effect to the Noem Determination's purported recission of the 2024 CBA between TSA and AFGE and/or its determination that the 2024 CBA is no longer applicable or binding;
>
> 2.    Denying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA; and
>
> 3.    Enforcing or implementing the Noem Determination's termination of functions, processes, and obligations arising out of the 2024 CBA, including but not limited to the termination of pending grievances and arbitrations brought pursuant to the 2024 CBA.
>
> Additionally, the Court ORDERS Defendants to immediately notify bargaining unit TSOs that pursuant to this Order, the 2024 CBA remains applicable and binding, such that all rights contained in the CBA are restored to the pre-Noem Determination status quo, including but not limited to the right of AFGE to serve as exclusive representative, the right of TSOs to request representation in connection with an investigation, the right of TSOs to pay their membership dues through payroll deduction (such that payroll deduction of dues will be restarted for TSOs who have previously requested it), the right to use official time as set forth in the CBA, contractual protections regarding discipline and adverse actions, and the right to use the contractual grievance and arbitration process. Furthermore, Defendants must notify bargaining unit TSOs that pursuant to this order, currently pending grievances and arbitrations submitted pursuant to the 2024 CBA will continue to be processed.

Dkt. #39 at 40-41.

Defendants complied with the preliminary injunction by, *inter alia*, notifying all TSOs via email that "The U.S. District Court for the Western District of Washington in Seattle has ordered TSA to return to full compliance with the collective bargaining agreement between TSA and the American Federation of Government Employees (AFGE)." Glymph Decl., Ex. 1. And Defendants did in fact restore their labor relations to the pre-March 7 status quo, recognizing AFGE as the

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

exclusive representative of the bargaining unit, reinstating the 2024 CBA, recognizing TSOs' contractual rights, and engaging in the contractual grievance and arbitration process. Defendants did not appeal the preliminary injunction within the 60-day appeal period.

Since then, Defendants have made repeated statements confirming that the Preliminary Injunction requires the terms and conditions in the 2024 CBA to remain in place. On August 26, after the Court denied Defendants' motion to dismiss, Defendants filed an unopposed motion to extend their time to respond to the Complaint and submit an Administrative Record. Dkt. #50. In that motion, Defendants noted that Plaintiffs "will not be prejudiced" by the extension because "Plaintiffs obtained a preliminary injunction that indefinitely preserves the status quo." *Id.* at 5. Then, on October 14, the Parties filed a Joint Status Report, which stated "[t]his Court granted a preliminary injunction enjoining Defendants from implementing the recission of the CBA and associated grievances on June 2, 2025." Dkt. #55 at 2.

**C. Defendants Inform AFGE that, as of January 11, 2026, They Will Again Terminate the 2024 CBA and Existing Grievances.**

Last Friday, TSA informed AFGE that more than two months earlier, Secretary Noem had signed a memorandum ordering the agency to take the same actions that the Court previously found contrary to law: the termination of the 2024 CBA and all pending grievances. Glymph Decl. ¶ 10, Ex. 3. Secretary Noem signed this second memorandum on September 29, 2025. Dkt. #58-1 ("September Determination"). It once again stated that, "effective immediately," the 2024 CBA was "terminated." Dkt. #58-1 at 9. It also stated that "TSA policy will govern and control and shall be implemented to address any working conditions described in the 2024 Collective Bargaining Agreement," that "TSA shall immediately cancel all voluntary dues deductions through payroll," that "TSA shall cancel all grievances and arbitrations," and "TSA Screening officers shall not have

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 5
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1   the right to elect an exclusive representative for the purpose of collective bargaining or for any

2   other purpose." *Id.*

3          When the agency informed AFGE about the September Determination, it explained that

4   the determination "will be implemented on January 11, 2026"—*not* immediately, as the

5   determination itself stated—and that it "rescinds … (AFGE's) status as exclusive representative

6   of non-supervisory TSOs, and the May 24, 2024 collective bargaining agreement" and cancels

7   pending grievances and arbitrations. Glymph Decl., Ex. 3 at 1-2. That same day, TSA notified all

8   employees that "[e]ffective January 11, 2026, TSA will implement a new labor framework,

9   rescinding the 2024 Collective Bargaining Agreement (CBA) and other determinations." Glymph

10  Decl., Ex. 4 at 1. TSA directed employees to an FAQ document, which addressed the Preliminary

11  Injunction as follows:

12          2. How does the Secretary's September Determination relate to the recent
            preliminary injunction order entered in *American Federation of Government*
13          *Employees (AFGE), et al. v. Noem, et al.*, No. 2:25-cv-451 (W.D. Wash.)?

