Judge Whitehead

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; HA NGUYEN McNEILL, in her official capacity as Senior Official Performing the Duties of the Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION,<br><br>Defendants. | CASE NO. 2:25-cv-0451-JNW<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION** |

Defendants Kristi Noem and Ha Nguyen McNeill, in their official capacities, and the

Department of Homeland Security ("DHS") and Transportation Security Administration ("TSA"),

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 1
(Case No. C25-0451-JNW)

United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

through their attorneys, Charles Neil Floyd, United States Attorney for the Western District of Washington, and Brian C. Kipnis, Assistant United States Attorney, hereby submit this memorandum of law in opposition to Plaintiffs' Emergency Motion to Enforce Preliminary Injunction, Dkt. # 59, filed on December 18, 2025.

## INTRODUCTION

Plaintiffs' Complaint in this action challenges a determination issued by Secretary Noem on February 27, 2025 (the "February Determination"). The February Determination, via authorities under Section 111(d) of the Aviation and Transportation Security Act ("ATSA"), Pub. Law. No. 107-71, 115 Stat. 597, 620 (classified as a note to 49 U.S.C. § 44935), granting the TSA Administrator discretion to set the terms and conditions of employment for airport screeners, stated that for operational and national security reasons, collective bargaining and exclusive representation were prohibited. On June 2, 2025, this Court issued a preliminary injunction premised on the February Determination, enjoining Defendants from implementing it. The February Determination has now been rescinded and replaced by a new determination, based on new facts and data, signed by Secretary Noem on September 29, 2025 (the "September Determination"), and issued to Plaintiffs and the workforce on December 12, 2025. The September Determination is based on an entirely different supporting record and data unavailable to Secretary Noem at the time of the February Determination. Defendants contend that implementation of the September Determination would not violate the June 2, 2025 preliminary injunction, which was founded on a different and materially distinguishable action. Nevertheless, in the interest of ensuring orderly proceedings in this action, Defendants have not proceeded with implementation of the September Determination. Instead, Defendants have filed a motion, Dkt. # 58, seeking dissolution of the preliminary injunction and dismissal of Plaintiffs' Complaint with leave to amend. Defendants also have announced their intent to implement the September Determination on January 18, 2026.[1]

[1] Defendants initially announced an intent to implement the September Determination on January 11, 2026. To allow for orderly briefing in this case, Defendants stipulated to delay implementation until January 18, 2026. Dkt. # 64.

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Despite the facts that Defendants have taken no action to implement the September Determination, continue to abide by the terms of the 2024 collective bargaining agreement ("CBA") between TSA and AFGE, have announced that implementation of the September Determination will not occur until January 18, 2026, and have already filed a motion seeking clarity from the Court regarding the preliminary injunction, Plaintiffs filed an emergency motion to "enforce" the preliminary injunction by issuing an order "confirm[ing] that it bars Defendants from terminating the 2024 CBA and associated grievances and arbitrations." Dkt. # 59 at 13.  Under the circumstances here, Plaintiffs' motion is unnecessary, seeks to improperly apply the June preliminary injunction to new action by Defendants, and should be denied.  Defendants respectfully request that the Court address the preliminary injunction by granting their motion to dissolve it, Dkt. # 58, filed on December 12, 2025.  As explained in Defendants' motion, if Plaintiffs wish to challenge the September Determination and seek preliminary relief from its implementation, the proper procedure is filing an amended complaint and a motion for preliminary relief based on that amended pleading.[2] Plaintiffs should not be permitted to avoid that procedure, which will put this litigation in a posture reflecting current circumstances, by keeping the case frozen in the past through continued maintenance of a preliminary injunction entered more than six months ago based on a prior agency decision that has been rescinded and no longer has any legal effect.

