UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,<br><br>        Plaintiffs,<br><br>    v.<br><br>KRISTI NOEM; U.S. DEPARTMENT OF HOMELAND SECURITY; HA NGUYEN MCNEILL; and TRANSPORTATION SECURITY ADMINISTRATION,<br><br>        Defendants. | CASE NO. 2:25-cv-00451-JNW<br><br>ORDER CLARIFYING PRELIMINARY INJUNCTION |

## 1.  INTRODUCTION

This matter comes before the Court on Plaintiffs' Emergency Motion to Enforce the Preliminary Injunction, Dkt. No. 59. Having reviewed the papers submitted in support of and in opposition to the motion, and having heard

ORDER CLARIFYING PRELIMINARY INJUNCTION - 1

argument from counsel, the Court GRANTS the Motion for the reasons stated below.

## 2. BACKGROUND

This case concerns Defendants' decision to terminate the 2024 Collective Bargaining Agreement (CBA) between American Federation of Government Employees (AFGE) and the Transportation Security Administration (TSA). The CBA governs terms and conditions of employment for nearly 26,000 Transportation Security Officers (TSOs) who are AFGE members working in airports throughout the United States. Dkt. No. 59-2 ¶¶ 4, 8.

On February 27, 2025, Department of Homeland Security Secretary Kristi Noem issued a memorandum to Adam Stahl, the senior official performing the duties of the Administrator of TSA, entitled "Supporting the TSA Workforce by Removing a Union That Harms Transportation Security Officers" ("February Noem Determination"). Dkt. No. 19-1. The February Noem Determination rescinded previous agency actions expanding collective bargaining rights to TSOs, terminated the 2024 CBA, stripped AFGE of its elected status as the exclusive representative of the TSOs, cancelled the grievance and arbitration processes provided for by the 2024 CBA, and discontinued the ability for TSOs to pay voluntary dues from their paychecks. *Id.*

AFGE and other Plaintiffs challenged the February Noem Determination, claiming that it constitutes retaliation in violation of the First Amendment, violates the Due Process guarantees provided by the Fifth Amendment, and violates the

Administrative Procedure Act as an arbitrary and capricious agency action that is also contrary to law. *See generally*, Dkt. No. 1.

On June 2, 2025, United States District Judge Marsha J. Pechman granted Plaintiffs' motion for a preliminary injunction. Dkt. No. 39. Judge Pechman found that the court had jurisdiction to hear Plaintiffs claims and that they were likely to succeed on the merits—including their claim that unilateral termination of the CBA violated the Administrative Procedure Act because the CBA has the force and effect of law, and their claim that the termination with without process violated Plaintiffs' due process rights. *Id*. Judge Pechman also found that Plaintiffs would suffer irreparable harm in the absence of an injunction, and that the balance of hardships and public interest weighed in favor of the injunction issuing. *Id*.

In granting the motion, the Court enjoined Defendants from:

1. Enforcing, implementing, or otherwise giving effect to the Noem Determination's purported recission of the 2024 CBA between TSA and AFGE and/or its determination that the 2024 CBA is no longer applicable or binding;

2. Denying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA; and

3. Enforcing or implementing the Noem Determination's termination of functions, processes, and obligations arising out of the 2024 CBA, including but not limited to the termination of pending grievances and arbitrations brought pursuant to the 2024 CBA.

*Id*. at 40. The Preliminary Injunction Order also required Defendants to "immediately notify bargaining unit TSOs that . . . the 2024 CBA remains applicable and binding" and that all "currently pending grievances and arbitrations

ORDER CLARIFYING PRELIMINARY INJUNCTION - 3

submitted pursuant to the 2024 CBA will continue to be processed." *Id.* By all accounts, Defendants initially complied with the terms of the Preliminary Injunction Order. *See, e.g.*, Dkt. No. 59-2 at 3 ,¶ 9, Ex. 1. Defendants did not move for reconsideration or appeal, and this case was later reassigned to the undersigned judge.

Secretary Noem issued a second determination on September 29, 2025, entitled "Eliminating Collective Bargaining at TSA Due to its Incompatibility with TSA's National Security Mission and its Adverse Impact on Resources, Flexibility, Mission Focus, Security Effectiveness, and Traveler Experience." Dkt. No. 59-2 at 8. ("September Noem Determination"). Like the February Noem Determination, the September Noem Determination purports to "rescind[ ] all prior Determinations, the [AFGE's] status as exclusive representative of non-supervisory TSOs, and the [2024 CBA]," and further cancels the grievance and arbitration processes provided for by the 2024 CBA, discontinues the ability for TSOs to pay voluntary dues from their paychecks, and issues a blanket prohibition on TSOs engaging in collective bargaining or retaining exclusive union representation. *See id.* at 16, 18. The September Noem Determination was set to "be implemented on January 11, 2026," though Defendants have since stipulated to delay implementation until January 18, 2026. Dkt. No. 59-2 at 16; Dkt. No. 64.

Plaintiffs were not informed of the September Noem Determination until December 12, 2025. Dkt. No. 59-2 at 3, ¶¶ 10–12. That same day, Defendants filed their Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Dissolution of Preliminary Injunction, arguing that the September Noem Determination moots

ORDER CLARIFYING PRELIMINARY INJUNCTION - 4

the operative complaint and that the preliminary injunction should thus be dissolved. Dkt. No. 58.

