# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO TSA LOCAL 1121; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO; and ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security[1]; U.S. DEPARTMENT OF HOMELAND SECURITY; HA NGUYEN McNEILL, in her official capacity as the Senior Official Performing the Duties of the Administrator of the Transportation Security Administration; and TRANSPORTATION SECURITY ADMINISTRATION,

Defendants.

CASE NO. 2:25-cv-451-JNW

**FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

[1] Markwayne Mullin assumed office as the Secretary of Homeland Security on March 24, 2026. He is thereby substituted as party-defendant for Kristi Noem, former Secretary of Homeland Security, pursuant to Fed. R. Civ. P. 25(d).

FIRST SUPPLEMENTAL COMPLAINT – 1

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

**FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This action seeks declaratory and injunctive relief with respect to the Department of Homeland Security's illegal and unjustified attempt to rescind a binding contract it entered into just a year earlier—the lawfully executed collective bargaining agreement between the American Federation of Government Employees ("AFGE") and the Transportation Security Administration ("TSA"), which became effective on May 24, 2024 ("the 2024 CBA").

2.      The purported termination of the 2024 CBA, which covers the approximately 47,000 federal employees who keep their country safe by serving as Transportation Security Officers ("TSOs"), flies in the face of one of the most hallowed principles of the American political system—the sanctity of contracts. Rescinding the 2024 CBA also risks profoundly adverse consequences for airport and passenger safety.

3.      Furthermore, the rescission of the 2024 CBA was an act of retaliation by the Trump administration against Plaintiff AFGE because of its exercise of its First Amendment right to litigate to protect federal workers. This attempt to punish protected speech is unlawful under the First Amendment.

4.      AFGE, on its own and through its affiliates, has represented TSOs at TSA for over twenty years, and TSOs' membership in AFGE has been and continues to be voluntary.

5.      For more than a decade, AFGE has bargained collectively with TSA over the terms and conditions of TSO employment. This bargaining has led to the execution of binding collective bargaining agreements granting TSOs protected rights with respect to their working conditions.

6.      The 2024 CBA has a term of seven years and allows limited midterm bargaining. This collective bargaining agreement, like any other, is a binding contract.

FIRST SUPPLEMENTAL COMPLAINT – 2

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

7.      Since January 21, 2025, AFGE has been a vocal and public advocate for federal employees harmed by Trump administration actions directed at federal agencies and employees. AFGE and its affiliates have also been plaintiffs in multiple civil actions seeking redress for the administration's illegal actions and policies targeting federal workers. *See, e.g.*, *AFGE v. Trump*, No. 1:25-cv-00264 (D.D.C. Jan. 29, 2025); *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass. Feb. 4, 2025); *AFGE v. OPM*, No. 3:25-cv-01780 (N.D. Cal. Feb. 19, 2025); *AFGE v. Trump*, No. 3:25-cv-3698 (N.D. Cal. Apr. 28, 2025); *AFSCME v. Trump*, No. 1:25-cv-03306 (D.D.C. Sep. 19, 2025); *AFGE v. OMB*, No. 3:25-cv-08302 (N.D. Cal. Sep. 30, 2025).

8.      On February 27, 2025, Secretary of Homeland Security Kristi Noem signed, but did not publicize, a memorandum that targeted AFGE by name, asserting without any evidence that AFGE was harming transportation security officers. The memorandum announced that the May 2024 collective bargaining agreement between TSA and AFGE was non-binding and rescinded.

9.      Noem's memorandum also purported to rescind the 2024 CBA and to render it inapplicable and non-binding. It also purported, *inter alia*, to revoke AFGE's status as TSOs' exclusive representative, eliminate all collective bargaining rights and obligations, and strip AFGE of any and all rights it may have had as TSOs' union.

10.     Just over a week later, TSA informed AFGE that that contract was rescinded, that AFGE was no longer the exclusive representative of transportation security officers, and that all pending grievances would be terminated. TSA announced the decision to the public that same day, including false claims about the number of AFGE officials using official time and that AFGE "did not represent or protect" its members' interests.

FIRST SUPPLEMENTAL COMPLAINT – 3

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

11.     AFGE, along with AFGE TSA Local 1121, the Communications Workers of America, and the Association of Flight Attendants-CWA, filed suit to stop this illegal rescission of the CBA. (Dkt. #1). And on June 2, 2025, AFGE and AFGE TSA Local 1121 obtained a Preliminary Injunction (Dkt. #39) preventing Defendants from doing so during the pendency of this litigation.

12.     Nevertheless, on September 29, 2025, Secretary Noem issued a new memorandum that again terminated the CBA and prevented AFGE and its members from enjoying the rights and working conditions contained therein. ("September Determination"). As with the prior February 27, 2025 memorandum, Secretary Noem failed to give AFGE notice and an opportunity to be heard before making this determination.

13.     The September Determination included new purported reasoning for rescinding the CBA, but these justifications were pretextual and not supported by the evidence. For example, it focused on a comparison of TSO absences before and after the 2024 CBA took effect, contending that this was caused by the 2024 CBA's provisions allowing TSOs to take up to three days of sick leave without providing documentation, but failed to acknowledge that the previous CBA, which was in effect from 2020 to 2024, had substantively identical provisions.

14.     Although Secretary Noem signed this memorandum on September 29, 2025 and the memorandum itself stated that it was "[e]ffective immediately," Defendants did not inform AFGE or bargaining unit TSOs about the memorandum, or that it was again terminating the CBA and associated grievances, until December 12, 2025. In its December 12 announcement, the agency stated that the memorandum would take effect on January 11, 2026.

15.     The decision by Secretary Noem to rescind the 2024 CBA, end collective bargaining mid-contract, and terminate existing grievances violates the First and Fifth

FIRST SUPPLEMENTAL COMPLAINT – 4

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

Amendments to the U.S. Constitution, is arbitrary and capricious, and is contrary to law. As such, it should be enjoined.

### Jurisdiction and Venue

16. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

17. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

18. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacities. Plaintiff AFGE TSA Local 1121 is a resident of this judicial district. A substantial part of the events or omissions giving rise to this Complaint occurred and continue to occur within the Seattle Division of the Western District, where AFGE and AFGE TSA Local 1121 members at Seattle-Tacoma International Airport have lost the protections of their collective bargaining agreement due to Defendants' unlawful actions.