14          The preliminary injunction entered in *AFGE v. Noem* addressed Secretary Noem's
            February 27, 2025 Determination, which has now been rescinded by the Secretary's
15          September Determination. TSA intends to implement the September Determination
            on January 11, 2026.
16

17  Glymph Decl., Ex. 5 at 1-2.

18          On the same day, Defendants filed a motion to dismiss Plaintiffs' Complaint as moot and

19  to dissolve the preliminary injunction. In that motion, they once again contend that terminating the

20  2024 CBA "would not violate the June 2, 2025 preliminary injunction," Dkt. #58 at 2, though they

21  do not reference or quote the text of the Court's order quoted above.

22                                          **ARGUMENT**

23          "Federal courts have inherent power to enforce compliance with their lawful orders[.]"

24  *Pacito v. Trump*, 2025 WL 1397613, at *1 (W.D. Wash. Apr. 11, 2025) (internal quotations

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 6
CASE NO. 2:25-cv-451-JNW

omitted). Preliminary injunctions are intended to "preserve the status quo ante litem"—"the last uncontested status which preceded the pending controversy"—"pending a determination of the action on the merits." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (internal quotations omitted).

I.   **Defendants' Announced Rescission of the 2024 CBA Violates the Preliminary Injunction.**

Prong (2) of the Court's Preliminary Injunction bars Defendants from "[d]enying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA." Dkt. #39 at 40. This provision was clear and intentional, as the Court held that the 2024 CBA "ha[s] the force and effect of law" and that the February Determination was contrary to law because it "runs contrary to the express terms of the CBA, which provides for a specific duration and requires mutual consent to any changes." *Id.* at 33. It follows from that holding that any attempt to terminate the 2024 CBA—whether in the February Determination or in a subsequent determination—is unlawful.

Restoring the status quo and preventing irreparable harm identified by the Court, including the "loss of substantive employment protections" and "avenues of grievance and arbitration," *id.* at 37, therefore required reinstating the 2024 CBA and the protections set forth therein. Or as TSA itself put it when announcing the reinstatement of the 2024 CBA to TSOs: "The U.S. District Court for the Western District of Washington in Seattle has ordered TSA to return to full compliance with the collective bargaining agreement between TSA and the American Federation of Government Employees (AFGE)." Glymph Decl., Ex. 1.

Despite this express language protecting 2024 CBA rights during the pendency of this litigation, Defendants have announced that they again will rescind the CBA and not comply with its terms. The September Determination states that "the 2024 Collective Bargaining Agreement …

18 WEST MERCER ST., STE. 400     **BARNARD**

SEATTLE, WASHINGTON 98119     **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132     **LAVITT LLP**

1    is terminated." Dkt. #58-1 at 9. Despite the Preliminary Injunction's protection of the "rights

2    and/or working conditions guaranteed in the 2024 CBA," Dkt. #39 at 40, the September

3    Determination states that "TSA policy will govern and control and shall be implemented to address

4    any working conditions described in the [2024 CBA]," Dkt. #58-1 at 9. And the September

5    Determination explicitly strips away CBA rights to voluntary payroll deduction of dues, in addition

6    to canceling all pending grievances and arbitrations under the CBA. *Id.*

7        What is more, the September Determination also flouts the Court's holding that it would

8    violate the Fifth Amendment's Due Process Clause for Defendants to terminate the rights set forth

9    in the 2024 CBA "without any process." Dkt. #39 at 36. While Defendants have stated that they

10    will not terminate the 2024 CBA until January 11, 2026, they announced their determination as a

11    fait accompli without giving AFGE an opportunity to address the rationales and factual findings

12    purportedly supporting the agency's decision. *See* Dkt. #58-1 at 9; *see also* Glymph Decl., Ex. 4

13    ("Effective January 11, 2026, TSA *will implement* a new labor framework, rescinding the 2024

14    Collective Bargaining Agreement (CBA)[.]" (emphasis added)).

15        In sum, because the plain terms of the Preliminary Injunction bar Defendants from

16    terminating the 2024 CBA, and because the September Determination does not address multiple

17    fatal flaws that the Court identified with the agency's actions, this Court should grant Plaintiffs'

18    motion to enforce. *See Pacito*, 2025 WL 1397613, at *2 (granting motion to enforce preliminary

19    injunction because defendants' actions were "specifically protected by … this Court's

20    injunction").