## ARGUMENT

### I.     The preliminary injunction is moot.

As explained in Defendants' motion, because the preliminary injunction order is entirely predicated on an agency action that has been rescinded and replaced, and thus no longer has any legal effect, the order is moot.  Plaintiffs argue for an unreasonably far-reaching interpretation and

---

[2] As should have been clear from Defendants' motion, Dkt. # 58 at 6 n.2, Defendants consent, pursuant to Federal Rule of Civil Procedure 15(a)(2), to Plaintiffs filing an amended complaint in this action to challenge the September Determination.  Contrary to Plaintiffs' assertions, *see* Dkt. # 59 at 15–16, Defendants indeed recognize that a fundamental controversy remains between the parties and thus do not assert that *this action* is moot.  Rather, Defendants assert only that Plaintiffs' *currently operative pleading*—their Complaint filed on March 13, 2025—is moot, as it challenges only the now-rescinded February Determination.

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 3
(Case No. C25-0451-JNW)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

application of the preliminary injunction to prospectively bar *new* agency action. That position cannot be squared with the text or context of the order, neither of which suggest universally prospective application to new agency action. Moreover, the notion that the preliminary injunction order forbids Defendants from making new decisions pursuant to statutory discretion is incompatible with *Biden v. Texas*, 597 U.S. 785 (2022), discussed below.

### II.  Issuance of the September Determination was a legitimate, lawful exercise of Defendants' authorities.

Plaintiffs' motion incorrectly characterizes issuance of the September Determination as an effort to flout the Court's preliminary injunction order. *See* Dkt. # 59 at 4 (asserting that the September Determination was issued as an "attempt to evade the Court's injunction"); *id.* at 11 (asserting that the September Determination was intended as a "simple trick" to "elide" the preliminary injunction). In fact, the September Determination was a legitimate, lawful exercise of Defendants' authorities and the result of reasoned decisionmaking in the course of Defendants' continually ongoing obligations to manage government operations. A preliminary order enjoining a particular agency decision does not suspend those obligations or government officials' authority to make *new* decisions on the same subject matter. *See Biden v. Texas*, 597 U.S. 785, 813 (2022) (explaining that "[n]othing prevents an agency from undertaking new agency action" when "its original action" has been enjoined and litigation regarding that original action remains ongoing). Indeed, "upon [a court] finding that the grounds for agency action are inadequate," the agency "can deal with the problem afresh by taking *new* agency action." *Id.* at 807-08 (quotations omitted). Plaintiffs are simply incorrect that there is anything tricky or illegitimate about "return[ing] to the drawing table and tak[ing] new action" following an injunction order. *Id.* at 811 (finding no problem with issuance of a new decision memorandum when "the entire purpose" was to replace an enjoined prior decision).

Here, after implementation of the February Determination was enjoined, Defendants considered the relevant issues afresh, resulting in issuance of a new determination nearly four months later. *See id.* at 813 (noting that a period of six weeks following a court order was "a

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 4
(Case No. C25-0451-JNW)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

substantial window of time for [an] agency to conduct a bona fide reconsideration"). Defendants' new decisionmaking process appropriately involved consideration of concerns raised in the Court's injunction order. *See id.* at 811 (noting that it makes sense for a new agency decision replacing an enjoined decision to address "the District Court's concerns from the first go-round"). The new decisionmaking process also involved consideration of new information available because of the passage of time and deeper analysis of the impacts of collective bargaining on agency operations and mission effectiveness. The September Determination took into account data that was not before the Secretary at the time of the February Determination, including (1) a survey of management officials "about how union representation and the current collective bargaining agreement have affected workforce readiness, resource allocation, and mission focus"; (2) data on costs and burdens of collective bargaining, including data showing how unscheduled absences negatively impacting workforce readiness have increased under the current collective bargaining agreement; (3) observations of the current head of TSA, Senior Official Performing the Duties of the Administrator Ha McNeill, who was not in her position as the leader of the agency when the February Determination was issued; and (4) TSA's experience operating under the 2024 collective bargaining agreement for nearly four months *after* the preliminary injunction was entered in this case. In short, the new decisionmaking process and issuance of the September Determination were perfectly legitimate exercises of Defendants' authorities, and there are absolutely no grounds for Plaintiffs to suggest bad faith, an attempt to flout the preliminary injunction, or improper motive.