Also on December 12, TSA notified all its employees that "[e]ffective January 11, 2026, TSA will implement a new labor framework, rescinding the [2024 CBA]." Dkt. No. 59-2 at 21. TSA provided employees with an "FAQ," stating that the June 2 Preliminary Injunction "addressed Secretary Noem's February 27, 2025 Determination, which has now been rescinded by the Secretary's September Determination," and that TSA intends to implement the September Noem Determination notwithstanding the injunction. Dkt. No. 59-2 at 24–25.

Plaintiffs then filed an emergency motion seeking clarity about whether the Preliminary Injunction applies to the September Noem Determination. Dkt. No. 59.

## 3. DISCUSSION

Federal courts possess inherent power to enforce compliance with their lawful orders. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders . . . ."); *City & Cnty. of San Francisco v. Trump*, 782 F. Supp. 3d 830, 833 (N.D. Cal. 2025) ("It is well-settled that district courts have the power to supervise compliance with an injunction.") (citing *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017)). This includes preliminary injunctions, which are issued to "preserv[e] the status quo," i.e., "the last, uncontested status which preceded the pending controversy." *Am. Fed'n of Gov't Emps., AFL-CIO v. Noem*, 785 F. Supp. 3d 833, 856 (W.D. Wash. 2025) (internal quotations and citations omitted).

The question before the Court is straightforward: does Defendants' planned implementation of the September Noem Determination violate the existing Preliminary Injunction? The answer is plainly yes. Among other things, the September Determination "terminate[s]" the 2024 CBA, "cancel[s] all grievances and arbitration," and strips TSOs of their "right to elect an exclusive representative for the purpose of collective bargaining." Dkt. No. 59-2 at 16. There can be no doubt that these actions directly "[d]en[y] Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA," and thus defy the constraints imposed by Prong 2 of the Preliminary Injunction. *See* Dkt. No. 39 at 40.

Defendants make no argument to the contrary—they do not cite, quote, or otherwise engage with the operative language of Prong 2, which prohibits the denial of CBA rights regardless of the vehicle used to accomplish that denial. Rather than engage with the injunction's plain language, Defendants launch collateral attacks against the jurisdictional, legal, and factual bases for the injunction. *See generally*, Dkt. No. 68. But a party subject to an injunction who believes compliance is no longer required must move to modify or dissolve the injunction—and that motion must be granted before the party may cease compliance. *See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) ("In seeking dissolution of a preliminary injunction[,] … the burden … is on the party seeking dissolution."). Defendants tacitly acknowledge that this is the appropriate procedural vehicle for the arguments they raise, as they have filed such a motion. *See* Dkt. Nos. 58, 66. However, that motion is not yet ripe. Defendants cannot bypass the orderly

ORDER CLARIFYING PRELIMINARY INJUNCTION - 6

resolution of their motion by simply announcing that they intend to implement the September Noem Determination no matter what the Preliminary Injunction says.

Defendants contend that because the February Noem Determination was rescinded, the injunction no longer applies and therefore cannot be "improperly appl[ied]" to the September Noem Determination. Dkt. No. 68 at 3. But this framing sidesteps the obvious: the September Noem Determination seeks the same result as its predecessor only with new reasoning. While a new rationale may be enough to show that rescinding the injunction is necessary, it "is not a valid justification for the agency's unilateral decision to abandon its obligations under the injunction." *Nat'l Treasury Emps. Union v. Vought*, --- F.Supp.3d ----, No. CV 25-0381 (ABJ), 2025 WL 3771192, at *17 (D.D.C. Dec. 30, 2025). "'Judicial orders are not suggestions; they are binding commands that the Executive Branch, no less than any other party must obey.'" *Id.* at 11 (quoting *J.G.G. v. Trump*, No. 25-5124, 2025 WL 3198891, at *2 (D.C. Cir. Nov. 14, 2025)). "'Disagreements with judicial decisions must be resolved through motions, stays, and appeals, not through unilateral noncompliance.'" *Id.* Unless and until the injunction is modified, dissolved, or stayed, Defendants must make every effort to comply with its terms or risk the possibility of civil contempt. *Shillitani*, 384 U.S. at 370.

## 4. CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' Emergency Motion to Enforce the Preliminary Injunction. The Court clarifies that the Preliminary Injunction issued on June 2, 2025, by its plain terms, prohibits Defendants from implementing the

September Noem Determination. The September Determination's rescission of the 2024 CBA, cancellation of grievances and arbitrations, and elimination of AFGE's status as exclusive representative would "[d]en[y] Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA," in direct violation of Prong 2 of the Preliminary Injunction. Dkt. No. 39 at 40. The Preliminary Injunction will remain in effect unless and until it is modified, dissolved, or stayed by a court of law.

Defendants must immediately notify bargaining unit TSOs that, pursuant to the Preliminary Injunction issued by the Court on June 2, 2025, the September Noem Determination will not take effect on January 18, 2026, the 2024 CBA remains applicable and binding, and the currently pending grievances and arbitrations submitted under the 2024 CBA will continue to be processed.

Dated this 15th day of January, 2026.

Jamal N. Whitehead
United States District Judge