### Parties

19. Plaintiff American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization and unincorporated association headquartered in, Washington, D.C. AFGE, the largest federal union, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States.

20. AFGE members include security officers protecting our airports and airplanes, nurses caring for our nation's veterans, border patrol agents securing our borders, correctional officers maintaining safety in federal facilities, scientists conducting critical research, health care workers serving on military bases, civilian employees in the Department of Defense supporting our military personnel and their families, and employees of the Social Security Administration making sure retirees receive the benefits they have earned.

FIRST SUPPLEMENTAL COMPLAINT – 5

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

21.     AFGE was founded in 1932 by federal employees seeking to create a right to fair employment and pay during the Great Depression. As the union grew, it advocated for and secured numerous victories for career civil servants, including the passage of the Civil Service Reform Act in 1978.

22.     AFGE is dedicated to fighting for dignity, safety, and fairness on the job for its members, and promoting efficiency and the improvement of government service so that government can more effectively serve the American people.

23.     AFGE brings this action on behalf of itself as an organization and on behalf of its members.

24.     AFGE TSA Local 1121 is a labor organization and unincorporated association residing in Kent, Washington that represents transportation security officers. It represents transportation security officers at airports including the Seattle-Tacoma International Airport.

25.     AFGE TSA Local 1121 brings this action on behalf of itself as an organization and on behalf of its members.

26.     Communications Workers of America ("CWA") is a labor union and unincorporated association headquartered in Washington, D.C. representing approximately 30,000 workers in airline passenger services at airports across the nation who handle ticketing, luggage, and other customer service matters for airline passengers. In addition to its passenger services bargaining units, CWA represents hundreds of thousands of workers in the communications and information industries, the news media, broadcast and cable television, public service, higher education, health care, manufacturing, video games, and high tech. CWA takes an active role advocating for its members on workplace issues, which includes participating in litigation as a party.

FIRST SUPPLEMENTAL COMPLAINT – 6

18 WEST MERCER ST., STE. 400   BARNARD

SEATTLE, WASHINGTON 98119   IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

27.    CWA brings this action on behalf of its members.

28.    Plaintiff Association of Flight Attendants-CWA, AFL-CIO ("AFA") is a labor union and unincorporated association headquartered in Washington, D.C. organized under the Railway Labor Act, 45 U.S.C. § 151, et seq. and serves as the leading voice for a safe, healthy and secure aircraft cabin for passengers and crew alike. AFA represents over 55,000 flight attendants at twenty airlines.

29.    Every day, AFA-represented flight attendants across the country pass through TSA-administered security checkpoints. Flight attendants, like all aviation workers, collaborate with and rely upon numerous services provided by the federal government, including safe and secure airport security screening.

30.    AFA brings this action on behalf of its members.

31.    Defendant Markwayne Mullin is the Secretary of Homeland Security. He is sued solely in his official capacity. His predecessor as Secretary of Homeland Security, Kristi Noem, in her official capacity, issued the February 27, 2025 memorandum ("February Determination") that purported to rescind the 2024 CBA, terminate existing grievances, and eliminate AFGE as an exclusive representative of transportation security officers. In that capacity, she also issued the September 29, 2025 memorandum ("September Determination") that likewise purported to rescind the 2024 CBA, terminate existing grievances, and eliminate AFGE as an exclusive representative of transportation security officers.

32.    Defendant Department of Homeland Security ("DHS") is a federal agency within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1), headquartered in Washington, D.C.

FIRST SUPPLEMENTAL COMPLAINT – 7

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

33.     Defendant Ha Nguyen McNeill is the Senior Official Performing the Duties of the TSA Administrator. She is sued solely in her official capacity.

34.     Defendant Transportation Security Administration is a federal agency within the meaning of the APA, headquartered in Springfield, Virginia.

## Factual Background

### I.     Congress Creates the Transportation Security Administration, and TSA Recognizes Transportation Security Officers' Collective Bargaining Rights

35.     Shortly after the September 11, 2001 terrorist attacks, Congress enacted the Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, 115 Stat. 597 (2001), which created the Transportation Security Administration ("TSA").

36.     Pursuant to the ATSA, the TSA is led by an Administrator appointed by the President with the advice and consent of the Senate. 49 U.S.C. § 114(a), (b).

37.     "[T]he term of office of an individual appointed as the Administrator shall be 5 years." 49 U.S.C. § 114(b)(1)(C).

38.     The Administrator is tasked by Congress with being "responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation." 49 U.S.C. § 114(e).

39.     The Administrator is also tasked with requiring screening "before entry into a secured area of an airport in the United States" and "establish[ing] procedures to ensure the safety and integrity of . . . all persons providing services with respect to aircraft providing passenger air transportation or intrastate air transportation and facilities of such persons at an airport in the United States." 49 U.S.C. § 44903(h)(4).

40.     TSA employees are not governed by the personnel system that covers most federal employees set out in Title 5 of the U.S. Code. Instead, Congress provided that TSA employees

FIRST SUPPLEMENTAL COMPLAINT – 8

18 WEST MERCER ST., STE. 400    BARNARD

SEATTLE, WASHINGTON 98119    IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

shall be governed by a personnel management system established by the Administrator of the Federal Aviation Administration, subject to modifications made by the TSA Administrator. 49 U.S.C. § 114(n).

41.    For airport screener personnel—transportation security officers—Congress further provided that:

> Notwithstanding any other provision of law, the [Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator] determines to be necessary to carry out the screening functions of the [Administrator] under section 44901 of title 49, United States Code. The [Administrator] shall establish levels of compensation and other benefits for individuals so employed.

ATSA § 111(d), 115 Stat. 597, 620 (2001); 49 U.S.C. § 44935 note.

42.    Pursuant to this authority, TSA Administrators have exercised their discretion to set terms and conditions of employment by establishing mechanisms that permit transportation security officers to bargain collectively and for their exclusive representatives to execute collective bargaining agreements with the TSA.

43.    In February 2011, after giving "careful thought to the question of union representation for TSOs," examining workforce data, "listen[ing] to many views in the context of considering TSA's mission requirements," including the views of TSOs, federal security directors, management, and union presidents, then-Administrator John Pistole issued a determination that set forth a "comprehensive structure . . . that will provide for genuine, binding collective bargaining on specified subjects at the national level with the union, if any, that prevails in an election process." Feb. 4, 2011 Decision Mem., John S. Pistole ("2011 Determination"), at 2-5.