21    **II.    Defendants May Not Evade the Preliminary Injunction By Repackaging Their Termination of the 2024 CBA.**

22

23        As Defendants would have it, however, the Preliminary Injunction can be elided through a

24    simple trick: issuing a *new* determination that takes the exact same actions as the February

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 8
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

Determination. In their FAQ issued to TSOs, for example, they acknowledge the Preliminary Injunction but state that it has no bearing on the September Determination because it "addressed Secretary Noem's February 27, 2025 Determination, which has now been rescinded." Glymph Decl., Ex. 5 at 2. The Court's Preliminary Injunction is made of stronger stuff than that.

As a threshold matter, Defendants are incorrect that the September Determination is "materially distinguishable" as it relates to Plaintiffs' contrary-to-law claim, which the Court found likely to succeed on the merits and serves as the basis for Prong (2) of the Preliminary Injunction. Dkt. #39 at 33. It is true that the September Determination includes new reasoning and purported justifications for terminating the 2024 CBA, such as a survey of management officials and Secretary Noem's disagreement with "positive aspects reported" about collective bargaining therein. Dkt. #58-1 at 1, 5-6. But while the Secretary's new asserted rationales affect the analysis underpinning Plaintiffs' *first* APA claim, which is whether Defendants' actions were arbitrary and capricious, *see* Dkt. #39 at 27-33, it in no way affects the analysis underpinning Plaintiffs' *second* APA claim, which is whether Defendants' actions should independently be set aside as contrary to law, *id.* at 33.[1]

As to that second claim, it is dispositive that there is no material difference between the actions directed in the February Determination and the September Determination. The February Determination stated it was "rescinding the 2022 Determination on TSOs and Collective Bargaining, … [t]herefore the May 2024 Collective Bargaining Agreement … is no longer

---

[1] In their motion to dissolve the Preliminary Injunction, Defendants raise arguments regarding the merits of the Court's contrary-to-law holding that they chose not to raise in the first instance. Dkt. #58 at 11-14. While Plaintiffs will more thoroughly address these points in their opposition to that motion, for now it suffices to note that a proceeding to enforce an injunction "does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Loc. 28 of the Sheet Metal Workers Int'l Ass'n v. EEOC*, 478 U.S. 421, 441 n.21 (1986) (internal quotation omitted).

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 9
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

applicable or binding and is hereby rescinded." Dkt. #19-1, Ex. 5 at 3. The September

Determination is no different: it states that "[b]ecause the 2022 Determination is rescinded, the

2024 Collective Bargaining Agreement negotiated pursuant to that determination is terminated."

Dkt. #58-1 at 9; *see also* Dkt. #58 at 4 (September Determination "rescinds the 2024 collective

bargaining agreement"). The September Determination again states that "TSA policy will govern

and control and shall be implemented to address any working conditions described in the 2024

[CBA]." Dkt. #58-1 at 9; *compare with* Dkt. #19-1, Ex. 5 at 4 ("TSA shall review any and all

working conditions described in the May 2024 CBA … and ensure any TSA policies effective …

that address these conditions are consistent with … the policies of the current Administration.").

And it again clarifies that "TSA shall immediately cancel all voluntary dues deductions through

payroll" and that "TSA shall cancel all grievances and arbitrations." Dkt. #58-1 at 9; *compare* Dkt.

#19-1, Ex. 5 at 4 ("TSA … shall immediately cease using the payroll system for collecting union

dues from TSOs' paychecks."); *id.* (noting that termination of "functions, processes, or obligations

arising out of the 2024 CBA … shall include … the termination of any pending grievances").