### III. The September Determination is a new and distinct agency decision even though it directs the same result as the prior February Determination.

Plaintiffs contend that the Court's preliminary injunction should be preserved because the September Determination is nothing more than a "repackaging" of the February Determination "that takes the exact same actions." Dkt. # 59 at 11. But as explained above, the September Determination resulted from a new and distinct decisionmaking process, and it is immaterial that it reached the same conclusions and directed the same outcomes as the February Determination. Even if Plaintiffs could establish that Defendants began the decisionmaking process with an "*ex ante*

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 5
(Case No. C25-0451-JNW)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

preference" for reaching the same outcome, *Biden*, 597 U.S. at 812, such a showing would not undermine the facts demonstrating that there was indeed a "bona fide reconsideration," *id.* at 813. The fact that a superseding agency decision is animated by the same goals "of an administration's policy agenda" underlying the agency's initial decision does not mean that the new decision is necessarily indistinct. *Id.* at 812. As the Supreme Court has explained, "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas" and work on an ongoing basis to develop and substantiate the legal and factual underpinnings "for a preferred policy." *Id.* (quotations omitted). Here, there can be no doubt that the September Determination is a separate, distinct, and independent decision from its predecessor.

### IV. Changed circumstances warrant reconsideration of preliminary relief.

As explained above, because the preliminary injunction order was based entirely on the claims stated in Plaintiffs' Complaint, which in turn were based solely on the February Determination that has now been rescinded, the injunction should be dissolved. After filing an amended pleading stating claims based on the September Determination, Plaintiffs are free to seek preliminary relief based on those claims.

Rather than following that procedure, Plaintiffs insist that the existing preliminary injunction should be maintained because some of the Court's legal conclusions in the preliminary injunction order appear applicable to the September Determination. In particular, Plaintiffs assert that the Court's holding that they are likely to succeed on the merits of their "contrary-to-law" claim under the Administrative Procedure Act (APA) "applies with equal force to the September Determination." Dkt. # 59 at 13. The Court should reject this approach for three reasons.

First, this Court's prior analysis of Plaintiff's contrary-to-law claim is outdated and should be revisited in light of an intervening decision of the Ninth Circuit in *AFGE v. Trump*, 148 F.4th 648 (9th Cir. 2025), which was handed down after the preliminary injunction order in this case. The Court's order here found that the CBA between AFGE and TSA has "the force and effect of law" and was a "self-imposed limitation" on the statutory discretion granted to TSA by Section 111(d) of ATSA. Dkt. # 39 at 33. Based on that finding, this Court concluded that the February

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 6
(Case No. C25-0451-JNW)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Determination was "contrary to law because it represents a refusal to comply with [that] self-imposed limitation[]." *Id.* The Ninth Circuit's decision in *AFGE v. Trump*, however, strongly suggests that collective bargaining agreements do not limit statutory authority granting discretion to the Executive Branch and may indeed be terminated as an exercise of that discretionary authority. 148 F.4th at 651 (granting emergency stay of order enjoining Executive Order issued under discretionary statutory authority to "exclude certain federal agencies and subdivisions from collective bargaining requirements"). This Court's analysis in the preliminary injunction order is due to be reconsidered in light of the Ninth Circuit ruling.

Second, given the changed circumstance of a new Ninth Circuit ruling bearing on the analysis, this Court has the opportunity to correct other flaws in the preliminary injunction order's evaluation of the contrary-to-law claim. As explained in Defendants' motion, Dkt. # 58 at 11–13, this Court's preliminary finding that the CBA limits Defendants' statutory discretion is inconsistent with the relevant language in the agreement and ignores the fact that the CBA was itself contingent on a statutory determination.[3] By dissolving the preliminary injunction entered in June and addressing Plaintiffs' contrary-to-law claim in the context of an amended complaint and new motion seeking preliminary relief, this Court can correct the prior errors.