FIRST SUPPLEMENTAL COMPLAINT – 9

18 WEST MERCER ST., STE. 400  BARNARD

SEATTLE, WASHINGTON 98119  IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

44.     The bargaining structure set out by the 2011 Determination permitted bargaining over topics including the performance management process, awards and recognition process, attendance management process, and shift bids.

**II.     Transportation Security Officers Elect AFGE as Their Exclusive Representative, Who Enters into Collective Bargaining Agreements with TSA**

45.     In June 2011, AFGE won an election to represent transportation security officers working for TSA.

46.     In November 2012, AFGE and TSA signed their first binding collective bargaining agreement. The agreement set out new awards for employees, improved the bidding process for leave and shifts, and established new policies governing uniforms.

47.     Collective bargaining continued in subsequent years under both the Obama and Trump administrations, with AFGE and TSA entering new collective bargaining agreements in 2016 and 2020.

48.     In December 2022, Administrator David P. Pekoske issued a new determination "recognizing that TSA's dedicated employees are critical to the success of our mission" and extended bargaining rights to transportation security officers at the national level "to the same extent as permitted under Chapter 71 of Title 5 of the United States Code and as set forth in this Determination." December 30, 2022 Determination on Transportation Security Officers and Collective Bargaining, David Pekoske, at p. 1 & Sec. 5.a ("2022 Determination").

49.     The 2022 Determination expanded bargaining rights to the full extent available to other federal workers, including the creation of a binding grievance and arbitration system.

50.     The 2022 Determination also permitted local level bargaining over certain issues, including parking facilities and break spaces. *Id.* Sec. 5.b.

FIRST SUPPLEMENTAL COMPLAINT – 10

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

51.     By referring to Chapter 71 of Title 5, the 2022 Determination expressly reserved enumerated rights to TSA management and excluded certain topics from the collective bargaining process, 5 U.S.C. § 7106. *See NTEU v. Chertoff*, 452 F.3d 839, 861 (D.C. Cir. 2006) (noting that these limits "give[] federal agencies great 'flexibility' in collective bargaining). For example, these management rights protect agency officials' authority "to determine the mission, budget, organization, number of employees, and internal security practices of the agency." 5 U.S.C. § 7106(a)(1).

52.     The 2022 Determination did not permit bargaining over compensation, stating that "the TSA Administrator will retain sole and exclusive discretion over pay and policies affecting pay." 2022 Determination Sec. 6.

53.     The 2022 Determination also stated that because jurisdiction "cannot be conferred administratively," Chapter 71's provisions regarding the Federal Labor Relations Authority (which includes its unfair labor practice provisions), and Federal court jurisdiction were not included in the Determination's adoption of Chapter 71. *Id.* Sec. 8-9.

54.     AFGE and TSA began negotiating a CBA under the 2022 Determination in June 2023. Nearly a year later, in May 2024, TSA and AFGE signed a binding collective bargaining agreement ("2024 CBA") that set the terms and conditions of employment for transportation security officers.

55.     The 2024 CBA expressly provides that the agreement "may only be changed upon mutual written consent of the Parties." 2024 CBA Art. 13.A.3.

56.     At the signing ceremony, TSA Administrator Pekoske stated that "[i]f we didn't have this CBA, if we didn't have this pay package, I would submit to you, we probably wouldn't have a TSA in five or 10 years. That's how important it is." Drew Friedman, *TSA, AFGE See*

FIRST SUPPLEMENTAL COMPLAINT – 11

*Milestone Contract as Pivot Point for Frontline Workers*, Federal News Network (May 16, 2024), https://federalnewsnetwork.com/unions/2024/05/tsa-afge-see-milestone-contract-as-pivot-point-for-frontline-workforce/.

57.    Administrator Pekoske also noted at the event that the Federal Employee Viewpoint Survey showed the highest engagement and satisfaction in TSA history, adding that he sought to use the new contract "as a pivot point to even greater relationships amongst all of us together." *Id.*

58.    The 2024 CBA recognizes AFGE as the exclusive representative of transportation security officers in the bargaining unit. 2024 CBA Art. 5.

59.    The 2024 CBA, like other collective bargaining agreements, extended enforceable rights to AFGE members. For example, pursuant to the agreement, TSA employee discipline or adverse actions "may be taken for just cause and only for reasons that will promote the efficiency of the service." 2024 CBA Art. 27.C.

60.    The 2024 CBA also establishes a binding grievance and arbitration process to challenge breaches of the CBA or other violations of laws, rules, and regulations affecting conditions of employment. 2024 CBA Art. 29-30.

61.    The parties agreed to a dues deduction procedure akin to the procedure that federal employees covered by Chapter 71 of Title 5 are entitled to under 5 U.S.C. § 7115, through which bargaining unit employees can voluntarily opt to pay membership dues to AFGE by submitting a form to TSA, after which TSA would deduct the dues from the employee's paycheck and "timely remit the dues deduction to AFGE." 2024 CBA Art. 7.

62.    As is the case with other federal employees, members of the TSA bargaining unit who choose not to become AFGE members are not required to pay any union dues or fees.

FIRST SUPPLEMENTAL COMPLAINT – 12

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

63.     TSA recognized the binding nature of the 2024 CBA on TSA's ability to modify its directives governing the workplace. On multiple occasions, the parties referred to particular TSA management directives as sources of policy and procedures governing an issue, but explained that "[i]n the event of a conflict, the provisions of this Agreement shall govern." *See, e.g.*, 2024 CBA Art. 5.B.

64.     When TSA intended to retain the right to change policies governed by the CBA during the contract's term, it included this expressly in the CBA. *See* 2024 CBA Art. 24.B (covering employee performance awards) ("Management retains the right to add, rescind, or amend awards, award categories, and award criteria during the period of this Agreement.").

65.     The agreement provides that it would "remain in full force and effect until seven (7) years from its effective date." 2024 CBA Art. 37.B.1. During the midpoint of the agreement, each party is permitted to reopen up to three articles of the CBA for renegotiation. *Id.* Art. 37.C.

**III.     After AFGE Stands Up for Federal Workers in Court, Secretary Noem Purports to Rescind the AFGE-TSA Collective Bargaining Agreement**

66.     On January 20, 2025, President Trump fired TSA Administrator Pekoske. Pekoske was first appointed Administrator by President Trump in 2017 and was midway through his second five-year term when he was fired.