The actions ordered in the September Determination are thus effectively identical to the

actions ordered in the February Determination, and again "run[ ] contrary to the express terms of

the CBA, which provides for a specific duration and requires mutual consent to any changes."

Dkt. #39 at 33. The Court's holding that the February Determination was contrary to law thus

applies with equal force to the September Determination.

This Court should not countenance Defendants' efforts to circumvent its order by reissuing

a determination that does not correct the legal flaws identified in the Preliminary Injunction. *See*

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (defendants violated injunction even

though "the plan or scheme which they adopted was not specifically enjoined," as allowing

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 10
CASE NO. 2:25-cv-451-JNW

1   defendants to avoid liability "would give tremendous impetus to the program of experimentation

2   with disobedience of the law"). That includes the due process violation discussed *supra* at p.8,

3   which Defendants do not address in their motion to dismiss and dissolve the Preliminary

4   Injunction.[2]

5          Indeed, courts enforce injunctions that were entered when a previous iteration of a policy

6   was in place. In *City & County of San Francisco v. Trump*, 782 F. Supp. 3d 830, 832 (N.D. Cal.

7   2025), for example, the court had previously issued a preliminary injunction enjoining defendants

8   "from taking any action to withhold, freeze, or condition federal funds from the Cities and Counties

9   based on the first sentence of Section 17 of Executive Order 14,159, Section 2(a)(ii) of Executive

10  Order 14,218, or the Preamble and Section I of the February 5, 2025, memo from the Attorney

11  General." The President then issued "a *new* Executive Order, EO 14,287, which also concerns

12  sanctuary jurisdictions and their receipt of federal funds." *Id.* The plaintiffs moved to enforce the

13  injunction, "arguing that EO 14,287 repackages its predecessors' unconstitutional funding

14  threats." *Id.* at 833.

15         The Court granted the motion, "clarify[ing] that neither Executive Order 14,287 nor any

16  other Government action that postdates the Preliminary Injunction can be used as an end run

17  around the Preliminary Injunction order" and holding that the injunction "reaches any subsequent

18  Executive Order or Government action that poses the same coercive threat to eliminate or suspend

19  federal funding based on the Government's assertion that a jurisdiction is a 'sanctuary'

20  jurisdiction." *Id.* at 833, 836.

21

22  _____

    [2] A finding of likelihood of success on a single claim is sufficient to support a preliminary
    injunction. *City of Seattle v. Trump*, 2025 WL 3041905, at *9 n.14 (W.D. Wash. Oct. 31, 2025);
23  *see id.* at 9 (two APA claims were "independent ground[s]" for relief). As such, Plaintiffs do not
    address every claim here, as their APA contrary-to-law claim and Fifth Amendment claim are
24  sufficient to support the Preliminary Injunction.

PLS.' MOT. TO ENFORCE PRELIM. INJ. – 11
CASE NO. 2:25-cv-451-JNW

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Likewise, in *Movers Conference of America v. United States*, 251 F. Supp. 882, 883-84 (S.D. Cal. 1966) (three-judge court), the court concluded that the Interstate Commerce Commission's issuance of a substantially similar new order violated an injunction barring defendants "from taking action to make effective or enforce all or any portion of the [first order]." The Court explained that if the ICC "believed that the injunction was too broad, it should have applied to this court for modification rather than to proceed with a redefinition which is clearly violative of the injunction." *Id.* at 885.

Here, the violation of the Preliminary Injunction is even clearer than in *San Francisco* and *Movers Conference*, as the plain text of Prong (2) of the Preliminary Injunction is not tied to a particular memorandum. The Court preserved the status quo by preventing Defendants from "[d]enying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA." Dkt. #39 at 40. Defendants did not appeal that injunction. Injunctions that are based on the analysis of a particular policy but whose terms extend more broadly continue to enjoin agency action even when the initial policy under review is replaced. *See F.V. v. Jeppesen*, 466 F. Supp. 3d 1110, 1118 (D. Idaho 2020) (rejecting argument that injunction "is limited to the policy in place in 2018" and does not apply to new statute which "supersedes the current rule").