---

[3] Plaintiffs assert that Defendants did not previously raise these arguments "in the first instance." Dkt. # 59 at 12 n.1. That is incorrect. Defendants have previously argued both that (1) the CBA was not a limitation on statutory discretion because it was entirely contingent on a statutory determination that could be superseded at any time, and (2) the CBA itself is entirely silent on the question of termination, including by rescission of the statutory determination that allows for it. *See* Dkt. # 26 at 20 ("The CBA was entirely dependent upon the 2022 Determination by TSA's former Administrator, which was itself an exercise of unfettered statutory discretion and thus subject to recission or change at any time at the sole judgment of the government. Accordingly, the CBA was never anything more than conditional[.]"); Dkt. # 43 at 3 ("Plaintiffs are incorrect that 'the CBA limits TSA for a fixed duration.' Plaintiffs argue that because the CBA stated a fixed term, TSA locked itself into the agreement for that term *regardless* of whether future leadership made new determinations under ATSA § 111(d). But the CBA does not actually say that. In fact, the CBA is silent as to termination prior to expiration of the full term, and silent as to the effect of a new ATSA § 111(d) determination. Because the CBA was entirely contingent upon TSA's 2022 Determination regarding collective bargaining, TSA understood—and Plaintiffs should have understood—that if the 2022 Determination was superseded and replaced by a new determination, then the continued validity of the CBA would depend on the terms of that new determination. Simply put, TSA did not intend to—and did not—restrict its statutory discretion.").

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 7
(Case No. C25-0451-JNW)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

1    Finally, regardless of whether some of the reasoning supporting the preliminary injunction order might be applicable to the circumstances now, it is clear that much of the reasoning is moot because it was tied to the now-rescinded February Determination.  Indeed, Plaintiffs acknowledge that "the September Determination includes new reasoning and purported justifications" that "affect the analysis underpinning" their APA claim that Defendants' actions were arbitrary and capricious. Dkt. # 59 at 12.  Similarly, as explained in Defendants' motion, Plaintiffs' First Amendment retaliation claim is specifically based on circumstances surrounding the February Determination and thus cannot be neatly reasserted to challenge the September Determination.  *See* Dkt. # 58 at 10 ("[T]he passage of time and the factual record and deliberative process leading to Secretary Noem's September Determination also undermine any inference of retaliatory causation[.]").  In fact, Plaintiffs' motion does not even mention the First Amendment claim, raising the question of whether they even intend to bring such a claim challenging the September Determination (and further highlighting the need to require Plaintiffs to file an amended pleading before allowing this case to proceed).

As the preliminary injunction order is necessarily entirely based on the now-rescinded February Determination, the order is moot.  Moreover, as so much of the rationale underpinning the preliminary injunction order has fallen away due to changed circumstances, including an intervening decision of the Ninth Circuit bearing on this Court's prior analysis, it would not be equitable to maintain the injunction going forward.  Now that circumstances in this case have changed so dramatically, the Court should dissolve the preliminary injunction, and then, if Plaintiffs so request, undertake a holistic reconsideration of whether preliminary relief is warranted based on the claims and allegations in an amended pleading.  That outcome is entirely in line with an orderly progression of proceedings.

///

///

///

///

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 8
(Case No. C25-0451-JNW)

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion, Dkt. # 59, be denied and Defendants' motion, Dkt. # 58, be granted.

# CERTIFICATION

I certify that this memorandum contains 2,673 words, in compliance with Local Civil Rule LCR 7(e)(4).

DATED this 6th day of January, 2026.

Respectfully submitted,

CHARLES NEIL FLOYD
United States Attorney


*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney
Office of the United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, Washington 98101-1271
Phone: 206 553 7970
E-mail: brian.kipnis@usdoj.gov

Attorneys for Defendants

DEFENDANTS' MEMORANUDM IN OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION - 9
(Case No. C25-0451-JNW)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970