67.     From the very first day of his administration, President Trump has sought to slash the federal workforce. *See, e.g.*, E.O. 14171 (Jan. 20, 2025), 90 Fed. Reg. 8625 (purporting to eliminate civil service protections for "policy-influencing" positions); E.O. 14158 (Jan. 20, 2025), 90 Fed. Reg. 8441 (establishing "Department of Government Efficiency").

68.     Guided by Elon Musk and the so-called Department of Government Efficiency (DOGE), the Trump administration has fired thousands of civil servants who were serving their

FIRST SUPPLEMENTAL COMPLAINT – 13

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

probationary period and put into action plans to fire tens or hundreds of thousands more through mass reductions-in-force. *See* E.O. 14222 (Feb. 26, 2025), 90 Fed. Reg. 11095.

69.     AFGE has been on the front lines in court and elsewhere fighting against the Trump administration and DOGE's efforts to strip federal workers of their rights and to fire them en masse with no individualized consideration for their performance. *See, e.g.*, *AFGE v. Trump*, No. 1:25-cv-00264 (D.D.C.); *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass.); *AFGE v. OPM*, No. 3:25-cv-01780 (N.D. Cal.).

70.     The Trump administration is clearly monitoring which entities are filing suits against the administration. For example, Musk reposted a story on X (formerly Twitter) about a lawsuit successfully blocking cuts to National Institutes of Health funding stating "Which law firms are pushing these anti-democratic cases to impede the will of the people?" https://x.com/elonmusk/status/1889380095015465272.

71.     On February 27, 2025, in a case brought by AFGE and others the week prior, a district court issued a temporary restraining order against the Office of Personnel Management, holding that its direction to terminate probationary workers was "unlawful, invalid, and must be stopped and rescinded." *AFGE v. OPM*, No. 3:25-cv-01780, 2025 WL 660053, at *14 (N.D. Cal. Feb. 28, 2025).

72.     That same day, Secretary Noem issued a memorandum to Adam Stahl, then the senior official performing the duties of the Administrator of TSA, entitled "Supporting the TSA Workforce by Removing a Union That Harms Transportation Security Officers." February 27, 2025 Memorandum from Kristi Noem to Adam P. Stahl ("February Determination.")

73.     Lest anyone be confused about which union Noem was referring to, her memo attacked AFGE directly, claiming that the more than a decade of TSA Determinations that

FIRST SUPPLEMENTAL COMPLAINT – 14

18 WEST MERCER ST., STE. 400 **BARNARD**

SEATTLE, WASHINGTON 98119 **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132 **LAVITT LLP**

permitted collective bargaining were "misplaced directives" that "have solely benefited the American Federation of Government Employees (AFGE) at TSOs' expense." *Id.* at 2.

74. The February Determination rescinded, "[e]ffective immediately," the 2022 Determination on collective bargaining, and stated that all other "historical and superseded Determinations, and any amendments thereto . . . are superseded and inoperative." *Id.* at 3 & n.8.

75. The memo went further: It asserted that the 2024 CBA is "no longer applicable or binding and is hereby rescinded," and that "AFGE is no longer the exclusive representative of any personnel carrying out screening functions under 49 U.S.C. § 44901." *Id.* at 3.

76. Noem did not, and could not, address the reality of the situation: that AFGE is the chosen representative of transportation security officers and counts a majority of these officers as members. Instead, she sought to replace members' judgment with her own, asserting they would be better off without their chosen representative.

77. The memo also discontinued the voluntary payroll deduction system by which transportation security officers can pay their dues directly from their paycheck. *Id.* at 4.

78. The memo stated that within 90 days, TSA should terminate "any functions, processes, or obligations arising out of the 2024 CBA," including "to the extent permitted by law, the termination of any pending grievances previously filed by a union on behalf of an employee . . . under the negotiated grievance procedure" and "any ongoing compliance obligations arising out of a grievance award issued pursuant to the grievance and arbitration provisions of the 2024 CBA." *Id.* at 4.

79. Not content to simply rescind the binding collective bargaining agreement that the TSA lawfully formed with AFGE, Secretary Noem went further and sought to unilaterally bar collective bargaining in perpetuity. The memo instructed TSA officials to propose a plan "to ensure

FIRST SUPPLEMENTAL COMPLAINT – 15

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

that no future Administration may permit TSOs to elect an exclusive representative or engage in collective bargaining absent an intervening statutory change." *Id.* at 4.

80. Plaintiffs did not receive notice of Noem's intent to sign the determination. Nor did Defendants follow the bargaining procedures set forth in the 2024 CBA prior to effecting its purported rescission.

81. On March 6, 2025, President Trump issued a memorandum for agency heads stating that "[i]n recent weeks, activist organizations . . . have obtained sweeping injunctions . . . functionally inserting themselves into the executive policy making process and therefore undermining the democratic process" and demanding that agencies request that courts require securities to be posted by parties seeking preliminary relief.

82. The next day, TSA informed AFGE and the public that, pursuant to the February Determination, the AFGE-TSA contract had been rescinded, all pending grievances filed by AFGE would be terminated, and TSOs no longer had any union representative or bargaining rights.

83. In its March 7, 2025 press release, TSA attacked AFGE, stating that TSOs "are losing their hard-earned dollars to a union that did not represent or protect their interests," a counterfactual statement made with no supporting evidence.

84. The TSA press release's attack on AFGE included the statement of a DHS spokesperson that "[t]hanks to Secretary Noem's action, Transportation Security Officers will no longer lose their hard-earned dollars to a union that does not represent them." Again, this bald assertion was supported by no evidence and ignored the fact that no TSA employee was required to pay union dues except upon the employee's voluntary choice. The unsupported assertion about "a union that does not represent them" amounted to nothing but a demonstration of animus against AFGE. It was also false, inasmuch as AFGE has successfully advocated for better working

FIRST SUPPLEMENTAL COMPLAINT – 16

conditions and increased pay for transportation security officers, and has represented hundreds of individual transportation officers in grievances and other matters.

85.    In fact, DHS and TSA retaliated against AFGE precisely because of AFGE's efforts to represent and protect its members' interests by suing over unlawful Trump administration initiatives.

86.    TSA's additional guidance regarding the February Determination sent March 11, 2025 made TSA's new position crystal clear: "There is no CBA between TSA and AFGE."