### III.    Defendants' Repackaging of Their Rescission of the 2024 CBA Does Not Moot This Case.

Contrary to Defendants' contentions in their recently filed motion to dismiss, Dkt. #58 at 5, this case is not moot. There remains "an actual, ongoing controversy": whether Defendants may lawfully rescind the 2024 CBA and strip Plaintiffs and their members of the rights contained therein. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). As the Ninth Circuit has recognized, the government's revocation of a challenged action does not moot a case if there

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1   is a "reasonable expectation" that "the challenged provision or one similar to it" will be reenacted.

2   *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en

3   banc); *see also N.E. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*,

4   508 U.S. 656, 662-63 (1993) (case not moot when city repealed and replaced ordinance because

5   new ordinance "disadvantages [the plaintiff] in the same fundamental way"). Here, as in

6   *Northeastern Florida*, "[t]here is no mere risk that [defendants] will repeat [their] allegedly

7   wrongful conduct; [they have] already done so." 508 U.S. at 662.

8       Indeed, some of the very cases cited by Defendants make clear that this case is not moot.

9   For example, in *Akiachak Native Community v. United States Department of the Interior*, 827 F.3d

10  100, 106 (D.C. Cir. 2016), the court explained that "the voluntary repeal of a regulation does not

11  moot a case if there is reason to believe the agency will reinstitute it." There is no need for

12  speculation here, as Defendants have announced they *will* reinstitute the actions set forth in the

13  February Determination. And in *WildEarth Guardians v. Haaland*, 2023 WL 8613628, at *2 (9th

14  Cir. Dec. 13, 2023), the court of appeals noted that *Kescoli v. Babbitt*, 101 F.3d 1304, 1308-09

15  (9th Cir. 1996), held "that a challenge to a permit condition was not moot because the relevant

16  challenged condition had been reiterated in the new permit." As in *Kescoli*, "the same controversy

17  exists" here because the September Determination takes the same actions that Plaintiffs challenged

18  in their Complaint: the rescission of the 2024 CBA and associated grievances. *Id.* at 1309.

19                                    **CONCLUSION**

20      For the foregoing reasons, Plaintiffs respectfully request that the Court enforce its

21  Preliminary Injunction and confirm that it bars Defendants from terminating the 2024 CBA and

22  associated grievances and arbitrations. Plaintiffs' counsel respectfully requests a telephonic status

23  conference at the Court's earliest convenience to discuss proceedings for this motion, as well as

24  Defendants' pending motion to dismiss this case as moot and dissolve the injunction (Dkt. #58).

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Respectfully submitted,

Date: December 18, 2025

*/s/Robert H. Lavitt*
Robert H. Lavitt, WSBA No. 27758
Barnard Iglitzin & Lavitt LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6004
lavitt@workerlaw.com

*I certify that this memorandum contains 4199 words,*
*in compliance with the Local Civil Rules.*

*/s/ Abigail V. Carter*
 Abigail V. Carter*
*/s/ J. Alexander Rowell*
J. Alexander Rowell*
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W. Suite 1000
Washington, D.C. 20005
(202) 842-2600
(202) 842-1888 (fax)
acarter@bredhoff.com
arowell@bredhoff.com

*/s/ Norman L. Eisen*
Norman L. Eisen*
*/s/ Pooja Chaudhuri*
Pooja Chaudhuri*
*/s/ Taryn Wilgus Null*
Taryn Wilgus Null*
Democracy Defenders Fund
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
(202) 594-9958
norman@democracydefenders.org
pooja@democracydefenders.org
taryn@democracydefenders.org

`

*\*Admitted pro hac vice*

*Counsel for Plaintiffs*

PLS.' MOT. TO ENFORCE PRELIM. INJ.  – 14
CASE NO. 2:25-cv-451-JNW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_/s/ Rushab B. Sanghvi_
Rushab B. Sanghvi*
_/s/ Andres M. Grajales_
Andres M. Grajales*
American Federation Of
Government Employees, AFL-CIO
80 F Street, NW
Washington, DC 20001
(202) 639-6426
SanghR@afge.org
Grajaa@afge.org

 *Admitted pro hac vice*

*Counsel for Plaintiff American Federation
of Government Employees (AFGE)*

PLS.' MOT. TO ENFORCE PRELIM. INJ.  – 15
CASE NO. 2:25-cv-451-JNW