**IV.    AFGE Continues to Speak Out and Stand Up For Federal Workers, Despite Ongoing Retaliation by the Trump Administration**

87.    Since filing the Complaint challenging the February Determination, AFGE has continued to exercise its rights to oppose Trump Administration policies that have harmed its members and others throughout the country.

88.    For example, on March 21, 2025, AFGE joined journalists, other unions, and non-profit press freedom organizations to challenge the Trump Administration's dismantlement of the U.S. Agency for Global Media and its Voice of America media programming, which promotes free press and democracy abroad. *Widakuswara v. Lake*, No. 25-cv-02390 (S.D.N.Y. Mar. 21, 2025).

89.    On April 4, 2025, AFGE joined other unions in challenging Executive Order 14251, which stripped collective bargaining rights from the vast majority of the federal workforce, as *ultra vires* and in violation of the First and Fifth Amendments. *AFGE v. Trump*, Case No. 3:25-cv-03070 (N.D. Cal. Apr. 4, 2025).

90.    Executive Order 14251, *Exclusions From Federal Labor-Management Relations Program*, 90 Fed. Reg. 14553 (Mar. 27, 2025) ("First Exclusion Order"), which was issued by

FIRST SUPPLEMENTAL COMPLAINT – 17

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

President Trump on March 27, 2025, purported to use the President's authority under 5 U.S.C. § 7103(b) to exclude a broad swath of agencies from federal labor protections.

91.    This First Exclusion Order was accompanied by an official Fact Sheet which laid bare the reason for the Order: retaliating against AFGE and other "hostile Federal unions" for daring to stand up and oppose "President Trump's agenda." The Fact Sheet expressly referred to AFGE by stating "[t]he largest Federal union"—AFGE—"describes itself as 'fighting back' against Trump. It is widely filing grievances to block Trump policies."

92.    The Fact Sheet concluded with an overt threat: "President Trump supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security missions."

93.    The same day, March 27, 2025, numerous federal agencies—including DHS—sued certain AFGE local unions seeking to terminate their CBAs with AFGE, referring in their complaint to an article in which AFGE outlined the ways it is "fighting back" against the administration in the courts and otherwise. Complaint ¶ 172, *DOD v. AFGE, Dist. 10*, No. 6:25-cv-119, Dkt. #1 (W.D. Tex. Mar. 27, 2025).

94.    Providing further evidence of a retaliatory scheme, the Department of Veterans Affairs initially implemented Executive Order 14251 on a union-by-union basis, eliminating rights for AFGE and others while leaving in place rights to other unions. *See* Order Suspending the Application of Section 1-402 or 1-404 of Executive Order 12171, 90 Fed. Reg. 16427 (Apr. 17, 2025).

95.    AFGE has continued to challenge the Trump administration, such as by filing suit on April 28, 2025 challenging its unlawful reorganization of the government and massive reductions in force, *AFGE v. Trump*, No. 3:25-cv-3698 (N.D. Cal. Apr. 28, 2025), by filing suit

FIRST SUPPLEMENTAL COMPLAINT – 18

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

on September 19, 2025 challenging the elimination of labor rights at the U.S. Agency for Global Media, *AFSCME v. Trump*, No. 1:25-cv-03306, (D.D.C. Sep. 19, 2025), and by filing suit on September 30, 2025 challenging the Trump administration's plans to use a government shutdown to unlawfully conduct reductions-in-force, *AFGE v. OMB*, Case No. 3:25-cv-08302 (N.D. Cal. Sep. 30, 2025).

**V.     AFGE and AFGE TSA Local 1121 Obtain a Preliminary Injunction, But Defendants Announce They Will Again Rescind the CBA and Associated Grievances**

96.     This current litigation, which is also protected First Amendment speech by AFGE and its co-Plaintiffs, was filed on March 13, 2025.

97.     On June 2, 2025, the Court granted a preliminary injunction, finding Plaintiffs AFGE and AFGE TSA Local 1121 likely to succeed on each of their claims. The order enjoined Defendants from, *inter alia*, "[d]enying Plaintiffs, their members, and all bargaining unit TSOs any and all rights and/or working conditions guaranteed in the 2024 CBA." It also ordered Defendants "to immediately notify bargaining unit TSOs that pursuant to this Order, the 2024 CBA remains applicable and binding, such that all rights contained in the CBA are restored to the pre-Noem Determination status quo."

98.     TSA thereafter notified all TSOs that "[t]he U.S. District Court for the Western District of Washington in Seattle has ordered TSA to return to full compliance with the collective bargaining agreement between TSA and the American Federation of Government Employees (AFGE)."

99.     Following the Court's issuance of the preliminary injunction, TSA restored their labor relations to the pre-March 7 status quo by recognizing AFGE as the exclusive representative,

FIRST SUPPLEMENTAL COMPLAINT – 19

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

reinstating the 2024 CBA, recognizing TSOs' CBA rights, and engaging in the grievance and arbitration process.

100.    On September 29, 2025, Secretary Noem signed the September Determination, a new memorandum to TSA Acting Administrator Ha Nguyen McNeill that, while providing new purported rationales for the decision, reinstated the actions Plaintiffs had previously challenged.

101.    The September Determination stated that "[e]ffective immediately," the 2024 CBA was "terminated."

102.    It also stated that "TSA policy will govern and control and shall be implemented to address any working conditions described in the 2024 Collective Bargaining Agreement," that "TSA shall immediately cancel all voluntary dues deductions through payroll," that "TSA shall cancel all grievances and arbitrations," and that "TSA Screening officers shall not have the right to elect an exclusive representative for the purpose of collective bargaining or for any other purpose."

103.    The September Determination justified the termination of the CBA, in part, by noting that the 2024 CBA and three prior CBAs took time and money to negotiate and by stating in a conclusory fashion that strengths of the CBA reported by management officials in a recent survey were not substantiated, not the result of collective bargaining, or outweighed by costs.

104.    The September Determination also justified the termination of the CBA by claiming that its provisions permitting self-certification of sick leave of three consecutive work days or less were causing increased absences, in part by comparing absences before and after the 2024 CBA became effective. However, this analysis does not support the claim, as the 2020 CBA, which was in effect prior to the effective date of the 2024 CBA, also permitted self-certification of sick leave of up to three days.

FIRST SUPPLEMENTAL COMPLAINT – 20

18 WEST MERCER ST., STE. 400  BARNARD

SEATTLE, WASHINGTON 98119  IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

105. While the September Determination ordered TSA to take effectively the same actions that the February Determination ordered TSA to take, the September Determination stated that it "rescinded" the February Determination.

106. TSA did not inform AFGE, TSOs, or the general public about the September Determination until more than two months later, on December 12, 2025. On that date, TSA released the September Determination and stated that it "will be implemented on January 11, 2026"—not immediately, as the determination itself stated—and that it "rescinds . . . (AFGE's) status as exclusive representative of non-supervisory TSOs, and the May 24, 2024 collective bargaining agreement" and cancels pending grievances and arbitrations.

107. Also on December 12, TSA notified all TSOs that "[e]ffective January 11, 2026, TSA will implement a new labor framework, rescinding the 2024 Collective Bargaining Agreement (CBA) and other determinations."

108. Employees were sent a link to a Frequently Asked Questions document, which noted the Court's Preliminary Injunction but claimed that "[t]he preliminary injunction entered in *AFGE v. Noem* addressed Secretary Noem's February 27, 2025 Determination, which has now been rescinded by the Secretary's September Determination. TSA intends to implement the September Determination on January 11, 2026."

109. On December 23, 2025, TSA agreed to extend the implementation date by one week, to January 18, 2026, as part of a stipulated briefing schedule for this lawsuit.

110. Plaintiffs did not receive notice of Secretary Noem's intent to sign the September Determination. Nor did Defendants follow the bargaining procedures set forth in the 2024 CBA prior to effecting its purported rescission.

FIRST SUPPLEMENTAL COMPLAINT – 21

18 WEST MERCER ST., STE. 400  BARNARD

SEATTLE, WASHINGTON 98119  IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132  LAVITT LLP

**VI.     The Unlawful Rescission of the 2024 CBA Has Harmed and, If It Recurs, Will Further Harm Plaintiffs and Their Members**

111.     AFGE members who are federal employees work in a wide variety of positions, in every U.S. state and the District of Columbia, and in agencies including the Transportation Security Administration.

112.     AFGE, on its own and in conjunction with AFGE TSA Council 100 and its affiliated locals, including AFGE TSA Local 1121, represents the approximately 47,000 transportation security officers working for TSA.

113.     Membership in AFGE is voluntary, and a majority of transportation security officers have chosen to become AFGE members.

114.     The leadership of AFGE and AFGE TSA Local 1121 are democratically elected by and from their members.

115.     AFGE's representation of federal civilian employees includes engaging in collective bargaining with federal agencies, providing representation in binding arbitrations and other matters, including formal discussions and investigative examinations, political advocacy, the submission of public comments to agency rulemakings, and litigation in court.

116.     The activities of AFGE and AFGE TSA Local 1121 are funded by their members through voluntary membership dues.

117.     By eliminating collective bargaining rights for transportation security officers at the Transportation Security Administration and rescinding the 2024 CBA, Defendants have eliminated the ability of AFGE and affiliated locals, including AFGE TSA Local 1121, to perform core services for their members: representing them in negotiations with agencies to secure binding collective bargaining agreements covering federal employees' working conditions, and enforcing those obligations through contractual grievance procedures.

FIRST SUPPLEMENTAL COMPLAINT – 22

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

118.    As a result of the February and September Determinations, TSA is refusing to honor contractual obligations made to their employees and their exclusive representative, AFGE.

119.    The illegal rescission of the 2024 CBA means that AFGE members have lost or will lose contractual rights and protections governing their working conditions, including protections against discipline and adverse actions without just cause, that they had obtained through collective bargaining.

120.    The illegal termination of all pending grievances that have been brought by AFGE has deprived and will deprive AFGE members of their vested interests in being protected against unjustified discipline by TSA and other contractual violations.

121.    Roughly three-quarters of AFGE members who are transportation security officers pay their voluntary membership dues through payroll deduction.

122.    The 2024 CBA requires TSA to continue voluntary payroll deduction for union members' dues, so long as employees do not choose to cancel their dues deductions, for the life of the contract. 2024 CBA Art. 7. However, pursuant to the February Determination, TSA ceased providing payroll deduction of voluntary membership dues. Likewise, pursuant to the September Determination, TSA has announced it will cease providing payroll deduction of voluntary membership dues.

123.    AFGE, and AFGE locals including AFGE TSA Local 1121 are directly harmed by eliminating payroll deduction of dues for their members who have voluntarily joined the union and opted to pay dues through this process.

124.    Furthermore, the elimination of collective bargaining and exclusive representation rights for AFGE contained in the February Determination and September Determination reduces AFGE's bargaining power and will reduce the likelihood that transportation security officers will

FIRST SUPPLEMENTAL COMPLAINT – 23

18 WEST MERCER ST., STE. 400   BARNARD

SEATTLE, WASHINGTON 98119   IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

join AFGE and its affiliates, since the union is now barred from providing its core services, including but not limiting to negotiating over terms and conditions of employment and defending TSOs from arbitrary disciplinary actions by their employer.

125.    Efforts to counteract the harm from the February Determination and September Determination have diverted and are diverting AFGE employees and resources from being otherwise used to further their mission by organizing and representing employees, negotiating with employers, and advocating for improved employment conditions.

126.    CWA and AFA members in the aviation industry, including passenger service agents at airports and flight attendants, rely on TSA's transportation security officers to ensure that they are kept safe on the job.

127.    By eliminating contractual protections that protect the working conditions of TSA transportation security officers and rescinding AFGE's status as exclusive representative of these workers, TSA is denigrating their work force and making it more difficult for the agency to attract and retain qualified personnel to keep CWA and AFA members safe on the job.

128.    The loss of contractual grievance rights will make it more difficult for TSA members to raise issues that could implicate safety without fear of retaliation, thus increasing risks to CWA and AFA members.

129.    The February Determination was framed, in part, as moving TSA to a "flexible, at-will workforce." The September Determination refers to a "need for agility in managing the workforce" and "swiftly address poor performers." The 2024 CBA permits TSA to address poor performance, but its rescission eliminates one pathway by which TSA employees can challenge their terminations as arbitrary or unjust. The resulting increased terminations of TSA employees

FIRST SUPPLEMENTAL COMPLAINT – 24

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

will make adequate staffing more difficult and threaten workplace safety for those who work in areas protected by transportation security officers, including CWA and AFA members.

### Count I
*Violation of the Administrative Procedure Act – Arbitrary and Capricious*

130.    Plaintiffs reallege Paragraphs 1 through 129.

131.    The February Determination's unilateral rescission of the 2024 TSA-AFGE collective bargaining agreement and termination of pending grievances and arbitral proceedings constitutes final agency action within the meaning of 5 U.S.C. § 704. The September Determination's unilateral rescission of the 2024 TSA-AFGE collective bargaining agreement and termination of pending grievances and arbitral proceedings also constitutes final agency action within the meaning of 5 U.S.C. § 704.

132.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is found to be arbitrary and capricious. 5 U.S.C. § 706(2)(A).

133.    Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

134.    "An agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Station, Inc.*, 556 U.S. 502, 515 (2009). Instead, it must give a "reasoned explanation" for such departure. *Id.*

135.    The February Determination failed to provide any reasoned explanation for its reversal of existing policy, instead asserting in conclusory fashion, with no evidentiary support, that AFGE harms the transportation security officers that it represents.

FIRST SUPPLEMENTAL COMPLAINT – 25

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

136.    The February Determination justified its unilateral rescission of the 2024 CBA and termination of pending grievances based on an irrelevant factor: the fact that transportation security officers voluntarily choose to pay membership dues to AFGE.

137.    The September Determination justifies the rescission of the 2024 CBA by claiming that its provisions permitting self-certification of sick leave of up to three days contribute to an increase in unscheduled absences, comparing absences from the year before the 2024 CBA took effect with the nine months after it took effect. However, this conclusion runs counter to the evidence before the agency, because the CBA in effect the year before the 2024 CBA contained substantively identical sick leave provisions to those which TSA attributes the increase in unscheduled absences under the 2024 CBA.

138.    The September Determination also justifies the rescission of the 2024 CBA by claiming that its procedures regarding performance are "inconsistent with Executive Order (EO) 13839 . . . issued by [] President Trump in 2018." However, that Executive Order does not support the rescission of the 2024 CBA; instead, it simply instructs agencies to "renegotiate, as applicable, any collective bargaining agreement provisions that are inconsistent with any part of this order" and to "give any contractually required notice of its intent to alter the terms of such agreement and reopen negotiations." TSA gave no such notice, nor did it seek to renegotiate these terms in the 2024 CBA.

139.    The September Determination refers to a survey of management officials, acknowledges that these officials identified "strengths of the 2024 collective bargaining agreement," but then discounts these identified strengths in a conclusory fashion, failing to sufficiently explain why these results do not support maintaining the CBA.

FIRST SUPPLEMENTAL COMPLAINT – 26

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

140. At no point does the February Determination or the September Determination address the reliance interests that AFGE and its members have in the 2024 CBA and pending grievances.

141. The February Determination, in asserting that past directives permitting collective bargaining "failed to serve TSA's critical mission to protect the transportation system and keep Americans safe," fails to explain its departure from the TSA policy contained in the 2024 CBA, in which TSA "recognize[d] that bargaining unit employees are essential to achieving the Agency's critical security mission and that a cooperative working relationship between labor and management plays a vital role in the success of the bargaining unit employees." 2024 CBA Art. I. The September Determination likewise fails to acknowledge or explain its departure from the Agency's past recognition of the importance of a cooperative working relationship with bargaining unit employees.

142. The unexplained more-than-two-month delay regarding the Determination's announcement, which was signed on September 29, 2025 but only made public on December 12, is evidence that the assertion that collective bargaining creates a risk to transportation security is a mere pretext.

143. The September Determination does not "consider the alternatives that are within the ambit of the existing policy" as required by the APA. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal citation marks omitted). While claiming the CBA hinders agency agility, the Determination does not address whether the agency could meet its needs by exercising reserved management rights within the CBA. 2024 CBA Art. 4.

144. The Determination also fails to engage with the 2024 CBA's own recognition of TSA's "critical work as an agile security agency," such that the agency can immediately implement

FIRST SUPPLEMENTAL COMPLAINT – 27

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132  **LAVITT LLP**

any security-related or emergency-related policy and bargain over its impact and implementation afterwards, 2024 CBA Art. 13.D, or the fact that the CBA provides that approval of official time is "subject to operational needs," 2024 CBA Art. 6.B.1; *see also* Art. 6.G.1. Nor does it address the possibility of engaging in negotiations to modify the CBA.

145.    Accordingly, the September Determination's instruction to rescind the 2024 CBA and terminate existing grievances should be held unlawful and set aside.

### Count II
*Violation of the Administrative Procedure Act – Contrary to Law/Excess of Authority*

146.    Plaintiffs reallege Paragraphs 1 through 145.

147.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is found to be "not in accordance with law" and in excess of authority. 5 U.S.C. § 706(2)(A), (C).

148.    "The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen." *Lynch v. United States*, 292 U.S. 571, 580 (1934) (quoting *The Sinking Fund Cases*, 99 U.S. 700, 719 (1878)).

149.    The collective bargaining agreement that TSA entered into with AFGE in 2024 is a binding contract. Defendants lack authority to unilaterally rescind this contract, and the February Determination and September Determination's attempts to do so are contrary to law.

150.    Defendants lack authority to terminate existing grievances which were submitted pursuant to the 2024 CBA's binding grievance and arbitration process, and the February Determination and September Determination's attempts to do so are contrary to law.

FIRST SUPPLEMENTAL COMPLAINT – 28

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

151.    Accordingly, the TSA's attempt to rescind the 2024 CBA and terminate existing grievances, as announced by the February Determination and September Determination, should be held unlawful and set aside.

**Count III**
*Retaliation in Violation of the First Amendment*

152.    Plaintiffs reallege Paragraphs 1 through 151.

153.    AFGE has exercised its First Amendment right to petition the government by filing numerous lawsuits against the Trump administration challenging a variety of anti-worker actions.

154.    In close temporal proximity to this First Amendment-protected activity, Defendants have retaliated against AFGE and its members by rescinding the 2024 CBA, terminating all pending grievances and arbitrations, and eliminating AFGE's status as exclusive representative of transportation security officers.

155.    Public statements from DHS and TSA make clear that AFGE is being targeted by the February Determination and subsequent implementation by TSA, including by seeking to implement the same policies again through the September Determination. The February Determination calls out AFGE by name and claims contrary to evidence that the union "[h]arms Transportation Security Officers." Likewise, TSA's press release announcing the first rescission of the 2024 CBA, which remains available on TSA's website, falsely claimed that transportation security officers "are losing their hard-earned dollars to a union that did not represent or protect their interests."

156.    By publicly touting the annual loss in membership dues that AFGE will face if DHS and TSA's actions are allowed to stand, Defendants sent a clear message to others who dare to challenge Trump administration policies: you will pay for speaking out.

FIRST SUPPLEMENTAL COMPLAINT – 29

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

157.    TSA also claimed in its press release, contrary to evidence, that "TSA has *more* people doing full-time union work than we have performing screening functions at 86% of our airports."

158.    The September Determination puts forward pretextual reasons for the elimination of labor rights to attempt to cover up Secretary Noem's retaliatory motive, which she laid bare in February and March. For example, it compares unscheduled absences before the 2024 CBA and during the 2024 CBA even though the same sick-leave provisions were in effect during both periods. And it points to supposed operational concerns caused by the use of official time, even though the CBA provides safeguards to ensure operational needs are met, including that ad hoc official time must be approved by management prior to being taken and that approval is "subject to operational needs."

159.    The pretextual nature of the claim that collective bargaining burdens operational flexibility is also shown by the fact that the September Determination was signed September 29, 2025, but not announced until more than two and a half months later.

160.    This retaliatory action is in accord with a broader Trump administration policy of terminating contracts in retaliation for protected speech. As a recent example of this vindictive retaliation, a March 6, 2025 Executive Order entitled "Addressing Risks from Perkins Coie LLP" asserted that the law firm at issue had "worked . . . to judicially overturn . . . election laws" and ordered agencies "to terminate any contract . . . for which [that firm] has been hired to perform any service". As President Trump stated during a March 9, 2025 interview: "We have a lot of law firms that we're going to be going after, because they were very dishonest people." Joe DePaolo, "'We Have a Lot of Law Firms We're Going After': Trump Declares Plan to Target Law Firms He Considers 'Very, Very Dishonest,'" Mediaite (Mar. 9, 2025),

FIRST SUPPLEMENTAL COMPLAINT – 30

18 WEST MERCER ST., STE. 400  **BARNARD**

SEATTLE, WASHINGTON 98119  **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

https://www.mediaite.com/news/we-have-a-lot-of-law-firms-were-going-after-trump-declares-plan-to-target-law-firms-he-considers-very-very-dishonest/.

161.    AFGE and its members have been tangibly harmed by this retaliatory conduct due to the accompanying loss of workplace rights and protections, including but not limited to the ceasing of payroll dues deduction, elimination of contractual protections covering topics including discipline and adverse actions, and termination of preexisting grievances and arbitrations.

162.    Because the rescission of the 2024 CBA and associated grievances, as announced by the February Determination and September Determination, constitutes unconstitutional retaliation against AFGE for the exercise of its First Amendment rights, it should be enjoined.

## Count IV
### *Violation of the Fifth Amendment's Due Process Clause*

163.    Plaintiffs reallege Paragraphs 1 through 162.

164.    The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.

165.    "Valid contracts are property, whether the obligor be a private individual, a municipality, a State, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment." *Lynch*, 292 U.S. at 579.

166.    By unilaterally rescinding the 2024 CBA and terminating all pending grievances and arbitrations initiated pursuant to that CBA, the February Determination and September Determination eliminate protected property interests of AFGE, its affiliates, and its members without due process.

167.    Because the purported rescission of the 2024 CBA—as Defendants have ordered in the February Determination and September Determination—has deprived AFGE, its affiliates, and

FIRST SUPPLEMENTAL COMPLAINT – 31

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

its members of their property interests in violation of the Fifth Amendment's Due Process Clause, it should be enjoined.

## **Relief Requested**

**WHEREFORE**, Plaintiffs pray that this Honorable Court enter an ORDER:

A. Declaring that the purported rescission of the 2024 collective bargaining agreement between TSA and AFGE and termination of outstanding grievances brought pursuant to that CBA, as originally ordered in the February Determination and most recently ordered in the September Determination, violates the Administrative Procedure Act, and violates the First and Fifth Amendment, and therefore is null and void.

B. Preliminarily and permanently enjoining the Defendants from rescinding the 2024 collective bargaining agreement between TSA and AFGE and terminating outstanding grievances, as originally ordered in the February Determination and most recently ordered in the September Determination;

C. Awarding Plaintiffs their attorney's fees and costs; and

D. Granting such other relief as this Court may deem just and proper.

Date: July 13, 2026

Respectfully submitted,

*/s/ Kathleen Phair Barnard*
Kathleen Phair Barnard, WSBA No. 17896
*/s/Robert H. Lavitt*
Robert H. Lavitt, WSBA No. 27758
Barnard Iglitzin & Lavitt LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6004
lavitt@workerlaw.com

*/s/ Abigail V. Carter*
 Abigail V. Carter*

FIRST SUPPLEMENTAL COMPLAINT – 32

/s/ Jacob Karabell
Jacob Karabell*
/s/ J. Alexander Rowell
J. Alexander Rowell*
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street, N.W. Suite 1000
Washington, D.C. 20005
(202) 842-2600
(202) 842-1888 (fax)
acarter@bredhoff.com
jkarabell@bredhoff.com
arowell@bredhoff.com
*Pro hac vice

/s/ Norman L. Eisen
Norman L. Eisen*
/s/ Pooja Chaudhuri
Pooja Chaudhuri*
/s/ Taryn Wilgus Null
Taryn Wilgus Null*
Democracy Defenders Fund
600 Pennsylvania Avenue SE, Suite 15180
Washington, DC 20003
(202) 594-9958
norman@democracydefenders.org
pooja@democracydefenders.org
taryn@democracydefenders.org
*Pro hac vice
Counsel for Plaintiffs

/s/ Rushab B. Sanghvi
Rushab B. Sanghvi*
/s/ Andres M. Grajales
Andres M. Grajales*
American Federation Of
Government Employees, AFL-CIO
80 F Street, NW
Washington, DC 20001
(202) 639-6426
SanghR@afge.org
Grajaa@afge.org

 *Pro hac vice

Counsel for Plaintiff American Federation
of Government Employees (AFGE)

FIRST SUPPLEMENTAL COMPLAINT – 33

18 WEST MERCER ST., STE. 400    BARNARD

SEATTLE, WASHINGTON 98119    IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP